## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

      Plaintiff,

v.                                                  Civ. No. 23-899 GBW/JMR

ALBUQUERQUE PUBLIC SCHOOLS
and NEW MEXICO DEPARTMENT
OF PUBLIC EDUCATION,

      Defendants.

## ORDER GRANTING DEFENDANT PUBLIC EDUCATION DEPARTMENT'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant New Mexico Public Education Department's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c), *doc. 36*, and the parties' accompanying briefing, *docs. 38*, *44*.  Having reviewed the briefing, having held a hearing on the Motion on August 19, 2024, *see doc. 45*, and being otherwise fully advised regarding relevant case law, the Court will GRANT the Motion.

I.      PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Tatia Lipe brings American with Disabilities Act ("ADA") and New Mexico Whistleblower Protection Act ("NMWPA") claims against Defendant Albuquerque Public Schools and Defendant New Mexico Public Education Department

("PED") [1] based on actions that Defendants took while Plaintiff was an employee of Albuquerque Public Schools ("APS").  *See generally doc. 1*.  Plaintiff filed the operative Complaint for Damages in federal court on October 13, 2023.  *Id.*  Defendant PED moved to dismiss both claims against it in the instant Motion to Dismiss on July 1, 2024.  *See doc. 36*.  Although Plaintiff did not file a response in the time allotted by the local rules, the Court *sua sponte* granted Plaintiff an additional seven days to file a response.  *Doc. 37*.  Plaintiff responded to the Motion on July 25, 2024, *doc. 38*, and briefing on the Motion was complete with the filing of Defendant's reply on August 8, 2024, *doc. 44*.

The factual bases for Plaintiff's ADA and NMWPA claims against Defendant PED include the following allegations.  Plaintiff is a person with a disability who suffers from military service-related disabilities including chronic hip, back, and neck pain, inflammation, and fibromyalgia.  *Doc. 1* ¶ 8.  At the time of the events leading to this lawsuit, Plaintiff was an employee of APS where she worked with students with disabilities.  *Id.* ¶ 1.  In late 2021, Plaintiff began documenting various policies at APS which she deemed to be "placing special education students generally and her students specifically at risk."  *Id.* ¶ 4.  In February 2022, Plaintiff filed a formal complaint based on these policies with Defendant PED, and in April 2022, Defendant PED "confirmed the accuracy of the Plaintiff's allegations" about the harmful policies in a formal report.

---

[1] The Complaint incorrectly names the New Mexico Public Education Department as the New Mexico Department of Public Education.  *Doc. 1* at 1.  The Court will refer to this Defendant as Defendant Public Education Department ("PED").

*Id.* ¶¶ 6-7.  After Defendant PED's report was released in April 2022, "Plaintiff's

superiors . . . embarked on a campaign of retaliations and harassment against the

Plaintiff."  *Id.* ¶ 8.  These acts of retaliation and harassment included: (1) isolating

Plaintiff from her colleagues; (2) opposing Plaintiff's efforts to obtain medical leave after

she was diagnosed as requiring surgery for various physical ailments; (3) forcing

Plaintiff to come to work while she was in pain; (4) publicly punishing and criticizing

Plaintiff for not completing work even though she was on medical leave; and (5)

refusing to offer Plaintiff accommodation for her pain and discomfort while she was on

the job.  *Id.*

 Based on these allegations, Plaintiff brings an ADA claim based on unlawful

discrimination and failure to accommodate as well as a NMWPA claim based on

unlawful retaliation against Defendant PED.  *Doc. 1* ¶¶ 12, 13, 19.  Specifically, Plaintiff

states that although Defendant PED "became aware of the discrimination and

harassment by Defendant [APS] against Plaintiff" and "knew or should have known of"

Defendant APS's violations of the ADA and the NMWPA, Defendant PED "took no

action to protect and defend Plaintiff or to correct the violations."  *Id.* ¶¶ 16, 22.

## II. LEGAL STANDARDS

 "After the pleadings are closed – but early enough not to delay trial – a party

may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for

judgment on the pleadings pursuant to Rule 12(c) proceeds under the same standard of

review applicable to a motion to dismiss for failure to state a claim made under Rule

12(b).  *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).  Thus, to survive

a motion for judgment on the pleadings under Rule 12(c), a complaint "must contain

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on

its face."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard does not require "detailed

factual allegations," but it does require more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  When ruling on a 12(c) motion, the court must "assume the truth of

all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in

the light most favorable to the plaintiffs."  *Leverington*, 643 F.3d at 723 (quoting *Dias v.

City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  However, the court need

not accept the truth of any legal conclusions.  *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement."

*Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it

appears 'that a recovery is very remote and unlikely.'"  *Id.* (quoting *Scheuer v. Rhodes*,

416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Id.* at 555.  However, "[w]here a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

4

short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts

must "permit the court to infer more than the mere possibility of misconduct";

otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

       In her response to the Motion, Plaintiff argues that the standard for a 12(c)

motion to dismiss is more rigorous than the standard for a 12(b)(6) motion to dismiss.

