IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TATIA LIPE,**

    Plaintiff,

v.                                                                1:23-cv-00899-GBW-JMR

**ALBUQUERQUE PUBLIC SCHOOLS
and NEW MEXICO DEPARTMENT
OF PUBLIC EDUCATION,**

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL**

Comes now, Plaintiff, Tatia Lipe, "Plaintiff," by and through undersigned counsel Boglarka Foghi (Foghi Law Firm, LLC), and respectfully submits this *Reply in Support of Plaintiff's Motion to Compel* (Doc. 88).

Despite Plaintiff's repeated efforts to assist APS in complying with its discovery obligations—including detailed deficiency explanations, named individuals, and identification of key data sources—APS has continued to rely on obstructionist tactics and materially false representations. This *Reply* highlights APS's failure to conduct a reasonable inquiry, addresses the impropriety of APS's "data dump" strategy, and cites

controlling authority from the Tenth Circuit and District of New Mexico in support of the Motion to Compel and imposition of sanctions.

I.   BACKGROUND

Plaintiff has submitted three rounds of supplemental production, each revealing information that not only bolsters Plaintiff's claims but also exposes inaccuracies in APS's verified responses. (Exhibit A, Discovery Deficiencies). This reply will demonstrate APS's inadequate verification practices, highlight controlling Tenth Circuit and District of New Mexico authority mandating supplementation and sanctions and address the impropriety of APS's "data dump" strategy, all of which support the granting of the Motion to Compel and the imposition of sanctions.

The majority of the discovery shortcomings presented to the Court were previously highlighted in Plaintiff's initial Motion to Compel (Doc. 75). Regrettably, APS has persisted in employing similar obstructive strategies despite the denial of that motion. For instance, APS unilaterally renumbered requests for admission (RFAs), resulting in confusion and impeding Plaintiff's capability to monitor responses. Furthermore, APS has consistently neglected to identify witnesses, despite Plaintiff furnishing precise names, as delineated in the current Motion to Compel (Doc. 88) and accompanying exhibits. These concerns were thoroughly documented in conferral emails and telephone conversations with APS's legal counsel.

Furthermore, APS continues to object to discovery predicated on the purported ambiguity of the term "whistleblower complaint," notwithstanding the utilization of the same terminology in APS's internal investigations, notably the Barreras and Gonterman Reports. Plaintiff explicitly addressed this artificial ambiguity in its supplemental responses (Doc. 87) and in preceding motions (Docs. 75, 88).

Despite having been afforded two chances to provide meaningful responses through briefing on both motions to compel, APS has neglected to engage with the substance of Plaintiff's arguments. Their discovery responses have been characterized by blanket denials, imprecise objections, and evasions that disregard both the record and Plaintiff's clarifications. This pattern of misconduct has been compounded by procedural manipulation.

Rather than submitting a timely response by the deadline for responsive briefing, APS inappropriately filed a Notice (Doc. 91), contravening the applicable rules. Plaintiff submitted a Notice of Completion of Briefing (Doc. 92) to affirm the matter's complete briefing. Subsequently, Plaintiff filed a Motion to Strike the improper notice (Doc. 93), which the Court denied. APS nevertheless filed an untimely response (Doc. 95), which the Court allowed despite the missed deadline. That filing contained further misrepresentations, which Plaintiff addressed in her Objection (Doc. 97).

These procedural maneuvers have engendered delays of over a year in the progression of this case. APS has sought multiple deadline extensions, such as on January 27, 2025

(Doc. 73), citing ill-defined "unexpected work emergencies." In Doc. 95, APS cited spring break as a justification for delay, despite the fact that discovery was due prior to the commencement of spring break (February 28). These inconsistent and unsubstantiated rationales have substantially prejudiced Plaintiff and are illustrative of a bad-faith approach to discovery.

On April 19, APS furnished yet another supplemental production (Doc. 100), which, once again, failed to provide responsive information and was largely unusable. In response, Plaintiff furnished APS with an informal memo on April 21, outlining specific deficiencies and including documentation substantiating APS's misrepresentation of its compliance (Exhibit B, Informal Memo). The subsequent day, at the April 22 status conference (Doc. 101), APS falsely asserted to the Court that it had produced the requisite discovery. These ongoing misrepresentations, juxtaposed with voluminous irrelevant "data dumps," underscore APS's persistent strategy of feigning cooperation while withholding pertinent materials.

Plaintiff has additionally documented instances wherein APS has made materially false statements in verified discovery responses. The evidence contradicting APS's assertions has already been submitted, precipitating the question of whether APS's conduct rises to the level of perjury.

Most recently, APS filed a second response to Plaintiff's Motion to Compel (Doc. 105), which, again, failed to address any of the substantive issues raised in Doc. 88. Despite

4

having had two weeks to respond, APS waited until the final day to file and, rather than addressing the discovery disputes, merely reiterated statements already made during the April 22 status conference and pointed to the Court's Order (Doc. 104)—an order that concerned Plaintiff's obligation to provide case copies and had no bearing on the merits of the discovery issues. APS's reliance on that order was not only misplaced but also irrelevant to the motion at hand.

Plaintiff reserves the right to supplement this reply further with case law establishing that vague work conflicts and general scheduling issues are not valid excuses for discovery violations.

