IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TATIA LIPE,**

      Plaintiff,

v.                                     1:23-cv-00899-GBW-JMR

**ALBUQUERQUE PUBLIC SCHOOLS**
**and NEW MEXICO DEPARTMENT**
**OF PUBLIC EDUCATION,**

      Defendants.

## PLAINTIFF'S REPLY TO DEFENDANT APS' RESPONSES TO PLAINTIFF'S SECOND MOTION TO COMPEL AND SUPPLEMENTAL RESPONSES TO DISCOVERY

## I. INTRODUCTION AND SUMMARY

   Plaintiff, by and through undersigned counsel, submits this Reply in support of her

Second Motion to Compel [**Doc 124**].  APS has not fully met its discovery obligations, as

responses remain incomplete, delayed, and in some instances nonresponsive.

Additionally, data has been produced in a manner that is not transparent or consistent

with APS's ordinary business practices. This has required Plaintiff to expend additional

resources, delayed the case, and made it more difficult to prepare for trial.  Plaintiff

seeks an order compelling full, verified, and organized responses, as well as

appropriate sanctions for continued noncompliance. Where a party fails to comply with

its discovery obligations despite opportunities to confer and supplement, judicial

intervention is not only appropriate but necessary.

II. LEGAL STANDARD

Discovery in federal court is governed by the principles of full and fair disclosure,

good faith, and proportionality, aiming to secure the just, speedy, and inexpensive

determination of every action. The rules require parties to provide complete, verified

responses to interrogatories and requests for production. An evasive or incomplete

disclosure is to be treated as a failure to disclose. Courts possess inherent authority to

compel compliance with discovery obligations and to impose appropriate remedies for

non-compliance. See Fed. R. Civ. P. 26, 33, 34, 36, 37.

III. DEFENDANT'S RELIANCE ON OUTDATED MOUs AND

MISCHARACTERIZATION OF ADA ACCOMMODATIONS

A significant issue in APS's defense is its reliance on expired Memoranda of

Understanding (MOUs) to justify its purported compliance with the ADA. APS

produced two expired MOUs, "School Reopening Memoranda of Understanding"

(expired May 25, 2021) and "Starting the 2021-2022 School Year Safely" (expired May 25,

2022), neither of which governed the relevant time period for Plaintiff's claims, which

concern conduct beginning August 2022.

Additionally, APS has conflated district-wide remote work arrangements implemented during the COVID-19 pandemic with individualized ADA accommodations. This does not accurately reflect the requirements of the law or the facts. The remote work policy cited by APS was a public health order applicable to all employees, regardless of disability status, and not an ADA accommodation.

APS has not produced any evidence of individualized assessment or an interactive process regarding Plaintiff's ADA requests. Instead, it relies on expired, system-wide MOUs and public health directives, which do not satisfy the requirements of the ADA or the Rehabilitation Act. See 42 U.S.C. § 12101 et seq.

IV. SUMMARY OF APS'S RESPONSES TO THE SECOND MOTION TO COMPEL AND OUTSTANDING DEFICIENCIES

Plaintiff has reviewed APS's response to the Second Motion to Compel and compared it to the issues and requests raised in Plaintiff's motion. APS's answers remain incomplete and do not resolve the core deficiencies identified.  Below, Plaintiff details APS's verbatim responses, what was answered, what remains outstanding, and additional issues identified in Plaintiff's prior notes and the Second Motion to Compel.

A. Production of Irrelevant and Outdated Documents (Interrogatory No. 6)

APS stated it "will continue to supplement answers and plans on doing so soon as more information has been found." This indefinite promise is non-committal and has

already forced Plaintiff to seek extensions to discovery deadlines. The term "soon" is meaningless without a concrete timeline, and APS has not committed to a date for full compliance. APS has not produced any internal policy, protocol, or MOU covering the relevant period for Plaintiff's claims, and continues to rely on expired documents. This issue remains unresolved and was not substantively addressed in APS's response.

B. Misleading Protocol Production (Interrogatory No. 9)

APS claims to have produced "relevant district policies available on its public website" and intends to further supplement as additional information becomes available". Plaintiff, having worked for APS for approximately nine years, can verify that relevant policies are maintained and can be located within the internal APS "intranet," not the public website. APS's reliance on public-facing documents, while withholding internal protocols, does not fulfill its discovery obligations. APS has not produced the actual internal protocols governing Plaintiff's job duties and crisis response, and this issue remains outstanding. APS did not address Plaintiff's specific point that the public website does not contain the relevant internal policies and that APS employees and especially Administrators have this knowledge of where to locate the requested documents that already exist and are within their possession.

