IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


TATIA LIPE,

      Plaintiff,

v.                                                                    Civ. No. 23-899 GBW/JMR

ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant.

## SANCTIONS ORDER

THIS MATTER comes before the Court pursuant to a show-cause proceeding held

on June 26, 2025.  *Doc. 122*.  Having considered the law and held a hearing on the matter,

the Court FINDS that Plaintiff's counsel, Boglarka Foghi, violated Federal Rule of Civil

Procedure 11(b)(2), and therefore orders sanctions.

I.    **BACKGROUND**

Plaintiff brings Americans with Disabilities Act ("ADA") and New Mexico

Whistleblower Protection Act ("NMWPA") claims against Albuquerque Public Schools

("Defendant") and the New Mexico Public Education Department ("PED") based on

actions that Defendant and PED took while Plaintiff was an employee of Defendant.  *See*

*generally doc. 1*.  Plaintiff filed the operative Complaint for Damages in federal court on

October 13, 2023.  *Id.*  PED moved to dismiss both claims against it on July 1, 2024.  *See*

*doc. 36*.  PED was dismissed from the action on September 5, 2024.  *Doc. 48*.

The present issue stems from a particular discovery dispute.  On March 28, 2025, the Honorable Jennifer M. Rozzoni filed an Order Denying Plaintiff's Motion to Strike and Setting Deadline for Defendant APS to File a Response.  *Doc. 94.*  On April 4, 2025, Plaintiff filed her Objection to Order Denying Motion to Strike [Doc. 94] and Request for Prompt Ruling on Fully Briefed Motion to Compel [Doc. 88] ("Objections").  *Doc. 97.*  Troublingly, this filing contained citations to cases that do not exist, as well as citations to existing cases that do not stand for the associated proposition.  *See generally id.*  On April 8, 2025, the undersigned issued an Order Overruling Plaintiff's Objections.  *Doc. 99.*  On May 7, 2025, the undersigned issued an Order for Copies of Authorities, requesting that Plaintiff produce copies of the authorities cited in her Objections that the Court was unable to find.  *Doc. 104.*

Plaintiff filed her Notice of Errata and Correction of Authorities in Response to Court Order [Doc. 104] ("Notice of Errata") on May 12, 2025.  *Doc. 106.*  There, Plaintiff's counsel explained that, upon review of Plaintiff's Objections, she "identified clerical citation errors in prior filings and submits this correction."  *Id.* at 1.  She stated that a mix of "clerical error," "the complexities inherent in managing voluminous case materials," retention of incorrect citations from "early-stage research," and "significant time constraints" caused Plaintiff's counsel to submit a document containing a number of erroneous citations.  *Id.* at 2-5.  Plaintiff also provided new authorities that supported the

2

original propositions contained in her Objections. [1]  *See generally id.*  While these new

citations were to existing cases, one of the cases was presented as having a quote that

does not exist within the text of the cited case.  *Compare doc. 106* at 2 *with Ogden v. San*

*Juan Cnty.*, 32 F.3d 452 (10th Cir. 1994).  Four days later, Plaintiff submitted another filing

with questionable citations, her Reply in Support of Motion to Compel ("Reply").  *Doc.*

*107*.  This filing also included citations to cases that do not exist, as well as cases cited for

propositions for which they do not stand.  *See generally id.*; *see also doc. 113* (explaining the

citation issues in the Reply).

Upon review of Plaintiff's Notice of Errata, the undersigned issued an Order

Setting Show Cause Hearing set for June 26, 2025, to address concerns about the accuracy

and relevance of Plaintiff's citations in her Objections and Notice, as well as the

representations in the subsequent filings.  *Doc. 108*.  On June 4, 2025, Judge Rozzoni

issued an Order striking Defendant's supplemental response (*doc. 105*), striking Plaintiff's

Reply (*doc. 107*), and notifying Plaintiff's counsel of her potentially sanctionable conduct.

*See doc. 114*.  In addition to addressing the grave issues with Plaintiff's citations, Judge

Rozzoni also noted that the Reply was "rife with conclusions and accusations that are not

tied to any facts of this case."  *Id.* at 4.

