# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**TATIA LIPE,**

   Plaintiff,

v.                              No. 1:23-cv-00899-GBW-JMR

**ALBUQUERQUE PUBLIC SCHOOLS
and NEW MEXICO DEPARTMENT
OF PUBLIC EDUCATION,**

   Defendants.

## PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY RESPONSES, FOR SANCTIONS UNDER RULE 37(b) DUE TO DEFENDANT'S NONCOMPLIANCE WITH COURT ORDER, AND FOR EXTENSION OF DISCOVERY DEADLINES

COMES NOW Plaintiff Tatia Lipe, ("Plaintiff"), by and through undersigned counsel and respectfully moves this Court for an Order compelling Defendant Albuquerque Public Schools ("APS") to comply fully with its discovery obligations and with the Court's September 5, 2025 Order [Doc. 147].  Despite a clear and unambiguous Order, APS has continued a pattern of noncompliance, characterized by incomplete responses, withholding of critical electronically stored information (ESI), failure to provide necessary search and custodial details, and production in an unusable format. This conduct has severely prejudiced Plaintiff's ability to prepare her case and necessitates this Motion. Pursuant to Fed. R. Civ. P. 16(b)(3)(B)(iii), 26(b), 26(f)(3)(C), 26(g), 33(b), 34(b)(2)(E), 37(a)(1), 37(b), and 37(e); 28 U.S.C. § 1927; 20 U.S.C. § 1232g and 34 C.F.R. pt. 99; 42 U.S.C. §§ 12112, 12203; and 29 U.S.C. §§ 2615, 2617, Plaintiff seeks an order compelling complete discovery, establishing certain facts, precluding evidence, shifting costs, and extending deadlines. *See* (**Ex. 1_ Defendant's Fourth Supplemental Responses**).

# I. BACKGROUND

Discovery has been contentious, marked by APS's consistent resistance to providing complete and organized responses. On September 3, 2025, this Court held a hearing to address Plaintiff's two Motions to Compel.  On September 5, 2025, the Court issued a comprehensive Order (Doc. 147)  compelling APS to fully respond to numerous interrogatories and requests for production, with directives to cure prior deficiencies.[1] The Order required APS to: (1) respond in the propounded format, addressing each sub-part; (2) compile all previous interrogatory responses into unified answers; (3) provide verified explanations of search efforts and particularized statements of nonexistence for non-produced documents; and (4) furnish verified explanations of technological impossibility for any unproduced Synergy or MaxCapture reports. The Court set an October 3, 2025 deadline.  On October 2, 2025, APS requested an extension which was granted, although opposed, receiving an additional 10 days to respond.  Despite this mandate and additional extension, APS's October 13, 2025 responses remain deficient, fail to address core noncompliance, and exacerbate prejudice to Plaintiff.

## II. DEFICIENCY ANALYSIS

The summary below precedes a detailed itemization of discovery deficiencies in Section III, as required under Fed. R. Civ. P. 26(g) and 33(b).

### A.  INTERROGATORIES

1) **Interrogatories 2, 3, 8, 9**, and **10**: "No additional information is known."

2) **Interrogatory 6**: "No additional information was found."

---

[1]"When APS supplements its Interrogatory responses, it must respond in the format the Plaintiff propounded the question to make it clear that APS has responded to each sub-part.  APS must also compile its previous responses into its supplemental response to create a single, unified response in which the reader can determine the original response and how and when the answers were supplemented" *Lipe v. Albuquerque Pub. Schs.*, No. 1:23-cv-00899-GBW-JMR, Doc. 147, at 2 (D.N.M. Sept. 5, 2025).

3) **Interrogatory 11:** Defendant responded, "Please see attached spreadsheets with the information requested and verification by Bonnie Anderson." As in prior productions, Defendant provided two Excel spreadsheet "data dumps" totaling 304 pages and 6,543 pages, respectively, which are disorganized and non-responsive to the specific inquiry. See (**Ex. 2_Inter No. 11 Docs**).  To illustrate the type of responsive record that could have been easily generated and produced, Plaintiff has included an example of an actual system-generated report reflecting the requested data parameters. See (**Ex. 3_Synergy Report**). Synergy is a robust student information management system (SIS), designed to generate dynamic reports by role, school year, provider, and service code, and that the requested reports can be generated in minutes by any end user with administrative access, without producing thousands of disorganized pages.

4) **Interrogatory 12**: APS provided a substantive answer.

5) **Interrogatory 15**: APS referred to "see verification by Annitra Atler," and recited general FAPE/IDEA principles, but did not identify any APS-specific policies or procedures, nor address compliance in Plaintiff's case or identify authorizers for any deviation.

6)  **Interrogatory 16**:  APS again referred to "see verification by Annitra Atler," whose statement mischaracterizes a referenced meeting. The meeting was actually a coverage meeting, not a discussion of time-entry errors as claimed. This misrepresentation raises new discovery concerns and necessitates production of all related documentation and communications.[2]

B.  REQUEST FOR PRODUCTION (RFP'S)

---

[2]Fed. R. Civ. P. 26(e), a party must supplement or correct its disclosures or discovery responses in a timely manner if it learns that the information provided is incomplete or incorrect in some material respect.

