IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

       Plaintiff,

v.                                 Case No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

       Defendants.

**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN THE ALTERNATIVE, FOR RULE 56(g) FINDINGS AS TO
MATERIAL FACTS NOT GENUINELY IN DISPUTE</u>**

## I. INTRODUCTION

COMES NOW Plaintiff Tatia Lipe ("Plaintiff"), by and through undersigned counsel, Boglarka

Foghi, Esq., and moves for partial summary judgment under Fed. R. Civ. P. 56(a) and,

alternatively, for Rule 56(g) findings on material facts not genuinely disputed.  The undisputed

record establishes that Albuquerque Public Schools ("APS") denied Plaintiff's medically

supported request for a reasonable accommodation—intermittent remote work during medically

verified flareups—thereby violating the Americans with Disabilities Act ("ADA"). APS asserted

that remote work was "not an option." But APS's own records and communications reflect

remote work was contemplated and, in some instances, approved or implemented in related-

services contexts, and APS's ADA Coordinator admitted under oath that other related-services

providers received remote-work accommodations during the same period—confirming feasibility

and undermining any undue-hardship defense. (See UMFs 15–19; Socorro Rodriguez Dep. 6:11–

16, 16:20–24 (Dec. 8, 2025) (Ex. 12, Deposition Excerpt).)

Because an ADA failure-to-accommodate claim does not require proof of a separate adverse employment action, and because the employer bears the burden on undue hardship, APS is liable as a matter of law on Plaintiff's ADA failure-to-accommodate claim. *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020) (en banc); 42 U.S.C. §§ 12111(10), 12112(b)(5)(A); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

 The record further establishes undisputed documentary facts that materially narrow Plaintiff's remaining claims, including that APS convened a work-related meeting addressing PTGs and documentation while Plaintiff stated she was on approved leave and APS discussed converting intermittent leave to continuous leave; advanced performance-deficiency accusations that could be confirmed or refuted through APS's own documentation systems; and removed Plaintiff's caseload without assigning comparable substantive duties. (See UMFs 24–33, 34–48.) These undisputed facts warrant partial summary adjudication where appropriate and, at minimum, Rule 56(g) findings that narrow the issues for trial.

Accordingly, Plaintiff requests that the Court grant summary judgment on liability for ADA failure to accommodate, reserving damages for trial; grant summary judgment on FMLA interference to the extent APS cannot show the challenged consequences would have occurred regardless of Plaintiff's protected leave, or otherwise enter Rule 56(g) findings establishing the undisputed interference-related facts; and enter Rule 56(g) findings as to material facts not genuinely in dispute that substantially narrow trial on Plaintiff's ADA retaliation, whistleblower, and defamation-related issues.

## II. BACKGROUND

### A. Plaintiff's Employment and Core Job Functions

Plaintiff was employed by APS as a licensed school social worker assigned to Volcano Vista High School. She provided counseling and related services to students receiving special education services under IEPs, and documented service delivery in APS's electronic systems, including MaxCapture. APS personnel had access to those systems and conducted recurring audits/reviews of documentation.   Plaintiff also tracked service minutes on a semester basis, as reflected in student service documents. See UMFs ¶¶ 1–6.

**B. Plaintiff's Internal Reporting and Protected Report to PED**

Beginning in September 2021, Plaintiff raised internal concerns regarding special education compliance. In February 2022, Plaintiff filed a formal complaint with PED, and in April 2022 PED issued findings and required corrective action. APS administrators were aware of Plaintiff's PED complaint and the resulting corrective action requirements. See UMFs ¶¶ 7–10.

**C. Plaintiff's ADA Accommodation Request, Interactive Process, and Denial**

In August 2022, Plaintiff requested an ADA accommodation based on a medical condition and provided written medical support stating she could work remotely during flareups. Plaintiff did not request permanent remote work; she requested intermittent remote work during medically supported flareups so she could continue performing her job duties. APS convened an interactive-process meeting on September 21, 2022, and APS representatives stated that remote work was "not an option." APS then issued a temporary accommodation plan that did not authorize remote work and instead referenced temperature-related measures and leave options; Plaintiff declined to sign the plan. See UMFs ¶¶ 12–22.

**D. EOS Process and Performance-Deficiency Accusations**

After APS denied the requested remote-work accommodation, Plaintiff filed an EOS complaint. During EOS interviews and related communications, APS personnel conveyed performance-

deficiency accusations (including that Plaintiff was behind in work and had not completed Medicaid documentation/PTGs and/or had not seen assigned students), despite those topics being recorded in APS's own documentation systems to which APS administrators had access. See UMFs ¶¶ 23–30.

**E. FMLA Leave, Employer Pressure, and Meetings While Plaintiff Was on Approved Leave**

Plaintiff sought and obtained approval for intermittent FMLA leave supported by medical certification. APS directed Plaintiff not to perform work while on leave, yet convened work-related processes focused on performance/documentation and suggested converting intermittent leave to continuous leave. UMFs ¶¶ 34-36. On January 11, 2023, APS held a meeting addressing Plaintiff's documentation and services while Plaintiff was on approved leave, and APS personnel repeated performance-deficiency assertions.[1] See UMFs ¶¶ 24–28, 38-42.

