IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                     1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS, and
NEW MEXICO DEPARTMENT OF PUBLIC
EDUCATION
     Defendants.

**APS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S WHISTLEBLOWER PROTECTION ACT CLAIM**

Pursuant to Fed. R. Civ. P. 56, Defendant Albuquerque Public Schools ("APS") moves the Court for partial summary judgment on Count II, entitled "New Mexico Whistleblower Protection Act," of the Complaint for Damages filed October 13, 2023, ECF 1 (the "Complaint").

## I.    LEGAL STANDARD

Fed. R. Civ. P. 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Herrera v. Santa Fe Pub. Sch.*, 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331 (Brennan, J., dissenting).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."

1

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) (c*iting Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). Rule 56(c)(1) provides:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

*Id.*

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact and the entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 670-71 (10th Cir. 1998). In this case, APS may discharge its burden by showing that there is an absence of evidence to support Plaintiff's claim under the New Mexico Whistleblower Protection Act, NMSA 10-16C-3 *et seq.* ("NMWPA"). *Celotex Corp.*, 477 U.S. at 325; *Trainor v. Apollo Metal Specialties, Inc*. 318 F. 3d 976, 979 (10th Cir. 2002). APS need only point out the absence of evidence to support essential elements of Plaintiff's claim. *Id*.

Once APS meets its burden, it is not enough for Plaintiff to rest on mere allegations or denials of her pleadings. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). Plaintiff must bring forth specific facts showing a genuine issue for trial. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).

Summary judgment is not a" disfavored procedural shortcut;" it is an important mechanism "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 56). Under this standard, APS is entitled to summary judgment on the NMWPA claim made in Count II of the Complaint.

## II.     UNDISPUTED MATERIAL FACTS

1.     In 2022, Plaintiff filed a complaint with the Special Education Division of the New Mexico Public Education Department ("PED") alleging violations of the Individuals with Disabilities Act regarding three specific students on her caseload at an APS high school.    PED investigated Plaintiffs claim and a Complaint Resolution Report was filed by PED on April 14, 2022. ECF 1, p. 9 - 37 (the "PED Report").

2.     On December 5, 2022, Plaintiff filed a Charge of Discrimination with the New Mexico Department of Workforce Solutions, Human Rights Division (the "HRB Charge"). ECF 265-10 to Affidavit of Jessica Rivera filed concurrently with this Motion ("Rivera Affidavit").

3.     Plaintiff's contract for the 2022- 2023 school year ended on May 23, 2023.   Rivera Affidavit, paragraph 7.

4.     Plaintiff received a Letter of Determination - No Probable Cause, dated July 13, 2023.  ECF 265-11.

5.     Plaintiff received a Right to Sue Letter issued on August 21, 2023.   ECF 265-12.

6.     The 2023-2024 school year began on July 31, 2023.   Rivera Affidavit, paragraph 8.

7.     Plaintiff did not work during the 2023-2024 school year and did not have a contract of employment for that school year. 265-5 (dated July 15, 2023).

8.     The 2023-2024 school year ended on May 31, 2024.  Rivera Affidavit, paragraph 8.

9.      Plaintiff took a year-long unpaid leave from March 27, 2023, the last few weeks of her 2022-2023 contract, to March 26, 2024.  ECF 257-1, p.14 and ECF 257-5 (dated July 15, 2023).

10.     While she had no contract of employment for the 2023-2024 school year, on April 8, 2024, Plaintiff resigned her position at APS.     ECF 257-1, p.14, ECF 265-6, Rivera Affidavit, paragraph 9.

11.     The Complaint in this lawsuit was filed on October 13, 2023 alleging a violation of the New Mexico Whistleblower Protection Act, NMSA 10-16C-3 *et seq.* ("NMWPA"). The lawsuit did not contain a claim for retaliation or a claim for constructive discharge. ECF 1.

### III.     POINTS AND AUTHORITIES

**A.  APS is Entitled to Summary Judgment on Count II as a Matter of Law.**

To establish a prima facie case under NMWPA, Plaintiff must show: (1) plaintiff is a public employee and defendant is a public employer; (2) plaintiff engaged in activity protected by the NMWPA; (3) defendant took an adverse employment action against plaintiff; (4) a causal connection exists between the protected activity and the adverse employment action; and (5) plaintiff suffered damages as a result of retaliatory action.  *Deschamps v. New Mexico Department of Health*, 750 F. Supp. 3d. 1275, 1285 (D. NM 2024), *Walton v. New Mexico State Land Office,* 113 F. Supp. 3d 1178, 1199 (D.N.M. 2015).  Plaintiff cannot establish these elements in this case and has not presented admissible evidence proving these elements.

