**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**TATIA LIPE,**

     Plaintiff,

v.                            No. 1:23-cv-00899-GBW-JMR

**ALBUQUERQUE PUBLIC SCHOOLS et al.,**

     Defendants.

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO APS'S MOTION TO DISMISS
PLAINTIFF'S CLAIMS FOR DEFAMATION (DOC. 266)</u>**

Plaintiff Tatia Lipe, by and through undersigned counsel, respectfully submits this Response in

Opposition to Defendant Albuquerque Public Schools' ("APS") Motion to Dismiss Plaintiff's

Claims for Defamation (Doc. 266). Plaintiff opposes APS's motion in full. APS did not include a

conferral statement in Doc. 266 itself, but later filed a separate certification stating APS

attempted to determine whether Docs. 266, 267, and 268 were opposed. See Doc. 269. To

eliminate any uncertainty, Plaintiff expressly states that Doc. 266 is opposed.

**INTRODUCTION**

APS's motion should be denied because its threshold notice argument fails on the pleadings.

APS seeks broader dismissal than its Rule 12(c) motion can support. It combines a narrow

governmental-immunity issue with a fact-dependent statutory-notice defense, then asks the Court

to treat both as resolvable on the pleadings. They are not. APS expressly admits that "it is

unclear as to what the actual occurrence was that Plaintiff claims give rise to her claim of

defamation," then assumes that the operative "occurrence" was Plaintiff's April 8, 2024

resignation and asks the Court to dismiss from that assumption. Doc. 266 at 4.

That is not a proper Rule 12(c) argument. APS cannot concede that the triggering event is unclear, substitute its own preferred date, and obtain judgment on the pleadings from that invented premise.

The Complaint itself identifies the alleged publication event. Count III alleges that Defendants had actual notice of the occurrence. Doc. 1 at 7, ¶ 23. Count III further alleges that "[i]n the March 2023 meeting and contemporaneous emails, the Defendant (School) published allegations to third parties including all of the Plaintiff's colleagues and senior staff . . . ." Doc. 1 at 7, ¶ 24. In other words, the pleaded occurrence is March 2023 publication, not April 2024 resignation. At the Rule 12(c) stage, those allegations must be accepted as true and construed in Plaintiff's favor. That defect alone requires denial of APS's notice argument. Even if the Court reaches APS's narrower governmental-immunity argument, APS still would not be entitled to the broader with-prejudice relief it seeks. At most, APS's immunity argument concerns whether Count III, as presently pleaded, may proceed against APS itself as a governmental entity under the New Mexico Tort Claims Act ("NMTCA"). It does not establish that no defamatory publication occurred, that APS lacked actual notice, that all potential defendants or theories are barred, or that Plaintiff should be denied leave to amend.

## I. RULE 12(c) STANDARD

A motion under Rule 12(c) is governed by the same standard applicable to Rule 12(b)(6). *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). The Court must accept the nonmovant's well-pleaded factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Park Univ.*, 442 F.3d at 1244; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A Rule 12(c) motion is not a vehicle

to resolve disputed factual predicates, select among competing timelines, or adopt the movant's preferred inference over the pleaded facts.

Dismissal on the pleadings is appropriate only when the moving party has established that no material issue of fact remains and that it is entitled to judgment as a matter of law based on the pleadings. *Park Univ.*, 442 F.3d at 1244.

APS does not satisfy that standard. Its notice argument depends on factual assumptions APS itself admits are unclear, and it seeks dismissal based on a timeline that does not appear in Count III. APS's own motion says both that Rule 12(c) is confined to the four corners of the complaint and that the triggering occurrence is "unclear," before assuming resignation as the operative date. That concession alone is incompatible with judgment on the pleadings because APS cannot show entitlement to judgment as a matter of law while simultaneously disputing the factual predicate for its statutory-notice arithmetic.

