IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                      1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS and
NEW MEXICO DEPARTMENT OF PUBLIC
EDUCATION,

     Defendants.

## ORDER GRANTING MOTION FOR LEAVE TO ACCEPT AFFIDAVIT OF ATTORNEY'S FEES OUT OF TIME NUNC PRO TUNC

THIS MATTER is before the Court on a dispute over attorney's fees. On March 16, 2026—seventeen days late—Plaintiff filed an Affidavit of Attorney Boglarka Foghi in Support of Plaintiff's Submission of Attorney's Fees and Expenses Pursuant to the Court's Order. Doc. 233. On March 30, 2026, Defendant Albuquerque Public Schools ("APS") filed a response. Doc. 252. The following day, Plaintiff filed a Motion for Leave to Accept Affidavit of Attorney's Fees Out of Time Nunc Pro Tunc. Doc. 253. APS filed a response to that motion. Doc. 260. Plaintiff did not file a reply, and the time for doing so has lapsed. *See* D.N.M.LR-Civ. 7.4. Having reviewed the briefing and the relevant law, the Court hereby GRANTS Plaintiff's Motion for Leave to Accept Affidavit of Attorney's Fees Out of Time Nunc Pro Tunc (Doc. 253). The Court orders Plaintiff to re-file her application for attorney's fees within seven days of entry of this order. APS's objections are due fourteen days after Plaintiff's application is filed.

## I.      Background

To understand the Court's decision, it is important to explain the background of the Court's order for APS to pay Plaintiff's attorney's fees.

On March 11, 2025, Plaintiff filed a Motion to Compel Discovery Responses, Request for Sanctions, and Request for Expedited Ruling. Doc. 88. APS asked the Court to hold the motion "in abeyance to allow counsel the opportunity to confer on an extension for Defendant's supplemental responses." Doc. 95 at 3. The Court granted APS's request noting that it "expect[ed] APS to reasonably supplement its discovery responses in a timely manner." Doc. 96. The parties were not able to reach a negotiated resolution to the discovery disputes. On July 7, 2025, Plaintiff filed her Second Motion to Compel Discovery Responses. Doc. 124. On September 2, 2025, the Court held a hearing on the two motions compelling APS to provide significant discovery. Doc. 147. APS's supplemental discovery responses were due October 3, 2025. *Id.* at 3. APS did not comply with the Court's order.

On November 10, 2025, Plaintiff filed her Third Motion to Compel Discovery Responses, for Sanctions under Rule 37(b) due to Defendant's Noncompliance with Court Order, and for Extension of Discovery Deadlines. Doc. 159. The Court held a hearing on the motion on December 10, 2025. Doc. 174. Once again, the Court compelled APS to provide the same discovery that it had already been compelled to provide. Doc. 175. The Court also ordered the attorneys and the necessary client representatives to have "an in-person meeting to discuss the deficiencies in APS's discovery responses and how APS can cure the same." *Id.* at 1. APS was ordered to supplement its discovery responses by February 20, 2026. *Id.* at 3. Again, APS did not fully comply with the Court's order.

At the December 10, 2025, hearing, the Court also ordered APS to pay Plaintiff's

2

attorney's fees for filing the third motion to compel discovery and attending the court-ordered discovery meeting. *Id.* at 3; *see also* FED. R. CIV. P. 37(a)(5)(A) (requiring the Court to award reasonable expenses after granting a motion to compel).[1] Plaintiff was ordered to file an application for attorney's fees by February 27, 2026. *Id.* Plaintiff did not do so.

Instead, Plaintiff filed an affidavit requesting attorney fees on March 16, 2026—seventeen days late. Doc. 233. Plaintiff did not acknowledge her tardiness in the affidavit.

On March 9, 2026, Plaintiff filed her Motion to Enforce Discovery Orders, for Rule 37(b) Sanctions, and for Order to Show Cause. Doc. 226. On March 18, 2026, Plaintiff filed her Emergency Motion for Limited Extension of Discovery to Complete Outstanding Depositions, Former-Witness Service Coordination, and Outstanding Ordered Discovery. Doc. 234. Both motions (Docs. 226, 234) requested that the Court further compel APS to provide the discovery the Court had twice compelled it to provide. On March 25, 2026, the Court held a hearing where it found that APS still had not fully complied with the Court's discovery orders. Doc. 246. Despite granting Plaintiff relief, the Court did not award attorney's fees at the March 25, 2026, hearing. APS was ordered to supplement its discovery responses by April 10, 2026. Plaintiff alleges that APS still has not fully complied with the Court's discovery orders. Doc. 279.

