**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TATIA LIPE,

      Plaintiff,

v.                                  No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

      Defendant.

**PLAINTIFF'S OPPOSED CONSOLIDATED MOTION IN LIMINE NO. 1 TO
EXCLUDE OR STRICTLY LIMIT APS'S USE OF INVESTIGATIVE REPORTS AND
INVESTIGATIVE "FINDINGS" AS SUBSTANTIVE EVIDENCE; TO EXCLUDE
LEGAL/POLICY CONCLUSIONS, VERDICT-LIKE DETERMINATIONS, AND
EMBEDDED HEARSAY/THIRD-PARTY ACCUSATIONS; AND TO PREVENT
"NOTICE/STATE-OF-MIND" END-RUNS**

Plaintiff Tatia Lipe ("Plaintiff"), by and through counsel, moves in limine for an Order excluding

or strictly limiting APS's anticipated use of internal investigative materials, including Robert

Caswell Investigations ("RCI") materials and related investigative summaries, findings, witness

statements, and interview narratives. This Motion consolidates the related evidentiary issues

created by APS's anticipated use of investigative reports, "exonerated" determinations,

embedded hearsay, outsider accusations, and "notice," "concern," "state of mind," or "effect on

listener" theories to place disputed accusations before the jury.

Plaintiff does not seek to prevent APS from calling competent witnesses with personal

knowledge or from offering properly authenticated, admissible records for a proper purpose.

Plaintiff seeks to prevent APS from using investigation reports and embedded accusations as a

backdoor substitute for admissible testimony, cross-examination, and the jury's own factfinding

role.

This Motion also does not seek to exclude otherwise admissible investigation-related evidence offered by Plaintiff for proper non-hearsay purposes, impeachment, notice, APS's knowledge, motive, pretext, reliance, inconsistent statements, or credibility. Plaintiff seeks to prevent APS from using investigative conclusions, embedded hearsay, and "exonerated" language as substantive proof while preserving Plaintiff's right to use the investigation materials for proper evidentiary purposes.

Pursuant to D.N.M.LR-Civ. 7.1(a), Plaintiff sought APS's position on this motion. As of the time of filing, APS had not stated that it does not oppose the motion, and Plaintiff therefore treats the motion as opposed.

## I. RELIEF REQUESTED

Plaintiff requests an Order excluding, or in the alternative strictly limiting, APS's use of the following:

1. Investigative reports and investigative summaries prepared by RCI or other investigators, including the February 7, 2023 report authored by MG Barreras and the April 13, 2023 report authored by Tim Gonterman, to the extent APS seeks to offer them as business records, substantive proof, or quasi-official findings;

2. Investigative findings, "exonerated" determinations, "not sustained," "not factual," "unsubstantiated," "unsupported," policy-compliance conclusions, credibility determinations, and similar evaluative conclusions;

3. Any statement or argument that an investigator, APS agent, or outside reviewer already determined that APS did not retaliate, discriminate, interfere with FMLA rights, defame Plaintiff, breach a contract, violate policy, or violate Plaintiff's rights;

2

4. Parent, student, advocate, staff, or third-party accusations offered for their truth, including accusations that Plaintiff was "behind," failed to provide services, failed to see students, failed to document services, failed to complete PTGs, or failed to satisfy job expectations;

5. Hearsay-within-hearsay contained in reports, emails, system narrative fields, interview summaries, investigation notes, or administrative materials unless APS establishes a valid hearsay exception or non-hearsay purpose for each layer;

6. Statements framed as "concern," "belief," "worry," "confusion," "notice," "effect on listener," or Rule 803(3) "state of mind" evidence where the statement embeds an accusation of Plaintiff's past conduct and APS seeks to use the accusation substantively;

7. Argument, testimony, or publication suggesting that any statement admitted for a limited non-hearsay purpose proves the truth of the underlying accusation.

In the alternative, Plaintiff requests that APS be required, outside the presence of the jury and before any reference, publication, testimony, or argument, to identify each proposed statement or excerpt, the sponsoring witness, the precise evidentiary purpose, the hearsay exception or non-hearsay theory for the report or record itself, the hearsay exception or non-hearsay theory for each embedded statement, and any proposed limiting instruction. Plaintiff further requests pretrial redaction of findings, conclusions, credibility determinations, factual-basis accusations, and any hearsay layer that lacks an independent basis for admission.

## II. BRIEF FACTUAL BASIS

APS has relied on internal investigation materials and related witness narratives throughout this litigation. The investigative materials include interview summaries, third-party accusations, parent or student statements, staff allegations, credibility commentary, evaluative determinations, and "exonerated" or similar conclusions. These materials were not ordinary operational records

documenting routine activity. They were created to evaluate contested allegations, resolve disputes, and generate conclusions regarding Plaintiff and APS personnel.

The danger at trial is straightforward. APS may attempt to present its own investigation materials as "business records" or "notice" evidence while inviting the jury to treat the accusations and investigative conclusions as true. APS should not be permitted to place its selected investigative narrative before the jury and then argue that the investigation proves Plaintiff's alleged nonperformance or APS's lack of liability.

