**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TATIA LIPE,

    Plaintiff,

v.                                No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

    Defendant.

**PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE THE WALSH GALLEGOS ATTORNEY MEMORANDUM/REPORT AS INADMISSIBLE ATTORNEY OPINION, LEGAL ANALYSIS, POLICY-COMPLIANCE CONCLUSIONS, EMBEDDED HEARSAY, AND UNFAIRLY PREJUDICIAL QUASI-INVESTIGATIVE "FINDINGS"**

Plaintiff Tatia Lipe moves in limine for an Order excluding at trial the memorandum/report authored by Karla Schultz of Walsh Gallegos Trevino Kyle & Robinson P.C., dated February 22, 2023, concerning a "State Ombud Complaint Regarding District Social Worker - Lipe" (the "Walsh Gallegos Report").

This Motion is not based merely on confidentiality labels. The fundamental problem is evidentiary. The Walsh Gallegos Report is an attorney-created document that summarizes accusations, interviews, law, policy, analysis, and findings. It is not a neutral business record, not a system-generated record, not a percipient witness account, and not admissible proof that Plaintiff failed to perform, violated policy, or that APS acted lawfully.

APS should not be permitted to place an attorney's evaluative memorandum before the jury as a substitute for admissible testimony, foundation, cross-examination, and the jury's own factfinding role.

Pursuant to D.N.M.LR-Civ. 7.1(a), Plaintiff sought APS's position on this motion. As of the time of filing, APS had not stated that it does not oppose the motion, and Plaintiff therefore treats the motion as opposed.

## I. RELIEF REQUESTED

Plaintiff requests an Order:

1. Excluding the Walsh Gallegos Report in its entirety because it contains attorney opinion, legal analysis, policy analysis, policy-compliance conclusions, attorney conclusions, credibility determinations, embedded hearsay, and unfairly prejudicial quasi-findings concerning disputed issues in this case;

2. Prohibiting APS from introducing, publishing, displaying, reading from, or referencing the Walsh Gallegos Report, its contents, its findings, or any conclusions drawn from it, for any purpose at trial unless APS first obtains a ruling outside the presence of the jury;

3. Prohibiting APS from using the Walsh Gallegos Report as a business record, investigative finding, official determination, policy-compliance determination, or substitute for testimony from witnesses with personal knowledge;

4. Prohibiting APS from using the Report to prove or imply that Plaintiff failed to perform, failed to see students, failed to document services, failed to complete PTGs, violated policy, or that APS acted lawfully or appropriately; and

5. In the alternative, if the Court permits admission of any portion of the Walsh Gallegos Report, requiring APS to submit the precise excerpt for review outside the presence of the jury; limiting admissibility to non-conclusory, non-evaluative factual chronology, if any, that independently satisfies the Federal Rules of Evidence; requiring redaction of all legal analysis, policy analysis, policy-compliance conclusions, attorney conclusions, findings, credibility determinations, and outsider statements lacking an independent hearsay exception for each layer; and requiring a limiting instruction that the jury decides the facts and that any admitted portion is not a legal or factual determination.

2

## II. BRIEF FACTUAL BASIS

The Walsh Gallegos Report is a memorandum prepared by outside counsel, Karla Schultz, for APS personnel. It is explicitly labeled "CONFIDENTIAL INFORMATION / ATTORNEY WORK PRODUCT" and "ATTORNEY-CLIENT PRIVILEGED COMMUNICATION." The Report summarizes allegations, describes an investigation, including interviews with identified individuals, analyzes "Applicable Law and District Policies," and presents "Findings" and a "Summary."

The Report contains legal analysis, policy analysis, evaluative conclusions, attorney findings, and opinions regarding Plaintiff's conduct and APS policy. It is not a neutral business record or ordinary operational document. It is an attorney-created memorandum prepared by outside counsel for APS personnel in connection with disputed allegations and legal-policy analysis.

The Report therefore presents multiple evidentiary problems independent of any confidentiality label. It compiles out-of-court statements from others, filters those statements through counsel's analysis, applies law and District policy, and reaches conclusions on matters the jury must decide from admissible evidence.

## III. ARGUMENT

### A. The Walsh Gallegos Report is not admissible merely because APS possesses it or because it was created during an internal review.

Rule 803(6) does not admit every document maintained by an entity. A business record must satisfy the rule's foundational requirements and remains inadmissible where the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

The Walsh Gallegos Report was not created as a routine operational record. It was prepared by outside counsel to evaluate disputed allegations, analyze law and District policy, summarize interviews, and state findings. It is therefore fundamentally different from ordinary attendance records, payroll records, leave records, or system-generated student-service records.

APS should not be permitted to present an attorney-authored evaluative memorandum as though it were a neutral business record establishing disputed facts. APS may call witnesses with personal knowledge and may offer properly authenticated records that independently satisfy the Rules of Evidence. APS may not use an attorney report to bypass those requirements.

**B. The Report's legal analysis, policy-compliance conclusions, and attorney findings invade the Court's and jury's roles.**

The Report includes legal analysis, policy-compliance conclusions, findings, and evaluative determinations concerning disputed conduct. APS may not use an attorney-authored memorandum to tell the jury what law required, whether APS policy was satisfied, whether Plaintiff violated policy, whether APS complied with its obligations, whether APS personnel acted appropriately, or whether accusations against Plaintiff were substantiated.

