IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

     Defendants.

### AFFIDAVIT OF GERRY RICHARDSON REGARDING PLAINTIFF'S DISCOVERY PRODUCTIONS, AUDIO-LINK PRODUCTIONS, EXHIBIT TRANSMISSIONS, AND PHYSICIAN RELEASES

My name is Gerry Richardson. I am over the age of eighteen, competent to testify, and have

personal knowledge of the matters stated in this Affidavit unless otherwise stated.

1. I formerly worked as the longtime paralegal to attorney Boglarka A. Foghi in connection

   with this case and other matters. I retired in or around August 2025.

2. During my work on this case, I assisted with Plaintiff's discovery productions, exhibit

   transmissions, Google Drive productions, email transmissions to opposing counsel, and

   organization of production materials.

3. My statements in this Affidavit are based on my own experience, personal knowledge,

   and direct involvement in performing my paralegal duties in this matter. As part of my

   job, I was a direct point of contact for counsel and was responsible for assisting with the

   organization, transmission, and tracking of discovery productions, exhibits, filings,

   Google Drive links, embedded-link documents, audio-link documents, releases, and

   related materials provided to opposing counsel.

4. During my work on the case, Plaintiff's materials were transmitted to opposing counsel

   through email and Google Drive links. The production method included Bates-labeled

   documents and production logs identifying the materials produced.

5.  The production log attached to this Affidavit as Exhibit 1 is the production log I understand to reflect Plaintiff's discovery production history, including Bates ranges, descriptions, page counts, and links between discovery requests and produced files.

6.  The production log identifies Plaintiff's production as including materials bearing Bates ranges beginning at PTL0001/PLT0001 and extending through at least PLT0987, along with descriptions of the documents produced and the discovery requests to which they related.

7.  Plaintiff's productions were not limited to a single category of documents. They included, among other things, journal materials, school social-work records, MaxCapture notes, Progress Toward Goals records, student-service records, parent communications, caseload and staffing communications, teletherapy and remote-service documents, sign-in/sign-out logs, emails, text messages, investigation-related documents, leave/FMLA/ADA documents, damages documents, refinance documents, salary/administrator-pay records, and materials involving APS's investigation and appeal process.

8.  The production log specifically identifies MaxCapture and service-related records, including redacted Plaintiff MaxCapture notes for school year 2022–2023, Progress Toward Goals entries, and other providers' MaxCapture/service records. These records directly relate to student-service documentation, IEP preparation, service logs, and the student-service context at issue in this case.

9.  The production log also identifies FERPA-redacted communications and records concerning student services, caseload changes, online services, parent communications,

added students, teletherapy/remote services, crisis-response procedures, and school social-work documentation.

10. The production log identifies text messages involving Antoinette Romero, including a collection of text messages between Plaintiff and Ms. Romero. These materials provide context for the relationship, communications, and issues later raised in this litigation.

11. The production log identifies a staff sign-in and sign-out log, which concerns employee attendance, work hours, departures, and related accountability issues.

12. The production log identifies an October 28, 2022 email concerning slanderous or false comments allegedly made regarding Plaintiff's work performance, professional reputation, and health.

13. The production log identifies leave, FMLA, ADA, and HR-related materials, including documents concerning interference with leave, HR harassment, personal leave, tracking FMLA hours, and medical-documentation guidance.

14. The production log identifies damages-related materials, including administrator pay/salary contract documents, historical employment documentation, and home refinance documents. Those records were produced to support damages and lost-earnings issues.

15. The production log identifies investigation-related documents, including the Office of Equal Opportunity Services investigation appeal process guide and EOS finding letters concerning APS officials. These materials were not withheld from APS through the production process reflected in the log.

16. The production log identifies a document with embedded digital links provided to Defendant. To my understanding, that entry reflects the same production practice

described above: materials that were provided through live embedded links where direct file attachment was not practical or appropriate.

17. To my knowledge, APS received these materials through the production methods used in this case, including email and Google Drive links. APS was not required to guess what was being produced because the production log identified Bates ranges, descriptions, and file names.

18. Audio materials were also provided through documents containing live links to the audio files. Because audio files are often too large for ordinary email attachment transmission, the audio was provided by Word documents or production documents containing embedded live hyperlinks to the audio files, including Google Drive links or similar live-access links.

19. To my knowledge, the audio-link documents were transmitted to opposing counsel as part of Plaintiff's production process. The purpose of those documents was to give opposing counsel direct access to the audio evidence through embedded links rather than by attaching large audio files directly to email.

