IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

Plaintiff,

v. No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ALL HEARSAY TESTIMONY AND DOCUMENTS [DOC. 299]**

## INTRODUCTION

APS's Motion should be denied. It is not a targeted evidentiary objection. It is a sweeping request to exclude "all hearsay testimony and documents" by category, without identifying the actual trial evidence, specific speakers, specific statements, sponsoring witnesses, evidentiary purpose, authentication foundation, hearsay layer, or governing rule. That is not how the Federal Rules of Evidence operate.

The Motion is legally unsupported and strategically misleading because it treats entire forms of evidence - audio recordings, emails, internal APS communications, deposition testimony, exhibits, and documents already used in this litigation - as though they are inadmissible by label. A recording is not a hearsay category. An email is not inadmissible merely because Plaintiff was not copied. A deposition excerpt is not inadmissible because APS dislikes the contradiction it creates. And an APS employee's own recorded statement is not categorically barred when the employee authenticated the voice, participated in the conversation, and remains available for examination.

Sections B and C are the clearest examples. APS asserts that the Rule 801(d) exclusions "do not apply" because there is no prior inconsistent sworn statement, no prior consistent statement to rebut fabrication, and no identification testimony. Doc. 299 at 3-4. APS cannot make that representation as a blanket proposition. APS cannot obtain an advance ruling that no Rule 801(d) scenario exists when the record includes sworn RCI testimony and sworn deposition testimony reflecting contradictions that will bear directly on credibility at trial. APS took and defended depositions in which witnesses authenticated their own voices, confirmed their own conversations with Plaintiff, verified statements, and gave testimony that Plaintiff may use for impeachment, contradiction, party-opponent admissions, and, where the requirements are met, substantive non-hearsay under Rule 801(d). The deposition record is not unknown to APS. APS's blanket assertion is therefore not a record-based evidentiary argument; it is an attempt to erase categories of impeachment and admissions before the Court sees the evidence.

Section C is equally defective. APS quotes authority for the proposition that hearsay determinations are "particularly fact and case specific," then immediately asks the Court to hold that none of the Rule 803, 804, or 807 exceptions can apply to any of Plaintiff's testimony, recordings, documents, emails, or exhibits. Doc. 299 at 4 (quoting *United States v. Harper*, 118 F.4th 1288, 1295 (10th Cir. 2024)). That internal tension is the cleanest reason to deny the motion: APS invokes a fact-specific standard while asking for a categorical ruling without specific facts, exhibits, statements, speakers, purposes, or foundation.

Plaintiff does not contend that every statement in every document, recording, email, or exhibit is admissible for every purpose. Plaintiff has already filed her own motion seeking to prevent APS from using investigative reports, embedded accusations, "notice," "state of mind," and verdict-like findings as hearsay delivery systems. Doc. 306. But APS is not entitled to invert

that concern into a one-sided exclusion order barring Plaintiff from using admissible evidence for proper purposes including notice, APS knowledge, motive, pretext, impeachment, prior inconsistent statements, effect on listener, party-opponent admissions, business records, present-sense or contemporaneous records where applicable, recorded recollection where applicable, and credibility testing.

Representative IPRA custodian communications attached as Exhibits A-C confirm that APS itself has treated responsive records as existing public records gathered through APS custodians, departments, and, for email searches, APS Information Technology. Those exhibits do not convert every embedded assertion into admissible substantive evidence; they do defeat APS's attempt to characterize APS-produced records as categorically unauthenticated, unreliable, or inadmissible by label.

**I. APS's Motion Is an Improper Blanket Objection, Not a Proper Motion in Limine.**

A motion in limine must identify evidence with enough specificity for the Court to determine admissibility. APS does the opposite. It asks to exclude "all hearsay testimony and documents" and then groups together "audio recordings," "exhibits," "related e mails," internal APS communications, communications between Plaintiff and APS employees, and documents attached to prior pleadings. Doc. 299 at 1-3. That is not a proper evidentiary proffer. It is a broad objection to Plaintiff's proof before the Court knows what Plaintiff will offer, why she will offer it, who will sponsor it, whether the witness will testify live, and whether the evidence will be offered for truth or for a non-hearsay purpose.

