IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                                          1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS and
NEW MEXICO DEPARTMENT OF PUBLIC
EDUCATION,

     Defendants.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO REQUIRE NATIVE OR SYSTEM-GENERATED SYNERGY / MAXCAPTURE RECORDS WITH METADATA INTACT AND TO EXCLUDE APS-CREATED SUMMARIES, RECONSTRUCTIONS, OR MISLEADING PRINTED EXCERPTS ABSENT STRICT FOUNDATION**

Defendant Albuquerque Public Schools ("APS") responds in opposition to Plaintiff's Motion in Limine No. 2, to Require Native or System-Generated Synergy/MaxCapture Records With Metadata Intact and to Exclude APS-Created Summaries, Reconstructions, or Misleading Printed Excerpts Absent Strict Foundation [ECF 307], ("MIL No. 2").

## I.    INTRODUCTION

Plaintiff in MIL No. 2 argues for full exclusion of the information in APS's two electronic systems, Synergy and MaxCapture, without the accompanying metadata. These systems are used to document student services, progress towards goals ("PTGs"), and service-minute entries relevant to Plaintiff's role and job performance. Entries into these systems are used to track delivery of student services, and document timing, billing, administrative transfers, leave status, substitute coverage, and reassignment of duties.

MIL No. 2 petitions the Court for a level of detail and complexity that she herself did not provide during discovery, and that is not required for authentication under Federal Rules of

1

Evidence Rule 901. During discovery, Plaintiff provided the exact MaxCapture records and provider notes that she asks be excluded from admissibility. *See* Bates No. PLT024 – PLT0368, and PLT0140 – PLT0222, reflecting 115 and 83 pages of service details, respectively. Plaintiff also disingenuously suggests that proper authentication of Synergy and MaxCapture records only occurs when native or system-generated data is extracted directly from the original systems with comprehensive metadata intact, which is not the case.

## II.    POINTS AND ANALYSIS

### A.    Synergy and Maxcapture Information Drawn Directly from APS Systems Satisfy Fed. R. Evid. Rule 901 Authentication Requirements

Fed. R. Evid. Rule 901 simply requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This is frequently done through custodial authentication of records through deposition or testimony, which establishes foundational evidentiary requirements for business records. *See New Mexico ex. rel. Balderas v. Real Est. L. Ctr., P.C.,* 429 F. Supp 3d 996, 1003 (D.N.M. 2019). Compliance with Rule 901 does not require that every piece of associated metadata be preserved or provided, as is proposed in MIL No. 2. Nor does the absence of metadata render evidence and information unauthenticated. In fact, courts routinely authenticate printed reports and exported data from electronic systems without inclusion of the related metadata. APS easily satisfies Rule 901 through the testimony and attestation by a knowledgeable APS employee that the Synergy and MaxCapture materials accurately reflect data within the systems, data has not been altered during its extraction, and the materials are what is represented by APS. Any Synergy and MaxCapture reports and information presented by APS simply capture information extracted from APS electronic systems in the ordinary course of operations, and reflect student services and employee performance.

2

**B.**     **The Synergy and MaxCapture Records Fully Satisfy the Foundational Requirement Under Fed. R. Evid. Rule 803(6)**

Plaintiff's argument that APS must establish an extensive foundation that includes all metadata before using Synergy and MaxCapture records in trial conflates admissibility with sufficiency of proof.  APS need not preemptively rebut all potential explanations for the data before the records are admitted but may simply provide a qualified witness to establish that the Synergy and MaxCapture records were produced and retained in the ordinary course of business. Presentation of a qualified witness to testify on how the Synergy and MaxCapture records are created and maintained fully satisfies the Fed. R. Evid. Rule 803(6) requirements for records of a regularly conducted activity and establishes any foundation requirement for evidence admissibility.  Further, the Plaintiff's concerns about "disputed interpretations of student-service documentation, PTGs, MaxCapture entries, leave status, substitute coverage, reassignment of duties, and service-minute practices" (MTC No. 2, p. 5) is misdirected.  The Synergy and MaxCapture records, like all evidentiary documents, will likely be subject to competing interpretations, to include Plaintiff's explanations regarding leave, substitute coverage, or reassignment.  This does not make these records inadmissible but rather creates a factual dispute for the jury to address.

**C.**     **Plaintiff Fails to Meet the Fed. R. Evid. Rule 403 Exclusion Requirements, as the Synergy and MaxCapture Records are Directly Probative of the Matter at Hand**

Evidence can only be excluded under Fed. R. Evid. Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Even though Plaintiff claims that Synergy and MaxCapture information without the metadata present is prejudicial or misleading to the jury under Fed. R. Evid. 403, the exact opposite

is true. Metadata involves a high degree of complexity, including creation dates, modification dates, user identifiers, audit trails, and export parameters, which can be extremely misleading to a jury without the availability of an expert to explain and interpret the data. Under Rule 403, the additional metadata requested is excludable, as it is highly misleading and confusing to the jury. Further, APS the Synergy and MaxCapture records are highly probative, as APS used these records as indicators of Plaintiff's performance and compliance with APS policies.

### III.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's MIL No. 2.


Respectfully submitted,

WIGGINS, WILLIAMS & WESENBERG
A Professional Corporation

*Electronically Filed*

By: /s/ Carol M. Cochran
        Carol M. Cochran
        Patricia G. Williams
        Natasha A. Martinez-Wesenberg
*Attorneys for APS*
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
ccochran@wwwlaw.us
pwilliams@wwwlaw.us
nwesenberg@wwwlaw.us

We hereby certify that on this 4th day of June, 2026, the foregoing was filed electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

WIGGINS, WILLIAMS & WESENBERG, P.C.

By    */s/ Carol M. Cochran*
          Carol M. Cochran