IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                 Case No. 1:23-cv-00899 GBW/JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

     Defendants.

**DEFENDANT'S PROPOSED PRETRIAL ORDER**

     This matter is before the Court pursuant to Fed. R. Civ. P. 16. The parties conferred regarding the proposed Pretrial Order. Plaintiff submits the following corrected Plaintiff sections, proposed stipulated facts, objections, and disputed contentions. Plaintiff does not agree to any disputed defense language being treated as stipulated, neutral, agreed, or uncontested unless expressly stated below.

**I. APPEARANCES**

Attorneys who will try this action:

| | |
|---|---|
| For Plaintiff: | Boglarka A. Foghi, Esq. |
| | Foghi Law Firm, LLC |
| For Defendants: | Natasha A. Martinez Wesenberg, Esq. |
| | Patricia G. Williams, Esq. |
| | Carol Cochran, Esq.. |
| | Wiggins, Williams & Wesenberg, P.C. |

**II. JURISDICTION AND RELIEF SOUGHT**

**A. Subject Matter Jurisdiction.**

**1. Was this action removed or transferred from another forum? __ Yes _x_ No**

If yes, was the action removed or transferred? _____ Removed _____ Transferred _____ Original forum

**2. Is subject matter jurisdiction of this Court contested?** _x_ Uncontested _____ Contested

**3. Asserted basis for jurisdiction**. _x_ Federal Question _____ Diversity _____ Other

**Statutory Provision(s) Invoked**: Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; New Mexico Whistleblower Protection Act, N.M. Stat. Ann. §§ 10-16C-1 to -6; 28 U.S.C. § 1331; and 28 U.S.C. § 1367.

**B. Personal Jurisdiction and Venue.**

1. Is personal jurisdiction contested? _x_ Uncontested _____ Contested

2. Is venue contested? _x_ Uncontested _____ Contested

**C. Are the proper parties before the Court?**

_x_ Uncontested _____ Contested

**D. Identify the affirmative relief sought in this action.**

**1. Plaintiff seeks:**

Plaintiff seeks all relief available under the Americans with Disabilities Act, the New Mexico Whistleblower Protection Act, and applicable contract law, including but not limited to back pay, front pay, lost employment benefits, lost retirement benefits, compensatory damages, damages for emotional distress, humiliation, reputational harm, professional harm, physical exacerbation, stress-related exacerbation, and other legally recoverable injuries. Plaintiff also seeks statutory remedies under the New Mexico Whistleblower Protection Act, including double back pay and interest to the extent authorized by law; equitable relief, including declaratory relief, reinstatement or front pay in lieu of reinstatement as appropriate, correction or removal of false

or misleading employment records, and any other appropriate equitable remedy; attorney's fees, expert fees, costs, litigation expenses, pre-judgment interest, post-judgment interest, and all other relief authorized by statute, contract, rule, or law. Plaintiff also seeks such further relief as the Court deems just and proper. Plaintiff preserves all remedies available under her ADA, NMWPA, and breach-of-contract claims and does not waive any damages, equitable remedies, evidentiary positions, trial positions, leave-related evidence, protected-leave evidence, or appellate issues by identifying relief in this section.

2. Defendants seek: Dismissal of Plaintiff's claims and fees and costs associated with defending the litigation.

## III. BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

### A. Plaintiff's Claims.

Plaintiff Tatia Lipe is a licensed clinical social worker and mental health clinician who worked for Defendant Albuquerque Public Schools ("APS") as a school social worker, including at Volcano Vista High School. Plaintiff filed a formal complaint with the New Mexico Public Education Department Special Education Division concerning systemic IDEA violations involving students with disabilities attending Volcano Vista High School. PED received Plaintiff's complaint on February 7, 2022. On April 14, 2022, PED issued a Complaint Resolution Report in Case No. C2122-14 and required corrective action, including a Corrective Action Plan.

Plaintiff further contends Justin Griego had prior knowledge of Plaintiff's student advocacy because Griego previously worked with Plaintiff when he was a special-education teacher and Plaintiff was performing her school-social-work role. Plaintiff contends she and Griego had

disagreements concerning how certain students were being treated in the SESS 2 program, and that years later Griego became Plaintiff's immediate supervisor. Plaintiff further contends matters later raised in or related to the PED complaint had been reported to Griego and other administrators, yet the RCI materials treated or characterized Griego as not working there at the relevant time and used that inaccurate premise to support an unsubstantiated finding. Plaintiff contends that inconsistency is relevant to APS's knowledge, motive, bias, investigation reliability, pretext, and credibility.

Plaintiff further contends APS discriminated against her and failed to reasonably accommodate her disabilities in violation of the ADA. Plaintiff requested reasonable accommodations, including intermittent remote work during medically supported disability-related flareups, flexible scheduling to attend medical appointments, temperature-related accommodations, and workload-related accommodations. Plaintiff contends APS denied her requested accommodation without a good-faith individualized analysis, relied on shifting and pretextual explanations, improperly treated protected medical leave and intermittent leave as a substitute for reasonable accommodation, and failed to engage in a legally sufficient interactive process.

Plaintiff further contends APS's ADA Coordinator admitted that other APS employees received the same or similar accommodation Plaintiff was denied. Plaintiff contends that admission directly undermines APS's categorical remote-work defense, its alleged undue-hardship position, its claimed essential-function analysis, and its assertion that Plaintiff was merely denied a preferred accommodation rather than denied a reasonable accommodation.