*Doc. 38* at 2-3.  In particular, Plaintiff relies on D.C. Circuit law for the proposition that

the standard of review for a 12(c) motion is "closer to a summary judgment standard."

*Id.* at 3.  However, as noted above, the Tenth Circuit uses the same standard of review

for both a 12(b)(6) motion and a 12(c) motion.  *Morris*, 666 F.3d at 660.  As a result, the

Court will use the standard described above in its analysis of Defendant PED's Motion.

## III.   ANALYSIS

### A.   American with Disabilities Act Claim

       Defendant PED first moves to dismiss Plaintiff's ADA claim on the basis that

Defendant PED was not Plaintiff's employer under the ADA and, in the alternative,

Plaintiff has failed to state an ADA claim.  *Doc. 36* at 4-7, 9-10.  Plaintiff argues in

response that Defendant PED was a joint employer of Plaintiff.  *Doc. 38* at 5.  For the

reasons described below, the Court agrees that Plaintiff has not pled sufficient facts to

bring an ADA claim against Defendant PED.

Under the American with Disabilities Act ("ADA"), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  In order to state a claim under the ADA, Plaintiff must plausibly allege that Defendant PED was a covered entity with respect to Plaintiff's employment.  Because Defendant PED is not an employment agency, labor organization, or join labor-management committee, Plaintiff must allege that Defendant PED was Plaintiff's employer.

Plaintiff never specifically alleges in the Complaint that Defendant PED was her employer.  *See generally doc. 1.*  Plaintiff states that she "was employed by the Defendant Albuquerque Public Schools."  *Doc. 1* ¶ 1.  By contrast, Plaintiff only alleges that Defendant PED "is a governmental subdivision of the State of New Mexico" that "administers educational programs for children with disabilities in New Mexico" and that Defendant PED was "an overseer of the Defendant Albuquerque Public Schools."  *Id.* ¶¶ 2, 16, 22.  In briefing, Plaintiff defines "overseer" as "[a] person with supervisory responsibility," and she argues that because "an employer can possess or exercise supervisory responsibility," the Complaint does not concede that Defendant PED was not a "co-employer" of Plaintiff.  *Doc. 38* at 3.  However, not conceding a fact is not the same as alleging the contrary fact.  Whether the defendant is a covered entity under the

ADA is a critical element of an ADA claim, and Plaintiff's Complaint is insufficient without this allegation.

Even if Plaintiff had baldly alleged that Defendant PED was her joint employer, Plaintiff has not pled sufficient facts to support this contention. For situations in which there is more than one potential employer, the Tenth Circuit uses two tests, known as the single-employer and joint-employer tests, to determine whether an entity is a plaintiff's employer for purposes of the ADA.[2] *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002). The single-employer test applies in situations in which "two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities." *Id.* In briefing, Plaintiff concedes that the joint-employer test is more applicable to the facts of this case. *Doc. 38* at 4-5.

Under the joint-employer test, courts assess whether the two entities "share or co-determine those matters governing the essential terms and conditions of employment" such that "both entities exercise significant control over the same employees." *Bristol*, 312 F.3d at 1218 (citation and quotation omitted). The "[m]ost important" factor for determining whether an entity has control over the terms and

---

[2] The Tenth Circuit also uses a third test, called the "hybrid test" to determine whether a plaintiff was an independent contractor of the employer. *Bristol*, 312 F.3d at 1217-18. Because no party has alleged that Plaintiff was an independent contractor of Defendant PED, and the facts of the case do not suggest that Plaintiff was an independent contractor, this test is not relevant.

conditions of employment is whether the entity has the "right to terminate" the

employees "under certain circumstances." *Id.* at 1219. Courts also look to whether the

entity has the power to hire employees, *see id.* at 1219, "promulgate work rules and

assignments," "set conditions of employment, including compensation, benefits, and

hours," or conduct "day-to-day supervision of employees, including employee

discipline and control of employee records," *Knitter v. Corvias Military Living, LLC*, 758

F.3d 1214, 1226 (10th Cir. 2014) (quotation and citation omitted). Lastly, courts

sometimes assess the budgetary power of the potential joint employer, such as the

entity's ability to set budgets or whether the entity partially pays the salaries of

employees. *Bristol*, 312 F.3d at 1219; *see also A.V. v. Douglas Cnty. Sch. Dist.*, 586

F.Supp.3d 1053, 1072-73 (D. Colo. 2022). However, "[b]udgetary power, in and of itself,

does not establish the control necessary to treat [two entities] as joint employers," and a

plaintiff must still provide evidence of other control factors, such as the ability to hire

and fire employees, in order to establish that an entity was a joint employer. *Bristol*, 312

F.3d at 1219.