II. FAILURE OF COUNSEL TO CONDUCT REASONABLE INQUIRY: CONTROLLING CASE LAW

A. Duty of Counsel to Oversee and Ensure Adequate Discovery

Federal courts impose a clear duty on counsel to actively manage discovery, ensuring a comprehensive search for all relevant information and certifying completeness after a reasonable inquiry. See Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 322 (S.D.N.Y. 2003) ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. The duty to supervise is non-delegable."); Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 685 F. Supp. 2d 456, 473–74 (S.D.N.Y. 2010) (counsel must conduct a reasonable inquiry and ensure preservation and production of relevant

5

documents); Qualcomm Inc. v. Broadcom Corp., 548 F.3d 1004, 1015–16 (Fed. Cir. 2008) (attorneys bear responsibility for ensuring clients conduct a comprehensive document search). See also Security National Bank of Sioux City, Iowa v. Abbott Laboratories, 176 F.R.D. 590 (N.D. Iowa 1997) (Counsel must familiarize themselves with their client's records to ensure that the discovery responses are complete and accurate).

B. Application to This Case

Plaintiff has diligently provided APS's counsel with:

1. Detailed lists of response deficiencies (Exhibit A, Discovery Deficiencies);

2. Names of individuals with relevant knowledge;

3. Specific data sources (MaxCapture, Synergy, investigation transcripts);

4. Clarified definitions (Exhibit C, Supplemental Discovery Definitions) (e.g., "whistleblower complaint");

5. Three rounds of supplemental discovery, each directly contradicting APS's denials.

Despite these efforts, APS persists in providing incomplete, evasive, and demonstrably false responses, violating the standards articulated in *Zubulake*, *Pension Committee*, and *Qualcomm*. APS's conduct demonstrates a clear failure to conduct a reasonable inquiry and a disregard for its discovery obligations.

III. TENTH CIRCUIT AND DISTRICT OF NEW MEXICO AUTHORITY

The Tenth Circuit has consistently emphasized the importance of compliance with procedural rules and has affirmed that failure to comply may result in waiver of rights

6

or sanctions. See, e.g., Lee v. Max Int'l, LLC, 638 F.3d 1318, 1321 (10th Cir. 2011) (affirming dismissal for repeated discovery violations); Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (outlining factors for severe sanctions where a party's conduct impairs the judicial process); Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256 (10th Cir. 2004) (emphasizing the necessity of procedural compliance in litigation conduct).

Furthermore, discovery misconduct, including the failure to conduct a reasonable inquiry and proper verification, warrants stringent judicial scrutiny and sanctions. See In re Idaho Public Employees' Retirement System, 680 F. Supp. 2d 1085 (D. Idaho 2010) (repeated discovery violations and failure to verify responses undermine judicial efficiency); United States v. Ziegler, 747 F. Supp. 2d 1234 (D. Utah 2010) (certification under Rules 33(b)(5) and 26(g) are critical safeguards, and evasive disclosures may warrant severe sanctions). See also, Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90 (D. Colorado 1996) (imposing sanctions for failure to supplement discovery responses).  When responding to discovery, "[c]ounsel has an obligation to assure that the client complies with discovery obligations and court orders and, thus, careful inquiry by counsel is mandated in order to determine the existence of discoverable documents and to assure their production." Sun River Energy, Inc. v. Nelson, 800 F.3d 1219, 1229 (10th Cir. 2015).

IV. WILLFULNESS, BAD FAITH, AND NEED FOR DETERRENCE

APS's conduct is not attributable to mere inadvertence or excusable neglect. The record reveals a pattern of willful evasion, bad faith, and disregard for the Federal Rules of Civil Procedure. As the Tenth Circuit recognized in Ehrenhaus, courts may impose severe sanctions where a party's conduct impairs the judicial process. The repeated, documented failures by APS—including misrepresentations, procedural manipulation, and "data dump" tactics—warrant not only remedial sanctions but also deterrent sanctions to protect the integrity of the discovery process and deter similar conduct by APS and other litigants. See Qualcomm, 548 F.3d at 1019 (sanctions serve both remedial and deterrent purposes). Given the seriousness and extent of the misconduct, substantial sanctions are warranted to ensure fairness and compliance with the discovery rules.

V. REQUESTED RELIEF

For the foregoing reasons, and pursuant to Fed. R. Civ. P. 26(e), 26(g), 33(b)(5), and 37, Plaintiff respectfully requests that the Court:

1. Compel APS to provide full, verified, and complete responses to all outstanding discovery requests without further delay;

2. Deem evasive or incomplete responses as admissions where appropriate;

3. Preclude APS from introducing any evidence or documents withheld or misrepresented in discovery;

4. Award Plaintiff reasonable attorney's fees and costs incurred in bringing this motion;

5. Impose further sanctions as the Court deems just and proper, including but not limited to issue preclusion, evidentiary sanctions, or striking of defenses to remedy the substantial prejudice of Plaintiff and deter future violations. Specifically, Plaintiff requests the Court consider imposing a monetary sanction against APS and its counsel, commensurate with the costs incurred by Plaintiff due to the discovery misconduct.

## VI. CONCLUSION

APS and its counsel have failed to conduct the reasonable inquiry required by law, have not properly verified discovery responses, and have ignored Plaintiff's detailed guidance and three rounds of supplemental discovery. Neither APS's first nor second response addresses the core issues raised in Plaintiff's Motion to Compel. In light of controlling Tenth Circuit authority and applicable Federal Rules—particularly Rules 33(b)(5), 26(g), and 26(e)—Plaintiff respectfully requests that the Court should grant Plaintiff's Motion to Compel in full and impose appropriate sanctions as set forth above.

Respectfully submitted,

**/s/ Boglarka Foghi**
Boglarka Foghi, Esq.
FOGHI LAW FIRM, LLC
5065 Corrales Rd., P.O. Box 944
Corrales, NM 87048
(505) 220-5691
*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused all counsel of record to be served electronically.

**/s/ Boglarka Foghi**
Boglarka Foghi, Esq.