C. False Representation of Documents (Interrogatory No. 11)

APS asserts that "limitations in the software used to compile the requested data" prevent it from producing the information Plaintiff seeks, and claims it has only recently obtained a more comprehensive list of social workers and their caseloads, which it "intends to supplement." This explanation is not supported by the evidence.

The requested information is, in fact, readily available in the format Plaintiff specified. Plaintiff's own experience, as well as documentary evidence, including her Informal Memorandum and other materials already produced, demonstrate that these reports can be generated without difficulty. APS's own training materials, including monthly staff newsletters, provide step-by-step instructions for Related Services staff on how to access and generate caseload reports at the start of the school year and on a monthly basis. Staff are specifically instructed to provide this data to their school principals. These newsletters, authored by administrators such as Dr. Lisa Oliphant, confirm that staff are regularly trained and reminded on how to access these reports in both Synergy and Maxcapture. *See* [**Exhibit A: Newsletters/Training Materials, Exhibit C:  SW Guide to Using Synergy**].

It is concerning that the same administrators who have verified APS's discovery responses now claim these documents cannot be produced as requested. This contradiction calls into question the candor of APS's responses. APS's continued

assertion of technical limitations is not supported by its own internal training materials and the demonstrated capabilities of its systems.

APS's refusal to produce the data as maintained in the ordinary course of business remains unresolved. APS has not addressed Plaintiff's clear demonstration that the data is readily available, nor has it responded to the evidence Plaintiff provided in her Informal Memorandum and the handbooks for Maxcapture and Synergy. [**Doc. 124-1,** Page 12, Informal Memorandum/Handbooks]

D. Nonresponsive Data Dumps (RFP Nos. 6 and 10)

APS states "the volume of data retrieved has been substantial, though it may not align with Plaintiff's expectations" and that it "has opted to re-run its data searches using a different methodology and hopes the revised responses will address Plaintiff's concerns more effectively." APS's most recent "revised" production consists of a spreadsheet that was manually created by copying and pasting information, rather than providing the actual reports generated from Synergy and Maxcapture. This spreadsheet is not in the format maintained by APS in the ordinary course of business and cannot be verified for accuracy or completeness. Unlike the standard system-generated reports, which provide a comprehensive and accurate reflection of caseloads, including historical data, metadata, timestamps, and the identity of the personnel generating or printing the

report, the spreadsheet produced by APS lacks these critical features. *See* [**Exhibit B**:

**APS Revised Production**].

Instead of producing the targeted, structured reports that are readily accessible and

routinely used by APS staff, APS continues to submit voluminous, unfiltered data

dumps that do not meet the requirements of Plaintiff's discovery requests. This issue

remains unresolved. APS has not addressed Plaintiff's specific request for reports

generated directly from Synergy and Maxcapture in the format used in the ordinary

course of business. [**Doc. 124-1, Pages 7-12**]

As a result, APS's production cannot be verified and fails to provide the accurate,

complete, and reliable information that is available through its own systems.

E. Incomplete and Improper Verifications of Interrogatory Responses

   APS did not address Plaintiff's argument that key decision-makers (Annittra Atler

and Bernadette Lucero-Turner) did not verify any responses, despite their direct

involvement in events relevant to Plaintiff's claims. Some of the individuals who did

verify appear to lack personal knowledge. APS did not respond to this deficiency at all.

F. Refusal to Identify Witnesses or Produce Investigative Materials (Interrogatory No. 4)

   APS provided a list of individuals but did not answer subparts (a), (b), (c);

misrepresented that Jessie McFarland took over Plaintiff's caseload (when in fact three

others also did); failed to disclose other grievances filed by Plaintiff and other witnesses

listed.  In regard to the Investigation Reports, stated "it is APS's understanding that

Plaintiff is in possession of these reports as evidenced by their inclusion as exhibits in

Plaintiff's Second Motion to Compel." APS did not answer the subparts as required. The

assertion that Plaintiff is in possession of the reports is irrelevant, Plaintiff specifically

requested this information in interrogatories and RFPs served on November 20, 2024

[**Doc. 59**], APS was obligated to produce them regardless of Plaintiff's later use as

exhibits in its Motions to Compel. APS also failed to disclose all relevant grievances and

misrepresented the facts regarding caseload coverage. APS continues to list persons not

involved in this case and has not produced all investigative materials or identified all

witnesses as requested. APS did not address the privilege log issue or the failure to

produce audio recordings, notes, or documentation associated with the investigations.