---

[1] Plaintiff's counsel sent copies of these new cases to the Court's proposed text inbox in response to its
Order for Copies of Authorities (*doc. 104*).

On June 23, 2025, three days before the show cause hearing, Plaintiff filed her Notice of Clarification Regarding Inadvertent Citation Errors and Professional Responsibility ("Clarification"). *Doc. 119*. Plaintiff's counsel states that the Clarification was "submitted in furtherance of Rule 11(b) compliance and in preparation for the upcoming show-cause hearing." *Id.* at 2. Plaintiff's counsel first argues that the issues with her Objections were properly explained in the Notice. *Id.* Plaintiff's counsel then states that the issues in the Reply were due to it being an "internal draft containing incomplete citations, placeholder quotations, and unverified references filed inadvertently due to clerical oversight." *Id.* Plaintiff's counsel also notes that she took several remedial actions:

- Hired experienced legal support personnel trained in citation verification and court-compliant procedures;
- Instituted a dual-stage internal review process for all filings to ensure source accuracy and procedural compliance;
- Required exclusive use of primary legal research databases (e.g., Westlaw) for citation validation.

*Id.* at 3. Plaintiff's counsel outlines why the existing cases she cited in her Reply are inapt and explains that the nonexistent cases included in her Reply "do not correspond to published decisions and were placeholder references retained from early research drafts that were not removed prior to filing." *Id.* at 4. Plaintiff's counsel argues that, because the Reply was stricken from the record, the incorrect and nonexistent citations would not "influence the proceedings." *Id.* at 5.

4

Anticipating the possibility of sanctions, Plaintiff's counsel argues that the errors were "inadvertent, promptly corrected, and not the result of bad faith or improper purpose." *Id.* at 6. She also argues that the "citation inaccuracies were addressed promptly through the filing [of the Notice] as soon as counsel became aware of them," and that her "actions were taken in the spirit of the safe harbor provision under Rule 11(c)(2), which encourages prompt withdrawal or correction of challenged material." *Id.*

At the show cause hearing on June 26, 2025, Plaintiff's counsel provided a more accurate explanation regarding the erroneous citations. Plaintiff's counsel explained that she outlined the arguments for the offending filings but relied on her paralegal and another legal contractor to actually draft the language of the filings including the citations to legal support. Plaintiff's counsel admitted that she did not verify the citations or any quotations attributed to various courts in any fashion. *Doc. 122* at 2. She conceded that the unreviewed use of artificial intelligence ("AI") products to obtain the citations and quotations for the filings is the only explanation for the citations to non-existent cases and for the fictional "quotations."[2] *Id.* at 3. When asked what she thinks her sanctions

---

[2] A hallucination occurs when an AI database generates fake sources of information. To explain how this occurs:

> AI models are trained on data, and they learn to make predictions by finding patterns in the data. However, the accuracy of these predictions often depends on the quality and completeness of the training data. If the training data is incomplete, biased, or otherwise flawed, the AI model may learn incorrect patterns, leading to inaccurate predictions or hallucinations.

*Wadsworth v. Walmart Inc.,* 348 F.R.D. 489, 493 (D. Wyo. Feb. 24, 2025) (citation omitted).

should be, Plaintiff's counsel expressed that she would accept whatever action the Court

considers appropriate. *Id.* at 4.

## II.   LEGAL STANDARDS

Rule 11 of the Federal Rules of Civil Procedure establishes the standard that

attorneys and parties must meet when filing documents in federal court. Specifically,

Rule 11(b)(2) states that an attorney presenting "a pleading, written motion, or other

paper—whether by signing, filing, submitting, or later advocating it"—to a court

"certifies that to the best of the person's knowledge, information, and belief, formed after

an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other

legal contentions are warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R.

Civ. P. 11(b).

A failure to comply with such obligations may result in a sanction. *See* Fed. R. Civ.