**RFPs 4, 13, 14, 15, 16, 17**, and **18** APS states "No additional documents are known," without detailing searches or custodians, violating the Order's requirement for verified, particularized nonexistence statements.

1. **RFP 1**: APS failed to produce investigative materials or interview records related to Plaintiff's complaints, despite the clear language of the request and the Court's order. No audio, chat, or text communications were produced, and APS did not identify custodians, platforms, or search parameters.

2. **RFP 2**: APS produced duplicative sets of the same emails without organization or labeling, and omitted referenced attachments.

3. **RFP 3**: APS produced only the PED whistleblower complaint, the Corrective Action Plan (CAP), blank teacher questionnaires, and legal invoices—documents already in the administrative record. APS failed to make a reasonable inquiry or produce responsive materials in a usable form, violating Fed. R. Civ. P. 26(g) and 34(b)(2)(E).

4. **RFP 4**: APS responded "no additional documents are known", without providing a verified, particularized nonexistent statement or describing the search conducted.

5. **RFP 5**: APS stated the program "no longer exists," but did not address historical records or search efforts.  Furthermore, the program continues to exist, although by a different name.

6. **RFP 6**: APS produced a spreadsheet and verification by Mallory Geissler, but the data lacks key fields and is not organized as required. The spreadsheet is nearly identical to previous nonresponsive "data dumps" further avoiding the production of easily generated reports as requested.

7. **RFP 8**: APS responded, "See attached Service Notes and verification by Stephanie Mack." The production is non-responsive and inconsistent with APS's own stated concerns regarding PII. See (**Ex. 4_Parada and Jaheem Docs 8**).

8. **RFP 9**: APS re-produced an old spreadsheet lacking context, misstating daily hours, and omitting calendars and coding keys.

9. **RFPs 13–18**: APS responded, "no additional documents are known," without detailing searches or custodians, and failed to provide the required verified, particularized nonexistence statements.

## C.  VERIFICATIONS

APS's verifications are generic, recycled, and do not reflect individualized searches or personal knowledge. They fail to identify custodians, repositories, or search steps, and do not satisfy the duty of reasonable inquiry under Fed. R. Civ. P. 26(g).

### III. COMPREHENSIVE DISCOVERY DEFICIENCIES IN DETAIL

This section provides a detailed, item-by-item account of APS's discovery failures, referencing the verbatim question, verbatim reply, the applicable rule, and the specific manner in which the response violates the Court's order.

## A.  INTERROGATORIES

*Interrogatory 2 (Administrators at Volcano Vista High School)*

- **Request:** "Identify all administrators of Volcano Vista High School, from 2019 to present. For each provide: a) Full name, titles, dates of employment b) Whether any grievances, complaints, or disciplinary actions were filed against them. c) Description of each grievance, complaint or disciplinary action d) The name of complainant for each grievance or complaint

e) Date the grievance, complaint or disciplinary action was filed. f) Names of investigator(s) involved g) Outcome of the investigation"

- **Reply:** "No additional information is known." **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order requiring unified, subpart-by-subpart, verified responses.

- **Deficiency:** APS failed to identify administrators or personnel, omitted grievances and investigations, and provided no search details. Plaintiff herself and colleagues have filed grievances against listed administrators, which were withheld. APS's response is conclusory and not a verified diligent search.

### Interrogatory 3 (Administrators in ADA/FMLA Decisions)

- **Request:** "Identify all APS District Administrators or personnel involved in the decision-making process regarding Plaintiff's ADA accommodation and FMLA leave requests, including the administrator responsible for overseeing related services (which includes social workers, speech therapists, and occupational therapists) from 2019 to present. For each identify all grievances or complaints in which they were involved in any capacity. For each, provide: a) Full name, titles, dates of employment b) Their specific role in the decision-making process c) Whether any grievances, complaints, or disciplinary actions were filed against them d) Name of the complainant for each grievance or complaint. e) Description and details of the complaint f) Date the complaint was filed g) Investigator(s) involved h) Outcome of the investigation"

  Reply: "No additional information is known." **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order requiring unified, subpart-by-subpart, verified responses.

- **Deficiency:** APS failed to identify administrators or personnel, omitted grievances and investigations, and provided no search details. Plaintiff herself and colleagues have filed

grievances against listed administrators (e.g., Antoinette Romero v. Michelle Tregembo-Allen), which were withheld. APS's response is conclusory and not a verified diligent search.

### *Interrogatory 7 (Meetings Requested by Plaintiff)*

- **Request:** "Identify all meetings requested by Plaintiff to discuss student concerns, ADA and FMLA matters, and other related issues. For each request, provide: a) Date of the meeting was requested b) The date the meeting occurred (if held) c) Attendees of the meeting d) The topics discussed during the meeting: and e) The outcome of the meeting."

  **Reply:** Reference to a single 2021 call and partial ADA plan; omitted additional meetings, attendees, topics, outcomes, and routine artifacts (calendar invitations, agendas, HR correspondence); failed to consolidate prior answers. **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order for unified, complete, and organized responses.