**F. Caseload Removal, Replacement Coverage, and Lack of Substitute Duties**

On February 28, 2023, Plaintiff reported she had no caseload assigned in Synergy and requested direction regarding what duties she was expected to perform. APS did not provide substantive written or verbal replacement duties. APS also had documentation reflecting a new social worker was hired/assigned effective on or about February 21, 2023, before Plaintiff's February 28, 2023 report. See UMFs ¶¶ 43–48.

**III. LEGAL STANDARDS**

**A. Summary Judgment and Rule 56(g)**

---

[1] Exhibit 20 is the audio recording of the January 11, 2023 meeting. Exhibit 11 is a transcript excerpt of that same meeting and is cited for convenience; the audio recording itself is also submitted as part of the record.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome under the governing law, and a dispute is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the initial burden to identify record evidence showing the absence of a genuine dispute; if that burden is met, the nonmovant must set forth specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant and does not weigh credibility. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Even where full summary judgment is not appropriate, Rule 56(g) authorizes the Court to state any material fact that is not genuinely in dispute and treat that fact as established for trial. Fed. R. Civ. P. 56(g).

Plaintiff's factual assertions are supported by deposition testimony and authenticated documents. To the extent APS objects that any cited material cannot be presented in admissible form at trial, Plaintiff can present the cited evidence in admissible form through witness testimony based on personal knowledge, deposition testimony, and authenticated exhibits supported by declarations under penalty of perjury.  See *Thomas v. Int'l Bus. Machs. Corp.*, 48 F.3d 478 (10th Cir. 1995); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193 (10th Cir. 2006); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114 (10th Cir. 2005).

**B. Substantive Standards**

**ADA failure to accommodate**: The ADA prohibits discrimination against a qualified individual on the basis of disability, including not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the

employer demonstrates undue hardship. 42 U.S.C. § 12112(b)(5)(A). In the Tenth Circuit, an adverse employment action is not an element of an ADA failure-to-accommodate claim; denial of a reasonable accommodation is actionable discrimination. *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 795–96 (10th Cir. 2020) (en banc). Undue hardship is an affirmative defense on which the employer bears the burden. Id.; *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002).

**ADA Retaliation / Material Adversity**: The ADA prohibits retaliation for protected activity. 42 U.S.C. § 12203; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

**Circumstantial Retaliation Proof**: Where retaliation is proven by circumstantial evidence, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**FMLA interference:** The FMLA entitles eligible employees to protected leave and prohibits interference with, restraint of, or denial of FMLA rights, and provides restoration rights. 29 U.S.C. §§ 2612, 2614–15, 2617.

**Defamation / Qualified Privilege**: Defamation requires a false and defamatory communication concerning the plaintiff, publication to a third person, and resulting injury to reputation. *Fikes v. Furst*, 2003-NMSC-033, 134 N.M. 602, 81 P.3d 545; *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, 108 N.M. 424, 773 P.2d 1231. Under New Mexico law, an employer may have a qualified privilege to make work-related statements about an employee when made for a proper purpose to persons with a legitimate interest; the privilege may be lost by abuse. *Baker v. Bhajan*, 117 N.M. 278, 283–85, 871 P.2d 374, 379–81 (1994); *Mahona-Jojanto, Inc., N.S.L. v. Bank of N.M.*, 79 N.M. 293, 296–97, 442 P.2d 783, 786–87 (1968).

**IV. UNDISPUTED MATERIAL FACTS (UMFs 1-60)**

## A. Plaintiff's Employment, Role, and Documentation Systems

**UMF 1**: Plaintiff was employed by Albuquerque Public Schools ("APS") as a licensed school social worker during the relevant period and assigned to Volcano Vista High School. (Ex. 1; Doc. 173-2 at 1–2; Oliphant Dep. 5:6–10 (Ex. 13).)

**UMF 2**: As a school social worker, Plaintiff provided counseling and related services to students receiving special education services under individualized education programs ("IEPs"). (Ex. 1; Doc. 173-1; Doc. 173-2.)

**UMF 3**: Plaintiff documented service delivery using APS's electronic documentation systems, including MaxCapture. (Ex. 19; Doc. 141-1.)

**UMF 4:** APS conducted recurring audits/reviews of MaxCapture documentation, and APS personnel had access to MaxCapture documentation during the relevant period. (Ex. 19; Doc. 141-1 at 6, 10; Oliphant Dep. 23:2–15 (Ex. 13).)

**UMF 5:** Plaintiff structured and tracked IEP service minutes on a semester basis, as reflected in student service documents showing semester-based service times. (Ex. 9; Doc. 173-1; Doc. 173-2.)

**UMF 6:** Under APS's 2022–2023 calendar, the academic semester begins in August and each semester extends approximately 18 weeks. (Ex. 8.)

## B. Plaintiff's Internal Reports and Protected Report to PED

**UMF 7**: Beginning in September 2021, Plaintiff raised concerns internally regarding students and special education compliance. (Doc. 127-1; Doc. 217-5.)

**UMF 8**: In February 2022, Plaintiff filed a complaint with the New Mexico Public Education Department ("PED") regarding special education compliance at Volcano Vista High School. (Ex. 18.)

**UMF 9**: In April 2022, PED issued findings and required corrective action relating to Plaintiff's complaint. (Ex. 18.)