It is unclear in the Complaint what Plaintiff alleges was her protected activity. Creating a strawman, there seem to be two possibilities: the 2022 PED complaint or the 2022 HRB Charge. While either of these complaints could be protected activity, Plaintiff reported no practice, procedure, action or failure to act on the part of APS that constituted malfeasance in public office; or constituted gross mismanagement, a waste of funds, an abuse of authority or a substantial and

4

specific danger to the public in either document.  Nor did Plaintiff undertake any action for the public good in the 2022 PED complaint or the 2022 HRB Charge.

Assuming *arguendo* that either Plaintiff's 2022 complaint to PED or her 2022 HRB Charge constitute protected disclosures within the meaning of the NMWPA, Plaintiff's NMWPA claim necessarily fails because she was not subjected to an adverse employment action and she cannot show any causal connection between any adverse employment action and any protected activity. This means that Plaintiff cannot satisfy three of the four required elements under the NMWPA, if the Court finds she engaged in protected activity by filing her 2022 complaint to PED or her 2022 HRB Charge or some other unknown protected activity.  Accordingly, APS is entitled to summary judgment on Plaintiff's NMWPA claim alleged in Count II of the Complaint.

### A.  **Plaintiff did not Suffer an Adverse Employment Action.**

Plaintiff **resigned** her position at APS.  ECF 257-1, p.14 and UMF 10.  She resigned after taking a year- long unpaid personal leave. *Id.* and UMF 9.  Her last contract with APS expired on its own terms on May 23, 2023.  UMF 3.  Whether something qualifies as an adverse employment action under the NMWPA must be determined in reference to an employee's terms and conditions of employment in the employment relationship that in fact existed between employer and employee. *Velasquez v. Regents of N. New Mexico Coll.*, 2021-NMCA-007, ¶ 63, 484 P.3d 970. As such, determining whether an action constitutes an adverse employment action under the NMWPA is significantly similar to the analysis conducted under Title VII. *See Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1297 (10th Cir. 2013) (implying that Title VII retaliation analysis applies to NMWPA). Demotions, extreme pay cuts, transfer to unbearable working conditions, threats of termination, retaliation and unreasonable criticism have been recognized as

qualifying adverse employment actions in New Mexico. *Einess v. Tresco, Inc.* 44 F. Supp.3d 1082, 1092 (D. NM 2014)

For purposes of a Title VII claim, which is not alleged in this case, a plaintiff must allege that her resignation was due to objectively intolerable work conditions created by defendant's discriminatory actions. *See, e.g., Bolden v. PRC, Inc.*, 43 F.3d 545, 550-51 (10th Cir. 1994) (plaintiff's constructive discharge claim failed because he did not show how his resignation was the result of illegal discriminatory conduct); *Acrey v. American Sheep Indus. Ass'n,* 981 F.2d 1569, 1573-74 (10th Cir. 1992) (standard for constructive discharge is whether the employer's illegal discriminatory acts fostered a climate in the workplace that would compel a reasonable person to resign). If a plaintiff's allegations do not constitute violations of Title VII, the Court cannot conclude that she involuntarily resigned to escape intolerable and illegal work conditions. *Sanchez v. Denver Pub. Schs., 164 F.3d 527, 534 (10th Cir. 1998)* (employee was not constructively discharged when work environment, while unpleasant, was not an adverse employment action).

There is no alleged employment action occurring after Plaintiff's purportedly protected disclosures, which occurred in 2022, that could constitute an adverse employment action, as no APS action modified the terms and conditions of Plaintiff's employment or involuntarily altered the benefits she received. Additionally, Plaintiff cannot show that APS took any employment action based on a protected disclosure made by Plaintiff. If Plaintiff suffered any detriment, such was not caused by APS. Plaintiff was not terminated or discharged. She was not an APS active employee, with duties and a caseload from March 2023 through April 2024, having commenced extended unpaid personal leave for the period March 27, 2023 through March 26, 2024, and terminated employment on April 8, 2024. UMF 9 and UMF 10.

New Mexico Courts have consistently held that when an employee submits a voluntary resignation, even if the face of unpleasant workplace conditions, the employee cannot establish a constructive discharge or the adverse employment action element required by the NMWPA. See e.*g. Sharpe-Miller v. Walmart, Inc*. 710 F. Supp 3d 971, 995 (D.N.M 2023). The natural expiration of an employment contract cannot establish the adverse employment action element under the NMWPA. *Velasquez v. Regents of N. New Mexico College*, 2021- NMCA-007, 484 P.3d 970.