## II. APS'S NOTICE ARGUMENT FAILS ON THE PLEADINGS AND REQUIRES DENIAL OF THE MOTION

### A. APS Admits the Triggering "Occurrence" Is Unclear.

APS's notice theory fails at the threshold because APS admits "it is unclear as to what the actual occurrence was that Plaintiff claims give rise to her claim of defamation." Doc. 266 at 4. If APS cannot identify from the pleadings the event that allegedly triggered the notice period, APS has not established entitlement to judgment on the pleadings on that basis.

That should end the notice argument. A Rule 12(c) movant cannot prevail by acknowledging uncertainty on the dispositive fact and then asking the Court to fill the gap in the movant's favor.

### B. APS Improperly Replaces the Pleaded Publication Event with a Resignation Date.

After conceding uncertainty, APS assumes that the defamation "occurred on the date of her resignation, April 8, 2024." Doc. 266 at 4. APS offers no pleading-based reason why resignation would be the operative event for a defamation claim. It simply selects the date most favorable to APS and asks the Court to dismiss from that assumption.

That is not legal analysis. It is timeline engineering.

That is improper. Count III does not plead resignation as the relevant occurrence. Count III pleads defamatory publication in a March 2023 meeting and contemporaneous emails to third parties, including Plaintiff's colleagues and senior staff. Doc. 1 at 7, ¶ 24. APS's fallback notice theory depends on a date that appears nowhere in Count III.

## C. The Complaint Pleads March 2023 Publication.

The pleadings are not unclear. Count III identifies the relevant publication timeframe and the alleged mechanism of publication. Specifically, paragraph 24 alleges publication "[i]n the March 2023 meeting and contemporaneous emails." Doc. 1 at 7, ¶ 24. APS's resignation-based trigger therefore contradicts the Complaint itself.

Because APS's notice argument depends on a date that does not come from Count III, APS has not shown entitlement to dismissal on the pleadings.

## D. Plaintiff Pleads Actual Notice, Which APS Does Not Defeat.

Plaintiff pleads actual notice under NMSA 1978, § 41-4-16(B). Doc. 1 at 7, ¶ 23. APS's motion never grapples with paragraph 23 of the Complaint. APS does not defeat that allegation on the pleadings. Instead, APS bypasses it and relies entirely on date arithmetic derived from its own assumed occurrence.

4

That is insufficient on Rule 12(c). At this stage, the Court must accept Plaintiff's actual-notice allegation as true. APS therefore cannot obtain dismissal by ignoring the pleaded allegation and substituting its own timeline.

**E. APS Has Not Negated Actual Notice Under New Mexico Law.**

Under New Mexico law, actual notice means notice sufficient to alert the governmental entity to the likelihood that litigation may result, not merely awareness that an event occurred. *City of Las Cruces v. Garcia*, 1984-NMSC-085, ¶ 11, 102 N.M. 25, 27, 690 P.2d 1019, 1021; *Frappier v. Mergler,* 1988-NMCA-021, ¶ 12, 107 N.M. 61, 63, 752 P.2d 253, 255; *Dutton v. McKinley Cnty. Bd. of Comm'rs,* 1991-NMCA-130, ¶¶ 5–6, 113 N.M. 51, 52–53, 822 P.2d 1134, 1135–36. Written notice is not the only way to satisfy § 41-4-16. New Mexico recognizes that actual notice may satisfy the statute where the governmental entity is sufficiently alerted to the occurrence and the likelihood of a claim. *Lopez v. State*, 1996-NMSC-071, ¶¶ 7–14, 122 N.M. 611, 930 P.2d 146.

APS does not meaningfully address that standard. It quotes the statute, picks an assumed date, and declares notice untimely. Doc. 266 at 4. That is not enough on Rule 12(c).

**F. APS's Notice Theory Is Fact-Bound and Premature.**

APS's notice argument depends on unresolved factual questions, including what statements were published, when they were published, to whom they were published, and when APS had notice of the alleged defamatory conduct. APS cannot convert those unresolved factual issues into a pleadings dismissal by choosing a date the Complaint does not allege.

For that reason alone, the motion should be denied. APS has not shown that Count III fails on the pleadings. APS has shown only that it wants the Court to adopt APS's version of the facts before factual development on the notice issue. Rule 12(c) does not permit that.