On May 11, 2026, Plaintiff filed her Fourth Motion to Compel APS's Production of Outstanding Discovery including RCI/EOS Audio Recordings and Transcripts and for Rule 37

---

[1] In APS's response to Plaintiff's fee application, APS's counsel—who was different than the counsel who attended the December 10, 2025, hearing—expresses confusion as to the Court's basis for ordering APS to pay fees. *See* Doc. 252 at 2 (citing FED. R. CIV. P. 37(b)(2)(C), 28 U.S.C. § 1927, the Court's inherent authority to sanction an attorney, and D.N.M.LR-Civ. 54.5). As discussed during the hearing, the Court awarded fees under FED. R. CIV. P. 37(a)(5)(A), not any of the provisions that APS cited.

Sanctions. Doc. 279. In this motion, Plaintiff alleges that APS still had not provided certain discovery that it was first compelled to provide by October 3, 2025. The Court has not yet assessed the merits of this accusation.

Notably, on and around February 27, 2026—when Plaintiff's application for attorney's fees was due—the parties were litigating several other disputes at a breakneck pace. For example, the parties were litigating whether several depositions would take place. *See* Docs. 205, 206, 207 (Plaintiff's Notices of Deposition for three witnesses, filed February 26, 2026); Docs. 209, 211, 213 (APS's Opposed Motions for Protective Orders for the depositions of the same three witnesses, filed February 27, 2026). Contemporaneously, the parties were litigating whether the Court should extend the deadline for APS to supplement discovery. Doc. 200 (APS's Opposed Motion for Extension of Time to Complete Discovery, filed February 20, 2026); Doc. 204 (Plaintiff's response, filed February 23, 2026); Doc. 208 (APS's Opposed Motion to Withdraw Motion for Extension of Time for Discovery Requests, filed February 26, 2026); Doc. 215 (Plaintiff's response, filed February 27, 2026). The parties were also discussing APS's failure to fully supplement its discovery responses as ordered.

## II.     The Court will extend the deadline for Plaintiff to file an application for attorney's fees.

Plaintiff requests that the Court accept her late-filed affidavit of attorney fees. Doc. 253. APS opposes the request. Doc. 260. For the reasons explained below, the Court hereby extends the deadline for Plaintiff to file her application for attorney's fees.

Under Rule 6(b)(1)(B), the Court may extend an expired deadline if the moving party shows "good cause" and that "the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B). "'[G]ood cause' requires a greater showing than 'excusable neglect.'" *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (unpublished) (citing

*Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 175 (10th Cir. 1996)).

To meet the "good cause" standard, the movant must provide a justification for the extension of time. *In re Kirkland*, 86 F.3d at 176. The "good cause" rule "should be liberally construed to advance the goal of trying each case on the merits." *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016). Inadvertence or negligence alone cannot constitute "good cause." *In re Kirkland*, 86 F.3d at 175. Nevertheless, "an application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." Wright & Miller, 4B FEDERAL PRACTICE & PROCEDURE § 1165 (4th ed.).

Excusable neglect requires "some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *Utah Republican Party*, 678 F. App'x at 700. "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect." *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005). "In determining whether a party's neglect is excusable, this court considers: 1) the danger of prejudice to the opposing party, 2) the length of delay caused by the neglect and its impact on judicial proceedings, 3) the reason for delay, and whether it was in the reasonable control of the moving party, and 4) the existence of good faith on the part of the moving party." *Hamilton v. Water Whole Int'l Corp.*, 302 F. App'x 789, 798 (10th Cir. 2008) (citing *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) and *Quigley*, 427 F.3d at 1238). "The reason for delay is an important, if not the most important, factor in this analysis." *Id.*

Plaintiff has shown good cause and excusable neglect for missing the February 27, 2026, deadline to file an application for attorney's fees. *See* FED. R. CIV. P. 6(b)(1)(B).

5

### A.  Good Cause

There is "good cause" to extend the fee application deadline. *See* FED. R. CIV. P. 6(b)(1). Plaintiff states that the missed deadline "arose in the middle of an ongoing Rule 37 enforcement dispute concerning whether APS had actually complied with the December 12, 2025 Order." Doc. 253 at 3. She alleges that "[t]he reason for the delay is that, when the fee submission came due, the parties were still actively litigating compliance with the very same discovery order that generated the fee award." *Id.* As Defendants point out, Plaintiff's counsel certainly "could have requested an extension either before the February 27, 2026, deadline or after." Doc. 260 at 4. However, in the shuffle of the atypically chaotic litigation that occurred on and around February 27, 2026, the Court can see how counsel missed the deadline to file the fee application. *See* Docs. 200, 204, 205–10, 211, 213, 215. However, this mistake alone is not sufficient cause to extend a deadline. *In re Kirkland*, 86 F.3d at 175.