### A.  Plaintiff's Preserved Uses of Investigation Materials

Plaintiff's motion is directed to preventing APS from using investigation materials—particularly investigative "findings," verdict-like labels (e.g., "exonerated," "not sustained"), credibility determinations, and embedded third-party accusations—as substantive proof of the truth of disputed allegations or of non-liability. This motion is not a request for a blanket exclusion of all investigation-related materials for all purposes.

Accordingly, to the extent any investigation report, investigative summary, interview narrative, witness statement, email, or system entry is admitted or used at trial (whether by APS or Plaintiff), Plaintiff expressly preserves the right to use such materials, consistent with the Federal Rules of Evidence and subject to appropriate limiting instructions, for the following proper purposes:

- **Impeachment / prior inconsistent statements and credibility testing.** Plaintiff may confront investigators, APS decisionmakers, and other witnesses with inconsistencies, omissions, or changes over time reflected in investigation materials to test credibility and accuracy.

- **Bias, motive, or slant.** Plaintiff may use investigation materials to demonstrate bias, motive, partiality, or slant by investigators and APS decisionmakers, including selective collection or reporting of information, subject to Rule 403. See *United States v. Abel*, 469 U.S. 45 (1984).

- **Pretext and shifting explanations**. Plaintiff may use investigation materials to show that APS's stated reasons, narratives, or justifications changed over time, were inconsistent across internal channels, or were later backfilled, as evidence relevant to pretext.

- **"What APS said when" (timeline) and effect on the listener—without offering accusations for their truth.** Plaintiff may offer limited excerpts to establish notice, timing, sequence, and the fact that certain statements were made to particular APS personnel (and the responses taken), without urging the truth of embedded accusations, with an appropriate limiting instruction as needed. See *Tennessee v. Street*, 471 U.S. 409 (1985).

Nothing in this preserved-use section authorizes either party to use "impeachment," "notice," or "timeline" as a pretext to publish otherwise inadmissible accusations to the jury for their truth. Plaintiff maintains that any investigative "findings," verdict-like determinations, and embedded accusations remain subject to exclusion or strict limitation, including under Rule 403, and that the Court should require redactions and limiting instructions sufficient to prevent the jury from treating investigation materials as an authoritative adjudication of the disputed facts.

## III. ARGUMENT

**A. Investigative reports prepared to evaluate contested allegations are not automatically admissible business records.**

5

Rule 803(6) does not admit every document retained in an entity's files. A business record must satisfy the rule's foundational requirements, and the record remains inadmissible if the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

The business-records exception rests on reliability arising from routine, regular, non-adversarial recordkeeping. It does not provide a shortcut for admitting reports created to investigate contested allegations, assess blame, evaluate credibility, and generate conclusions. In *Palmer v. Hoffman*, 318 U.S. 109 (1943), the Supreme Court rejected use of the business-records exception for an accident report prepared for litigation-related purposes because such reports are not the type of routine business records the exception was designed to admit.

The same principle applies here. The RCI materials and related investigative documents are not routine records such as attendance logs, payroll records, scheduling entries, or contemporaneous operational documentation. They are investigative products created to evaluate allegations and generate findings. APS's possession of those reports does not transform them into admissible business records.

**B. Investigative findings, "exonerated" determinations, and legal or policy-compliance conclusions invade the Court's and jury's roles.**

It is the Court's role to instruct the jury on the law, and it is the jury's role to decide disputed facts. APS may not use investigators, reports, or witnesses to tell the jury that APS did not retaliate, did not discriminate, did not interfere with FMLA rights, did not defame Plaintiff, did not breach contract obligations, or acted lawfully.

The Tenth Circuit has made clear that testimony that states legal conclusions or instructs the jury on the law is inadmissible. *Specht v. Jensen*, 853 F.2d 805, 808-10 (10th Cir. 1988) (en banc).

6

The same problem exists when APS attempts to use an investigative report to announce "findings," "exonerated" determinations, policy-compliance conclusions, or credibility determinations that effectively tell the jury how to decide disputed liability issues.

The word "exonerated" is especially prejudicial. It is not a neutral description of conduct. It tells the jury that a person has already been cleared. That is a verdict word, and it invites the jury to defer to an investigator rather than decide the evidence independently. At minimum, such language must be redacted before any report excerpt is used for a permissible limited purpose.

**C. Embedded accusations must independently satisfy Rule 805.**

Even if APS could establish some foundation for a report, email, system entry, or administrative record, that does not make embedded statements admissible. Rule 805 provides that hearsay within hearsay is admissible only if each part of the combined statements conforms with an exception to the hearsay rule. Fed. R. Evid. 805.

The Tenth Circuit recognizes that Rule 803(6) does not automatically admit every statement contained within a business record. *United States v. Gwathney*, 465 F.3d 1133, 1141-42 (10th Cir. 2006). The proponent must establish admissibility for the record and for each embedded statement offered for its truth.