The Tenth Circuit prohibits testimony that states legal conclusions, applies legal standards to disputed facts, or effectively instructs the jury how to decide the case. Specht v. Jensen, 853 F.2d 805, 808-10 (10th Cir. 1988) (en banc). The same concern is present when a party attempts to use an attorney-authored memorandum containing legal analysis, policy-compliance conclusions, findings, or evaluative determinations concerning disputed conduct. Such material does not assist the jury in understanding evidence; it risks supplanting the jury's independent factfinding role.

4

The danger is especially serious here because APS may attempt to use the Walsh Gallegos Report to reinforce its narrative that Plaintiff was behind, failed to perform, failed to document, failed to provide services, failed to complete PTGs, or violated expectations. Those are disputed factual issues. APS must prove them through admissible testimony and properly authenticated records, not through an attorney's written conclusions.

**C. The Report contains embedded hearsay and hearsay within hearsay.**

The Walsh Gallegos Report summarizes interviews, messages, complaints, and communications from individuals who are not the attorney-author. Those statements are out-of-court statements. If APS offers them to prove that Plaintiff failed to perform, failed to see students, failed to document, failed to complete PTGs, or otherwise engaged in misconduct, they are hearsay.

Rule 805 requires each layer of hearsay to independently satisfy an exception. Fed. R. Evid. 805. The Tenth Circuit recognizes that the business-records exception does not automatically admit every statement embedded inside a business record. See United States v. Gwathney, 465 F.3d 1133, 1141-42 (10th Cir. 2006).

APS may not use an attorney memorandum as a hearsay delivery system. If APS believes a witness has admissible testimony, APS may call that witness and subject the testimony to oath, foundation, personal knowledge requirements, and cross-examination. APS may not route parent, student, staff, or advocate accusations through an attorney memorandum and then ask the jury to treat those accusations as proof.

**D. The Report is unfairly prejudicial and misleading under Rule 403.**

Even if APS could identify some limited relevance, the Report should be excluded under Rule 403. Fed. R. Evid. 403. An attorney-authored report carries an unwarranted aura of

authority because it presents counsel's analysis, conclusions, and selection of facts under the appearance of an official determination. The danger is that the jury will treat counsel's findings as proof rather than independently evaluate admissible evidence.

Admission would also create mini-trials over every embedded accusation, interview summary, omitted fact, legal premise, policy interpretation, and conclusion. That would confuse the issues, waste time, mislead the jury, and unfairly prejudice Plaintiff.

A limiting instruction after the jury has heard counsel's analysis, findings, or legal conclusions would not adequately cure the prejudice. The Court should exclude the Report or, at minimum, require a proffer-first and redaction-first procedure before APS references, displays, reads from, publishes, or relies on any portion of it.

## E. Privilege and work-product concerns provide an additional basis for exclusion or strict limitation.

Although Plaintiff's motion does not depend on privilege or work-product protection, the Report is also marked attorney-client privileged and attorney work product. APS should not be permitted to selectively place counsel's analysis, mental impressions, and conclusions before the jury while avoiding the consequences of doing so.

If APS contends privilege or work-product protection has been waived or that it may use the Report for a limited purpose, that issue should be resolved outside the jury's presence before any reference is made. Waiver, if any, does not make the Report relevant, non-hearsay, non-prejudicial, or admissible.

## F. Redaction and limiting procedures are required if the Court permits any limited use.

If the Court permits APS to use any portion of the Report, APS should be required to make a pretrial proffer outside the presence of the jury identifying the precise excerpt, purpose,

sponsoring witness, declarant for each embedded statement, and evidentiary theory for each layer. The Court should redact legal analysis, policy analysis, policy-compliance conclusions, attorney conclusions, findings, credibility determinations, and embedded hearsay before any portion is displayed, read, published, referenced, or argued.

Plaintiff further requests that APS be prohibited from arguing or implying that any admitted portion of the Report proves the truth of the underlying accusations or constitutes a legal, policy, factual, or credibility determination binding on the jury.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court grant this Motion and exclude the Walsh Gallegos Report in its entirety. The Report is not ordinary evidence. It is an attorney-authored evaluative memorandum containing legal analysis, policy analysis, policy-compliance conclusions, attorney findings, credibility-laden summaries, and embedded hearsay about disputed issues the jury must decide.

In the alternative, Plaintiff requests pretrial review outside the presence of the jury, redaction of legal analysis, policy-compliance conclusions, attorney findings, credibility determinations, and embedded hearsay, together with appropriate limiting procedures and instructions.

Respectfully submitted,

By: /s/ *Boglarka A. Foghi, Esq.*
Boglarka A. Foghi
FOGHI LAW FIRM, LLC
4313 Corrales Rd., P.O. Box 944
Corrales, NM 87048
Telephone: (505) 220-5691
Email: foghilaw@yahoo.com
*Attorney for Plaintiff Tatia Lipe*

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of May, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the notice of electronic filing.


*/s/ Boglarka A. Foghi, Esq.*
Boglarka A. Foghi