20. During my work on the case, I do not recall receiving any timely objection from opposing counsel stating that the Google Drive links or embedded audio links were inaccessible, broken, or insufficient as a method of production.

21. I am familiar with Plaintiff's counsel's efforts to provide APS with information concerning Plaintiff's medical providers, signed releases, and damages-related information during discovery.

22. On or about August 15, 2024, Plaintiff's counsel transmitted Plaintiff's provider information and signed releases to APS counsel. The provider information identified,

4

among others, Presbyterian Medical Center providers, VA Health Care providers, Gonstead Physical Medicine, and Albuquerque Neck and Back Pain Center. A true and correct redacted copy of that transmittal is attached as Exhibit 3.

23. I reviewed APS's Certificate of Service filed as Doc. 52, which reflects that APS served its First Supplemental Rule 26(a)(1) Initial Disclosures on October 23, 2024. I also reviewed APS's First Supplemental Rule 26(a)(1) Initial Disclosures. A true and correct copy of Doc. 52 and APS's First Supplemental Rule 26(a)(1) Initial Disclosures is attached as Exhibit 2.

24. APS's First Supplemental Rule 26(a)(1) Initial Disclosures identified Plaintiff's medical records by provider and Bates range, including Gonstead Physical Medicine records, VA records, Walgreens records, and a no-records notice from Gonstead Physical Medicine. APS identified those records as bearing Bates ranges TL000493 through TL001629.

25. I also reviewed communications reflecting that APS transmitted those supplemental disclosures and related materials to Plaintiff's counsel by email and provided an electronic file-sharing link to access the documents referenced in APS's First Supplemental Rule 26(a)(1) Initial Disclosures. A true and correct redacted copy of that transmittal communication is attached as Exhibit 4.

26. Based on the documents attached as Exhibits 2, 3, and 4, APS had Plaintiff's provider information and signed releases, identified Plaintiff's medical records by Bates range in APS's own supplemental Rule 26 disclosures, served a certificate of service regarding those disclosures, and transmitted access to the corresponding materials to Plaintiff's counsel.

27. I also reviewed the November 20, 2024 email transmitting Plaintiff's discovery responses and electronic production, including secure file-sharing access and audio-link production. A true and correct redacted copy of that communication is attached as Exhibit 5.

28. I also reviewed the August 2024 conferral email chain regarding medical records, provider information, releases, and damages. A true and correct copy of that communication is attached.

29. I also reviewed the August 21, 2024 email transmitting Plaintiff's provisional damages estimate.

30. I also reviewed the August 14, 2024 provider-list and VA-disability-rating materials.

31. Based on my personal work on the case, Plaintiff did not conceal the existence of productions, audio links, releases, or exhibits from opposing counsel. Plaintiff's materials were transmitted by organized production methods, including emails, Google Drive links, Word/link documents, Bates labels, and production logs.

32. If APS now claims it cannot locate materials that were transmitted, linked, identified, or made available during discovery, that would not be consistent with the production methods I used or helped administer in this case. The materials were not hidden; they were produced or made available through the production methods used in this case.

33. I understand that APS has filed motions in limine claiming that Plaintiff failed to provide records or evidence. Based on my personal knowledge of the productions I handled or assisted with, many of those categories were transmitted, linked, identified in the production log, made available through Google Drive or embedded links, or disclosed through releases allowing APS to obtain records directly.

34. To the extent APS contends it cannot locate a document, audio link, release, or exhibit that was previously transmitted or identified, that does not mean Plaintiff failed to provide it. During my work on the case, Plaintiff used organized production methods that allowed opposing counsel to access the materials produced.

35. Nothing in this Affidavit is intended to provide legal argument. I am stating facts concerning my work as a paralegal, the production methods used, the types of materials transmitted, and the fact that Plaintiff's records, exhibits, audio links, and releases were provided or made available to opposing counsel through the discovery process.

FURTHER AFFIANT SAYETH NAUGHT.

**STATE OF NEW MEXICO.**  )
                          ) ss.
**COUNTY OF** _Bernalillo_  )

I declare under oath that the foregoing is true and correct to the best of my personal knowledge.

DATED: _May. 31_____, 2026

_Gerry Richardson_____

Gerry Richardson

SUBSCRIBED AND SWORN before me this _31st_ day of _May_____, 2026, by

Gerry Richardson.

_____
Notary Public

My commission expires: _Sept 6, 2029_

> TATIA HARRIS-LIPE
> Notary Public
> State of New Mexico
> Comm. # 2007324
> My Comm. Exp. Sep 6, 2029