APS's own motion confirms the problem. APS admits that, at the time it filed the motion, Plaintiff had not yet provided her trial exhibit list and that APS may revisit the issue in future pleadings. Doc. 299 at 3. That admission confirms the Motion is premature as a global exclusion

request. APS had no trial exhibit list, no complete statement-by-statement analysis, and no basis to demand categorical exclusion of entire categories of Plaintiff's proof.

The defect matters because the hearsay rule is purpose-specific. An out-of-court statement is hearsay only if offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The same communication may be inadmissible for one purpose but admissible for another. Fed. R. Evid. 105; see *Tennessee v. Street*, 471 U.S. 409, 414 (1985). Emails, recordings, reports, and deposition excerpts may be admissible to show notice, timing, APS's knowledge, the effect on a listener, motive, pretext, inconsistent explanations, impeachment, or what was said when, even if the same words could not be used to prove the truth of every embedded assertion.

APS's request also ignores Rule 805's actual operation. Rule 805 does not require exclusion of an entire document merely because it contains more than one layer of statements. It requires the proponent to establish an admissible basis for each layer offered for truth. Fed. R. Evid. 805. Plaintiff accepts that rule. APS's error is asking the Court to skip that layer-by-layer analysis and exclude everything at once.

**II. APS Cannot Exclude Audio Recordings by Calling the Medium "Hearsay."**

APS repeatedly places "audio recordings" inside its hearsay bucket. Doc. 299 at 1-2. That is not how the rule works. A recording is a medium of proof. It may contain statements, conduct, admissions, questions, contemporaneous reactions, silence, tone, timing, and context. The admissibility question depends on the actual speaker, statement, purpose, foundation, and rule.

The problem is sharper here because every recordings involve Plaintiff as a participant and APS personnel or APS witnesses as the speakers. Those recordings may show what APS personnel said to Plaintiff, what Plaintiff contemporaneously reported, what APS knew, how APS responded, whether APS's explanations changed, whether witnesses later contradicted

themselves, and whether APS's stated reasons are pretextual. Those are not abstract hearsay uses. They are central trial purposes.

The recordings also have authentication routes APS ignores. Rule 901 requires only evidence sufficient to support a finding that the item is what the proponent claims. Fed. R. Evid. 901(a). Rule 901(b)(1) permits authentication through testimony of a witness with knowledge. Rule 901(b)(5) specifically permits voice identification based on hearing a voice firsthand or through a recording. The Tenth Circuit has recognized that voice identification under Rule 901 requires only minimal familiarity, and disputes about certainty generally go to weight rather than categorical admissibility. See United States v. Bush, 405 F.3d 909, 917-19 (10th Cir. 2005).

Plaintiff also can authenticate the recordings directly. All recordings at issue include Plaintiff as a participant. Plaintiff can testify from personal knowledge regarding the participants, familiar voices, context, dates or approximate timing, circumstances, preservation, and whether each recording fairly and accurately captures the conversation. That is a direct authentication route under Rule 901(b)(1) and, for familiar voices, Rule 901(b)(5).

Here, witnesses have authenticated their own voices and participation in deposition. For example, Antoinette Romero authenticated audio marked during her deposition: she recognized Dr. Bannerman's voice, acknowledged the meeting participants and context, and ultimately answered yes that the voice was hers. Romero Dep. 15:10-20:23. She also agreed after hearing a portion of the February 4, 2022 call that it was her conversation with Plaintiff, verified her statements as accurate, stood by them, and admitted she knew or was pretty sure Plaintiff was recording. Romero Dep. 31:3-31:12; 37:1-42:24; 47:1-47:12; 51:7-52:25. Anittra Atler likewise recognized voices on the January 11 PTG recording during deposition, including Plaintiff's voice

and her own voice, and gave admissions tied to the content of that recording. Atler Dep. 37:7-43:7.

The same principle applies to emails, text messages, MaxCapture notes, Synergy-related records, newsletters, meeting materials, and other APS-generated or APS-maintained materials that Plaintiff created, received, used, participated in, or that were marked, discussed, recognized, or authenticated during depositions. Plaintiff can authenticate the records she generated or used in the course of her APS work, including MaxCapture/Synergy-related entries, service-documentation materials, newsletters or communications in which she participated, and related records bearing APS-system metadata, timestamps, user information, contents, and other distinctive characteristics. Several witnesses also testified under oath regarding their own voices, communications, meeting participation, emails, text messages, and APS student-service records or notes. That deposition testimony can provide a foundation route under Rule 901(b)(1), Rule 901(b)(4), and, for voices, Rule 901(b)(5). It also may be used at trial for impeachment or other purposes permitted by the Federal Rules. See Fed. R. Civ. P. 32(a)(2).