Plaintiff contends APS's essential-function defense is materially disputed. Students were scheduled and seen according to IEP goals and service times, not all day every day. School social workers also performed meetings, paperwork, documentation, telephone communications,

parent/staff communications, service coordination, and other duties that did not always require physical presence at school. Plaintiff further contends meetings were still being conducted remotely, other APS social workers worked in remote or online settings, and APS's generalized job-description language does not accurately describe Plaintiff's actual assigned duties at Volcano Vista. Plaintiff disputes APS's reliance on generalized job-description language concerning home visits, indoor-only work, blocking, running, stair-running, and physical crisis response because that language does not accurately describe Plaintiff's actual assigned duties or actual work practices.

Plaintiff further contends APS interfered with, pressured, penalized, and retaliated against Plaintiff in connection with her protected medical leave and leave-related restrictions. APS required, pressured, or expected Plaintiff to participate in work-related meetings, investigation-related matters, PTG/documentation issues, and communications concerning alleged performance deficiencies while Plaintiff was on protected leave. Plaintiff contends APS then treated leave-related circumstances, absences, and medical restrictions as alleged nonperformance, misconduct, or failure to meet job expectations. Plaintiff contends this leave-related conduct is relevant to ADA failure to accommodate, ADA retaliation, NMWPA retaliation, breach of contract, pretext, motive, causation, damages, and constructive discharge.

Plaintiff further contends APS made, repeated, investigated, circulated, or relied on accusations concerning Plaintiff's alleged failure to serve students, complete PTGs, document services, or perform school-social-work duties even though APS knew or should have known those accusations were false, materially misleading, incomplete, or contradicted by APS's own records. Plaintiff contends APS displaced her from her Volcano Vista school-social-work caseload and work role after her protected student advocacy, disability-accommodation request,

and protected leave activity. Plaintiff contends APS effectively removed her students/caseload, placed Angelique Torres into the Volcano Vista student-service/caseload role, failed to provide Plaintiff with clear directions or instructions regarding what she was expected to do at work, and then attempted to use resulting caseload, service, PTG, documentation, and work-status issues against her.

Plaintiff further contends APS's reliance on EOS/RCI "unsubstantiated" findings is misplaced and disputed. Plaintiff does not agree that those findings were the product of complete, neutral, reliable, or accurate investigations. Plaintiff contends the investigations relied on witness statements that were false, materially misleading, incomplete, internally inconsistent, or contradicted by APS records, employment-status information, communications, deposition testimony, and other record evidence. Plaintiff further contends certain witnesses minimized, denied, or misstated their involvement, knowledge, employment status, responsibilities, communications, or participation in the events at issue, and that APS nevertheless relied on those statements to characterize Plaintiff's complaints as unsubstantiated. Plaintiff disputes the admissibility, weight, reliability, and truth of any such findings and contends they are relevant, if at all, only for limited purposes such as notice, APS's knowledge, motive, pretext, investigation adequacy, credibility, impeachment, and the chronology of retaliation.

Plaintiff also brings a breach-of-contract claim based on APS's employment obligations, including the ATF Negotiated Agreement and related policies, practices, and contractual obligations. Plaintiff contends APS breached contractual and employment obligations by interfering with leave rights, failing to follow applicable procedures, applying standards inconsistently, subjecting Plaintiff to arbitrary and retaliatory treatment, and failing to honor employment protections incorporated into the negotiated agreement and related policies.

Plaintiff does not assert that the ATF Negotiated Agreement is a statute. Plaintiff asserts that the ATF Negotiated Agreement is a contractual employment document governing terms and conditions of employment and APS's employment obligations, and that it is relevant to Plaintiff's breach-of-contract claim, APS's contractual duties, the reasonableness and consistency of APS's conduct, Plaintiff's employment protections, damages, and APS's defenses. Plaintiff disputes Defendants' characterization of this issue to the extent Defendants suggest Plaintiff claimed the negotiated agreement is 'law' in the same sense as a statute.

Plaintiff contends her April 8, 2024 resignation was not voluntary in the legal or practical sense. Plaintiff contends APS's retaliatory, discriminatory, leave-interfering, and contract-breaching conduct made continued employment intolerable, medically unsafe, professionally damaging, and incompatible with her restrictions, thereby causing constructive discharge.

Plaintiff brings claims under the Americans with Disabilities Act, the New Mexico Whistleblower Protection Act, and breach of contract. Plaintiff does not agree to any language suggesting that protected-leave evidence, leave-interference evidence, HR/leave-processing evidence, investigation-while-on-leave evidence, unpaid-leave evidence, forced-meeting evidence, or APS's handling of Plaintiff's protected leave are excluded from trial.

**B.**     **Defendant's defenses:**     Defendant agrees the subject lawsuit arises out of Plaintiff's claims during her tenure while employed with Albuquerque Public Schools ("APS"), as a school social worker at Volcano Vista High School.  Plaintiff was employed with APS from August 2015 until her voluntary resignation on April 8, 2024.

As an employee of APS, Plaintiff was not permitted to work from home except in infrequent, singular circumstances, authorized in advance. School Social Workers' job functions were primarily performed indoors in a normal school or office environment and in student's

homes. Plaintiff's on-site responsibilities as a School Social Worker included direct services, development and delivery of in-service programs, frequent interactions with people in person, and travel from location to location, which did not accommodate remote work. Plaintiff's Job Function Description included physical job demands regarding crisis intervention, blocking, and the ability to physically run to respond to situations, including the potential necessity to run up/downstairs to assist in maintaining safety of students. Plaintiff was aware of the requirements and abided by the same.