    At present, Plaintiff has not sufficiently alleged that Defendant PED was her joint

employer. As noted, Plaintiff does not provide any allegations in her Complaint that

Defendant PED was her employer. In her response to the instant Motion, Plaintiff

argues that Defendant PED was her joint employer because Defendant PED controls

whether Plaintiff receives a teaching license, and her license allows her to be employed

at the school.  *Doc. 38* at 5.  In addition, PED licenses have various "tiers" that dictate

whether an employee may advance and what minimum salary they are permitted to

receive.  *Id.*  As a result, Plaintiff argues that her "hiring, advancement and salary" were

controlled by Defendant PED.  *Id.*  However, Plaintiff does not allege that Defendant

PED had any direct power to hire or fire her from her position at Albuquerque Public

Schools.  Indeed, New Mexico law provides that it is the role of the superintendent to

"employ . . . assign, terminate or discharge all employees of the school district,"

N.M.S.A. § 22-5-14 (1978), and that a "local school board or governing authority of a

state agency may terminate a licensed school employee . . . for any reason it deems

sufficient."[3]  *Id.* § 22-10A-24(A).  In addition, Plaintiff does not allege that Defendant

PED had direct control over Plaintiff's salary.  Although the PED licenses trigger

statutory salary minimums for school employees, *see id.* § 22-10A *et seq.*, the

superintendent of a school district develops the final "salary system" for employees in a

particular district, *id.* § 22-5-11, as well as "fix[es] the salaries of . . . all employees of the

school district," *id.* § 22-5-14.  Finally, Plaintiff has not made any plausible allegations

that Defendant PED was involved in day-to-day supervision of Plaintiff's work

including, for example, assigning Plaintiff tasks, disciplining Plaintiff, or controlling

Plaintiff's employee records.

---

[3] In this statute, "state agency" refers to a "regional education cooperative or state institution," not the Public Education Department.  N.M.S.A. § 22-10A-2(S) (1978).

Finally, even if Plaintiff were able to show that Defendant PED was her joint

employer, it does not appear that Plaintiff has pled facts to support other elements of an

ADA claim.[4]  To bring a claim under the ADA, Plaintiff must show that she was

discriminated against by her employer on the basis of her disability.  *Lincoln v. BNSF*

*Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018).   Although Plaintiff alleges that she has a

disability, she has not alleged that she was discriminated against *on the basis of that*

*disability*.  Plaintiff alleges that her supervisors at Defendant APS harassed Plaintiff after

Plaintiff filed a formal report with Defendant PED about harmful policies at the school

where Plaintiff worked.  *Doc. 1* ¶ 8.  These allegations do not suggest that her

supervisors were harassing her because of her disability.  Rather, they suggest that

Plaintiff was harassed in retaliation for filing a formal complaint with Defendant PED.

Although the Court has concerns regarding whether Plaintiff will be able to

bring a successful ADA claim against Defendant PED, the Court will permit Plaintiff a

short time period within which to file a motion to amend her Complaint if she believes

that she can allege sufficient facts to 1) show that Defendant PED was her joint

employer using the factors described above; and 2) show that Defendant PED

discriminated against Plaintiff based on Plaintiff's disability.  If Plaintiff's motion to

---

[4] In its Motion, Defendant PED argues that Plaintiff "has not pled facts sufficient to meet the threshold elements of" the ADA statute.  *Doc. 36* at 9.  Plaintiff declines to provide any response to this argument. *See generally doc. 38*.

amend does not make these showings, the Court will deny Plaintiff's motion to amend

as futile and dismiss the ADA claim against Defendant PED with prejudice.

### B.  New Mexico Whistleblower Protection Act Claim

Defendant PED next moves to dismiss Plaintiff's New Mexico Whistleblower

Protection Act Claim (NMWPA) against it.  *Doc. 36* at 7-10.  At the hearing on the

instant Motion, Plaintiff agreed to dismiss the NMWPA claim against Defendant PED.

*Doc. 45* at 2.  As a result, the Court will DISMISS this claim WITH PREJUDICE.

### IV.    CONCLUSION

For the foregoing reasons, Defendant New Mexico Public Education

Department's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) (*doc. 36*) is GRANTED.

The American with Disabilities Act claim (Count I) against Defendant PED is

DISMISSED WITHOUT PREJUDICE and the New Mexico Whistleblower Protection

Act claim against Defendant PED is DISMISSED WITH PREJUDICE.  The claims against

Defendant Albuquerque Public Schools remain.

Plaintiff is granted **seven (7) days from the entry of this Order** to file a motion to

amend in accordance with the guidelines described above.  If Plaintiff chooses to file a

motion to amend and the motion is opposed, the motion will be subject to futility

analysis.  If no motion to amend is timely filed, the dismissal of the American with

Disabilities Act claim (Count I) against Defendant PED will be converted to a dismissal

WITH PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**