G. Direct Contradiction of Discovery Responses (Interrogatory No. 14)

APS asserts that "a more specific interrogatory would have elicited a more precise and

responsive answer." However, Plaintiff clearly identified Associate Superintendent

Annittra Atler in prior correspondence and in the informal memorandum.  As of March

11, 2025, APS was on notice that the interrogatory referred specifically to Ms. Atler. See

[Doc 88, Page 16]. APS's refusal to provide a direct answer is unjustified.

Moreover, APS's verified responses are contradicted by documentary evidence,

including verbatim statements from Annittra Atler expressing concerns about Plaintiff's

stability. Despite this, APS has not corrected or supplemented its response to reflect the

actual evidence. APS also failed to address Plaintiff's demonstration that the

interrogatory was clear and that APS was fully aware of the individual referenced.

H. Manipulation of RFA Count to Avoid Substantive Responses

APS stated "APS has calculated the number of Requests for Admission based on the

number of admissions provided... Several of Plaintiff's RFAs contain multiple subparts,

(some comprising up to four distinct assertions) each requiring a separate admission or

denial from APS." APS's approach is contrary to the rules and prevailing practice.

Subparts that are logically related and concern the same subject matter should be

counted as a single request. See Fed. R. Civ. P. 36(a). APS's refusal to answer RFAs 25-31

is improper and avoids substantive responses. APS has not answered these RFAs and

has not provided a privilege log for any withheld responses. APS did not address

Plaintiff's argument that the subparts are logically related and must be answered.

I. Strategic Evasion Regarding the Whistleblower Complaint

APS stated "APS is able to provide a copy of the answers; however, APS is awaiting

verification as proof of a good faith effort to answer Plaintiff's discovery, which should

be available within the next 48 hours, at which time APS will serve the verified

supplemental answers." APS has repeatedly promised supplementation but has not

provided a date certain or any verified supplementation to date. APS did address

Plaintiff's clarification of the term but has still not supplemented its responses in regard

to the "whistleblower complaint," despite Plaintiff's clarification and repeated requests.

This issue remains outstanding.

IV. ADDITIONAL OUTSTANDING ISSUES FROM PLAINTIFF'S SECOND MOTION
TO COMPEL AND PRIOR NOTES

Upon review of Plaintiff's Second Motion to Compel and prior notes, the following

additional deficiencies remain unaddressed by APS:

- APS continues to list individuals in its responses who had no involvement in
  Plaintiff's ADA or FMLA requests, or in the events at issue, and has not
  corrected or supplemented these responses.

- APS has not produced internal communications, emails, meeting notes, or
  memoranda regarding Plaintiff's ADA accommodations, FMLA leave,
  caseload reassignment, or related decision-making, despite repeated and
  specific discovery requests.

- APS has not produced training materials, attendance records, or
  documentation regarding ADA, FMLA, or whistleblower protections for the
  relevant period.

- APS has not produced administrative leadership development program
  records, differential pay records or substitute social worker service minutes as
  requested.

- APS has not produced a privilege log for any documents withheld on the basis of privilege.

- APS has not produced audio recordings, interview notes, or internal communications referenced in the investigation reports.

- APS has not provided full, verified, and organized responses to all outstanding interrogatories and requests for production, including targeted, provider-level MaxCapture/Synergy reports.

- APS has not provided immediate, verified supplementation regarding the whistleblower complaint, as clarified in Plaintiff's Supplemental Discovery Responses.

## V. JUDICIAL SCRUTINY AND LACK OF DEFENSES FOR TRIAL

APS's supplemental productions confirm it possesses no internal policy covering the relevant period, no usable caseload data, and no verified testimony from key decision-makers. APS's verified responses are directly contradicted by documentary evidence (e.g., Atler transcript). Plaintiff respectfully invites the Court to scrutinize APS's filings: nothing in the record rebuts Plaintiff's articulated deficiencies. The format of the MaxCapture/Synergy data production is not responsive to the requests and makes it difficult for Plaintiff to represent her case and for the Court to evaluate the evidence. The MaxCapture reports are crucial because they show what the caseloads actually

looked like, reveal that the district was not inconvenienced, and demonstrate that some

social workers had very few students and low service minutes. Service minutes are a

more accurate measure of workload than student count, and the reports will show how

much work was completed by Plaintiff and by those who were supposed to be filling in.