P. 11(c). In determining whether sanctions are warranted, the trial court conducts a two-

step analysis. *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988). First, the court must

find a filing violates Rule 11. *Id.* When determining whether a Rule 11 violation has

occurred, an attorney's conduct is evaluated based on "objective reasonableness—

whether a reasonable attorney admitted to practice before the district court would file

such a document." *Id.* at 673. "If after reasonable inquiry, a competent attorney could

not form a reasonable belief that the pleading is well grounded in fact and is warranted

by existing law, then such conduct is sanctionable under Rule 11." *Id.* (internal quotation

marks and citations omitted).  Second, if the conduct violates Rule 11, a court may then

impose a suitable sanction.  *Id.* at 672.

### III.    PLAINTIFF'S RULE 11 VIOLATION

At the first step, the Court finds that Plaintiff's counsel's conduct violated Rule 11.

"A fake opinion is not existing law and citation to a fake opinion does not provide a non-

frivolous ground for extending, modifying, or reversing existing law, or for establishing

new law.  Thus, using a fake opinion to support an argument is a violation of Rule

11(b)(2)." *Wadsworth,* 348 F.R.D. at 495 (internal quotation marks and citations omitted).

"Quite obviously, many harms flow from [the use of fabricated citations]—including

wasting the opposing party's time and money, the Court's time and resources, and

reputational harms to the legal system (to name a few)." *Morgan v. Cmty. Against*

*Violence*, 2023 WL 6976510, at *8 (D.N.M. Oct. 23, 2023).  Furthermore, "[s]igning a legal

document ensures that the attorney read the document and conducted a reasonable

inquiry into the existing law." *Wadsworth,* 348 F.R.D. at 495 (citations omitted).  This

requirement is a "nondelegable responsibility . . . [and] blind reliance on another attorney

can be an improper delegation of this duty and a violation of Rule 11." *Id.* at 495-96

(citations and quotations omitted).

Here, Plaintiff's counsel admits that several citations in the Objections and Reply

do not exist. *See doc. 122* at 2-3.  Plaintiff's counsel states that the inclusion of at least

some of these citation errors was caused by contributions from her paralegal or another

individual who assisted in drafting the documents. *Id.* at 2.  Nonetheless, she admits that

she did not verify the citations and takes full responsibility for the errors. *Id.*  Thus, the

Court finds that Plaintiff's counsel's conduct, both in submitting the briefing in question

without verifying the accuracy of its contents and in submitting briefing that contains

fake citations, violates Rule 11.[3]

## IV.    SANCTIONS

The Court now turns to the question of sanctions for Plaintiff's counsel's Rule 11

violation.  After a district court has found that a violation occurred, it has "'broad

discretion to impose Rule 11 sanctions.'"  *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir.

2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990)).  But even so, the

court must limit the sanction to one that is sufficient to deter the conduct or comparable

conduct by others similarly situated.  Fed. R. Civ. P. 11(c)(4).  The case at bar is by no

means the first where a party has submitted fabricated case names caused by the use of

---

[3] In the Clarification, Plaintiff's counsel insists that she promptly filed the Notice "in the spirit of the safe harbor provision under Rule 11(c)(2), which encourages prompt withdrawal or correction of challenged material." *Doc. 119* at 6.  However, the safe harbor provision states that *a motion* for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).  "As the Tenth Circuit has made explicit, the safe harbor provision does not apply when a court awards sanctions on its own initiative." *Dehghani v. Castro*, 728 F. Supp.. 3d 1051, 1061 (D.N.M. 2025) (internal quotations and citation omitted).  While the Court notes the timely response to its Order for Copies of Authorities (*doc. 104*), these sanctions are on the Court's initiative, and thus the safe-harbor provision is inapplicable.

an AI tool.  *See Dehghani v. Castro*, 2025 WL 988009, at *5 (D.N.M. Apr. 2, 2025) (collecting

cases), *aff'd*, 782 F. Supp. 3d 1051 (D.N.M. 2025); *Mavy v. Comm'r of Soc. Sec.*, 2025 WL

2355222 (D. Ariz. Aug. 14, 2025).  For citing nonexistent authorities, courts have required

the offending party to (1) pay fines to the court, *Bunce v. Visual Tech. Innovations, Inc.*, 2025

WL 662398, at *4 (E.D. Pa. Feb. 27, 2025); (2) complete a CLE course, *Gauthier v. Goodyear*

*Tire & Rubber Co.*, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024); or (3) report

themselves to the appropriate state bars, *Dehghani*, 2025 WL 988009, at *5.