- **Deficiency:** APS omitted additional meetings Plaintiff requested, failed to provide subpart-by-subpart answers, and did not produce routine artifacts. This impedes Plaintiff's ability to verify the timeline and content of meetings.

### *Interrogatory 8 (Offsite Work Accommodations)*

- **Request:** "Identify all APS employees granted accommodations to work from an offsite location from 2019 to the present. For each employee, provide: a) Full name and job title b) The specific accommodation granted, and c) The approved location(s) Defendant may redact confidential medical information where appropriate: however, such redaction should not affect understanding of the accommodation granted.[3]

---

[3] See Exhibit 1 Order Granting in Part and Denying in Part Plaintiff's Two Motions to Compel Discovery, Pg. 1 "Interrogatory 8 – APS may limit its response to only clinical social workers within time frame of January 1, 2022, to present". *Lipe v. Albuquerque Pub. Schs.*, No. 1:23-cv-00899-GBW-JMR, Doc. 147, at 1 (D.N.M. Sept. 5, 2025).

- **Reply:** "No additional information was found." **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order requiring verified, particularized search and explanation.

- **Deficiency:** APS previously acknowledged ADA paper files would require manual review, but did not describe any such review, redactions, or search specifics or verified nonexistence statement provided.[4]

### Interrogatory 9 (Crisis Response Hierarchy)

- **Request:** "Describe the order of personnel responsible for responding to threat assessments, suicide protocols, and other crisis interventions according to APS policies. For each role listed, indicate their level of involvement and specific responsibilities as outlined by APS." **Reply:** "No additional information is known." **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order.

- **Deficiency:** APS failed to identify roles and hierarchy in written policies, despite their availability. No policy documents or organizational charts were produced.

### Interrogatory 10 (Work and Leave Records)

- **Request:** "For each month during which Plaintiff was approved for FMLA leave, provide: Plaintiff's daily scheduled work hours. a) The exact days on which the Plaintiff was at work and the total number of hours worked on each of those. b) The exact days on which the Plaintiff took FMLA leave, specifying whether the leave was paid or unpaid. c) The exact days on which the Plaintiff took other types of leave, identifying the type of leave and whether it was paid or unpaid."

---

[4] "APS must provide a detailed, verified explanation as to the efforts it took to attempt to find responsive documents." *Lipe v. Albuquerque Pub. Schs.*, No. 1:23-cv-00899-GBW-JMR, Doc. 147, at 3 (D.N.M. Sept. 5, 2025).

- **Reply:** "No additional information is known."[5] **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order.

- **Deficiency:** APS failed to provide the required breakdowns, misstates daily schedule, and omits non-instructional days and holidays.

*Interrogatory 11 (2022–2023 Caseload and Service Minute Details)*

- **Request:** "For the 2022-2023 school year, identify all social worker positions within APS and provide the caseload details for each social worker. For each social worker provide: (a) The number of active students assigned to them at the beginning of the school year (b) The schools(s) they were assigned to; and (c) The scheduled service minutes for each active student on their caseload, as documented in their IEP and MaxCapture. In compliance with FERPA, APS may redact personally identifiable information (PII) of students while providing sufficient detail to identify service minutes and caseload distribution."

- **Reply:** "Please see attached spreadsheets with the information requested and verification by Bonnie Anderson." **Rule(s) and Order Violated:** FRCP 33(b), 26(g), 34(b)(2)(E); Court's Order.

**Deficiency:** Reflective of previous submissions. APS produced over 12,000 pages of spreadsheets that are not the requested Synergy reports, lack required fields, are duplicative, and are not organized or labeled to correspond to the request. No custodians, search methodology, or technological impossibility explanation provided. Unredacted student names appear despite claimed FERPA burden. *See* (**Ex. 2_Inter No. 11 Docs**) Plaintiff's submitted Synergy Report *See* (**Ex. 3_ Synergy Report**; **Ex. 5_MaxCapture Report**) show the data is readily available in

---

[5] "The Court compels defendant Albuquerque Public Schools ("APS") to fully respond to the following discovery instruments propounded by Plaintiff". *Lipe v. Albuquerque Pub. Schs.*, No. 1:23-cv-00899-GBW-JMR, Doc. 147, at 1 (D.N.M. Sept. 5, 2025).

usable form. The information Defendant has provided through Excel spreadsheets is extracted directly from Synergy, demonstrating that Plaintiff's request is neither burdensome nor time-consuming, as filtered and targeted reports can be generated within minutes. The repeated production of unusable spreadsheets reflects willful noncompliance and supports an inference that APS is avoiding production of the precise, readily generated reports Plaintiff requested. In its July 24, 2025 supplemental response, APS claimed that "historical caseload data is not readily available in Synergy," that Portfolio reports do not retain records once a student is removed, and that MaxCapture service notes "represent the best information APS can provide." These assertions are false. The exhibits attached to this motion demonstrate that both Synergy and MaxCapture reports contain verified user information, including details of who generated the reports, timestamps, and embedded metadata within the system.

Defendant has failed to produce these records as maintained in the usual course of business and has omitted the metadata, timestamps, and provider assignments necessary to verify their accuracy.  urthermore, The October 13 spreadsheet production contains unredacted student names and identifiers. APS has not explained why identical categories of information could be produced unredacted while others allegedly cannot, further undermining the credibility of its burden representations.