**UMF 10**: APS administrators were aware of Plaintiff's PED complaint. (Doc. 127-1; Ex. 18; 217-5.)

**UMF 11**: APS took the position in its agency submissions that certain administrators were "not responsible" for any noncompliance because they were not employed at the school during the relevant period. (Doc. 127-2; Ex. 4; Ex. 5 at 3.)

**C.  ADA Accommodation Request, Interactive Process, and Denial**

**UMF 12**: In August 2022, Plaintiff requested an ADA accommodation based on a medical condition. (Ex. 15 at 1.)

**UMF 13**: Plaintiff provided APS written medical support stating Plaintiff could work remotely during flareups, and Plaintiff requested remote work only during medically supported flareups—not permanent remote work—so she could continue performing her job duties. (Ex. 15 at 2.)

**UMF 14**: On September 21, 2022, APS convened an ADA interactive-process meeting with Plaintiff and APS representatives regarding Plaintiff's accommodation request. (Ex. 15 at 3–5.)

**UMF 15**: During the September 21, 2022 meeting, APS representatives stated that social workers were not working remotely and that remote work was not an option for Plaintiff. (Ex. 15 at 3.)

**UMF 16**: A Volcano Vista High School staff sign-in/out sheet includes an entry reflecting "Work from home." (Ex. 14 at 1.)

**UMF 17**: On April 12, 2022, Plaintiff asked whether she could work from home for the day, and Principal Sedillo approved Plaintiff working from home that day. (Ex. 14 at 3.)

8

**UMF 18:** APS sought a school social worker to provide compensatory education services that were to be delivered remotely. (Ex. 14 at 4–5.)

**UMF 19**: APS's ADA Coordinator testified that, during the same time period, the Coordinator was aware of other related-services providers who received an accommodation to work remotely. (Rodriguez Dep. 6:11–16; 16:20–24 (Ex. 12).)

**UMF 20**: The ADA meeting summary reflects: "Bernadette told Justin time off is left up to you." (Ex. 15 at 3.)

**UMF 21**: APS prepared a written temporary accommodation plan following the September 21, 2022 meeting, which did not authorize remote work during flareups and instead included measures related to temperature regulation in Plaintiff's workspace and referred Plaintiff to intermittent leave options and/or the sick leave bank. (Ex. 15 at 6 - 8.)

**UMF 22**: Plaintiff declined to sign the written accommodation plan, and APS did not implement an accommodation that allowed work remotely during flareups. (Ex. 15 at 8.)

**D.  EOS Complaint and Performance-Deficiency Statements**

**UMF 23**: Plaintiff filed an EOS complaint after APS denied the requested remote-work accommodation. (Ex. 5 at 1–2.)

**UMF 24**: During the January 11, 2023 meeting, APS personnel stated or conveyed that Plaintiff had not completed MaxCapture notes. (Ex. 11 at 2 (00:09:17–00:10:24), (00:11:25); Ex. 11 at 3 (00:18:01–00:18:20); Ex. 11 at 4 (00:24:32); (Ex. 20 Audio).)

**UMF 25**: During the September 21, 2022 ADA meeting, Bernadette Lucero-Turner stated or conveyed that if a student is absent; that time is supposed to be tracked but does not have to be made up. (Ex. 15 at 4.)

**UMF 26**: During the January 11, 2023 meeting, APS personnel stated or conveyed that Plaintiff had not been seeing assigned students, including statements that she was not seeing students even when she was at work. (Ex. 11 at 2 (00:14:48–00:15:06); Ex. 11 at 3 (00:22:17); Ex. 11 at 4 (00:24:55); (Ex. 20 Audio).)

**UMF 27**: During the January 11, 2023 meeting, APS personnel stated that remote social work services were not feasible as an accommodation and discussed documentation/audit expectations and the need to provide required services. (Ex. 11 at 3 (00:20:37–00:21:32); Ex. 11 at 3 (00:22:43–00:23:29).)

**UMF 28**: By January 11, 2023, MaxCapture records reflected completed/transmitted/billed PTG entries for students on Plaintiff's caseload. (Doc. 141-1 at 10; Ex. 3.)

**UMF 29**: APS personnel could view MaxCapture documentation at the time these statements were made. (Doc. 124-1 at 7; Doc. 141-1 at 10, 15.)

**UMF 30**: On October 28, 2022, Plaintiff contemporaneously objected in writing to statements by APS administrators that she had failed to see students or was "making up" service time, characterizing those statements as slanderous and factually incorrect. (Ex. 11 at 1.)

**E. PTG Coverage Communications and Objective PTG Records**

**UMF 31**: On November 3, 2022, Stephanie Avila emailed APS personnel stating she would be covering PTGs and attending IEP meetings for the students she was covering. (Doc. 217-2.)

**UMF 32**: On October 25, 2022, APS contemporaneously described a coverage plan in which Stephanie Avila would "step in for a couple of days a week," with a goal of obtaining permanent coverage. (Doc. 217-3 at (10-25-22 Coverage Meeting Tr. 00:11:54–00:13:00) (APS Supplemental Prod Video, Rog. 16).)

**UMF 33**: PTG records reflect PTG-related entries in December 2022 (including transmitted entries and entries with supervisor approval dates); transmitted/approved entries predate the January 11, 2023 meeting. (Ex. 3.)