Plaintiff took a year-long unpaid leave from March 27, 2023, the last few weeks of her 2022-2023 contract, to March 26, 2024. UMF 9. Plaintiff's last contract with APS expired on May 23, 2023. UMF 3. The APS 2023-2024 school year began on July 31, 2023. UMF 6. Plaintiff did not work during the 2023-2024 school year and did not have a contract of employment for that school year. UMF 9. The 2023-2024 school year ended on May 31, 2024. UMF 8. Plaintiff resigned from APS on April 8, 2024. UMF 10.

The Complaint fails to state a claim upon which relief may be granted. Plaintiff's claims are barred or reduced, in whole or in part, as a result of her resignation. APS took no adverse employment action against Plaintiff in the terms and conditions of her public employment based on any protected activity. Plaintiff has not even alleged she was constructively discharged in the Complaint. Plaintiff has failed to show that she had no other choice but to quit two years after protected activity and has thus failed to show that she was constructively discharged. There is no evidence that APS took any affirmative steps to prevent Plaintiff from renewing her contract. The is no evidence that but for Plaintiff's two 2022 complaints, Plaintiff's contract would have been renewed. Accordingly, her resignation from employment cannot be an adverse employment action for purposes of her NMWPA claim.

     B. **There is no Causal Connection Between any Alleged Protected Activity and any Adverse Employment Action.**

7

The April 14, 2022 PED Report that resulted from Plaintiff's 2022 complaint to PED confirmed deficiencies in an APS special education program.  The PED Report focuses entirely on student services and makes no finding that Plaintiff experienced retaliation as a result of making a complaint.  The PED Report did not establish and is not evidence that Plaintiff experienced retaliation for filing her complaint with PED. A causal connection cannot be inferred from the existence of her complaint or the PED Report.

The presumed alleged protected activity occurred in 2022. Plaintiff resigned in 2024, two years later. UMF 8.  Generally speaking, if the temporal proximity between the protected activity and the adverse action are not "very close in time," the plaintiff "must offer additional evidence to establish causation." *Proctor v. United Parcel Serv., Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007) *See Walton v. New Mexico State Land Office*, 113 F. Supp. 3d 1178, 1190 (D.N.M. 2015); *Gerald v. Locksle*y, 785 F. Supp. 2d 1074, 1099-1100. The Tenth Circuit requires a close temporal proximity to meet the causation requirement. *Id.* A gap of more than three months between the protected activity and the adverse employment action, standing alone, is insufficient to establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) Plaintiff cannot meet the causal connection requirement because either of Plaintiff's two protected activities occurred two years before she resigned.

The Tenth Circuit has held that an inference of retaliatory intent can only be made where close temporal proximity exists between the protected activity and allegedly adverse action. *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994). Notably, the Tenth Circuit has continued to reject an inference of retaliatory motive where adverse action came three to four months after protected activity. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th

Cir. 1997) (three months); s*ee also Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (no inference of causal connection where adverse action came at least two months and one week after protected activity). There is no evidence to establish causation. Accordingly, Plaintiff's NMWPA claim fails as a matter of law, because Plaintiff cannot establish that she suffered any adverse employment action, let alone that any such action was taken by APS because of Plaintiff's protected disclosure.

The undisputed material facts demonstrate that APS has legitimate non-retaliatory explanations for the end of Plaintiff's employment: Plaintiff was allowed to and took a year of unpaid leave, she allowed her contract to expire on its own terms, she chose not to seek renewal and, after a year away, she ultimately chose to resign. UMF 7 and UMF 8.  There is no evidence that any of these voluntary decisions by Plaintiff were the result of a retaliatory motive related to her 2022 complaints to PED and HRB.

## IV.    CONCLUSION

For the foregoing reasons, APS respectfully requests that this Court grant this motion and issue judgment on the NMWPA claim made in Count II of the Complaint in favor of APS.

<div style="margin-left:50%">

Respectfully submitted,

WIGGINS, WILLIAMS & WESENBERG
A Professional Corporation

*Electronically Filed*

By____*/s/ Patricia G. Williams*_____
      Patricia G. Williams
      Natasha A. Martinez-Wesenberg
      Carol M. Cochran
*Attorneys for Defendant*
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
pwilliams@wwwlaw.us
nwesenberg@wwwlaw.us
ccochran@wwwlaw.us

</div>

I HEREBY CERTIFY that on the 17th day of April, 2026,
I filed the foregoing electronically through the CM/ECF system,
which caused all parties or counsel of record to be served by electronic
means, as more fully reflected on the Notice of Electronic Filing.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By  */s/ Patricia G. Williams*
        Patricia G. Williams

10