5

## III. APS'S OWN RECORD FURTHER CONFIRMS THAT PUBLICATION AND NOTICE ARE FACTUAL ISSUES

The Court need not consider any material outside the pleadings to deny APS's motion. Count III itself pleads March 2023 publication and actual notice. Doc. 1 at 7, ¶¶ 23–24. That is sufficient to defeat APS's resignation-based notice theory at the Rule 12(c) stage.

Even if the Court considers the broader context already reflected in the record, that context only confirms that publication, timing, recipients, falsity, and notice are factual issues. Count III alleges that APS published defamatory accusations in a March 2023 meeting and contemporaneous emails to colleagues and senior staff. Doc. 1 at 7, ¶ 24. Plaintiff also contemporaneously objected that false and slanderous statements were being made. Plaintiff's October 28, 2022 email to Bernadette Lucero-Turner and Justin Griego states that "negative comments" were being made, that "several slanderous comments were made," and that the statements were "not true," and asks that they refrain from further slandering or making disparaging comments.

APS's own investigative materials reflect the same accusatory narrative being repeated internally. In Bernadette Lucero-Turner's recorded administrative interview, she stated that Plaintiff "wasn't going to work" and "wasn't serving the kids," referred to "max capture notes" as therapy notes, and stated that parents were complaining that children were not getting seen and wanted students moved from Plaintiff's caseload. In the January 11 meeting, similar accusations were made in the presence of multiple APS personnel, and Plaintiff immediately denied them as untrue.

Those facts are not necessary to defeat APS's motion, but they underscore why APS's notice argument is premature. APS cannot simultaneously contend that the operative occurrence is

6

"unclear" and then ask the Court to enter judgment on the pleadings as though publication, timing, recipients, and notice were undisputed. Those questions are fact-bound and therefore inappropriate for resolution on Rule 12(c).

## IV. APS'S IMMUNITY ARGUMENT IS NARROWER THAN APS CLAIMS

APS's principal argument is that APS, as a governmental entity, is immune from a defamation claim absent a specific statutory waiver under the NMTCA. See NMSA 1978, § 41-4-4; *Candelaria v. Robinson*, 1980-NMCA-003, ¶ 12, 93 N.M. 786, 790, 606 P.2d 196, 200. APS frames Count III as categorically barred and concludes it "must be dismissed as a matter of law." Doc. 266 at 3–5.

Plaintiff does not dispute that NMTCA waivers are statutory and limited to those enumerated by the Legislature. See *Methola v. Eddy Cnty.*, 1980-NMSC-145, ¶ 25, 95 N.M. 329, 335, 622 P.2d 234, 240. Nor does Plaintiff dispute that the NMTCA's waiver for libel and slander is tied to the law-enforcement-officer waiver. See NMSA 1978, § 41-4-12; *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶¶ 6–9, 121 N.M. 646, 916 P.2d 1313.

But APS's motion asks for more than that legal point supports. Even if APS persuades the Court that Count III cannot proceed against APS itself as an entity under the NMTCA, that would not establish that no defamatory publication occurred, that APS lacked actual notice, that all potential defendants or theories are barred, or that Plaintiff should be denied leave to amend. Even if APS persuades the Court that Count III cannot proceed against APS itself as an entity under the NMTCA, that would not establish:

1. that no defamatory publication occurred;

2. that APS lacked actual notice;

3. that all possible defendants are barred;

7

4.  that all relevant conduct was necessarily within the scope of duty as a matter of law; or

5.  that Count III should be dismissed with prejudice.

APS is asking the Court to give it more relief than it has earned through a pleadings motion.

## V. TO THE EXTENT APS SEEKS A BROADER RULING, SCOPE-OF-DUTY ISSUES ARE FACT-BOUND AND CANNOT BE RESOLVED THIS EARLY

To the extent APS seeks a broader ruling that would effectively foreclose any claim arising from the publications alleged in Count III, that request should also be denied.

Under the NMTCA, employee immunity turns on conduct within the scope of duty. See NMSA 1978, § 41-4-3(G). Whether challenged conduct falls within or outside that scope may present a factual question where competing inferences exist. *Celaya v. Hall*, 2004-NMSC-005, ¶¶ 14–18, 135 N.M. 115, 119–21, 85 P.3d 239, 243–45.