Importantly, this instance is the single time that the Court has awarded fees for APS's multiple instances of noncompliance and missed deadlines. *See supra* § I. The Court has otherwise declined to award fees or sanction APS. *See* Doc. 289 (declining to sanction APS, in part, because the Court ordered APS to pay attorney's fees that are the subject of this motion). However, there must be some consequence for APS's noncompliance. It would be unjust for APS to experience a windfall due to Plaintiff's otherwise inconsequential mistake.

Additionally, throughout this litigation, the Court has repeatedly encouraged the parties to grant one another extensions of time as a professional courtesy. *See, e.g.*, Doc. 57 (asking the parties to meet and confer regarding a scheduling order extensions); Doc. 78 (granting APS a one-week extension over Plaintiff's objection); Doc. 94 (denying Plaintiff's motion to strike APS's motion for being three-days late) ("The Court expects the parties to meaningfully confer

over all future motions, including granting one another reasonable extensions of time."). Many times, the Court has extended deadlines to APS's benefit.

In keeping with that spirit and looking at the context of the case as a whole, the Court finds that there is "good cause" to extend the deadline for Plaintiff to file her fee application. *See* FED. R. CIV. P. 6(b)(1).

## B. Excusable Neglect

The Court also finds that Plaintiff missed the deadline to file the fee application due to "excusable neglect." *See* FED. R. CIV. P. 6(b)(1)(B). The Court considers each factor in the excusable neglect analysis below.

First, there is "danger of prejudice to the opposing party" by accepting Plaintiff's late fee application. *See Hamilton*, 302 F. App'x at 798. This factor weighs against extending the deadline. Of course, if the Court does not extend the deadline for Plaintiff's fee application, APS will not have to pay the fee. That said, it would be unjust to allow APS to suffer almost no consequences for its repeated noncompliance with Court orders—even when the noncompliance was in good faith. APS argues that if this deadline is extended, its "ability to defend its case is hampered as it has no certainty regarding live issues." Doc. 260 at 6. However, the Court disagrees that this narrow, one-time extension allowing Plaintiff to file an application for fees creates any reasonable uncertainty as to what issues remain live in the case. While APS will be prejudiced by the Court extending Plaintiff's deadline, the Court does not believe this factor weighs heavily against an extension.

Second, "the length of delay caused by the neglect and its impact on judicial proceedings" weighs in favor of an extension. *See Hamilton*, 302 F. App'x at 798. Seventeen days is not a "brief delay," as Plaintiff claims. *See, e.g.*, Doc. 253 at 6. However, this delay had

7

no "impact on judicial proceedings." *See Hamilton*, 302 F. App'x at 798. Nothing in the case was delayed or prolonged as a result of the late fee application.

Third, "the reason for delay, and whether it was in the reasonable control of the moving party" weighs in favor of an extension. *See Hamilton*, 302 F. App'x at 798. Plaintiff alleges that the continued litigation over APS's noncompliance with the Court's discovery orders led to Plaintiff missing the deadline. The Court's own review of the record reveals that litigation was particularly rapid and contentious around the fee application deadline. While the missed deadline was within Plaintiff's control, Plaintiff has provided a "reasonable basis for noncompliance." *See Utah Republican Party*, 678 F. App'x at 700. Plaintiff's neglect in missing the deadline is excusable.

Fourth, "the existence of good faith on the part of the moving party" weighs in favor of an extension. *See Hamilton*, 302 F. App'x at 798. The Court agrees with Plaintiff that the "delay was not the product of bad faith or tactical gamesmanship." Doc. 253 at 6. There is no indication that the delay was in bad faith.

Weighing all four factors together, the Court finds that Plaintiff missed the deadline to file the fee application due to "excusable neglect." *See* FED. R. CIV. P. 6(b)(1)(B).