The investigative materials and related records contain statements from parents, students, advocates, staff, and other third parties. APS may not prove alleged nonperformance by routing those accusations through an investigator, administrator, email, Synergy narrative field, MaxCapture note, or other document. If APS believes a declarant has admissible testimony, APS may call that witness and subject the testimony to foundation, oath, and cross-examination. APS may not use the report or record as a hearsay delivery system.

**D. "State of mind," "concern," "notice," and "effect on listener" theories cannot be used as end-runs around hearsay.**

Rule 803(3) allows certain statements of then-existing state of mind, emotion, sensation, or physical condition. But the rule expressly excludes "a statement of memory or belief to prove the fact remembered or believed," except in circumstances not applicable here. Fed. R. Evid. 803(3). The Supreme Court rejected the use of state-of-mind evidence as a backdoor method to prove past conduct in *Shepard v. United States*, 290 U.S. 96, 105-06 (1933). The Tenth Circuit has applied the same limitation. See *United States v. Joe*, 8 F.3d 1488, 1492-94 (10th Cir. 1993); *United States v. Ledford*, 443 F.3d 702, 709-10 (10th Cir. 2005).

APS should therefore not be permitted to offer statements such as "I was concerned because Plaintiff was not seeing students" or "I was worried because Plaintiff was behind" and then argue the embedded "because" clause for its truth. The phrase "I was concerned" may describe a state of mind. The factual basis - that Plaintiff was allegedly behind or not seeing students - is an accusation of past conduct. APS cannot use the declarant's asserted emotion as a vehicle to prove the accusation.

Nor should APS be permitted to use "notice" or "effect on listener" labels to publish detailed accusations and then argue those accusations substantively. If the legitimate purpose is only to show APS received a complaint, the evidence should be limited to that purpose and sanitized accordingly. APS does not need to parade the factual details of the accusation before the jury unless those factual assertions are independently admissible.

**E. Rule 403 independently requires exclusion or strict limitation.**

Even if limited portions of investigative materials or third-party statements have some permissible purpose, the Court should exclude or strictly limit them under Rule 403. Fed. R.

8

Evid. 403. Formal investigation reports, "findings," and repeated accusations create a serious risk that the jury will treat APS's chosen investigation as a neutral adjudication and will treat repeated hearsay as proof.

That risk would unfairly prejudice Plaintiff, confuse the issues, mislead the jury, and waste trial time by requiring mini-trials over each embedded accusation, interview summary, investigative assumption, and conclusion. The Court should require a redaction-first and proffer-first procedure before APS is permitted to use any such material.

## IV. REQUESTED PROCEDURE IF ANY LIMITED USE IS PERMITTED

If the Court permits APS to use any portion of an investigative report, investigation-related email, witness summary, third-party complaint, or statement offered for notice/effect on listener/state-of-mind purposes, Plaintiff requests that APS be required to make a pretrial or sidebar proffer outside the presence of the jury identifying:

1. the precise statement or excerpt;

2. the sponsoring witness;

3. the declarant for each embedded statement;

4. the date and source of the statement;

5. the exact purpose for which APS offers the statement;

6. whether APS seeks to offer the statement for truth, notice, motive, effect on listener, state of mind, or another limited purpose;

7. the hearsay exception or non-hearsay theory for each layer;

8. whether the excerpt contains findings, credibility determinations, legal conclusions, policy conclusions, or factual-basis accusations;

9. the proposed redactions; and

9

10. the proposed limiting instruction.

Plaintiff further requests that the Court prohibit APS from arguing or implying that any statement admitted for a limited purpose proves the truth of the underlying accusation.

## V. CONCLUSION

Plaintiff respectfully requests that the Court grant this Motion and exclude or strictly limit APS's use of investigative reports, investigative findings, "exonerated" determinations, legal conclusions, embedded hearsay, outsider accusations, and state-of-mind/notice/effect-on-listener end-runs. In the alternative, Plaintiff requests a strict proffer-first, redaction-first procedure and limiting instructions sufficient to prevent APS from using inadmissible accusations and investigative conclusions as substantive proof.

Respectfully submitted,

FOGHI LAW FIRM, LLC

By: */s/ Boglarka A. Foghi, Esq.*
Boglarka A. Foghi
4313 Corrales Rd., P.O. Box 944
Corrales, NM 87048
Telephone: (505) 220-5691
Email: foghilaw@yahoo.com
*Attorney for Plaintiff Tatia Lipe*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of May, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the notice of electronic filing, including:

M. Karen Kilgore
Cuddy & McCarthy, LLP
1701 Old Pecos Trail
Santa Fe, NM 87505
Tel: (505) 988-4476
kkilgore@cmc.law

10

Attorneys for Albuquerque Public Schools

Natasha A. Martinez-Wesenberg
Patti Williams
Wiggins, Williams & Wesenberg PC
1803 Rio Grande Blvd. NW
Albuquerque, NM 87104
Tel: (505) 764-8400
nwesenberg@wwwlaw.us
pwilliams@wwwlaw.us
Attorneys for Albuquerque Public Schools

*/s/ Boglarka A. Foghi, Esq.*
Boglarka A. Foghi