APS therefore cannot reduce these materials to unidentified hearsay. The witnesses are not anonymous out-of-court declarants. They are APS personnel or witnesses who have been deposed, whose voices or communications can be authenticated through proper foundation, whose testimony is subject to examination, and who may be called at trial. If APS believes a specific recording requires additional foundation, the proper remedy is a specific objection or proffer. It is not a blanket order excluding recordings by medium.

**III. APS's Section B Is Not Merely Incomplete; It Is Contradicted by the Deposition and Impeachment Record.**

APS states that Rule 801(d) exclusions "do not apply" because there is supposedly no prior statement by any witness that is inconsistent with prior sworn testimony, no prior consistent

statement offered to rebut fabrication, and no identification evidence. Doc. 299 at 3-4. That assertion is unsupported and cannot be squared with the record APS helped create.

First, APS cannot represent as a global fact that no witness has made an inconsistent sworn statement. APS does not identify every witness. It does not identify the deposition testimony. It does not identify the trial testimony anticipated. It does not identify the recordings, emails, interview statements, or deposition excerpts Plaintiff may use. A blanket assertion that no Rule 801(d)(1) scenario can exist is not a basis for exclusion before trial.

Second, deposition testimony itself is sworn testimony. If a witness testifies at trial inconsistently with that witness's deposition testimony, Rule 801(d)(1)(A) may apply when the witness is subject to cross-examination and the prior inconsistent statement was given under penalty of perjury in a deposition. Fed. R. Evid. 801(d)(1)(A). APS's motion tries to preclude this entire category before the witness testifies. That request is facially premature.

Third, even when a prior inconsistent statement is not independently admissible as substantive evidence under Rule 801(d)(1)(A), it may still be used for impeachment under Rule 613. APS's Section B ignores that separate route. Plaintiff may confront a witness with the witness's prior inconsistent statement and, if the rule's requirements are met, use extrinsic evidence for impeachment. Fed. R. Evid. 613. That is especially important where witnesses authenticated recordings or deposition exhibits and later attempt to retreat from, minimize, or contradict those admissions.

Fourth, APS ignores party-opponent and agent statements. Rule 801(d)(2) is not limited to a formal spokesperson. Rule 801(d)(2)(D) covers a statement offered against an opposing party that was made by the party's agent or employee on a matter within the scope of that relationship while it existed. Fed. R. Evid. 801(d)(2)(D). Statements by APS administrators, supervisors,

HR/leave personnel, related-services leadership, social-worker witnesses, and investigators or decision participants may qualify depending on the speaker, subject matter, and timing. APS cannot obtain a blanket order that no APS employee statement can fit Rule 801(d)(2) without analyzing the speaker and scope.

Whether a particular APS employee statement satisfies Rule 801(d)(2)(D) is a preliminary admissibility question for the Court under Rule 104(a), not a basis for categorical exclusion. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).

Fifth, APS's motion cites "Fed. R. Evid. 802(d)(2)." Doc. 299 at 4. There is no Rule 802(d)(2); the applicable rule is Rule 801(d)(2). That miscitation underscores, rather than cures, the absence of the rule-specific analysis required for the sweeping relief APS seeks.

Sixth, the witnesses' availability cuts against APS, not for it. APS argues that certain declarants are available. If they are available, Plaintiff can call or cross-examine them. If they authenticated their voice, writings, emails, role, or participation in deposition, Plaintiff can lay foundation through them. If they contradict themselves, Plaintiff can impeach them. APS cannot use witness availability as a reason to exclude the very evidence those witnesses can authenticate and explain.

**IV. Plaintiff Can Identify Multiple Concrete Evidentiary Routes; APS's Blanket "No Exception Applies" Argument Is False.**

APS's motion should be denied because the principal evidentiary routes are apparent even now. The Court need not decide every exhibit before trial, but it should reject APS's categorical assertion that no exclusion or exception can apply.

Rule 801(c): many statements are not offered for truth. Plaintiff may offer communications and recordings to show notice, APS knowledge, protected activity, effect on the listener, motive,

pretext, timing, what Plaintiff reported, how APS responded, and whether APS later changed its explanations. Those are non-hearsay uses. See Street, 471 U.S. at 414.

Rule 801(d)(1)(A): deposition testimony may be used as a prior inconsistent sworn statement if the witness testifies inconsistently at trial and is subject to examination. APS's attempt to foreclose this rule before trial is premature.

Rule 801(d)(1)(B): prior consistent statements may become admissible if APS claims recent fabrication, improper influence, or motive. APS's own filings repeatedly attack Plaintiff's credibility and suggest fabrication, exaggeration, and litigation-driven narrative building. If APS opens that door, Plaintiff may invoke the rule where the timing and purpose requirements are met.

Rule 801(d)(2): statements by APS employees and agents concerning matters within the scope of their employment may be admissible against APS. That includes, where foundation is established, statements by administrators, supervisors, HR/leave personnel, related-services leadership, and APS witnesses about accommodation, leave, caseload, PTGs, documentation, investigations, and APS's reasons for its actions.

Rule 803(1) and Rule 803(3): contemporaneous notes, emails, or statements describing events as they occurred or reflecting then-existing state of mind, intent, plan, concern, or condition may qualify where the rule's requirements are met. Plaintiff does not seek to use Rule 803(3) as a backdoor to prove past conduct; Plaintiff seeks to preserve proper uses, including state of mind, notice, motive, and effect.

Rule 803(5): where a witness once knew about a matter, made or adopted a record when the matter was fresh, and cannot recall well enough to testify fully and accurately, recorded recollection may apply. APS cannot eliminate that route categorically before witnesses testify.

Rule 803(6): APS records, emails maintained in APS systems, sign-in/sign-out records, Synergy/MaxCapture records, and other institutional records may qualify as business records if a custodian or qualified witness lays the required foundation and the source or circumstances do not indicate untrustworthiness. Plaintiff has separately challenged APS's use of reconstructed or metadata-stripped system records, but that does not mean no APS record can ever be admitted by Plaintiff for a proper purpose. Nor can APS assume that all system-derived materials are hearsay. Electronically generated or database-derived records may be non-hearsay machine-generated data, or may be admissible as business records where the proper foundation is laid. See *United States v. Channon,* 881 F.3d 806, 810-11 (10th Cir. 2018). Business-record foundation may also be established through a qualified witness or proper certification where the Rule 803(6) requirements are met. See *United States v. Yeley-Davis*, 632 F.3d 673, 678-80 (10th Cir. 2011).

Rule 613: prior inconsistent statements remain available for impeachment even when not independently admissible for their truth. APS's motion attempts to collapse impeachment into substantive hearsay. That is wrong.

Rule 901: authentication can be established through Plaintiff's personal knowledge, deposition testimony, voice recognition, participation, witness knowledge, distinctive characteristics, production history, custodian production, and other foundation routes permitted by the Rules. In several instances, deposition testimony already supplies or supports foundation for recordings, text messages, emails, meeting materials, and MaxCapture/Synergy-related materials. Plaintiff can authenticate recordings in which she participated, text messages and communications she sent, received, preserved, or recognized, and MaxCapture/Synergy-related records she generated or used in the regular course of her APS work. Those APS system records also contain metadata, timestamps, user information, system-source information, contents, and other distinctive

characteristics. The Federal Rules allow authentication through a witness with knowledge, voice identification, and distinctive characteristics such as appearance, contents, substance, internal patterns, and surrounding circumstances. Fed. R. Evid. 901(a), 901(b)(1), 901(b)(4), 901(b)(5). That foundation does not make every embedded assertion admissible for truth, but it defeats APS's request for categorical exclusion as if no authentication route exists.

The Tenth Circuit has rejected comparable attempts to disregard records on blanket authentication grounds where the surrounding circumstances and production history supported authenticity. See *The Law Co. v. Mohawk Constr. & Supply Co*., 577 F.3d 1164, 1171-72 (10th Cir. 2009). Rule 901 requires only a prima facie showing sufficient to support a finding that the item is what the proponent claims; the opponent may still challenge weight or reliability before the jury. APS's refusal to stipulate to authenticity does not transform authenticable records into inadmissible hearsay.

This matters because APS is now refusing broad authenticity stipulations while simultaneously seeking to shorten Plaintiff's proof. Several categories of Plaintiff's evidence can be authenticated through Plaintiff's own testimony, deposition testimony, custodians, certifications, or distinctive characteristics, including meeting audio in which Plaintiff participated, emails, text messages, newsletters or communications involving Plaintiff, and APS system records such as MaxCapture/Synergy-related materials where Plaintiff or another witness had knowledge. Many of these materials were already marked, shown to witnesses, identified, discussed, or authenticated under oath in depositions. APS can make specific exhibit objections; it cannot convert its refusal to stipulate into a categorical exclusion order.

**V. APS's Attack on Emails Plaintiff Was Not Copied On Is Legally Baseless.**

APS specifically attacks an August 16, 2022 email from Antoinette Romero to Beth Bingham-Stimmel because Plaintiff "was not a party to this correspondence," claiming that fact raises

"numerous questions" about veracity and trustworthiness. Doc. 299 at 3. That is not an evidence rule. Plaintiff's absence from an internal APS email does not make the email inadmissible. It does not make the document untrustworthy. It does not prevent authentication. It does not defeat Rule 801(d)(2). It does not defeat Rule 803(6). It does not bar use for impeachment, notice, motive, pretext, or internal APS knowledge.

If anything, the fact that an internal APS email occurred outside Plaintiff's presence may make it more probative for certain purposes, including what APS employees were saying internally, what information was circulating inside APS, whether APS witnesses had a basis for later testimony, and whether APS's trial narrative matches its contemporaneous internal communications. APS cannot make internal communications disappear by arguing that Plaintiff was not copied on them.

APS's argument is even weaker where the internal APS emails were produced by APS's own records custodian through IPRA. The point is not that IPRA production independently makes every document admissible or proves the truth of every embedded assertion. The point is that custodian production can support authentication and foundation: the records came from APS's own departments, systems, custodians, or Technology Department; were maintained or released as APS public records; and were produced by APS or its custodian in response to targeted public-records requests. Representative custodian communications confirm this process. See Ex. A (Request 23-182, reflecting department assignment to Office of Equal Opportunity Services and release of responsive EOS records); Ex. B (Request 24-475, reflecting release of Social Work Instructional Council records and the department's statement that it provided its complete set of records); Ex. C (Request 24-550 excerpt, reflecting that an email request was sent to APS Information Technology and that APS Information Technology provided responsive records).

Whether a particular statement within an email is offered for truth, for notice, for effect on the recipient, for APS knowledge, for motive, for pretext, as an admission, or for impeachment is a separate evidentiary question. APS cannot collapse authentication, hearsay, and relevance into a single unsupported objection.

APS's position also ignores how institutional email records are authenticated in ordinary litigation. APS email communications bear distinctive characteristics, including APS email addresses, sender and recipient fields, dates and times, subject lines, signature blocks, internal APS routing, content tied to APS business, and production from APS records or APS custodians. Those features do not resolve every hearsay issue, but they support authentication under Rule 901(b)(4), especially when combined with production history, metadata, Bates labels, custodian production, deposition testimony, or testimony from witnesses with knowledge.

That production history is consistent with IPRA's structure. IPRA defines public records broadly to include records used, created, received, maintained, or held by or on behalf of a public body and related to public business, and it identifies the custodian as the person responsible for maintaining, caring for, or keeping those records. See NMSA 1978, Section 14-2-6(A), (H). IPRA also requires written requests to identify records with reasonable particularity and recognizes electronic written requests. See NMSA 1978, Section 14-2-8(C), (F). Where APS's custodian, APS departments, and APS Information Technology locate, review, redact, and release records responsive to targeted requests, that custodial production is part of the authentication foundation under Rule 901(b)(4), even if hearsay objections to particular embedded statements must still be addressed item by item. Exs. A-C.

If APS disputes authenticity, foundation, or purpose, APS may raise a specific objection to the specific exhibit. But Plaintiff's absence from an email chain is not a basis to exclude all emails, much less "all hearsay testimony and documents."

**VI. APS's Section C Is Self-Defeating: It Admits Hearsay Is Fact-Specific, Then Demands a Blanket Ruling That No Exception Applies.**

APS begins Section C by quoting the rule that "[h]earsay determinations are particularly fact and case specific." Doc. 299 at 4 (quoting *Harper*, 118 F.4th at 1295). Then APS asks the Court to decide, in advance, that none of the Rule 803, Rule 804, or Rule 807 exceptions can apply to Plaintiff's testimony, recordings, emails, exhibits, or documents. That position is internally inconsistent.

APS identifies no exhibit and performs no exception-by-exception analysis. It does not analyze business records under Rule 803(6). It does not analyze present-sense impressions under Rule 803(1). It does not analyze then-existing state of mind under Rule 803(3). It does not analyze recorded recollection under Rule 803(5). It does not analyze party-opponent statements under Rule 801(d)(2). It does not analyze prior inconsistent deposition testimony under Rule 801(d)(1)(A). It does not analyze impeachment under Rule 613. It simply declares that none of them apply. The Court should reject that shortcut.

APS also argues that Rule 804 does not apply because "assuming that parties no longer working for APS can be located, all parties are available as witnesses." Doc. 299 at 4. That statement is speculative and incomplete. Availability cannot be decided globally based on an assumption. Witness availability depends on the witness, the subpoena power, the witness's status, health, location, memory, privilege issues, refusal, and trial circumstances. In any event, Rule 804 is not Plaintiff's only route. APS's focus on Rule 804 does not defeat Rules 801(c), 801(d), 803, 613, 901, or 105.

APS's Rule 807 argument is also premature. Plaintiff need not invoke Rule 807 for every statement, and APS cannot defeat the residual exception globally before Plaintiff identifies the specific statement. The fact that Rule 807 is rarely used does not justify an order excluding all Plaintiff's evidence by category.

**VII. APS's Own Litigation Strategy Confirms Why a Blanket Hearsay Order Would Be Unfair and Misleading.**

APS's hearsay motion cannot be viewed in isolation. APS has filed a set of broad motions in limine seeking to exclude RCI investigative materials, hearsay testimony and documents, evidence allegedly not previously produced, medical/disability evidence, harassment evidence, disciplinary information, and other context. If granted broadly, those motions would strip Plaintiff's trial record of the evidence that explains notice, knowledge, motive, pretext, retaliation, causation, credibility, and damages.

Plaintiff's MIL No. 7 addresses the next step in APS's strategy: APS should not be permitted to use evidentiary exclusions, discovery gaps, or court rulings as a sword to argue that Plaintiff's allegations lack merit. That concern is acute here. APS should not be permitted to exclude Plaintiff's recordings, emails, communications, and deposition-based impeachment, then later argue that Plaintiff lacks evidence.

Plaintiff has already proposed the correct framework. In Plaintiff's MIL No. 1, Plaintiff did not ask for a hearsay free-for-all. Plaintiff asked the Court to prevent APS from using investigative materials, embedded hearsay, "exonerated" labels, verdict-like conclusions, and "notice" end-runs as substantive proof. Plaintiff preserved proper uses for impeachment, notice, knowledge, motive, pretext, inconsistent statements, credibility, and timeline. That is the proper evidentiary line. APS's motion ignores that line and asks for one-sided categorical exclusion.

**VIII. APS's Two Examples Do Not Justify Excluding All Hearsay Testimony and Documents.**

APS relies on two snippets from ECF 217-5 and one email reference from ECF 231-14. Doc. 299 at 2-3. Those examples do not justify the relief APS seeks.

First, statements in ECF 217-5 concerning Plaintiff's contemporaneous student-advocacy concerns may be relevant to protected activity, notice, Plaintiff's state of mind, what Plaintiff reported, and how APS responded. The statements need not be offered to prove every embedded fact. If offered to show that Plaintiff raised concerns about student services and special-education decisionmaking, the evidence is not hearsay for that purpose.

Second, the "Student Absent" entry may be relevant to what Plaintiff did, what steps she took, what she documented, what she reported, and why she acted. APS assumes Plaintiff will offer every embedded statement for truth. That assumption is not a basis for exclusion. If a specific embedded statement is offered for truth, the Court can analyze that layer under Rule 805.

Third, the Antoinette Romero email is an APS internal communication. APS's objection that Plaintiff was not a party to it is not a hearsay rule. It is an attempt to make internal APS communications disappear because they are unfavorable. The Court should reject that approach.

**IX. Plaintiff's Production and Transmission Records Defeat Any Claim of Audio-Link Surprise or Nondisclosure.**

APS's hearsay motion should also be viewed against the actual production history. Plaintiff is filing contemporaneously a Notice of Filing Affidavit of Gerry Richardson Regarding Plaintiff's Discovery Productions, Audio Links, Releases, Certificates of Service, and Production Log. Ms. Richardson was the longtime paralegal to Plaintiff's counsel and had direct responsibility for transmitting productions, exhibits, Google Drive links, Word documents containing embedded live audio links, executed releases, certificates of service, and related materials to opposing counsel.

That production history matters to APS's treatment of audio recordings and related documents. Audio was not sprung at trial. Audio materials were transmitted through Word documents containing live embedded links, through production communications, and through discovery/motion practice. The production log also identifies a document with embedded digital links provided to Defendants, as well as Bates-labeled student-service, MaxCapture, PTG, Romero-text, sign-in/sign-out, EOS/investigation, leave, damages, and remote-service records. See Notice of Filing, Exs. 1-5. The representative IPRA excerpts attached here separately show APS's own custodian and department/Technology production routes for APS records. See Exs. A-C.

APS cannot collapse hearsay, authentication, and production into a single grievance. If APS claims a specific audio file, link, email, or document was inaccessible or not produced, APS must identify the item, the transmission at issue, the alleged defect, the prejudice, and the cure it sought at the time. It cannot ignore production emails, Google Drive links, Word documents containing embedded audio links, certificates of service, deposition use, and witness authentication, then seek categorical exclusion by labeling entire forms of evidence "hearsay."

**X. The Proper Remedy Is a Specific Proffer, Redaction, Limiting Instruction, or Trial Objection - Not Wholesale Exclusion.**

APS may choose not to stipulate to authenticity, but it cannot convert that refusal into a reason for categorical exclusion or unnecessary trial delay. Where Plaintiff can authenticate materials from personal knowledge, where APS witnesses have authenticated materials under oath, or where APS custodians, departments, Technology, metadata, distinctive characteristics, or certifications provide foundation routes, the Court should permit targeted foundation procedures rather than forcing redundant live testimony from every sender, recipient, custodian, or system user.

Plaintiff does not object to a fair procedure requiring the proponent of a disputed statement to identify the statement, speaker, purpose, and evidentiary basis outside the jury's presence where necessary. Plaintiff also does not object to redactions, limiting instructions, or Rule 805 analysis where a statement is offered for truth and contains embedded hearsay.

If APS has a legitimate hearsay objection, APS can identify the statement, declarant, exhibit, proposed purpose, and rule. The Court can then determine whether the statement is hearsay, whether it is offered for a non-hearsay purpose, whether Rule 801(d) applies, whether an exception applies, whether impeachment is proper, whether authentication is sufficient, whether Rule 403 requires limitation, or whether a limiting instruction under Rule 105 is appropriate.

The same procedure should apply to authentication disputes. Where a voice, email, text message, MaxCapture/Synergy entry, meeting material, or other document can be authenticated through Plaintiff's testimony, deposition testimony, a custodian, a certification, distinctive characteristics, production history, or another Rule 901/902 method, the Court may permit that foundation route rather than requiring duplicative live testimony from every sender, recipient, custodian, or participant. That approach avoids needless delay and witness burden while preserving APS's right to make specific exhibit-specific objections.

What APS cannot do is obtain a blanket order excluding Plaintiff's recordings, emails, deposition impeachment, internal APS communications, and exhibits before the Court has the evidence in front of it.

**CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny APS's Motion in Limine to Exclude All Hearsay Testimony and Documents. In the alternative, Plaintiff requests that APS be required to identify each challenged statement, speaker, exhibit, purpose, hearsay basis, authentication objection, and Rule 403 basis outside the presence of the jury before any

exclusionary ruling is made. Plaintiff further requests that the Court preserve Plaintiff's ability to authenticate evidence through any proper method authorized by the Federal Rules of Evidence and Federal Rules of Civil Procedure, including Plaintiff's personal knowledge, deposition testimony, voice identification, witness testimony, custodian testimony, production history, distinctive characteristics, IPRA/custodian production, APS department or Technology retrieval, Rule 902 certifications, Rule 1005 public-record procedures, Rule 32 deposition use where applicable, proffers, and targeted foundation testimony.

Respectfully submitted,

/s/ Boglarka A. Foghi, Esq.

Boglarka A. Foghi
FOGHI LAW FIRM, LLC
4313 Corrales Rd., P.O. Box 944
Corrales, NM 87048
(505) 220-5691
foghilaw@yahoo.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of June, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Boglarka Foghi*
Boglarka Foghi