In March of 2020, due to the global pandemic, APS went to online schooling.  In November of 2020, Plaintiff asked to be considered for available remote- work assignments due to caring for her elderly father. At that time, Plaintiff did not disclose any disability or any requested ADA accommodation for any ailment or disability of her own.  In fact, Plaintiff explicitly stated that she understood that remote work was not offered as an ADA accommodation for her position. After a yearlong government mandated quarantine, which resulted in fully remote learning, APS returned to in-person, on-campus instruction starting in spring of 2021. APS staff was informed that all employees were expected to return to work effective March 29, 2021.  Due to impending hysterectomy and the time required for recovery, Plaintiff asked for medical accommodation to work remotely for the period April 1, 2021 (the date of surgery) through the end of the 2020-2021 school year.  APS held a meeting regarding the surgery and potential accommodation.  The requested accommodation was granted on April 13, 2021 (effective April 1, 2021).

Nearly a year later, on February 7, 2022, Plaintiff filed a complaint with the New Mexico Public Education Department.  PED issued its findings on April 14, 2022.   Eight months later, Plaintiff requested ADA accommodation to work remotely during medically supported flareups of her underlying medical condition.  In compliance with proper procedure under the ADA, APS

8

convened an ADA interactive-process meeting with Plaintiff on September 21, 2022.  APS did not grant Plaintiff's request for remote work but provided reasonable accommodations including measures related to temperature regulation and referred her to  intermittent leave as an option.

As a result of being denied her preferred accommodation, but rather having been provided a reasonable accommodation, Plaintiff filed a claim with Equal Opportunity Services on September 25, 2022.The EOS findings letter states that Plaintiff's allegations were unsubstantiated.

On August 29, 2022, a Medical Inquiry Form was submitted by Audrey Bautista, CNP, to support Plaintiff's request for one year of Family Medical Leave due to personal illness. Plaintiff was granted intermittent leave for one year in response to her request, for the period August 15, 2022 – August 15, 2023.  During which time, Plaintiff was provided with 390 hours of FMLA leave in the accommodation plan, to include Plaintiff's ability to attend appointments for 2 hours per appointment, 3 hours per week, and to accommodate episodic flareups of 24 – 48 hours for one time per week.  During the intermittent leave, issues arose regarding Plaintiff's ability to effectively perform the essential functions of her job.  In order to guarantee student's had continuous services, Plaintiff's students were assigned to other school counselors in February 28, 2023. On March 9, 2023 APS hired an independent investigative firm to investigate Ms. Lipe's use of leave. Two weeks later she took a yearlong leave of absence, culminating in her voluntary resignation on April 8, 2024.

Defendant further contends that Plaintiff has failed to state a claim for any FMLA violations.  Plaintiff has failed to state a claim for which relief may be granted. Plaintiff's claims are barred by laches, waiver, unclean hands, and estoppel doctrines. Plaintiff is barred, in whole or in part, because all of APS' actions or inactions concerning Plaintiff complied with all relevant

and applicable laws and were based on legitimate, nondiscriminatory, and non-retaliatory reasons, and neither Plaintiff's alleged disability or alleged whistleblowing or any other protected characteristic was a motivating, determinative, or any factor in APS' actions and/or inactions with regard to Plaintiff.  At all times relevant hereto, the actions of APS were reasonable, proper and legal. Plaintiff's request for an accommodation was not reasonable. Plaintiff was not denied a reasonable accommodation. Plaintiff suffered no adverse action under the ADA. Plaintiff suffered no adverse action under the NMWPA. Plaintiff's requested modifications would pose an undue burden on APS. Plaintiff's requested modifications would fundamentally alter the services provided by social workers at APS facilities. Plaintiff's ADA claim is barred to the extent that APS made good faith efforts to reasonably accommodate Plaintiff.  Plaintiff's claims are barred, in whole or in part, by the fact that APS established procedures reasonably designed, implemented, and enforced to be effective in preventing and detecting unlawful conduct such as that alleged by Plaintiff. Plaintiff's claims are barred to the extent that Plaintiff was not subjected to harassment, retaliation, or discriminatory practices. Plaintiff's claims are barred to the extent that Plaintiff refused to accept the accommodations offered by APS. APS acted lawfully, in good faith, and was fully compliant with ADA requirements and NMWPA standards as they relate to Plaintiff. Joint and several liability is barred as to a governmental entity and its employees. PS had legitimate, non-discriminatory and non-retaliatory reasons for having taken the actions it did (which were not adverse to Plaintiff), regarding Plaintiff's employment. APS took no discriminatory or adverse employment action against Plaintiff in the terms and conditions of her public employment. Plaintiff did not suffer any adverse employment action because of her alleged protected activity and cannot establish a causal connection between any alleged protected activity and any adverse employment

action. No significant change in Plaintiff's employment occurred as a result of APS' actions or inactions. Plaintiff voluntarily took extended leave from APS.

Plaintiff's personal disagreements with legitimate managerial decisions and her communications regarding her personal personnel grievances were properly investigated and determined to be unfounded. Plaintiff's failure to comply with APS policies and failure to cooperate in an investigation regarding excessive use of leave is the cause of any injuries or damages Plaintiff claims, which are expressly denied. Plaintiff's neglect in relation to her work duties is the cause of any injuries or damages Plaintiff claims. Plaintiff's neglect in relation to her work duties is the cause of any injuries or damages Plaintiff claims. Plaintiff was not entitled to paid leave as alleged in the Complaint.  To the extent that Plaintiff's "reputation" was damaged, (which is expressly denied), APS is not legally responsible and such damage.  Plaintiff's conduct is the cause of damage, if any, to her reputation, and/or alleged loss of employment opportunities, both of which are expressly denied .

Plaintiff cannot recover damages for failure to accommodate her in violation of the ADA because APS consulted with Plaintiff in good faith to identify and make a reasonable accommodation that would provide Plaintiff with an equally effective opportunity that would not cause an undue hardship on the operation of APS operations. Plaintiff cannot recover damages for alleged retaliatory conduct related to her alleged whistleblowing activity because APS took no employment actions that were adverse or that were motivated in any way, based on her alleged whistleblowing activity. Plaintiff cannot establish any temporal proximity between her alleged whistleblowing activity and the alleged unlawful retaliation she claims to have suffered. Plaintiff cannot meet her burden in establishing a prima facie case of disability discrimination or retaliatory conduct in violation of the NMWPA. Plaintiff cannot establish proximate cause or pretextual and

11

illegal or improper conduct by APS as a result of her alleged whistleblower activity. APS took appropriate corrective action based on the New Mexico Publication Education Department's findings. Plaintiff cannot recover against APS (for any damages claimed which are expressly denied), to the extent that Plaintiff failed to make reasonable efforts to mitigate her alleged damages. Alternatively, to the extent that Plaintiff has mitigated her alleged damages, APS is entitled to offset those amounts from any alleged damages. The proximate cause of Plaintiffs damages, if any, was acts of individuals not under the direction, control or supervision of APS. Plaintiff's claims are barred, in whole or in part, because all employment decisions made with regard to Plaintiff were at all times motivated by legitimate, non-discriminatory and lawful factors, and APS at no time acted in an unlawful manner in connection with Plaintiff's employment. Plaintiff's punitive damages claims are barred because APS did not act with malice or with reckless indifference to the federally protected rights of Plaintiff. Plaintiff is not entitled to punitive damages because APS made good faith efforts to comply with the ADA and other applicable laws. Plaintiff is not entitled to punitive damages as to APS as it is a governmental agency.

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

### A. Stipulated Factual Contentions.

1. Plaintiff Tatia Lipe was employed by Albuquerque Public Schools as a school social worker.

2. Plaintiff was assigned to Volcano Vista High School during relevant periods.

3. Plaintiff filed a formal complaint with the New Mexico Public Education Department Special Education Division concerning students with disabilities at Volcano Vista High

School alleging violations of the Individuals with Disabilities Education Act (IDEA) on behalf of several students at Volcano Vista High School.

4. PED received Plaintiff's complaint on February 7, 2022.

5. PED issued a Complaint Resolution Report on April 14, 2022, in Case No. C2122-14.

6. PED required corrective action.

7. Plaintiff requested ADA-related accommodations in 2022.

8. APS held an ADA-related meeting with Plaintiff on September 21, 2022.

9. APS did not grant Plaintiff's requested intermittent remote-work accommodation.

10. Plaintiff was approved for and used intermittent medical/FMLA leave during the 2022-2023 school year.

11. Angelique Torres was assigned to provide school-social-work services at Volcano Vista High School.

12. Plaintiff began an unpaid leave of absence in March 2023.

13. Plaintiff resigned from APS on April 8, 2024.

**B. Contested Material Facts.**

**1. Plaintiff's Contentions:**

a. Plaintiff contends she was a qualified individual with disabilities within the meaning of the ADA and could perform the essential functions of her assigned school-social-work position with reasonable accommodation.

b. Plaintiff contends APS did not provide reasonable accommodations.

c. Plaintiff contends she requested intermittent remote work only during medically supported disability-related flareups.

d. Plaintiff contends intermittent remote work during medically supported disability-related flareups was reasonable and compatible with the essential functions of her actual assigned position at Volcano Vista High School.

e. Plaintiff contends APS denied her requested intermittent remote-work accommodation before conducting a meaningful individualized assessment.

f. Plaintiff contends APS did not engage in a true, good-faith interactive process under the ADA.

g. Plaintiff contends APS had already decided intermittent remote work was unavailable before the September 21, 2022 ADA meeting.

h. Plaintiff contends the September 21, 2022 ADA meeting confirmed a predetermined denial rather than a good-faith individualized assessment.

i. Plaintiff contends APS did not evaluate Plaintiff's actual Volcano Vista duties before denying the accommodation.

j. Plaintiff contends APS did not evaluate whether intermittent remote work could be used only during medically supported disability-related flareups.

k. Plaintiff contends APS relied on a categorical no-remote-work position, but APS has not produced the policy it claimed barred the accommodation.

l. Plaintiff contends APS's ADA Coordinator admitted other APS employees received the same or similar accommodation Plaintiff was denied.

m. Plaintiff contends APS gave inconsistent accounts about who made or approved the accommodation denial.

n. Plaintiff contends the RCI materials identified Annittra Atler as involved in the denial, but Atler denied involvement and testified she learned of Plaintiff's ADA/FMLA issues only after the fact.

o. Plaintiff contends APS left FMLA/intermittent leave as the only practical option presented.

p. Plaintiff contends FMLA/intermittent leave was not an effective substitute for reasonable accommodation.

q. Plaintiff contends APS later used Plaintiff's leave-related absences, medical restrictions, and disability-related limitations as alleged evidence of nonperformance, misconduct, excessive leave use, or inability to perform essential functions.

r. Plaintiff contends APS misstates the significance of Plaintiff's 2020 and 2021 remote-work events.

s. Plaintiff contends the 2020 circumstances were not the same as her 2022 disability-related accommodation request.

t. Plaintiff contends no 2020 statement waived or narrowed her right to seek ADA accommodation for her own disabilities in 2022.

u. Plaintiff contends the 2021 approval of remote work for her position is relevant because APS granted remote work for the same school-social-work position.

v. Plaintiff contends APS improperly describes her requested accommodation as a "preferred accommodation." Plaintiff requested a reasonable accommodation.

w. Plaintiff contends APS did not provide an equally effective reasonable accommodation.

x. Plaintiff contends APS's stated remote-work rationale is internally inconsistent, unsupported, and pretextual.

y. Plaintiff contends APS mischaracterizes the essential functions of Plaintiff's actual school-social-work position by relying on generalized job-description language rather than Plaintiff's actual duties, actual work practices, actual schedule, and actual service-delivery responsibilities.

z. Plaintiff contends her actual duties did not require student home visits. Plaintiff did not perform student home visits while assigned to Volcano Vista High School or at any other APS school.

aa. Plaintiff contends her actual duties were not performed only indoors or only in a normal school or office environment.

bb. Plaintiff contends she performed duties in other school settings, including outside areas.

cc. Plaintiff contends her duties included meetings, documentation, telephone communications, parent/staff communications, service coordination, and other work that did not always require physical presence at school.

dd. Plaintiff contends APS improperly relies on "blocking," "running," stair-running, and physical-crisis-response language to argue that intermittent remote work during medically supported flareups was categorically unreasonable.

ee. Plaintiff contends generic job-description language does not accurately describe Plaintiff's actual assigned duties or the duties at issue during the requested intermittent accommodation.

ff. Plaintiff contends job restructuring is a recognized form of reasonable accommodation under the ADA.

gg. Plaintiff contends school-social-work services were scheduled according to IEP goals, service times, student availability, school schedules, meetings, documentation requirements, and service needs.

hh. Plaintiff contends APS's suggestion that Plaintiff was required to physically meet with students all day, every day is inaccurate.

ii. Plaintiff contends time did not automatically have to be made up when a student was absent.

jj. Plaintiff contends meetings and school-social-work functions were still being conducted remotely during relevant periods.

kk. Plaintiff contends other APS social workers worked in remote or online settings, including eCADEMY or other online assignments.

ll. Plaintiff contends APS's assertion that no school social workers received remote or offsite accommodations or assignments from January 1, 2022 to the present is inaccurate, incomplete, or misleading.

mm. Plaintiff contends APS interfered with, pressured, penalized, and retaliated against Plaintiff in connection with protected medical leave and leave-related restrictions.

nn. Plaintiff contends APS required Plaintiff to attend a work-related meeting on January 11, 2023 while she was on FMLA leave.

oo. Plaintiff contends she stated multiple times during the January 11, 2023 meeting that she was on FMLA leave and was not supposed to be in the meeting.

pp. Plaintiff contends APS pressured Plaintiff to convert intermittent leave to continuous leave.

qq. Plaintiff contends APS placed a hold, delay, condition, or HR-related requirement on Plaintiff's unpaid leave request.

rr. Plaintiff contends APS used leave-related circumstances as alleged performance deficiencies.

ss. Plaintiff contends APS's accusations regarding MaxCapture, PTGs, service documentation, student services, and alleged work deficiencies were false, materially misleading, incomplete, or contradicted by APS's own records, coverage arrangements, and communications.

tt. Plaintiff contends APS removed Plaintiff's students/caseload after protected activity, disability-accommodation activity, and protected leave activity.

uu. Plaintiff contends APS placed Angelique Torres into the Volcano Vista student-service/caseload role and displaced Plaintiff from her assigned work role.

vv. Plaintiff contends APS failed to provide Plaintiff meaningful direction regarding what she was expected to do at work after removing her students/caseload.

ww. Plaintiff contends APS then attempted to use the resulting caseload, PTG, documentation, and work-status issues against Plaintiff.

xx. Plaintiff contends APS's EOS/RCI investigations were not neutral, independent, complete, or reliable.

yy. Plaintiff contends the EOS/RCI investigations relied on biased, incomplete, inaccurate, or inconsistent witness information.

18

zz. Plaintiff contends APS's reliance on EOS/RCI "unsubstantiated" findings is misplaced and disputed.

aaa. Plaintiff contends the investigations relied on witness statements that were false, materially misleading, incomplete, internally inconsistent, or contradicted by APS records, employment-status information, communications, deposition testimony, and other record evidence.

bbb. Plaintiff contends certain witnesses minimized, denied, or misstated their involvement, knowledge, employment status, responsibilities, communications, or participation in the events at issue.

ccc. Plaintiff contends APS nevertheless relied on those statements to characterize Plaintiff's complaints as unsubstantiated.

ddd. Plaintiff disputes the admissibility, weight, reliability, and truth of any EOS/RCI findings.

eee. Plaintiff contends any EOS/RCI findings are relevant, if at all, only for limited purposes such as notice, APS's knowledge, motive, pretext, investigation adequacy, credibility, impeachment, and the chronology of retaliation.

fff. Plaintiff contends APS mischaracterized Plaintiff's protected student advocacy, PED complaint, ADA activity, protected-leave activity, internal complaints, and opposition to APS conduct as personal disagreements or workplace grievances.

ggg. Plaintiff contends APS's stated reasons for its actions were false, inconsistent, exaggerated, shifting, and pretextual.

hhh. Plaintiff contends APS circulated, relied on, or permitted false or misleading performance accusations that damaged Plaintiff's reputation, professional standing, employment prospects, and continued ability to work for APS.

iii. Plaintiff contends APS interfered with, blocked, or undermined Plaintiff's professional advancement, including administrative-licensure opportunities.

jjj. Plaintiff contends APS breached employment obligations, including obligations arising from the ATF Negotiated Agreement and related policies, practices, and contractual duties.

kkk. Plaintiff contends her April 8, 2024 resignation was not voluntary in the legal or practical sense.

lll. Plaintiff contends her resignation constituted constructive discharge caused by APS's retaliatory, discriminatory, leave-interfering, and contract-breaching conduct.

mmm. Plaintiff contends APS's conduct caused economic damages, emotional distress, reputational harm, professional harm, medical exacerbation, lost wages, lost benefits, lost retirement benefits, front-pay damages, and other legally recoverable damages.

nnn. Plaintiff contends APS's mitigation defenses are unsupported or overstated.

ooo. Plaintiff contends the dismissal of Plaintiff's defamation claim against APS does not exclude underlying performance-accusation evidence relevant to surviving claims, including ADA, NMWPA, breach of contract, causation, motive, pretext, adverse action, constructive discharge, reputational harm, professional harm, emotional distress, and damages.

ppp. Plaintiff contends protected-leave evidence, leave-interference evidence, HR/leave-processing evidence, investigation-while-on-leave evidence, unpaid-leave evidence,

20

forced-meeting evidence, and APS's handling of Plaintiff's protected leave remain relevant and admissible to Plaintiff's surviving claims, damages, defenses, credibility issues, and trial chronology, regardless of any dispute concerning whether a standalone FMLA claim remains for trial.

2.  Defendant's Contentions:

    a.    Plaintiff was provided reasonable accommodations.

    b.    Plaintiff's performance while using intermittent leave impacted the district and its services to the children enrolled in the schools.

    c.    In as early as November 2020, Plaintiff confirmed she knew that remote work was not offered as an ADA accommodation before she ever filed the PED Complaint.

    d.    Plaintiff confirmed, again in March of 2021 that she knew remote work for her position was not offered as an ADA accommodation.

    e.    In the October 2022 recorded ADA planning meeting, Plaintiff confirmed that her MaxCapture software was not up to date and was asked to rectify this.

    f.    In the October 2022 recorded ADA planning meeting Plaintiff was asked to inform APS in advance of appointments and situations which would require the use of the granted intermittent leave.

    g.    Plaintiff's job function description included physical job demands regarding "crisis intervention", "blocking", and the ability to "run to respond to situations", and "run up/down stairs to assist in maintaining the

safety of students.  Remote work would not allow for these essential job demands.

h.     There we no school social workers granted accommodations to work from an offsite location (or remotely) within the time frome of January 1, 2022 to present.

i.     Plaintiff was granted 390 hours for her intermittent leave, and exceeded that leave by 24 hours.

j.     On February 3, 2023, Principal Melissa Sedillo expressed concerns that Plaintiff had been out of the building for the 12th consecutive day, which was not compliant with the approved intermittent leave.

k.     Due to these prolonged, consecutive absences, APS began to explore the potential for moving the Plaintiff to full FMLA from intermittent.

l.     In light of Plaintiff's overuse of the allotted 390 hours, as well as her prolonged consecutive failure to attend work physically, APS hired an independent investigator to review Plaintiff's use of intermittent leave during the 2022 and 2023 school years.  Within weeks of the initiation of the investigation Plaintiff voluntarily retired.

## V.  APPLICABLE LAW

**A.    Do the parties agree which law controls the action?**

__x___ Yes _____ No

**If yes, identify the applicable law:** <u>ADA and WPA. Defendant expressly objects to Plaintiff's newly named FMLA "claim".</u>

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

      1.      Plaintiff:

      2.      Defendant: Plaintiff has failed to plead an FMLA claim despite having filed more than three years ago, with ample time to amend if necessary.

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

      1.      Plaintiff:  Plaintiff contends the controlling law includes the ADA, the New Mexico Whistleblower Protection Act, federal and New Mexico breach-of-contract law, the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and controlling Tenth Circuit and District of New Mexico authority. Plaintiff also contends the ATF Negotiated Agreement is a contractual source relevant to Count IV breach of contract. Plaintiff does not contend the ATF Negotiated Agreement is a statute. Plaintiff contends leave-related evidence remains relevant to the surviving claims.

      2.      Defendant: Plaintiff failed to set forth claims under the FMLA and/or bring a claim pertaining to the ATF Negotiated Agreement.  Further, Defendant asserts that a union agreement does not constitute "law."  The ADA requires *reasonable* accommodations rather than preferred accommodations.  There is no adverse employment action.

## VII.  MOTIONS

**A.**      **Pending Motions (indicate the date filed):**

1.      Plaintiff:

- Plaintiff's Fourth Motion to Compel RCI/EOS Audio Recordings and Transcripts, Doc. 279 - may affect admissibility, completeness, impeachment, performance-accusation evidence, investigation evidence, and discovery sanctions. Plaintiff's motions in limine and any additional motions in limine filed by the parties - may affect evidentiary scope, witness testimony, exhibits, damages proof, and trial presentation.

2.      Defendant:

APS's Motion for Partial Summary Judgment on Count II, Doc. 267 filed 4/17/26; APS's Motion for Partial Summary Judgment on Count IV, Doc. 268 filed 4/17/26; Numerous Motions in Limine filed 5/28/26

**B.      Motions which may be filed:**

1.      Plaintiff: No additional motions are anticipated.

2.      Defendant: No additional motions are anticipated.

The deadline for briefing has concluded.

## VIII.  DISCOVERY

**A.      Has discovery been completed?**   __x___ Yes _____ No

If no, discovery terminates on _____.

**B.      Are there any discovery matters of which the Court should be aware?**

Only those outstanding issues addressed in motions in limine and contested exhibits.

## IX.  ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated*

*testimony. If the testimony is by deposition, identify the deposition by page number and line number. A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

**A.     Plaintiff's Witnesses:**

    1.     Plaintiff will call or have available at trial the following witnesses:

       Tatia Lipe

       Manuel Alzaga

       Gail Stewart

       Justin Griego

       Stephanie Avila

       Angelique Torres

       Linda Elliott

       Socorro Rodriguez

       Yvonne Garcia

       Lisa Oliphant

       Anitra Atler

       Michael Gromsky

       Amari Lipe

    2.     Plaintiff may call the following witnesses:

       Bernadette Lucero-Turner

       Antoinette Romero

       Rosita Moya-Herrera

       Bonnie Anderson

Jessica Rivera

Meg Crist

Melissa Sedillo

Todd Torgensen

Gabriella Blakely

Jerry Thorn

Delano Encinias

Ms. Delainey

Michael Webster

Mario Guillen

Dr. Vicki Bannerman

Ellen Bernstein

Dominique Candelaria

Sarah Smith

Heather Cowan

Christine Archibeque

Jessie MacFarland

Marion Haworth

Kelly Marvin

Vicki Price

Gerry Richardson

APS Records Custodian

APS HR Records Custodian

APS Payroll/Benefits Custodian

APS Policy / Negotiated Agreement Custodian

Synergy/MaxCapture Custodian

RCI/EOS Custodian or Investigation-Records Custodian

Tim Gonterman / RCI Investigator

MG Barreras / RCI Investigator

Christina Thomas / CT

Kathy Davis

AA, full name presently unknown

Isaiah Gonzales

Kyle Chavez

Ruth Romero

Jason Rullo

Any APS, PED, RCI/EOS, or public-agency records custodian involved in discovery,

investigation, or IPRA/public-records production

Michelle Candelaria

Andy Gutierrez

Valerie Atencio

Teise Reiser

Dorothy Chavez

Valerie Hoose

Kathryn Reed

Michelle Tregembo-Allen

Jennifer O'Connell

Jennifer Mackay

Treating Provider(s), including any provider identified in Plaintiff's releases, medical

records, or treatment records

Vocational/economic damages witness

Family/lay damages witness(es)

Any declarant or affiant whose statement APS affirmatively offers at trial

Any truly unanticipated rebuttal witness permitted by the Court

**B.      Defendant's Witnesses:**

1.      Defendant will call or have available at trial the following witnesses:

2.      Defendant may call the following witnesses:

   a. Tatia Lipe

   b. Justin Griego

   c. Michelle Candelaria

   d. Bernadette Lucero

   e. Vickie Bannerman

   f. Andy Gutierrez

   g. Meg Crist- leave status

   h. Socorro Rodriguez

   i. Bonnie Anderson

   j. Melissa Sedillo

   k. Jerry Thorn

   l. Jessica Rivera

    m.  Lisa Oliphant

    n.  Antoinette Romero

    o.  Valerie Hoose

    p.  Paula Nunez

    q.  Kristopher Johnson

    r.  Jennifer O'Connell

    s.  Any witnesses, not objected to by Defendant, listed by Plaintiff

    t.  Any records custodians necessary to establish evidentiary foundations for admissibility of documents

    u.  Any witness identified in written discovery

    v.  Any rebuttal witnesses whose testimony may become necessary

Depending on the rulings on Defendant's Motions in Limine, Defendant may identify additional witnesses for trial and require additional deposition designations.

## X.  TRIAL PREPARATION

**A.    Exhibits.**

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.  The parties must file a "consolidated exhibit list identifying all exhibits that the parties have stipulated are admissible" and a "consolidated exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there are other objections" no later than June 4, 2026.

For those exhibits on which a stipulation could not be reached, the offering party must file a separate "contested exhibit list" no later than June 4, 2026.  Each party's contested exhibit list must be filed on the date identified in the preceding paragraph.      All exhibits must be

marked before trial.  Exhibits must be marked numerically and identify the party offering the exhibit.  The identification number or letter will remain the same whether the exhibit is admitted or not.

**B.      Witness Lists.**

Each party's witness list must be filed with the Clerk and served on all parties by May 28, 2026.  Indicate whether the witness is testifying by deposition or in person.  Objections to use of deposition testimony are due within fourteen (14) calendar days of service of the witness list. The objecting party must mark those portions of the requested deposition testimony to which the party objects.  Marking must comply with D.N.M.LR-Civ. 10.6.  The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing at least 14days before trial.

**C.      Voir Dire.**

1.      If allowed, do the parties wish to participate in voir dire?

Plaintiff                    _____ Yes _____ No

Defendant               __x__ Yes _____ No

2.      Each party wishing to participate in voir dire must serve on all parties and file with the Clerk a pleading entitled "Proposed Voir Dire Questions."  The pleading must identify the specific areas about which the party wishes to inquire and must set forth proposed voir dire questions.  This request must be filed at least 14 calendar days prior to jury selection.

**D.**    **Jury Instructions and Verdict.**

**1.**    **In General.**  The parties must confer about proposed jury instructions.  The Court will prepare and provide the parties with a Court-proposed set of general "stock" instructions that will be given.  The stock instructions are available from the Court's web site.  The instructions that the parties must submit to the Court will be those which set forth the elements and definitions of the claims or charges, and the elements and any definitions of any defenses.

**2.**    **Sources for Instructions.**  If pattern instructions are followed by the judge, the judge will indicate at the pretrial conference his or her preference for the source of instruction.

**3.**    **Submission of Proposed Instructions.**  The parties must submit one mutually approved set of jury instructions no later than June 4, 2026.  For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

**4.**    **Form of Instructions.**

a.    Submit sets of double-spaced instructions as follows:

___ set(s) of originals without citations and headed "Instruction No. ___"; and

___ set(s) with citations and numbered accordingly, one of which will be filed.

b.    If requested, also submit all instructions in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

c.    Submit no more than one instruction to a page.

d.   All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.

e.   Submit a cover sheet on all sets of instructions.

**5.   Deadlines for Submitting Instructions**.

a.   Instructions shall be filed on June 4, 2026.

b.   Supplemental unanticipated jury instructions may be submitted at trial.

**E.   Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection.  The statement must be submitted to the Court by June 4, 2026.

**F.   Submission for Bench Trials.**

1.   The parties must submit one mutually approved set of proposed findings of fact and conclusions of law no later than 10 calendar days before trial.  For those findings of fact and conclusions of law the parties were unable to agree upon, each party must submit its own proposed findings of fact and conclusions of law at the same time as submission of the mutually approved set.

2.   If requested, submit the findings of fact and conclusions of law in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

## XI. OTHER MATTERS

**A.      Settlement Possibilities.**

1.      The possibility of settlement in this case is considered:

_____ Poor    ___x___ Fair   _____ Good   _____ Excellent   _____ Unknown

2.      Do the parties have a settlement conference set with the assigned Magistrate Judge?

_____ Yes   _____ No   If yes, when? _____

If a settlement conference has already been held, indicate approximate date:

The parties are attempting a final mediation with Ret. Judge Linda Vanzi on June 15, 2026

Would a follow-up settlement conference be beneficial?    _____ Yes   _____ No

3.      Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?

If yes, please identify:  The parties have mutually agreed to attempt mediation one last time before trial.

If no, explain why not:  _____

**B.      Length of Trial and Trial Setting.**

1.      This action is a        _____ Bench Trial   __x____ Jury Trial   _____ Both

2.      The case is set for trial on July 20-29, 2026.  If there is no setting, the parties estimate they will be ready for trial by _____.

33

3.      The estimated length of trial is 9 day(s).

## XII. EXCEPTIONS

Plaintiff further preserves all leave-related/FMLA evidence, issues, adverse-action chronology, damages, and trial theories to the extent preserved by the pleadings, record, Court rulings, pending filings, and applicable law. Plaintiff's breach-of-contract claim is based on APS employment obligations, including the ATF Negotiated Agreement and related policies, practices, and contractual obligations.

Plaintiff further clarifies that she does not contend the ATF Negotiated Agreement is itself a statute. Plaintiff's position is that the ATF Negotiated Agreement is a negotiated collective-bargaining/employment agreement and contractual source governing APS employment obligations, including terms, protections, procedures, and related rights relevant to Count IV breach of contract and to APS's asserted defenses. Plaintiff objects to any characterization that Plaintiff claimed the negotiated agreement is a statutory provision or independent statute.

The parties dispute whether Plaintiff's resignation was voluntary or constituted constructive discharge.

Plaintiff does not stipulate to Defendants' assertions regarding Plaintiff's essential job functions, actual duties, ability to work remotely, alleged performance deficiencies, alleged leave misuse, alleged neglect of duties, alleged failure to cooperate, alleged causation of damages, alleged voluntary resignation, the adequacy of APS's ADA interactive process, the reasonableness of APS's accommodations, the legitimacy of APS's investigations, or the substance, reliability, admissibility, or weight of APS/EOS/RCI findings.

## XIII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval. The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this _____ day of _____, 20___.

Respectfully submitted,

WIGGINS, WILLIAMS & WESENBERG
A Professional Corporation

By: */s/Natasha A. Martinez-Wesenberg*
     Natasha A. Martinez-Wesenberg
     Carol M. Cochran
     Patricia G. Williams
*Attorneys for Albuquerque Public Schools*
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
nwesenberg@wwwlaw.us
ccochran@wwwlaw.us
pwilliams@wwwlaw.us

Dated: _____

_____
UNITED STATES DISTRICT JUDGE