Notably, statements made by administrators in their recorded interviews with

investigators asserted that Plaintiff was deficient in her work and had "not completed

any of her MaxCapture/Medicaid notes". These statements are contradicted by

Plaintiff's evidence, including production of 83 pages of MaxCapture Notes to APS,

showing that she completed significantly more work than the four social workers who

were assigned to cover her caseload during her approved FMLA leave. Despite her

absence, Plaintiff outperformed all four substitutes combined, a fact supported by

MaxCapture documentation and used to substantiate her claims of both harassment

and FMLA interference. Nevertheless, District administrators, including Human

Resources personnel, required Plaintiff to attend a meeting on January 11, 2023, while

she was on protected FMLA leave. The stated purpose of the meeting was to discuss

alleged deficiencies related to "progress towards goals." However, documentation

confirms that the progress toward goals had already been completed nearly a month

earlier, rendering the meeting both unnecessary and unfounded. Additionally,

interview transcripts from the District's own investigation into Plaintiff's complaints

show that certain administrators described Plaintiff as "deficient" in her work and

falsely claimed she had "not completed any of her MaxCapture notes." These statements are directly contradicted by the objective documentation Plaintiff has already produced in her discovery to APS. During the meeting on January 11th, Plaintiff informed administrators multiple times that she was on protected leave and should not have been required to attend. The same investigation transcripts contain other misleading characterizations of Plaintiff's demeanor during the January 11 meeting, portraying her in a negative light. However, Plaintiff possesses a full audio recording of that meeting, which she intends to introduce as evidence to directly refute the false and subjective accounts provided by these witnesses under oath. Importantly, Defendant APS has cited the investigative findings as evidence that Plaintiff's complaints of discrimination and retaliation were "unsubstantiated." However, those findings were based on demonstrably false witness statements, made by administrators under oath, which were contradicted by direct, contemporaneous evidence, including Plaintiff's MaxCapture records and the meeting recording. These facts call into question the validity of the investigation and the credibility of the District's claimed justification for its actions. Given these circumstances, Plaintiff respectfully submits that the Court's close scrutiny is warranted to determine whether APS has met its obligations under the Federal Rules and whether any defense remains for trial.

VI. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Compel APS to provide full, verified, and organized responses to all outstanding interrogatories and requests for production, including:

   - Targeted, provider-level MaxCapture/Synergy reports;

   - All investigative materials (audio, notes, internal communications);

   - Identification of all witnesses interviewed or relied upon in investigations;

   - Complete responses to all RFAs within the numerical limit, without improper subpart counting;

   - Immediate, verified supplementation regarding the whistleblower complaint, as clarified in Plaintiff's Supplemental Discovery Responses;

   - All emails, notes, communications, or related documentation regarding substitute assignment, ADA, FMLA, and coverage during Plaintiff's leave.

2. Award Plaintiff her reasonable attorney's fees and costs incurred in bringing this motion.

3. Impose such further sanctions as the Court deems just and proper, including issue preclusion or evidentiary sanctions for continued noncompliance.

VII. CONCLUSION

APS's response confirms that supplementation remains incomplete and that Plaintiff's Second Motion to Compel is both necessary and timely. Plaintiff has acted diligently, afforded APS numerous opportunities to correct deficiencies, and exhausted all efforts to resolve these matters without court intervention. The pattern of delay and

evasiveness now warrants compelled compliance and sanctions. The Court should

grant the motion in full and order immediate, verified compliance.

Respectfully submitted,

/s/ Boglarka Foghi, Esq.
Boglarka Foghi, Attorney for Plaintiff
FOGHI LAW FIRM, LLC
5065 Corrales Rd., P.O. Box 944
Corrales, NM  87048
(505) 220-5691
foghilaw@yahoo.com

I hereby certify that a true and correct
 copy of the foregoing was
electronically filed through the
CM/ECF on the 4th day of August 2025
which causes service to the following:
Karen Kilgore, Esq.
kkilgore@cuddymccarthy.com
Cuddy & McCarthy, LLP
1701 Old Pecos Trail
P.O. Box 4160
Santa Fe, NM 87502
*Attorney for Defendant APS*

/s/ Boglarka Foghi, Esq.
Boglarka Foghi, Attorney at Law