As for what sanctions are proper in this case, the Court inquired with Plaintiff's

counsel, who responded that she would accept the sanctions that the Court deemed

appropriate.  *Doc. 122* at 4.  The Court takes into account that Plaintiff's counsel

completed a CLE course on the use of AI in legal practice in anticipation of the show

cause hearing on the matter.  *Id.* at 2.  The Court also notes that Plaintiff's counsel

understands that she should have verified the accuracy of these citations, that this error

was her responsibility, and that there are no excuses for her conduct.  *Id.* at 2-3.

However, Plaintiff's counsel's misconduct was egregious and repeated.  Not only did she

not verify the accuracy of the initial filing, but her response to the Court after this failure

was brought to her attention was less than forthright and contained similar errors.  *See*

*docs. 97*, *106*.  Incredibly, Plaintiff's counsel then filed an additional document with the

same citation issues.  *Doc. 107*.  For each of these filings, the most basic review of the law

9

cited by Plaintiff would have revealed the blatant errors. Plaintiff's counsel, thus, failed to conduct the necessary review at least three times.

As the Court indicated at the hearing, it is unpersuaded that a CLE course on the use of AI in the legal profession is a sufficient sanction to deter this conduct. *See doc. 122 at 4.* Plaintiff's counsel's failure is not the use of an AI tool—the Court does not discourage responsible use of the ever-growing array of legal technologies from which modern lawyers can draw. Her real failure is one of delegation, diligence, and response. "There is simply no reason for an attorney to fail to fulfill [the] obligation [to check the soundness of authorities]. Such has been the view for decades: 'It is really inexcusable for any lawyer to fail, as a matter of routine, to Shepardize all cited cases[.]'" *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, 2025 WL 574234, at *2 (S.D. Ind. Feb. 21, 2025), *report and recommendation adopted as modified*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) (quoting *Gosnell v. Rentokil, Inc.*, 175 F.R.D. 508, 510 n.1 (N.D. Ill. 1997)). Accordingly, the Court finds that the following sanctions are proper to deter this conduct in the future:

1. Plaintiff's counsel is ordered to pay a fine of $3,000 to the Clerk of Court for the District of New Mexico; and
2. Plaintiff's counsel is ordered to self-report to the New Mexico and Arizona state bar disciplinary boards, explaining this incident and attaching a copy of this Order along with the filings at *docs. 97, 104, 106, 107, 108, 114* and *119* as exhibits.

V.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's counsel violated Federal Rule of Civil Procedure 11(b)(2) by submitting a filing to the court without adequately reviewing it for accuracy, failing to verify its correctness, and citing authorities that do not exist.  The Court thus sanctions counsel under Rule 11(c) as outlined above.  The Court finds that these sanctions are not more severe than reasonably necessary to deter repetition of this conduct or deter conduct by others who are in similar circumstances.

**IT IS THEREFORE ORDERED** that Plaintiff's counsel is sanctioned a fine of $3,000 and shall pay the amount to the Clerk of Court for the District of New Mexico within **10 days of this issuance of this Order**.

**IT IS FURTHER ORDERED** that within **30 days of this issuance of this Order,** Plaintiff's counsel must self-report to both New Mexico and Arizona state bar disciplinary boards, explaining this incident and attaching a copy of this Order along with the filings at *docs. 97, 104, 106, 107, 108, 114* and *119* as exhibits.

**IT IS FURTHER ORDERED** that, **by October 31, 2025**, Plaintiff's counsel must submit proof to the Court that she has completed these sanctions.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

11