### *Interrogatory 15 (Caseload Assignment While on FMLA)*

- **Request:** "Identify all APS policies or procedures in place from 2019 to present governing the assignment of students to a staff member's caseload while on approved FMLA leave. Explain whether these policies were followed in Plaintiff's case, and if not, identify who authorized any deviations."

- **Reply:** Generalized FAPE/IDEA principles; no APS-specific policy, compliance, or authorizer identified. **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order.

- **Deficiency:** Nonresponsive to the question asked. No APS-specific policy or compliance analysis provided.

***Interrogatory 16 (Witnesses/Statements on Semester-Based Scheduling)***

- **Request:** "Identify all witnesses who were aware of Plaintiff's semester-based scheduling of student service minutes and provide details of any statements they made regarding Plaintiff's alleged failure to meet service requirements."

- **Reply:** Reference to "IEP team," a purported October 25, 2022 meeting, and unspecified emails not produced.

- **Rule(s) and Order Violated:** FRCP 33(b), 26(g); Court's Order.

- **Deficiency:** APS referenced an "IEP team" and a purported October 25, 2022 "time input" meeting, and pointed to unspecified emails not produced. Meeting was actually a coverage meeting, not as described; routine artifacts missing; mischaracterization introduces new discovery concerns.

B.  DETAILED REQUESTS FOR PRODUCTION DEFICIENCIES

**RFP 1: Internal Communications (Emails, Chats, Audio, Video, etc.)**

**Request:** "Produce all email, chat, text message, audio, video, and any other forms of communication among APS personnel involved in any aspect of this case, including administrators, decision-makers, and witnesses interviewed or consulted regarding Plaintiff's ADA, FMLA, and retaliation claims. This request encompasses communications directly or indirectly related to plaintiff, including discussions regarding her ADA and FMLA accommodations, complaints, and any internal or external discussions or actions taken regarding

her complaints. To the extent necessary, Defendant may redact confidential information such as personally identifiable information (PII) under FERPA or protected health information (PHI), provided sufficient detail is preserved to fulfill the request."

**Reply:** "See attached documents and verification by Annittra Atler."

**Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring organized, request-by-request, verified production and detailed explanation for any non-production.

**Deficiency:** APS failed to produce any investigative materials, interview records, or audio/text/chat communications related to the investigations into Plaintiff's complaints, despite the clear language of the request and the Court's order. The email sets produced are duplicative, disorganized, and lack Bates numbering or labeling to correspond to the request. Referenced attachments are missing, and there is no identification of custodians, platforms, search terms, or date ranges. Critically, APS did not produce any Teams, Google Chat, SMS, or audio files, nor did it provide a verified explanation for their absence. This is an improper, disorganized production that is neither as kept in the usual course of business nor labeled to correspond to Plaintiff's requests, and it does not comply with the Court's order.

**RFP 2: Communications re: Change in Social Worker**

**Request:** "Produce all email, chat, text, and other communications between APS staff and any students or parents who requested a change in social workers. This request includes all records documenting the request, APS staff responses, and any actions taken as a result. Defendant may redact FERPA-protected information where necessary."

**Reply:** "See attached documents and verification by Annittra Atler." **Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring organized, non-duplicative, verified production.

**Deficiency:** APS produced duplicative sets of the same emails, without organization or labeling, and omitted referenced attachments. There is no identification of custodians, search terms, or date ranges. The production is not organized as kept in the usual course of business and is not labeled to correspond to the request. This is a deliberate attempt to overwhelm Plaintiff with redundant, unworkable data and to avoid meaningful compliance.

**RFP 3: Investigation Files**

**Request:** "Produce all investigation reports, internal communications, and related documents (emails, texts, chats, memos, audio, video recordings) concerning Plaintiff's complaints, including those filed with the Public Education Department or within APS. This request also includes documentation of the dates and attendees of all meetings or investigative actions related to Plaintiff's complaints**.**

**Reply:** "See attached documents and verification by Stephanie Mack. Please note that Defendant has asked for the Court's guidance regarding approximately 13,000 pages of responsive documents of which the majority contains information protected by FERPA."

**Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring production in usable form, verified explanation for non-production, and particularized FERPA protocol.

**Deficiency:** APS produced only the PED whistleblower complaint, the Corrective Action Plan (CAP), blank teacher questionnaires, and legal invoices—documents already in the administrative record. APS failed to produce any investigative audio, chat, or text communications, or contemporaneous documentation for internal investigations. No index, no Bates numbering, no explanation of custodians, search methodology, or FERPA protocol. APS's claim of a 13,000-page FERPA burden is belied by its simultaneous production of unredacted student names elsewhere. This is a clear attempt to stonewall and frustrate discovery, in direct

violation of the Court's order. **APS claims FERPA burden while elsewhere producing unredacted student identifiers, undermining its position (20 U.S.C. § 1232g; 34 C.F.R. pt. 99).**[6] FERPA does not create a discovery privilege; it permits disclosure under court order with appropriate protective measures.

**RFP 4: ADA/FMLA/Whistleblower Training**

**Request:** "Produce copies of all training materials provided to APS personnel on ADA compliance, FMLA compliance, and whistleblower protections from 2019 to the present. This request includes, but is not limited to: Training materials (e.g., manuals, PowerPoint presentations, handouts); Attendance records, sign-in sheet, audio recordings; and video recordings of the training sessions, if available.

**Reply:** "No additional documents are known." **Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring verified, particularized nonexistence statements.

**Deficiency:** APS's response is conclusory and does not describe any search conducted, custodians consulted, or retention schedules reviewed. It is implausible that a district of APS's size has no training materials or attendance records for ADA, FMLA, or whistleblower compliance. This is a transparent attempt to avoid producing damaging or embarrassing records and is a direct violation of the Court's order.

---

[6] "For each Request for Production, if APS is unable to provide the documentation that Plaintiff is seeking, APS must provide a detailed, verified explanation as to the efforts it took to attempt to find responsive documentation. APS must also state with particularity when certain documents do not exist. Where Plaintiff is seeking Synergy or Maxcapture reports, if APS is unable to provide those reports, APS must provide a detailed, verified response explaining why it is technologically impossible for APS to provide the reports" *Lipe v. Albuquerque Pub. Schs.*, No. 1:23-cv-00899-GBW-JMR, Doc. 147, at 1-2 (D.N.M. Sept. 5, 2025).

**RFP 5: Administrative Leadership Development Program**

**Request:** "Produce records for all administrators who participated in the Administrative Leadership Development Program from 2020 to the present, for whom Albuquerque Public Schools (APS) Associate Superintendent of Special Education signed off on hours required for licensure. Include documentation of intern hours, any relevant evaluations, and supporting materials."

**Reply:** "See verification by Jessica Rivera. APS states that the Administrative Leadership Development Program no longer exists. After a reasonable search and diligent inquiry, APS has determined that it does not possess, maintain, or control any records responsive to this request related to the program, including but not limited to intern hours, licensure hours, evaluations, or supporting materials."

**Rule(s) and Order Violated:**  FRCP 34(b)(2)(E), 26(g); Court's Order.

**Deficiency:**  APS's assertion that the program "no longer exists" is not a basis to avoid producing historical records. APS failed to identify prior custodians, search for archived or third-party records, or provide a sworn, particularized nonexistence statement. This is a pattern of evasion and noncompliance.

**RFP 6: District-Wide Caseload/Minutes**

**Request:** "Produce caseload details for all social workers within APS, while maintaining compliance with FERPA. This request should include the name of each social worker, school(s) assigned, number of students assigned, and respective service minutes required for each student without including student names or personally identifiable information.

**Reply:** "See attached spreadsheet and verification by Mallory Geissler."

**Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring organized, labeled, and verified production.

**Deficiency:** APS produced a spreadsheet that is nearly identical to previous nonresponsive "data dumps." The spreadsheet lacks key fields (provider per row, semester context, add/remove dates, scheduled minutes), is not organized or labeled to correspond to the request, and omits a data dictionary or extraction parameters. Critically, the information in the spreadsheet is extracted directly from Synergy, which proves that Synergy can generate filtered, targeted reports. APS's repeated production of these unusable spreadsheets is a deliberate document dump and a willful attempt to obstruct discovery and avoid producing the precise, easily generated reports Plaintiff requested.

### RFP 8: Service Minutes by Substitutes

**Request:** "Produce records detailing the number of service minutes provided by each of the three social workers who filled in providing services for students on Plaintiff's caseload, broken down by student name and by semester, from August 2022 to March 2023. In compliance with FERPA, APS may redact any student PII; however, detailed service minutes by student and semester should still be provided."

**Reply:** "See attached Service Notes and verification by Stephanie Mack."

**Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order.

**Deficiency:** APS's production is non-responsive: the service notes are for the wrong students and time period, and do not provide the required breakdown by fill-in provider or semester. The production is inconsistent with APS's own stated concerns regarding PII, as it includes unredacted student information in some places while claiming FERPA burden elsewhere. This is a clear example of selective production and bad faith.

**RFP 9: Scheduled/Actual Hours, FMLA**

**Request:** "Produce all records documenting Plaintiff's scheduled work hours, actual hours worked, FMLA leave, and other leave for each month of her approved FMLA period, including: (a) Plaintiff's scheduled work hours per day (b) Days and hours worked (c) Days of FMLA leave with a breakdown of paid and unpaid hours; and (d) Days on other leave, specifying the type of leave and whether it was paid or unpaid.

**Reply:** "See attached documents and verification by Valerie Atencio."

**Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order.

**Deficiency:** APS re-produced an old spreadsheet lacking context, misstating daily hours (7.8 hours instead of Plaintiff's 6.5-hour instructional day), and omitting calendars and coding keys. The production is not organized or labeled to correspond to the request, and does not allow Plaintiff to verify leave designations, paid/unpaid status, or compliance with FMLA. This is a deliberate attempt to avoid producing the precise, easily generated records Plaintiff requested.

**RFPs 13–18: Ethics/Training/Acknowledgements/Discipline**

**Reply:** "No additional documents are known."[7] (for each). **Rule(s) and Order Violated:** FRCP 34(b)(2)(E), 26(g); Court's Order requiring verified, particularized nonexistence statements.

**Deficiency:** APS's conclusory responses lack any detail on searches conducted, custodians consulted, or retention schedules reviewed. It is implausible that a district of APS's size has no records for these categories, especially given APS's own admissions regarding NMAC duties. This is a transparent attempt to avoid producing damaging or embarrassing records and is a direct violation of the Court's order.

---

[7] Defendant Albuquerque Public Schools' Fourth Supplemental Responses to Plaintiff's Interrogatories, Requests for Production, and Requests for Admission at 23–24, Lipe v. Albuquerque Pub. Schs., No. 1:23-cv-00899-GBW-JMR (D.N.M. Oct. 13, 2025) ("Ex. 1") (RFPs 13–18, "No additional documents are known."), limited by Order at 10, id. (D.N.M. Sept. 5, 2025) (Doc. 147).

## C. DETAILED REQUESTS FOR ADMISSION DEFICIENCIES

This section addresses each RFA compelled by the Court's September 5, 2025 Order, with a focus on the obstructive pattern of denials and, crucially, APS's admission to RFA 31, which is dispositive of their liability on key issues.

### RFA 5: Contact During FMLA

**Request:** "Please admit that APS contacted or attempted to contact Plaintiff while she was on approved FMLA leave. **Reply:** Denied

**Rule(s) and Order Violated:** FRCP 36(a)(4), 26(g); Court's Order.

**Deficiency:** APS's denial is contradicted by its own policy requiring daily call-ins and by records showing regular contact with Plaintiff during FMLA leave. This is a bad-faith denial, unsupported by a reasonable inquiry, and is designed to avoid admitting a fact that is well-documented in APS's own records. APS's refusal to admit this basic fact, despite overwhelming evidence, is emblematic of its broader pattern of obstruction and noncompliance.

**Relief Requested:** Order APS to serve an amended answer with record citations or deem admitted; fees under Rule 37(c)(2) if denial proves unjustified.

### RFA 25: Make-Ups Not Required for Student Unavailability

**Request:** "Admit that times when students are absent, late, or otherwise unavailable during scheduled sessions do not require make-up sessions under standard APS policies. Further admit that service time may also be reduced due to 1. Conflicting Appointments: Students being occupied with other providers, assemblies, or mandatory activities such as fire drills and other school-wide events. 2. Restricted Scheduling: School policies limiting times when students can be pulled from class for services, generally restricting direct service time to elective periods or study skills classes." **Reply:** Denied.

**Rule(s) and Order Violated:** FRCP 36(a)(4), 26(g); Court's Order.

**Deficiency:** APS's denial is contradicted by its own internal practices and IDEA scheduling restrictions, which are documented in the record. This is a bad-faith denial, unsupported by a reasonable inquiry, and is part of a pattern of evasive, obstructive discovery conduct.

**Relief Requested:** Order APS to provide a qualified admission with policy citations, or deem admitted to the extent supported by policy; fees under Rule 37(c)(2) if denial proves unjustified.

**RFA 26: ADA Request, Intermittent Leave, Work-from-Home, Protected Leave**

**Request:** "Admit that Plaintiff's original ADA request was for a short-term absence following surgery, with intermittent leave for appointments as needed. Further admit that Plaintiff only requested to work from home during periods of flare-ups and not on a full-time basis. Additionally, admit that the hostile work environment caused significant stress and a worsening decline in Plaintiff's health, which necessitated taking more time off than originally planned. Finally, admit that Plaintiff was within her protected leave having been approved for 60 hours of FMLA leave to use as needed during the period from August 2022 to August 2023."

**Reply:** Denied. **Rule(s) and Order Violated:** FRCP 36(a)(4), 26(g); Court's Order.

**Deficiency:** APS's denial is contradicted by ADA minutes and approval letters in the record. This is a bad-faith denial, unsupported by a reasonable inquiry, and is part of a pattern of obstructive conduct designed to avoid admitting facts that are well-documented in APS's own records.

**Relief Requested:** Order APS to provide a qualified admission with record citations, or deem admitted to the extent supported by the record; fees under Rule 37(c)(2) if denial proves unjustified.

**RFA 27: Prior Working Relationship and D.E. Dispute**

**Request:** "Please admit that Plaintiff and the Assistant Principal (Administrator) in charge of special education previously worked together at Valley High School, during which time Plaintiff served as a school social worker, and the Assistant Principal was a new special education teacher. Admit further that Plaintiff and the Assistant Principal disagreed regarding the treatment of a shared student, identified by the initials D.E., and that, beginning in August 2021, the Assistant Principal became Plaintiff's immediate supervisor while Plaintiff continued in her role as a school social worker."

**Reply:** Denied. **Rule(s) and Order Violated:** FRCP 36(a)(4), 26(g); Court's Order.

**Deficiency:** APS's denial is contradicted by Plaintiff's audio recording and other evidence. This is a bad-faith denial, unsupported by a reasonable inquiry, and is part of a pattern of obstructive conduct.

**Relief Requested:** Order APS to provide a qualified admission with record citations, or deem admitted to the extent supported by the record; fees under Rule 37(c)(2) if denial proves unjustified.

**RFA 28: NMAC 6.60.9 Compliance**

**Request:** "Please admit that Albuquerque Public Schools (APS) is required to comply with New Mexico Administrative Code (NMAC) Section 6.60.9, which outlines the Code of Ethical Responsibility of the Educator, requiring standards of honesty, integrity, and respect for students, parents, and colleagues."

**Reply:** APS admits. This admission is significant as it confirms the scope of APS's obligations and the relevance of the requested records.

**RFA 29: NMAC 6.60.9 and 6.62.2.10 Compliance**

**Request:** "Please admit that APS is obligated under NMAC Section 6.60.9 and 6.62.2.10 to ensure that its administrators, including principals and assistant principals, adhere to the ethical and professional standards that protect student welfare and maintain an effective learning environment."

**Reply:** APS admits. This admission is significant as it confirms the scope of APS's obligations and the relevance of the requested records.

**RFA 30: NMAC 6.60.8 Compliance**

**Request:**

"Please admit that APS is obligated to follow the professional conduct standards in NMAC Section 6.60.8, which mandates accountability and periodic evaluations for all administrators to ensure compliance with ethical standards."

**Reply:** APS admits. This admission is significant as it confirms the scope of APS's obligations and the relevance of the requested records.

**RFA 31: Failure to Comply with NMAC Duties in Handling Plaintiff's Requests/Complaints**

**Request:** "Please admit that APS administrators, including those in supervisory roles over Plaintiff, were made aware of their obligations under NMAC Sections 6.60.9 and 6.62.2.10 but failed to comply with these standards in handling Plaintiff's requests and complaints."

**Reply: APS admits this request.** Under Rule 36, this admission conclusively establishes, that APS administrators failed to comply with NMAC duties in handling Plaintiff's requests and complaints. This admission constitutes a direct acknowledgment of procedural noncompliance by APS on this core issue. Under **Fed. R. Civ. P. 36(b)**, the admission is conclusively established

for purposes of this action. APS's admission to RFA 31 should be highlighted as a central, material fact bearing directly on liability, and the Court may deem this fact established and preclude contrary proof absent relief under Rule 36(b).

**Relief Requested:**

The Court should enter an order deeming the facts in RFA 31 conclusively established for all purposes in this litigation and preclude APS from offering any contrary evidence or argument regarding its compliance with NMAC standards in handling Plaintiff's requests and complaints.

**Improper and Generic Verifications**

Verifications by Annitra Atler (Oct. 2 & 7, 2025), Mallory Geissler (Oct. 6, 2025), and Stephanie Mack (Oct. 10, 2025) use narrow, boilerplate language that fails to attest to a comprehensive, reasonable inquiry across all custodians and systems (Fed. R. Civ. P. 26(g), 33(b)). Duplicated documents in Productions 1 and 2 show older dates, highlighting lack of diligence and recycling. APS was given 30 days to cure (then sought extension Plaintiff opposed) and still failed to comply. Verifications signed/notarized belatedly in October reflect disregard for the Court's authority. Sanctions are warranted under Rule 37(b) and Tenth Circuit law. See Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992); Lee v. Max International, 638 F.3d 1318 (10th Cir. 2011); National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (1976).

Production Format Violation Paragraph: APS's October 13 production does not reflect documents produced as kept in the usual course of business and is not organized or labeled to correspond to Plaintiff's requests. The unlabeled spreadsheets, duplicate email chains, and absence of a crosswalk index contravene Rule 34(b)(2)(E). Ordering APS to re-produce with Bates continuity, request-by-request indices, and custodian metadata is necessary to render materials usable. See Anderson Living Trust, 298 F.R.D. 514.

## IV. LEGAL STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure authorizes sanctions when a party disobeys a discovery order. Available remedies include deeming facts established, prohibiting defenses, striking pleadings, staying proceedings, dismissing the action, entering default judgment, or awarding expenses such as attorney's fees.  Sanctions under Rule 37(b) serve both to compensate the opposing party and to deter future misconduct. In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit outlined five guiding factors:  (1) the degree of prejudice to the opposing party; (2) the extent of interference with the judicial process; (3) the culpability of the offending party; (4) whether advance warning of sanctions was given; and (5) whether lesser sanctions would suffice.

Rule 34(b)(2)(E) requires a producing party to deliver documents either as maintained in the ordinary course of business or organized to match the requests. Courts in this District interpret that rule to require productions that are *usable and coherent*, not duplicative, incomplete, or unlabeled. *See Anderson Living Tr. v. WPX Energy Prod., LLC*, 298 F.R.D. 514 (D.N.M. 2014). Rule 26(g) and Rule 33(b) impose a duty to certify that discovery responses result from a reasonable inquiry. Generic or boilerplate verifications that omit custodians, repositories, or search steps are insufficient. *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621–25 (D. Colo. 2007); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 667–68 (D. Kan. 2004).

Sanctions must also be proportional to the severity of the misconduct. *Lee v. Max Int'l, LLC*, 638 F.3d 1318 (10th Cir. 2011). Under Rule 37(b)(2)(C), fee-shifting is mandatory unless the noncompliant party shows substantial justification or exceptional circumstances. The Supreme

Court has confirmed that meaningful sanctions are vital to deter discovery abuse. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976).

**V. ARGUMENT**

**A. APS's Conduct Warrants Sanctions Under Rule 37(b)**

APS has repeatedly failed to comply with the Court's September 5, 2025 Order. This Order unambiguously required APS to provide unified, organized, and verified responses, with particularized explanations for any non-production and a sworn declaration of technological impossibility regarding Synergy/MaxCapture reports. APS's October 13, 2025 "Fourth Supplemental" responses manifestly fail to satisfy these requirements.

The resulting prejudice to Plaintiff is severe and ongoing. APS's disorganized and incomplete productions have prevented Plaintiff from verifying essential information regarding caseloads, service minutes, and comparators, thereby impeding preparation for depositions and expert review. Furthermore, APS's boilerplate verifications, which omit identification of custodians, repositories, or search methodologies, constitute clear violations of Rule 26(g) and Rule 33(b). The Tenth Circuit has explicitly held that such generic certifications are legally insufficient. See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 621–25 (D. Colo. 2007). APS's inconsistent positions regarding Synergy/MaxCapture—initially claiming "technological impossibility," then subsequently producing partial spreadsheets without the Court-ordered sworn IT declaration—strongly suggest deliberate obstruction. The Tenth Circuit has established that such conduct warrants issue preclusion, evidentiary preclusion, and fee-shifting. See Lee v. Max International, LLC, 638 F.3d 1318, 1320–22 (10th Cir. 2011).

Additionally, APS's improper denials and evasive admissions, particularly when contrasted with its own records and admissions (including the dispositive admission to RFA 31), further justify the imposition of issue sanctions and cost-shifting under Rule 37(c)(2).

All five Ehrenhaus factors support sanctions: (1) Plaintiff has been substantially prejudiced; (2) APS's conduct has interfered with the judicial process; (3) APS is demonstrably culpable; (4) APS has received warnings through multiple Orders; and (5) lesser sanctions have proven ineffective.

## B. Proportionality and the Need for Deterrence

The requested sanctions are proportionate to the severity and persistence of APS's misconduct. The Tenth Circuit has consistently recognized that meaningful sanctions are necessary to deter discovery abuse and to preserve the integrity of the judicial process. See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (1976); Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992).

CERTIFICATE OF CONFERRAL

Pursuant to Fed. R. Civ. P. 37(a)(1) and D.N.M.LR-Civ. 7.1(a), Plaintiff certifies that she made good-faith efforts to confer with Defendant's counsel regarding the discovery issues raised in this Motion. Conferral occurred on October 15, October 21, and November 3, 2025**,** identifying ongoing deficiencies and requesting corrective action. Despite these efforts, the issues remain unresolved, Defendant opposes this Motion.

**VI. RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order providing the following relief:

1. Order APS to produce Synergy and MaxCapture reports for August 1, 2022 through May 31, 2023, including fields for unique student ID, campus, provider, service codes, minutes authorized, minutes delivered, date ranges, semester, and reassignment history; produce all investigative audio, text, and chat communications; and serve a sworn declaration identifying all custodians, systems, search parameters, and retention policies.

2. Direct APS to re-produce all prior productions either as kept in the usual course of business or organized and labeled by request, with Bates continuity, metadata preserved, and a request-by-request crosswalk index.

3. Unless APS timely cures, deem established that: (a) Synergy/MaxCapture retain and can generate semester-specific caseload and service-minute data by provider and school year; (b) APS administrators had access to those reports; and (c) the systems reflect service-delivery totals for the relevant period.

4. Preclude APS from offering evidence contradicting the established facts or relying on undisclosed custodians or undisclosed search parameters.

5. Rule 30(b)(6) Deposition (within 21 days):  Order APS to present knowledgeable IT/Synergy/MaxCapture designee(s) to testify regarding data architecture, standard report objects, retention, search, and export capabilities, with a warning that failure triggers further sanctions.

6. Admissions Remedies and Fees: (a) Deem admitted RFAs 5, 25, 26, 27, and 31; or compel verified, particularized supplemental responses identifying dates, senders, methods, subjects, governing policies, and supporting documents; and (b) award Plaintiff her reasonable expenses and attorney's fees associated with APS's improper denials under Rule 37(c)(2).

7.  Extend all remaining case deadlines by ninety (90) days to remedy prejudice caused by

    APS's discovery misconduct.

8.  Grant such other and further relief as is just and proper under Rules 26(g), 33(b), 34(b)(2)(E),

    37(b), 37(e), the Court's inherent authority, and 28 U.S.C. § 1927.


Respectfully Submitted,


**/s/ Boglarka Foghi, Esq.**
Boglarka Foghi, Attorney for Plaintiff
FOGHI LAW FIRM, LLC
5065 Corrales Rd., P.O. Box 944
Corrales, NM 87048
(505) 220-6591
foghilaw@yahoo.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November 2025, I filed the foregoing document
electronically through the CM/ECF system, which caused all parties or counsel of record to be
served by electronic means, as reflected in the Notice of Electronic Filing.

**/s/ Boglarka Foghi, Esq.**
Boglarka Foghi, Attorney for Plaintiff