### F. Plaintiff's Approved Intermittent Leave and APS Communications About Working While on Leave

**UMF 34**: Plaintiff sought intermittent leave supported by medical certification, and APS approved Plaintiff's intermittent FMLA leave. (Ex. 2.)

**UMF 35**: Plaintiff was on approved FMLA leave and remained within the approved 390-hour leave entitlement during the period relevant to the January 11, 2023 meeting. (Ex. 2 at 1, 3.)

**UMF 36**: APS personnel communicated to Plaintiff that she was not to perform work while out on leave. (Ex. 2 at 4.)

### G. Leave-Abuse Investigation / Threatened Discipline

**UMF 37**: In March 2023, APS notified Plaintiff that it retained an independent investigator/attorney to investigate Plaintiff's use of intermittent leave and alleged misuse of leave, and APS stated that Plaintiff must fully cooperate and that failure to cooperate could result in discipline up to and including termination. (Ex. 10 at 1–3.)

### H. January 11, 2023 Meeting While Plaintiff Was on Approved Leave

**UMF 38**: On January 11, 2023, APS held a meeting with Plaintiff addressing PTGs and related documentation responsibilities in light of Plaintiff's intermittent absences/leave. (Ex. 11 at 2–8 (00:09:17–00:10:24); Ex. 11 at 2 (00:10:24–00:11:03) (Ex. 20 Audio).)

**UMF 39**: During the January 11, 2023 meeting, Plaintiff stated that she was on leave that day. (Ex. 11 at 2 (00:13:19).)

**UMF 40**: During the January 11, 2023 meeting, Plaintiff stated again that she was on leave. (Ex. 11 at 6 (00:39:00); Ex. 11 at 6 (00:41:40).)

**UMF 41**: During the January 11, 2023 meeting, APS personnel suggested Plaintiff convert from intermittent leave to continuous leave and discussed continuous leave as a recommended alternative. (Ex. 11 at 3 (00:18:01–00:18:20); Ex. 11 at 6 (00:43:02); Ex. 11 at 8 (00:49:52–00:50:54).)

**UMF 42**: Annitra Atler testified that she did not know Plaintiff was on approved FMLA leave at the time of the January 11, 2023 meeting and further testified that employees on leave are not required to attend meetings or perform work. (Atler Dep. 39:16–25, 43:2–7 (Doc. 217-4).)

## I.  Removal of Plaintiff's Caseload / No Replacement Duties

**UMF 43**: On February 28, 2023, Plaintiff reported to work and had no students assigned to her and emailed APS leadership stating she no longer had a caseload and asking what duties she was expected to perform. (Ex. 6 at 1–2)

**UMF 44:** Plaintiff requested guidance via email regarding what she was supposed to do at work without a caseload; APS personnel did not provide substantive replacement-duty instructions in the email response stating only "Hi, Tatia-Justin has been working with Annittra.  I have included him in this email. Thanks." (Ex. 6 at 1.)

**UMF 45**: APS personnel did not provide Plaintiff substantive written or oral instructions identifying replacement job duties after caseload removal. (Ex. 6 at 1-3)

**UMF 46**: APS hired and/or assigned a new social worker to Volcano Vista High School in February 2023, and APS internally documented that the newly hired/assigned social worker began work in February 2023. (Doc. 217-1.)

**UMF 47**: Superintendent Annitra Atler testified that she instructed that Plaintiff's students be removed from her caseload, and that this directive occurred in January or February 2023. (Atler Dep. 29:5–13 (Doc. 217-4).)

**UMF 48**: APS reassigned Plaintiff's students to other providers. (Ex. 6 at 3; Doc. 217-1; Doc. 217-2.)

**J.   APS Crisis/Suicide Prevention Protocol Order of Responsibility**

**UMF 49**: APS maintained written suicide-prevention and/or crisis-response procedures governing on-campus response to a potentially suicidal student. (Doc. 204-1 at 8–14.)

**UMF 50**: Under APS's written procedures, the order of on-campus responsibility to conduct the suicide-prevention protocol is: (a) school counselor; (b) if no counselor is available, school nurse; and (c) if no counselor or nurse is available, the school social worker. (Doc. 204-1 at 8–14.)

**K.   APS EOS Findings Letter and APS's EEOC Position Stated Rationale**

**UMF 51:** APS stated in its agency submission that students were removed from Plaintiff's caseload based on parent requests. (Ex. 4 at 3.)

**UMF 52:** APS internal communications reflect that parents do not get to choose or dictate which provider delivers related services. (Ex. 16 at 1-3.)

**UMF 53:** APS's EOS findings letter states that Plaintiff's allegations were unsubstantiated and describes the investigation steps and information relied upon. (Doc. 127-2 at 1–2.)

**UMF 54:** APS stated in its agency submissions and EOS findings and EEOC Position Statement that the administrators accused of retaliation did not retaliate against Plaintiff because they were not working at Volcano Vista High School at the relevant time and were not responsible for the noncompliance underlying Plaintiff's PED complaint. (Ex. 4 at 2; Ex. 5 at 3.)

13

**UMF 55:** APS records reflect that Melissa Sedillo was serving in school leadership at Volcano Vista by December 2020 and that Justin Griego was at Volcano Vista by August/September 2021. (Ex. 17 at 1.)

**UMF 56:** ADA Coordinator Socorro Rodriguez testified that the supervisors who indicated Plaintiff's remote-work request could not be accommodated were Justin Griego and Bernadette Lucero-Turner. (Ex. 12, Rodriguez Dep. 7:5–22.)

**UMF 57:** In the EOS report #22233062 (Gonterman), APS stated that Plaintiff claimed Justin Griego and Bernadette Lucero-Turner denied her request to work from home, but that "it was actually Ms. Atler who made the decision based on APS policy and Ms. Lipe's job responsibilities as a social worker." (Ex. 7 at 3.)

**UMF 58:** In the EOS # 22233021(Barreras) findings, APS stated that ADA Coordinator Socorro Rodriguez reviewed Plaintiff's request and determined that remote work was not a reasonable accommodation for a school social worker. (Ex. 5 at 3.)

**UMF 59:** Annitra Atler testified that she was not part of the ADA meeting, was not part of the recommendations, and was not part of denying Plaintiff's accommodation request (Doc. 217-4, Atler Dep. 10:19–23; 11:13–25; 12:1–2.)

**UMF 60.** APS/EOS's assertion that students had returned to in-person learning—and that remote work therefore was "not an option"—is contradicted by APS's own service-capture documentation showing Plaintiff continued to provide student services via teletherapy to a student who was attending school remotely. **(**Ex. 5 at 3; Ex. 19A**)**

## V. ARGUMENT

The PED Findings and Corrective Action Plan (CAP) preceded APS's denial of Plaintiff's requested ADA accommodation; Plaintiff was approved for intermittent FMLA leave before the

January 11, 2023 PTG meeting; and upon returning to work Plaintiff discovered her caseload had been removed without substantive replacement duties, followed by APS's reassignment of her students. (See UMFs 8–11, 12–22, 34–48.)

**A. Retaliation (NMWPA): Rule 56(g) Findings on Protected Report, Employer Knowledge**

Plaintiff raised special-education compliance concerns internally beginning in September 2021 and filed a PED complaint in February 2022; PED issued findings/corrective action in April 2022; and APS administrators were aware of the PED complaint. (UMFs 7–11.) The New Mexico Whistleblower Protection Act protects communications reporting actions or failures to act that an employee believes in good faith constitute unlawful or improper acts. N.M. Stat. Ann. §§ 10-16C-2(E), -3(A). Retaliatory motive may be inferred from circumstantial evidence, including temporal proximity and inconsistencies or contradictions in the employer's stated rationale. *Velasquez v. Regents of N. N.M. Coll.*, 2021-NMCA-007, ¶ 20, 484 P.3d 970.  The post-report chronology is documentary and not credibility-dependent.

The record establishes: (1) the PED complaint and ensuing corrective action; (2) APS's knowledge of the complaint; (3) denial of Plaintiff's medically supported accommodation request; (4) escalation of performance-related processes and accusations; (5) a work-related meeting addressing documentation/PTGs and leave issues, including discussion of converting intermittent leave to continuous leave; (6) initiation of a leave-abuse investigation with threatened discipline; and (7) removal of Plaintiff's caseload without substantive replacement duties and reassignment of her students. (UMFs 7–11, 12–27, 34–48.)

Plaintiff therefore seeks Rule 56(g) findings establishing: (a) the existence of the PED report, PED findings, and corrective action; (b) APS's knowledge of the PED complaint; and (c) the sequence and timing of APS's accommodation denial, subsequent escalation, leave-related

15

pressure and investigation activity, and caseload removal. These documentary facts will materially narrow trial even if ultimate causation remains disputed. Fed. R. Civ. P. 56(g).

**B. APS Is Liable as a Matter of Law for Failure to Provide a Reasonable Accommodation (ADA)**

The undisputed record establishes that APS denied Plaintiff's medically supported request for intermittent remote work during flareups and substituted leave and environmental adjustments in its place. (UMFs 12–22.) That denial is actionable discrimination. An ADA failure-to-accommodate claim does not require proof of a separate adverse employment action. *Exby-Stolley v. Bd. of Cnty. Comm'rs,* 979 F.3d 784 (10th Cir. 2020) (en banc).

The ADA prohibits discrimination against a qualified individual on the basis of disability, including not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer demonstrates undue hardship. 42 U.S.C. § 12112(b)(5)(A)**.** Undue hardship is an affirmative defense, and APS bears the burden. *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784 (10th Cir. 2020) (en banc); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).  APS's own evidence is internally inconsistent as to who made or denied Plaintiff's accommodation request.   APS's ADA Coordinator identified Justin Griego and Bernadette Lucero-Turner; the Gonterman report attributed the decision to Atler; the Barreras findings attributed the determination to Rodriguez; and Atler denied under oath that she was part of denying the request. APS likewise has not produced any policy stating that remote work was prohibited for employees. (UMFs 56–60.) These shifting attributions, coupled with the absence of any identified policy barring remote work, undermine any claim that APS conducted a consistent, individualized essential-functions/undue-hardship analysis and further support summary judgment on liability or, at minimum, Rule 56(g) findings narrowing

16

the dispute regarding who denied the request and on what stated basis.  The material facts establishing liability are not genuinely disputed: Plaintiff requested intermittent remote work during medically supported flareups; APS received physician documentation; APS convened the interactive-process meeting; APS stated remote work was "not an option"; and APS issued a written plan that did not authorize remote work and instead directed Plaintiff toward environmental measures and leave options. (UMFs 12–22.)

**1. APS Had Notice and Understood the Requested Accommodation.** Plaintiff provided written medical support stating she could work remotely during flareups and requested remote work only during medically supported flareups—not permanent remote work—so she could continue performing her job duties. (UMFs 12–13.) APS convened the interactive-process meeting on September 21, 2022 regarding that request. (UMF 14.)

**2**. **APS Rejected Remote Work Categorically, Not Through a Case-Specific Essential-Functions Analysis.**

APS's stated reason for denial was categorical: social workers were not working remotely and remote work was "not an option." (UMF 15.) APS then issued a written plan that did not authorize remote work and instead substituted environmental measures and leave options. (UMFs 21–22.)

The ADA meeting minutes reflect the same categorical framing: APS decisionmakers asserted that virtual contact is "not in the best interest of the student." (Ex. 15 at 1–2.) To the extent APS relies on that assertion as a clinical or educational-impact conclusion, it must be supported by specific facts and a competent foundation tied to the student population and Plaintiff's actual duties—not a conclusory, generalized opinion. Conclusory assertions cannot carry APS's burden to justify denying an otherwise reasonable accommodation.

17

That categorical position is also inconsistent with APS's actual operations. APS/EOS's assertion that students had returned to in-person learning—and that remote work therefore was "not an option"—is contradicted by APS's own service-capture documentation showing Plaintiff continued to provide student services via teletherapy to a student who was attending school remotely. (UMF 60; Ex. 5 at 3; Ex. 19.)

APS records further reflect that remote work was contemplated, approved, or implemented in related-services contexts, including: (a) a Volcano Vista sign-in/out entry reflecting "Work from home" (UMF 16); (b) Principal Sedillo's approval of Plaintiff working from home on April 12, 2022 after Plaintiff explained how she would remain connected to her caseload (UMF 17; Ex. 14 at 2–5); and (c) APS's solicitation of a social worker to provide compensatory education services delivered remotely (UMF 18; Ex. 14 at 4–5). These documents undermine any blanket claim that remote work was categorically infeasible and confirm that remote service delivery remained in use in practice.

APS has emphasized "crisis" as central to the social-work role. But APS's own crisis/suicide protocol establishes an ordered on-campus responsibility structure in which the counselor is the initial contact, then the nurse if no counselor is available, and only then the social worker if neither is available. (UMFs 49–50.) The written job description and APS's operational practices therefore do not establish uninterrupted physical presence during temporary, medically documented flareups as an essential function of the role.

**3. Feasibility Evidence Further Undercuts Any "Not an Option" Defense.**

APS's ADA Coordinator testified that, during the same time period, she was aware of other related-services providers who received accommodations to work remotely. (UMF 19.) This testimony further undercuts APS's categorical denial.

In evaluating whether telework is a reasonable accommodation, the essential-functions inquiry remains central, and an employer is not required to eliminate essential functions. See *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255 (10th Cir. 2009); *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114 (10th Cir. 2004). But here, the record reflects APS contemplated or approved remote work in related-services contexts and that other related-services providers received remote accommodations. (UMFs 16–19.) APS cannot prevail at summary judgment through categorical assertions alone.

**4. Substituting Leave Is Not a Work-Enabling Accommodation, and APS Cannot Carry Its Undue-Hardship Burden.** APS's written plan steered Plaintiff toward intermittent leave and/or the sick leave bank. (UMF 21.) Directing an employee toward leave is not equivalent to providing a reasonable accommodation that enables continued work where feasible. The record also reflects APS's own focus on documentation/PTGs and deadlines—work capable of being performed remotely—while APS maintained its categorical "not feasible" position. (UMFs 24–27, 38–41.) APS bears the burden to prove undue hardship and has not identified case-specific evidence satisfying that burden.

Accordingly, no genuine dispute of material fact precludes summary judgment on liability for ADA failure to accommodate, with damages reserved for trial.

**C. Objective Documentation, PTG Coverage Communications, and APS's Verification Access Warrant Rule 56(g) Findings Narrowing APS's Performance Narrative**

APS's asserted performance narrative is central to its defenses across retaliation, interference, and defamation claims. The record contains objective documentation that materially limits APS's ability to rely on that narrative.

*First*, APS maintained administrative access to MaxCapture documentation and conducted audits/reviews. (UMFs 3–4.) *Second,* APS had written notice that PTG coverage responsibilities were being handled by a fill-in provider, and PTG-related records reflect entries transmitted and supervisor-approved in December 2022, predating the January 11, 2023 meeting. (UMFs 31–33.) *Third*, despite that access and notice, APS personnel conveyed performance-deficiency accusations regarding documentation/PTGs and whether Plaintiff had seen assigned students during the January 11 meeting. (UMFs 24–27.)

Even if the Court declines to resolve motive or privilege at this stage, the existence of administrative access, audit/review activity, and objective coverage communications are suitable for Rule 56(g) treatment. Plaintiff respectfully requests that those objective facts be deemed established. Fed. R. Civ. P. 56(g).

**D. Interference: Summary Adjudication Where Undisputed; Otherwise Rule 56(g) Findings**

The FMLA prohibits interference with, restraint of, or denial of protected leave rights. 29 U.S.C. § 2615. The FMLA also provides restoration rights. 29 U.S.C. § 2614. In the Tenth Circuit, an employer may defeat an interference claim by demonstrating the challenged action would have occurred regardless of the leave. *Dalpiaz v. Carbon Cnty.*, *Utah,* 760 F.3d 1126 (10th Cir. 2014); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955 (10th Cir. 2002).

The material interference-related facts are not genuinely disputed.

**1. Plaintiff Was on Approved Intermittent FMLA Leave**. Plaintiff sought intermittent leave supported by medical certification, and APS approved Plaintiff's intermittent FMLA leave. (UMFs 34–35.) APS personnel communicated to Plaintiff that she was not to perform work while on leave. (UMF 36.)

20

**2. APS Conducted a Substantive Work-Related Meeting Addressing PTGs/Documentation and Leave Issues.** On January 11, 2023, APS held a meeting addressing PTGs and related documentation responsibilities in light of Plaintiff's intermittent absences/leave. (UMF 38.) Plaintiff stated during the meeting that she was on leave. (UMFs 39–40.) The meeting included performance/documentation accusations and discussion of documentation deadlines. (UMFs 24–27.) APS personnel discussed converting intermittent leave to continuous leave. (UMF 41.)

**3. APS Escalated to a Leave-Abuse Investigation With Threatened Discipline**. In March 2023, APS notified Plaintiff it retained an investigator/attorney to investigate Plaintiff's leave use, ordered full cooperation, and warned that failure to cooperate could result in discipline up to and including termination. (UMF 37.)

**4. Caseload Removal and Restoration Consequences**. Plaintiff returned to work and reported she had no caseload and requested direction regarding expected duties. (UMF 43.) APS did not provide substantive replacement duties after the caseload removal. (UMFs 44–45.) APS reassigned Plaintiff's students to other providers and documented that a new social worker began work or was assigned in February 2023. (UMFs 46, 48.) Atler testified she instructed removal of Plaintiff's students from her caseload in January or February 2023. (UMF 47.) APS also stated in its agency submission that students were removed from Plaintiff's caseload based on parent requests. (UMF 51.) APS internal communications, however, reflect that parents do not get to choose or dictate which provider delivers related services. (UMF 52.) These objective documentary facts, at minimum, warrant Rule 56(g) findings and materially narrow APS's reliance on "parent requests" as a complete justification for removing Plaintiff's caseload.

**5. Rule 56(g) Alternative Relief**. If the Court declines full summary judgment on interference, Plaintiff requests Rule 56(g) findings establishing the undisputed leave approval/entitlement

facts, the occurrence and subject matter of the January 11 meeting, Plaintiff's leave statements during the meeting, APS's discussion of converting intermittent leave to continuous leave, the leave-abuse investigation notice and discipline threat, the caseload removal and reassignment, and the absence of substantive replacement duty instructions. (UMFs 34–48.)

**E. ADA Retaliation: Rule 56(g) Findings on Protected Activity and Documentary Chronology**

Plaintiff engaged in protected activity by requesting an ADA accommodation and opposing disability discrimination. The ADA prohibits retaliation for protected activity. 42 U.S.C. § 12203. A retaliation plaintiff must show conduct that could dissuade a reasonable worker from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). Plaintiff requests Rule 56(g) findings establishing protected activity and the objective chronology, without asking the Court to resolve ultimate causation at this stage. (UMFs 12–22, 34–48.)

**F. Defamation: Rule 56(g) Findings on Falsifiability and Verification Context:**

Under New Mexico law, defamation requires a false and defamatory communication concerning the plaintiff, publication to a third person, and resulting injury; employment-related communications may be protected by a qualified privilege that may be lost by abuse. See *Marchiondo v. Brown*, 98 N.M. 394, 649 P.2d 462 (1982); *Davis v. Bd. of Cnty. Comm'rs*, 1999-NMCA-110, 127 N.M. 785, 987 P.2d 1172. Statements framed as opinion may remain actionable if they imply an objectively verifiable factual assertion. *Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990).

At minimum, the record supports Rule 56(g) findings on:

1. **Specific assertions capable of objective verification**. APS personnel stated or conveyed that Plaintiff had not completed MaxCapture notes, had not completed PTGs, and had not been seeing assigned students. (UMFs 24–26.)

2. **Verification access.** APS had access to MaxCapture and conducted audits/reviews, and MaxCapture/PTG records reflected entries predating the January 11 meeting. (UMFs 3–4, 28–29, 33.)

3. **Context.** The statements occurred in the context of disputed accommodation and leave issues. (UMFs 12–22, 34–41.)

These objective facts are suitable for Rule 56(g) treatment and substantially narrow trial issues.

## G. APS's "Brand New / Not Responsible" Exoneration Rationale Is Factually Contradicted and Supports an Inference of Pretext

APS stated in its agency submissions and EOS findings and EEOC Position Statement that the administrators accused of retaliation did not retaliate against Plaintiff because they were not working at Volcano Vista High School at the relevant time and were not responsible for the noncompliance underlying Plaintiff's PED complaint. (UMF 54.) APS records reflect that Melissa Sedillo was serving in school leadership at Volcano Vista by December 2020 and that Justin Griego was at Volcano Vista by August/September 2021. (UMF 55.) The record chronology reflects Plaintiff raised special-education concerns beginning in September 2021, filed the PED complaint in February 2022, PED issued findings in April 2022, and APS administrators were aware of the complaint. (UMFs 7–10.) This inconsistency supports an inference of pretext and narrows trial disputes.

## H. Requested Rule 56(g) Findings

Plaintiff seeks Rule 56(g) findings only as to documentary or objectively verifiable facts not dependent upon credibility determinations. Plaintiff requests an order deeming established the following material facts:

1. Plaintiff requested an accommodation supported by medical documentation for intermittent remote work during flareups; APS denied remote work and substituted environmental measures and leave options. (UMFs 12–22.)

2. APS records reflect remote-work feasibility in related-services contexts, including a "Work from home" entry, an approval for Plaintiff to work from home on April 12, 2022, and a request for compensatory services delivered remotely. (UMFs 16–18.)

3. APS's ADA Coordinator testified that, during the time period Plaintiff requested a remote accommodation, the Coordinator was aware of other related-services providers who received an accommodation to work remotely. (UMF 19.)

4. APS maintained access to MaxCapture and conducted audits/reviews, and objective MaxCapture/PTG records reflected entries and approvals predating the January 11 meeting. (UMFs 3–4, 28–29, 33.)

5. APS supervisors received written notice that PTG coverage was being provided by coverage staff and discussed a coverage plan. (UMFs 31–32.)

6. APS held the January 11, 2023 meeting addressing PTGs and documentation responsibilities in light of intermittent absences/leave; Plaintiff stated she was on leave; and APS discussed converting intermittent leave to continuous leave. (UMFs 38–41.)

7. APS initiated a leave-abuse investigation and ordered Plaintiff to cooperate under threat of discipline up to and including termination. (UMF 37.)

8. Plaintiff returned to work and discovered that her caseload had been removed; Plaintiff requested guidance regarding duties; APS did not provide substantive replacement duties; APS reassigned Plaintiff's students and documented a new social worker assignment; and Atler instructed removal of Plaintiff's students from her caseload in January or February 2023. (UMFs 43–48.)

9. Plaintiff made a report to PED; PED issued findings/corrective action; and APS administrators were aware of the report. (UMFs 8–10.)

10. APS maintained written crisis/suicide-response procedures establishing an order of responsibility beginning with counselor and nurse, with social work involvement as set out in the protocol. (UMFs 49–50.)

11. APS's EOS findings letter states Plaintiff's allegations were unsubstantiated and describes the investigation steps and information relied upon. (UMF 53.)

12. APS stated that certain caseload changes were based on parent requests, and APS internal communications reflect that parents do not get to dictate which provider delivers related services. (UMFs 51–52.)

## VI. RELIEF REQUESTED

For the reasons set forth above, Plaintiff respectfully requests an Order:

1. Granting partial summary judgment on liability only on Plaintiff's ADA failure-to-accommodate claim, with damages and remedies reserved for trial.

2. Granting partial summary judgment on liability only on Plaintiff's FMLA interference claim to the extent the Court concludes the undisputed record establishes interference and APS cannot show the challenged consequences would have occurred regardless of

Plaintiff's approved leave; alternatively, entering Rule 56(g) findings on the interference-related facts.

3. Entering Rule 56(g) findings narrowing Plaintiff's ADA retaliation claim by deeming established the protected activity and documentary chronology facts not genuinely in dispute.

4. Entering Rule 56(g) findings narrowing Plaintiff's defamation claim by deeming established the falsifiability and verification-context facts not genuinely in dispute.

5. Entering Rule 56(g) findings establishing Plaintiff's protected PED report, APS's notice, and the undisputed chronology relevant to Plaintiff's whistleblower claim.

6. Reserving all issues of damages and remedies for trial.

7. Granting such other relief as the Court deems just and proper.

Respectfully submitted,


*/s/ Boglarka Foghi, Esq.*
Boglarka Foghi
Attorney for Plaintiff
FOGHI LAW FIRM, LLC.
5065 Corrales Rd., P.O. Box 944
Corrales, NM 87048
(505) 220-6591
*foghilaw@yahoo.com*

26

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of March, 2026, I filed the foregoing *Plaintiff's Motion for Partial Summary Judgment and in the Alternative, For Rule 56(g) Findings As To Material Facts Not Genuinely In Dispute* electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the notice of electronic filing including:


M. Karen Kilgore
Cuddy McCarthy
1701 Old Pecos Trail
Santa Fe, NM 87505
Tel: (505) 988-4476
kkilgore@cmc.law
Attorneys for Albuquerque Public Schools

Natasha A. Martinez-Wesenberg
Patti Williams
Wiggins, Williams & Wesenberg PC
1803 Rio Grande Blvd. NW
Albuquerque, NM 87104
Tel: (505) 764-8400
nwesenberg@wwwlaw.us
pwilliams@wwwlaw.us
Attorneys for Albuquerque Public Schools



*/s/ Boglarka Foghi, Esq.*
Boglarka Foghi