For that reason, APS cannot use a Rule 12(c) motion directed to Count III as pleaded against APS to obtain an early ruling that effectively forecloses claims against individual actors whose conduct may ultimately be found outside the scope of duty or otherwise actionable under properly pleaded theories.

Here, Plaintiff's allegations and APS's own materials support competing inferences as to motive, context, and the nature of the publications. Plaintiff's materials reflect preexisting conflict with Griego, prior grievance history involving Lucero-Turner, repeated accusations about Plaintiff's professional conduct, and Plaintiff's contemporaneous written objections that those statements were false and slanderous. Those facts do not have to be proved now. They are enough to show that APS has not earned an early ruling that would foreclose amendment against proper actors or theories.

8

Accordingly, even if the Court reaches APS's narrower entity-immunity argument, APS is not entitled to a with-prejudice dismissal at the Rule 12(c) stage.

## VI. IF THE COURT REACHES APS'S NARROW ENTITY-IMMUNITY POSITION, ANY DISMISSAL SHOULD BE LIMITED, WITHOUT PREJUDICE TO AMENDMENT, AND WITH LEAVE TO AMEND

If the Court concludes Count III as presently pleaded cannot proceed against APS as an entity under the NMTCA, the proper remedy is not a broad, with-prejudice dismissal foreclosing amendment. Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The recognized grounds for denying leave include undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182 (1962).

The Complaint already identifies the alleged defamatory statements, the approximate publication timeframe, the workplace audiences, reputational harm, and related employment consequences. Doc. 1 at 7, ¶¶ 24–28. If the Court concludes that further specificity is required as to speakers, audiences, timing, publications, proper defendants, or legal theories, amendment—not terminal dismissal—is the appropriate remedy.

Any dismissal should therefore be limited to the narrowest issue actually decided and should be without prejudice to amendment to align the claim with the proper defendants and legal theories.

## CONCLUSION

APS's motion should be denied. APS admits the operative "occurrence" is unclear, then asks the Court to adopt an assumed resignation date and dismiss on that basis. Doc. 266 at 4. Count III pleads March 2023 publication, not an April 2024 resignation trigger, and Plaintiff pleads actual

notice. Doc. 1 at 7, ¶¶ 23–24. APS therefore has not established entitlement to judgment on the pleadings on notice grounds.

APS's alternative notice theory fails because APS admits the triggering occurrence is unclear, substitutes a date of its own choosing, ignores the pleaded March 2023 publication allegations, and fails to negate actual notice on the pleadings. That defect alone warrants denial of the motion.

Alternatively, if the Court reaches APS's narrower governmental-immunity argument, any ruling should be strictly limited to Count III as presently pleaded against APS, without prejudice to amendment, and with leave to amend.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Deny APS's Motion for Judgment on the Pleadings as to Count III; or, in the alternative,

2. If the Court reaches APS's entity-immunity argument, limit any dismissal to Count III as presently pleaded against APS only, without prejudice to amendment, and with leave to amend.

Respectfully submitted,

/s/ Boglarka Foghi, Esq.

Boglarka Foghi
Foghi Law Firm, LLC
5065 Corrales Rd., P.O. Box 944
Corrales, New Mexico 87048
(505) 220-6591
foghilaw@yahoo.com
Attorney for Plaintiff Tatia Lipe

10

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of April, 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means including:

M. Karen Kilgore
Cuddy McCarthy
1701 Old Pecos Trail
Santa Fe, NM 87505
kkilgore@cmc.law
Attorney for Albuquerque Public Schools

Natasha A. Martinez-Wesenberg
Patti Williams
Wiggins, Williams & Wesenberg, P.C.
1803 Rio Grande Blvd. NW
Albuquerque, NM 87104
nwesenberg@wwwlaw.us
pwilliams@wwwlaw.us
Attorneys for Albuquerque Public Schools

*/s/ Boglarka Foghi*
Boglarka Foghi

11