Finally, APS argues that Plaintiff did not show that she was "unable to comply with the deadline due to something outside her control nor did she make any argument that she failed to meet the deadline despite her diligent efforts, both of which are required to establish entitlement to an extension under the excusable neglect standard." Doc. 260 at 5 (referencing the legal standards from *Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 2004) and *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). APS confuses "good cause" and "excusable neglect." *Bishop* involved "good cause" to extend the deadline to

file notice of appeal under Federal Rule of Appellate Procedure 4(a)(5). *Bishop*, 371 F.3d at 1207

("Good cause comes into play 'in situations in which there is no fault—excusable or

otherwise.'") (citation omitted). *Gorsuch* involved "good cause" to extend a scheduling order

under Rule 16(b)(4). *Gorsuch*, 771 F.3d at 1240 ("In practice, this standard requires the movant

to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'")

(citation omitted). Neither legal standard that APS referenced applies to excusable neglect under

Rule 6(b)(1)(B).[2]

---

[2] It is also not clear that the legal standard from *Bishop* and *Gorsuch* would strictly apply to "good cause" under Rule 6(b)(1).

In *Bishop*, when interpreting good cause under Federal Rule of Appellate Procedure 4(a)(5), the Tenth Circuit said, "[g]ood cause comes into play in situations in which there is no fault." *Bishop*, 371 F.3d at 1207. However, under Federal Rule of Appellate Procedure 4(a)(5), good cause accounts for cases "in which a traditional 'excusable neglect' analysis would be inapposite." *Id.*; *see also* FED. R. APP. P. 4(a)(5)(A)(ii) (requiring a showing of "excusable neglect *or* good cause") (emphasis added); *Magraff v. Lowes HIW*, Inc., 217 F. App'x 759, 761 (10th Cir. 2007) ("'[G]ood cause' under Rule 4(a)(5) is . . . employed where the "excusable neglect" analysis is inappropriate."). In contrast, in the civil procedure context, Rule 6 requires a showing of both good cause and excusable neglect to extend a missed deadline. *See* FED. R. CIV. P. 6(b)(1)(B). Therefore, the two standards cannot be mutually exclusive as they are under Appellate Procedure Rule 4(a)(5). *See also Alexander v. Saul*, 5 F.4th 139, 154 (2d Cir. 2021) ("The standard for evaluating claims under Federal Rule of Civil Procedure 6(b)(1) differs markedly from those for Federal Rule of Appellate Procedure 4(a)(5).").

In *Gorsuch*, when interpreting good cause to extend a scheduling order deadline under Federal Rule of Civil Procedure 16(b)(4), the Tenth Circuit stated that "[i]n practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch*, 771 F.3d at 1240 (quotation omitted). While diligence can certainly be used to show good cause, it is unclear if diligence is required to extend a single deadline under Rule 6(b)(1). *See Candelaria v. Molina Healthcare, Inc.*, No. CV 18-725 WJ/GBW, 2019 WL 4643946, at *4 (D.N.M. Sept. 24, 2019) ("It is difficult to determine, based on existing Tenth Circuit precedent, whether 'good cause' has precisely the same meaning under Rules 16(b)(4) and 6(b)(1)."); *see also Rachel*, 820 F.3d at 394–95 (assessing "good cause" under Rule 6(b)(1) without assessing whether the party had made "diligent efforts" to comply with the Court's deadline).

Because Plaintiff has shown good cause and excusable neglect, the Court will extend the deadline for her to file her application for attorney's fees.

### III.      Plaintiff must re-file the application for attorney within seven days.

Plaintiff's fee application, as filed, is insufficient. *See* Doc. 233. The Court will allow Plaintiff to re-file the application within seven days of this order. The Court will not extend this deadline, absent extraordinary circumstances.

In the fee application, Plaintiff's counsel, Boglarka Foghi, requests to be paid $350/hour for 67.6 hours of work. Doc. 233 at 4. However, as APS explains, Plaintiff did not "include an itemized, meticulous and contemporaneous accounting of her time, as is required for a fee application." Doc. 260 at 8; *see also Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) ("[W]e require that lawyers keep meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'") (quoting *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983)). Instead, Plaintiff provided a summary of her time entries that were "recorded contemporaneously, or otherwise maintained in the ordinary course of [Plaintiff's counsel's] law practice." Doc. 233 at 2. Counsel states that what she "[a]ttached as Exhibit A are true and correct copies of the billing records and time entries supporting the fees and expenses requested herein." *Id.* at 4. However, no exhibit was attached.

Plaintiff must provide the Court with "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (citation omitted). She has not done so here. The Court will allow Plaintiff a short period of time to cure this deficiency.

Plaintiff's cured attorney fee application is due seven days after the entry of this order. APS's objections to the reasonableness of Plaintiff's fees are due fourteen days after Plaintiff's fee application is filed.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge