IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

Plaintiff,

v. 1:23-cv-00899 GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS,

Defendant.

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS**

COMES NOW Albuquerque Public Schools ("APS") by and through their undersigned attorneys, for Defendants' Objections to Plaintiff's Designation of Deposition Excerpts and Counter-Designation, and state as follows:

**A. General Objections**

APS objects to Plaintiff's Deposition Designations on the grounds that, if the deponents are not unavailable to testify at trial, the deposition testimony is inadmissible hearsay under Rule 801 if offered to prove the truth of the matters testified to therein. Fed. R. Evid. 801. None of the witnesses deposed has yet been shown to be unavailable to testify at trial with the meaning of Rule 804(B). Fed. R. Evid. 804(B). APS reserves the right to require additional portions of testimony for completeness. Fed. R. Evid. 106.

As to the witness depositions, most of these witnesses will testify in person at trial in Defendant's case and therefore, Defendant objects to the use of portions of witnesses depositions in Plaintiff's case as a waste of the Court's time and as duplicative. If Plaintiff seeks to introduce portions of this witness's deposition testimony in her case in chief, she should be required to call the witness and then may use this deposition to impeach the witness if appropriate, and Defendant

should, of course, be permitted to "cross-examine" witnesses beyond the scope of "direct examination" if necessary, in the interests of saving time, at that time so that the witness is only called once in order to avoid wasting the trial time set aside for this case.

Specifically, Defendant objects to the deposition designations of Lisa Oliphant and Socorro Rodriguez in their entirety on the grounds that the designated testimony is not relevant within the meaning of Rule 401, is cumulative and duplicative of other evidence and testimony that will be presented at trial, and its admission would create a substantial risk of misleading the jury and causing unnecessary presentation of cumulative evidence under Rule 403. See Fed. R. Evid. 401, 403. Furthermore, Justin Griego, Ms. Oliphant and Ms. Rodriguez are expected to testify live at trial and can provide any relevant testimony directly to the jury, rendering the use of their deposition testimony unnecessary and cumulative.

**B. Objections to Specific Designations**

In addition to the foregoing generally applicable objections, APS raises the following objections to specific excerpts set forth in Plaintiff's Deposition Designations:

**I. Bonnie Anderson**

| No. | Page/ Line Designation | Text | Objection or counter designation |
|---|---|---|---|
| 1 | 6:10-22 | A. No.<br>Q. Okay. In this particular case you have been asked to assist Albuquerque Public Schools in providing data, correct?<br>A. Correct.<br>Q. And you're aware that there is a current lawsuit pending that is involving Albuquerque Public Schools and my client, Ms. Lipe?<br>A. Yes.<br>Q. Okay. Isn't it also accurate that you verified a lot of the information that has been provided by way of the discovery from APS in this case?<br>A. Yes. | In terms of Plaintiff using this deposition designation for foundation to not knowing verified information produced, this is a statement that is incorrect. Plaintiff knows how to |

| | | | |
|---|---|---|---|
| | | | access information on MaxCapture and had access to Plaintiff's documents and could verify their authenticity.<br><br>APS objects to relevance of the matter. Fed. Rule Evid. 401 |
| 2 | 6:23-25;<br>7:1-20 | Q. Can you please be specific as to what exactly you were in charge of as it pertained to your verification for those documents and information that was provided?<br>A. We provided some data from STARS, which the name of the -- it stands for Student Teacher Accountability Reporting System. The State had, prior to the current system, which is called Nova. But we provided from STARS the end of year surfaces fact template that had all of the detail about related services delivered to students at the end year count. And then -- that was from '22, '23. And then we used a query to find similar data, but in our internal system, Synergy. And data covered the entirety of the year templates 40 days through the end of year. And then we also supplied -- although was just a conduit for this piece -- from '22 to '23, notes made by social workers in MaxCapture which is the data collection system that feeds Medicaid reimbursement through Medicaid and schools data. So those notes were provided without reference to student names.<br>Q. Okay. No problem. | No objection. |
| 3 | 7:23-25;<br>8:1-3 | documents that we provided. I think I also provided a list of the managers for related service for the -- some years that you specified that included Bernadette Lucero-Turner and more recently Lisa Oliphant.<br>Q. Okay. Let's talk about the two different | No objection |

| | | | |
|---|---|---|---|
| 4 | 8:3-17 | Q. Okay. Let's talk about the two different systems. I would like to ask you about MaxCapture as well as Synergy. And what I would like to do is have you tell me about both of those programs, starting with Synergy, and how you are able to access information from Synergy and how you are able to access information from MaxCapture.<br>A. So I can't testify about MaxCapture, that would be JoAnn Sanchez.<br>Q. Okay.<br>A. I just made sure that you got the document. I went upstairs and talked to JoAnn, who works on the third floor, and she -- she is the keeper of that data? | Relevance (Fed. Rule Evid. 401) |
| 5 | 8:19-22 | Q. How did you access the information that was requested by Ms. Lipe as part of this lawsuit?<br>A. Through queries that one of my techs designed. | Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br><br>Relevance (Fed. Rule Evid. 401) |
| 6 | 9:7-18 | If you are medium, as you describe your strength and your ability to work on a computer system, technology, general, did you feel that this<br>was -- you were the right person to provide us with this information from Synergy?<br>A. So I don't do everything by myself. I have a little team that works with me.<br>Q. Okay.<br>A. And my job is to -- I am more aware of connections between data and funding, like, through the State Equalization Guarantee. And I am more<br>aware of rules that apply to how funding and data | Relevance (Fed. Rule Evid. 401) |
| 7 | 10:15-25; 11:1-12 | So my role right now is more of a kind of the guiding light on data and budget for the special ed department. I am not doing the queries myself, but I have got some very sharp people that do it for me. Now, they are not paid at a level where they should be subjected to the rigors of depositions and trials, and so on. So I am -- I am your -- I am your -- I am it when it comes to the legalities. But I can't tell you about the exact details. Now, I can tell you about the ability of Synergy to store data, historically. And – because I know that was a question. And the data that -- that my tech was able to pull from '22, '23 are -- the data that she used for her queries were the templates that we sent to the State. Back then in '22, 2023, we sent a set of data on a prescribed format that the State had. And | Plaintiff states this designation proves that Witness cannot provide exact technical details for how information verified by Witness was gotten. Counter designation: 15:4-18. |
| 8 | 11:15-23 | I am a little concerned because I think documentation was provided and signed by you and you verified that this is what you have yourself<br>provided. But now you are telling me that there is, in fact, people that work with you, a team who would have been in charge of accessing the requested information that we had for both MaxCapture related data and Synergy related data?<br>A. Not MaxCapture, Synergy. | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| 9 | 13:6-25;<br>14:1-10 | What could a social worker see if they logged into Synergy?<br>A. Okay. All right. I can answer that. So they can see the students that that have been assigned to them. And in the case of social workers, they assign themselves the kids. We, I have another tech who processes requests from each role group, and -- well, let's just stick with social workers. So if social worker John Smith submits, says, Please add this student to my caseload, then we add it to their portfolio. So they can see the students that are currently in the -- they are currently assigned to. Also, if they set their focus to show active and inactive, they can also see students who have either exited special ed or exited the district. Their names are shown in parentheses.<br>Q. Okay.<br>A. So -- and, they can look at the IEPs for those kids, and any historical documents that are stored in the system. They have access to draft documents that are currently being created, such as an IEP, an invitation to the parent to attend the meeting, which includes if it is a re-eval consent for testing. I think there is a Medicaid approval document. It depends on what stage of the process the kid is in. But the social worker could see not only the portfolio, completed historical documents,<br>they can also see draft documents that are currently in process. | No objection |
| 10 | 14:11-25;<br>15:1-18 | Q. Okay. Tell me about the reports that can be generated by someone like you who is in a position of authority over data. What is the kind of report that you can generate for me through Synergy?<br>A. Well, it depends on what you want to know.<br>Q. Okay. Tell me what your understanding was in this particular case when you verified information, I would like to understand from you<br>when you provided information to us in this case what was your understanding of what you were providing to me?<br>A. As I recall, you requested information about provider student connections from an historic year, not the current year, but going back to '22, '23. And you wanted to know the name of the provider, the number of minutes per whatever month, week, semester. And we redacted the student number. And the reason we were able to pull that information from the State is because the State publishes reports and we access the end-of-year report from the STARS historical record at the State.<br>And then from Synergy the reason we were able to pull anything from '22, '23, is because during that year we were under a different set of<br>reporting requirements. The reporting requirements were that 40-day, 80-day, 120-day and end of year, we had to send up a prescribed template populated with the data that the State required. And that<br>copy was stored in Synergy. We no longer -- we have now moved to a day-by-day reporting. Now we have to send up data every day. | No objection |
| 11 | 15:20-25;<br>16:1 | A. That happens automatically. A connection between Synergy and Nova that that date goes daily. But back in '22 or '23 we had a capability of storing it because we sent it up in a different manner. We only sent it up four times and it was in a prescribed format. So that is how it is saved in Synergy | No objection |

| | | | |
|---|---|---|---|
| 12 | 16:2-18 | Q. Who was the person that actually did the work that you verified? What was the name of the person who actually did the work?<br>A. If I give the name does that mean she is going to be questioned? In that case, I don't want to reveal the name because I don't -- she is not being paid at a level --<br>Q. Let me explain to you why this is not something that is subject to debate because I can depose whoever I choose to depose. My problem and concern is, Ms. Anderson, is that you verified a document and by verifying the document that you verified, you indicated that you were the one who actually did the work, compiling thousands and thousands of pages of reports, but yet you are here today to tell me that, in fact, that wasn't you. That is a problem. | Relevance (Fed. Rule Evid. 401)<br><br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 13 | 16:25; 17:1-11 | A. I remember signing a document saying that I verified that the data was accurate, and that is true.<br>Q. Okay. But you were not the one who actually generated and actually printed out the data?<br>A. No. But I am the one that directed the work.<br>Q. Did you review the work?<br>A. Oh, yes.<br>Q. You reviewed the work?<br>A. Yes. | Relevance (Fed. Rule Evid. 401)<br><br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>The verification verifies that the facts and allegations stated in document are true to the best of signer's knowledge and belief. Witness reviewed the work. |
| 14 | 17:12-25; 18:1-3 | Q. With Synergy getting back to dates, for example, any date can be put in. So I can be very clear as I do a search, I can type in and modify whatever dates I am looking to extract data for, correct? So if I want 2020, 2021 school year, I can go into Synergy and type in that information, could I not?<br>A. No. That is not how -- we don't have reports like that. In this case, in order to get the data you needed, we had to have a specific query that mined data from the historic record in Synergy that existed during the time of STARS. That historic record does not exist after we switched to Nova. But in the time of STARS, we -- we stored the data that was submitted at those four count dates and the query would access the data store.<br>Q. How long has Synergy been used as the | No objections |

| | | | |
|---|---|---|---|
| 15 | 18:24-25; 19:1-6 | Q. Did you ever verify how many pages were produced by number in this case?<br>A. No.<br>Q. Okay. Is it true, Ms. Anderson, that this information that you provided from thousands and thousands of pages, isn't this something that could have been printed off easily as a report?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 16 | 20:15-24; 21:1 | A. Oh, okay. This is a User guide that we created just within the special ed department. I thought you meant a Synergy manual for the whole system. We created some user guides that we have even stopped updating them because they go out of -- they get revised so quickly. But, yeah, I recognize this.<br>Q (By Ms. Foghi) Okay. So this does exist?<br>A. Oh, yeah.<br>Q. I am going to label this, now of course as have mentioned Plaintiff's Exhibit Number 1. (Exhibit marked, 1.) | Relevance (Fed. Rule Evid. 401) |
| 17 | 21:2-25 | Q. (By Ms. Foghi) Were you aware, Ms. Anderson, that by looking at this document, The Guide to Using Synergy is the title of the document, that you can actually download reports by the click of a button as opposed to tens of thousands of pages being printed on individual wasted pieces of paper? You do realize a button can give you the report that I asked for?<br>A. Well, so I don't agree with you that a button can give you the report you asked for. The reports that we describe in this manual that are still available, like the FTE report or a portfolio report, those are only -- those only work for present students.<br>Synergy does not keep these things going back in history. That, those buttons only work for current data, live data.<br>Q. So you are telling me that generating a report like what we asked for, what you are testifying to today is that the way in which you gave me those documents is the only way you could have accessed them and that you have no way of generating a simple report?<br>A. Correct. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 18 | 22:1-10 | Q. Who is the person that did the work, Ms. Anderson?<br>MS. KILGORE: I think you need to tell her your team names.<br>A. Danette Chavez.<br>Q (By Ms. Foghi) Okay. So Danette Chavez would have been the lady that generated these reports, correct?<br>A. Under my direction about what inputs to use, and, yes. | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| 19 | 22:12-25; 23:1-2 | Synergy can provide?<br>A. No.<br>Q. Okay. Go ahead and tell me.<br>A. So, again, I have said this before, but let me try to say it with different words. The only way we were able to capture the historic data you asked for from '22, '23 was due to the fact that at the time the State required templates of data to be submitted at the four count dates.<br>Those -- the data that was submitted and those four count dates was stored somewhere in Synergy and we were able to design, and I don't even know if it was one query or a series of queries that were able to mine that data from those four reporting periods. And that is what we gave in the document from Synergy. | No objection |
| 20 | 23:3-25; 24:1-6 | Q. Have you ever participated in an audit on behalf of the school system?<br>A. What type of audit are you talking about, financial?<br>Q. Any type of audit.<br>A. Any type of audit, yes.<br>Q. Okay. And as you participated in any type of audit, were reports requested by you to be provided as part of that audit?<br>A. Typically when we are auditing something, there are very specific data requests. And I work with my team to determine what -- a lot of times users come to us and they say, We want X, Y, Z. And after talking with my team and what is actually possible, we sometimes say, Well, we can provide Y but we cannot provide X, and we can provide Z if and only if, you know, this parameter is put on it. So we get data query requests all the time that are related to -- as our function as the special ed department, part of our function is assuring that students are getting services that are required.<br>And so we are, I would not say daily, but weekly my team is asked to provide data about a variety of situations. And it is a give and take when we get asked things. We can't always produce what people want, but we try to give them the closest we can get. And that is kind of what we did in your case. We gave you the closest we could get. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| 21 | 25:2-20 | Q. (By Ms. Foghi) Does this look familiar?<br>MS. KILGORE: We haven't pulled it up yet.<br>Give me a second.<br>MS. FOGHI: Okay.<br>A. I don't think I provided this. Yeah. I<br>don't know.<br>Q. (By Ms. Foghi) Do you recognize this<br>report?<br>A. I don't believe I provided this.<br>Q. I am not asking you if you provided it?<br>A. Sorry.<br>Q. I am asking you if you recognize what type<br>of report this is?<br>A. Yes.<br>Q. What is this type of report?<br>A. A portfolio list.<br>Q. Where did this come from?<br>A. Synergy. And it shows the active<br>relationship. | No objection. |
| 22 | 25:21-25;<br>26:1-6 | Q. The day-to-day, correct?<br>A. Day-to-day. If you were talking about the<br>present day, the answer is yes. If you were talking<br>about a time in the past, the answer is no.<br>Q. Okay. Is this one type of report that can<br>be generated through Synergy?<br>A. Only for current data. It cannot be<br>generated for historic data.<br>Q. Okay. Can the fields be edited to change<br>the school year and any details desired?<br>A. No. | No objection |
| 23 | 26:12-24;<br>27:1-4 | Q. Okay. So please take a look at what I<br>sent.<br>A. Yes.<br>Q. What does this report reflect to you?<br>A. It is a services fact record. And, again,<br>it is available for current service, not historic<br>service.<br>Q. Okay. And specifically if you take a look<br>at this exhibit it talks about ID numbers belonging<br>to the students, their grade, their service type and<br>minutes spent either monthly or by semester,<br>correct?<br>A. Yes.<br>contains all students in the school district that we<br>see social work services, correct?<br>A. So I can't answer that for the year '21,<br>'22, but if we were to run this now, yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| 24 | 27:12-25;<br>28:1-23 | Q. (By Ms. Foghi) Okay. And could you take a look at this and tell me how you would characterize this document?<br>A. I am trying to think what she wants. It is a record that was generated at the time, when it was current, of students that were served. I am guessing by a particular -- here, notice the ones in parentheses are the ones that have been exited.<br>Q. We are on Exhibit 4. We are on Exhibit 4 right now.<br>MS. KILGORE: We are on Exhibit 4.<br>A. Can you scroll down to the bottom so I can see the footer? Okay. Hold on. It looks like she has run it for the whole district --<br>Q. Okay.<br>A. -- because I am seeing -- rather than just a particular school.<br>Q (By Ms. Foghi) Correct. So Synergy, once again, you can modify the fields to include the entire school system versus a particular school, correct?<br>A. Yeah. And just to let you know, that happens in the upper right-hand corner of the screen which is called the focus area.<br>THE WITNESS: You don't want me to elaborate.<br>MS. KILGORE: No.<br>A. So social workers have access to, as do all related service providers have access to all schools, because their assignments frequently<br>overlap in a variety of schools. And rather than trying to -- so, yes, she has the ability, a social worker has the ability to run a report for the whole school. But, again, note that she ran this back in '21, '22. So the report only works for the current data. It does not work on historic data because Synergy does not maintain that data historically. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 25 | 28:24-25;<br>29:1-24 | Q. (By Ms. Foghi) Okay. So what you are saying, and I want to make sure that you and I are on the same understanding, the same page.<br>A. Sure.<br>Q. What you are saying is that Synergy system, you cannot edit the focus and that you cannot edit the date. If you are saying it is only current, not historical, current means I can put in the time currently for this year, right? Is that what current means for this school year, or does<br>current mean for today?<br>MS. KILGORE: Objection. I think your question is very confusing.<br>MS. FOGHI: Okay.<br>A. Let me give her a little background. So the focus area can be set to prior years, but the reporting tools don't work. The reason you can set it to prior years is because there -- we need to be able to check enrollment records which have to be maintained. So you can set -- you can -- you can -- if I were a social worker, I can change the focus to a variety of schools and I can also change the focus year, but that does not draw accurate data out of the system for those past years. The past years only work for enrollment records. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) Nonresponsive: Witness does not agree to what is being said and this designation merely highlights what Attorney Foghi is asking. |

| | | | |
|---|---|---|---|
| 26 | 30:18-25; 31:1-7 | Q. (By Ms. Foghi) When the documents were produced to us that were requested and the person that you have identified as being the one who<br>provided these documents did the actual work, what specifically did you do as their supervisor to validate and verify what, in fact, we were being given?<br>A. We reviewed the parameters of the query and I looked at – I skimmed over the report to see if it seemed reasonable, and I was satisfied in both respects.<br>Q. You skimmed and -- you looked at it, you skimmed it and it looked reasonable. That is your testimony?<br>A. Yes. | Relevance (Fed. Rule Evid. 401)<br><br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 27 | 31:8-19 | Q. Okay. As you can see from what I have shown you in various exhibits, 2, 3, and 4, it is very specific, as far as the data that is being<br>shown, minutes per semester, the kind of service, the grade of the student, et cetera. And you can see that this report is generated as one solid page-by-page report. Is this something that you're testifying today that could not be provided when we requested you to provide with us the parameters reflected in the discovery request?<br>A. Correct. | Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>Witness has explained that that report can be created only currently, not for historical data. |
| 28 | 31:20-24; 32:1-11 | Q. Okay. As you can see from what I have shown you in various exhibits, 2, 3, and 4, it is very specific, as far as the data that is being<br>shown, minutes per semester, the kind of service, the grade of the student, et cetera. And you can see that this report is generated as one solid page-by-page report. Is this something that you're testifying today that could not be provided when we requested you to provide with us the parameters reflected in the discovery request?<br>A. Correct.<br>run a report by name?<br>A. Do you mean provider name or student name?<br>Q. Both.<br>A. What do you want to know about them? So a provider can run a list of portfolio or class list. If you want to know information about a particular student, you would go to that student's record and the historic data that is saved, like, the IEP, the PWNs, the invitation to parents, consent for testing, and attached documents, those can be viewed by a social worker. | Relevance (Fed. Rule Evid. 401)<br><br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>Duplicative |

| | | | |
|---|---|---|---|
| 29 | 33:2-24 | Q. (By Ms. Foghi) Once you are able to take a look at this, if you could just answer the question of whether or not this is something you would recognize as something that Synergy has the capability of doing.<br>A. Can this be generated by -- so I think this is class list so --<br>Q. Job detail is portfolio list. Do you see that in the job details? On the first white box there are two little dots.<br>A. Yeah.<br>Q. And one of -- the first one says Job Detail Portfolio List.<br>A. Right.<br>Q. And then the status says no data found for this report.<br>A. Right.<br>Q. If no data is found for this particular report, what would that mean?<br>A. That Synergy did not have any data.<br>Q. That there was no caseload, correct, for that social worker?<br>A. For that time period, yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

## II. Annittra Atler

| No. | Page/ Line Designation | Text | Objection or counter designation |
|---|---|---|---|
| 1 | 4:13–22 | Q. What do you do, Ms. Atler?<br>A. I'm the senior director for the office of innovation for the Albuquerque Public Schools.<br>Q. How long have you been the senior director?<br>A. This is my second year, starting my second year.<br>Q. Prior to having this position, what did you do?<br>A. I was the associate superintendent for special education for these kids for two years.<br>Q. And what were the dates of that position?<br>A. That would be July 1st of 2022, yep. | No objection |
| 2 | 5:9–16 | A. With APS and another five --<br>Q. Could you please describe your responsibilities as the associate superintendent?<br>A. Yes. So as the associate superintendent, I was in charge of overseeing 17,000 students, 200 district employees. Oversaw the executive directors in charge of compliance, those were my direct reports, compliance-related services and curriculum and development. So those were my direct reports. | No objection |
| 3 | 5:21–25; 6:1–10 | A. That looks really at compliance, looking at curriculum development, inclusion. I mean, it really is holistically making sure we look at the evaluation section, making sure we're in compliance with state rules and regulations and with IDDA.<br>Q. Would that also involve keeping track of caseloads that are assigned to respective social workers?<br>A. Those were assigned to the executive directors. They were in charge of keeping track of all of the caseloads.<br>Q. So executive directors during this time period that's relevant in this case, who would have been the | No objection |

| | | | |
|---|---|---|---|
| | | individual that would have been the ultimate authority on caseload assignment?<br>A. That would be Bernadette Lucero-Turner. | |
| 4 | 6:17–22 | A. General. So all of that really relied on my executive directors and who they were supervising. So as we look at 17,000 students and providing services and supports for them, it really kind of trickles down. So I did not have to do general personnel supervision, but I could provide supports and direction for my, for my employees. | No objection |
| 5 | 6:23–25; 7:1–13 | Q. Got it. Did you ever have an opportunity to work with Justin Griego?<br>A. I did, to support, not directly, but as a support.<br>Q. Okay. And what support did you provide to Justin?<br>A. Guidance regarding caseload management and parent concerns for Volcano Vista.<br>Q. Okay. So I just asked you a few moments ago about caseload management and you indicated that that would have ultimately been assigned and responsibility of Bernadette Lucero.<br>A. Uh-huh.<br>Q. What a caseload management support did you give Justin Griego?<br>A. He asked for guidance regarding Ms. Lipe being out and how to -- parent concerns that were coming up. So that, was CCd on some of that guidance. | Relevance (Fed. Rule Evid. 401) |
| 6 | 7:15–25 | tell me how you have come to know my client, Ms. Lipe. This is the first time you're meeting her?<br>A. This is the first time. I have never met her in-person before.<br>Q. Okay. So tell me how you heard of Ms. Lipe.<br>A. My first interaction with Ms. Lipe was I think probably a few weeks into the job in July/August and she asked for me to sign her verification of hours completed for her principal licensure.<br>Q. Okay. But you never met her in person?<br>A. Never met her in person, no. | Relevance (Fed. Rule Evid. 401) |
| 7 | 8:1–5 | Q. Did you assist her with that request?<br>A. I responded to her request. I didn't feel like I could assist her because I didn't have any documentation to show what had been completed. So I wasn't comfortable signing off on something I couldn't verify. | No objection |
| 8 | 8:10–24 | Q. So there were no personal interactions with her. Were you ever -- did you ever act as her supervisor?<br>A. No, I didn't.<br>Q. Did you ever act as her colleague?<br>A. I guess in a sense of being with APS, yes.<br>Q. But you certainly would not have been her subordinate?<br>A. No.<br>Q. Okay. Prior to the complaint that was filed in this matter, would you -- did you ever supervise her | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| | | directly?<br>A. No.<br>Q. Did you ever observe Ms. Lipe working with students?<br>A. No, I did not. | |
| 9 | 9:1–24 | discussions regarding her request, ADA or FMLA regarded-- regarding, ADA and FMLA request?<br>A. Yes, I did.<br>Q. Which meetings did you participate in specifically?<br>A. Specifically, I believe it was a fall meeting with the union and with HR. I believe that was like a November --<br>Q. I believe September 2022, correct?<br>A. Correct.<br>Q. Is that -- well, when did you first become aware of the request for the ADA accommodation that was made by Ms. Lipe?<br>A. I can't remember.<br>Q. And what role did you play in the interview when you had the interview with ADA, what was your role in that interview?<br>A. As a support for the, for my executive director and for the team as a whole.<br>Q. Did you ever communicate with Ms. Bernadette Lucero regarding the accommodations?<br>A. I don't believe so, because I wasn't made aware of all of the exact accommodations until that meeting. I was not aware of anything before. | No objection |
| 10 | 10:17–23 | Q. (BY MS. FOGHI) Did you -- so you indicated that you acted as support with respect to the caseload aspect, but with respect to any accommodation requests, were you the person who had final decision-making on whether an accommodation should be given or not?<br>A. No, I never even sat in on any of the ADA meetings. That was not my role. | Relevance (Fed. Rule Evid. 401) |
| 11 | 11:10–21 | Q. Okay. Were you aware of the Gonterman Report that was issued in this case?<br>A. Yes.<br>Q. Okay. Were you aware that you were identified as the person who denied the accommodations?<br>A. I did read that, yes.<br>Q. Okay. What -- any particular comment you wish to make on that?<br>A. I was not part of the ADA meeting. I wasn't part of any of those recommendations. APS has a very formal process, and so I was not part of the meetings, was not part of denying her request. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 12 | 11:22–25; 12:1–6 | Q. So why do you believe that in that Gonterman Report you were identified as the person who would deny the accommodation?<br>A. I, I don't know. I know it was said by somebody | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| | | else that I did that, so I don't know why that person would make that, would say that.<br>Q. Do you have a copy of any written denial of Ms. Lipe's accommodation request that you would have been a part of?<br>A. I do not. | Duplicative (Fed. Rule Evid. 403) |
| 13 | 12:7–17 | Q. Were you interviewed in 2023 by an external investigator, his name was Tim, well Tim Gonterman?<br>A. Yes.<br>Q. In connection with the complaint?<br>A. Yes.<br>Q. And was this interview conducted in your official capacity?<br>A. Yes, it was.<br>Q. Were you aware that the interview was recorded and transcribed?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) |
| 14 | 14:5–20 | Q. So in the course of this investigation, March 31, 2023, you participated in the interview with Mr. Gonterman which was an audio-recorded interview, correct?<br>A. Yes.<br>Q. And specifically, you were asked to provide a detailed knowledge of the events surrounding the complaint made by my client toward Mr. Griego and Ms. Turner, correct?<br>A. Correct.<br>Q. Okay. You had made several statements to the investigator, and as a summary, and, of course, correct me if I'm wrong, but we're speaking about your perspective specifically as it is outlined in Paragraph 2 which begins with, "Ms. Atler was asked to detail..." You discussed concerns that you have about the number of days that my client was absent that you felt was inconsistent.<br>A. Correct. | Relevance (Fed. Rule Evid. 401) Can be directly asked about this. Designation does not bring the concerns to light, merely states that there are concerns. Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 15 | 14:21–25; 15:1-4 | Q. Elaborate on that for me. What documents did you review in order to make that statement?<br>A. So that conversation was related to the meeting, as it mentions, with Jessica Rivera from HR, and, with Ms. Lipe and her union representative. During that meeting it was brought up that the intermittent FMLA was not intermittent, and that there were days where it was ten days, 11 days at a time. That was part of the conversation that was had during that meeting. | No objection |
| 16 | 15:5–17 | Q. So under federal law my client has a right to take FMLA, correct?<br>A. Absolutely.<br>Q. How much time can she take under FMLA?<br>A. It is outlined in her FMLA leave, the intermittent FMLA.<br>Q. It doesn't have to be taken all at once, correct?<br>A. Absolutely does not.<br>Q. Were you aware of my client's medical concerns and | No objection |

| | | | |
|---|---|---|---|
| | | conditions that required her to take FMLA?<br>A. I was made aware in the meeting. I don't ha- -- I wasn't privy to her leave or her ADA request. I was not part of that. | |
| 17 | 15:18–24 | Q. When you met with HR what documents did the HR representative provide you with that made you make the statement to the investigator that you felt that her absence, what she stated and what was actual was inconsistent?<br>A. I never met with HR directly regarding her leave. As I mentioned, it was during that meeting. | Relevance (Fed. Rule Evid. 401) |
| 18 | 16:5–13 | A. "Ms. Atler was asked to detail her knowledge of events surrounding the complaint made by Ms. Lipe toward Mr. Griego and Ms. Turner. She advised that she was asked to join a meeting with Mr. Griego regarding the responsibility of Ms. Lipe and her student caseload. Jessica Rivera and a union representative were also present. Ms. Lipe was not consistent in her absences, intermittent FMLA and it was unclear when she was present to meet the responsibilities of her job." | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 19 | 16:14–22 | Q. Okay, we can stop there. So if she -- if it was unclear, as you, as you have stated, when she was present, when she was present to meet the responsibilities of the job, I'm assuming that there is a sign-in/sign-out sheet that every single person who reports to work has to adhere to, correct?<br>A. That would be a question for Mr. -- not necessarily, no. That would be a good question for Mr. Griego. | Relevance (Fed. Rule Evid. 401)<br>Witness was in district office not at Volcano Vista High School where Plaintiff was located.<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 20 | 17:1–15 | was, in fact, a sign-in and sign-out sheet. So you made the statement about "inconsistent"?<br>A. Yes.<br>Q. Based on what?<br>A. Based on looking at caseloads for students, what was reported to me.<br>Q. By who?<br>A. By Mr. Griego, Ms. Turner, Ms. Bernadette Lucero-Turner as to needing help with caseloads, hours being met for students.<br>Q. Okay. You also indicated during this interview that did you not believe that the school was aware of when Ms. Lipe was present at school and when were her actual days off; is that correct?<br>A. That is correct. | No objection |

| | | | |
|---|---|---|---|
| 21 | 17:23–25; 18:1–24 | Q. (BY MS. FOGHI) Is this a document you have ever seen?<br>A. No.<br>Q. Okay. Could you identify, could you tell me what that document looks like for the record?<br>A. Staff sign-in staff sign-out sheet.<br>Q. The very first line on that page is dated February 11, 2022, correct?<br>A. Correct.<br>Q. And the individual listed there signing out is Antoinette Romero?<br>A. Correct.<br>Q. Do you know who Antoinette Romero is?<br>A. I do not.<br>Q. Okay. What is the reason for her signing out?<br>A. "Work from home."<br>Q. Thank you.<br>Is it your understanding and in your official capacity in this job that working from home specifically for social workers was not permitted?<br>A. That is correct.<br>Q. What was the reason that that was not permitted?<br>A. APS policies.<br>Q. So if Ms. Antoinette Romero is a social worker at APS, then would you agree with me that APS is violating its own policy?<br>A. Or -- either APS or the employee, yes. | Relevance (Fed. Rule Evid. 401) No personal knowledge of staff sign-in sheet. (Fed. R. Evid. 602) |
| 22 | 19:1–7 | referencing when you say that social workers are not permitted to work from home? Do you have a copy of that?<br>A. I do not.<br>Q. Well, if it is a policy --<br>A. It is probably on APS website, the working from home policy. It is APS, not just social workers, it is APS employees. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 23 | 19:23–25; 20:1–22 | Q. (BY MS. FOGHI) Are there any emails between you and Ms. Bernadette Lucero arranging remote work for other related staff members?<br>A. Not that I can remember.<br>Q. So if I were to produce to you emails that exist, which are arranging for other related service members to work from home, you'd be surprised to see it?<br>A. I, I can't remember. I don't remember any of that, yeah.<br>Q. Well, the reason I'm asking is because you had just indicated that it doesn't just apply to social workers; it is a general rule of thumb?<br>A. Right, yes.<br>Q. So there's emails that exist between you and Ms. Lucero where you're arranging for remote work for related staff. Would that mean that you, yourself, are violating your own policy?<br>A. It would depend on the situation. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | Q. Well, I want you to elaborate on that. Now we're talking about exemptions, exclusions, exceptions. I'd like to know when that policy did not apply.<br>A. I would like to see the emails of what you're talking about specifically --<br>Q. Sure. We'll produce those emails.<br>A. -- and then we can go from there. | |
| 24 | 21:1–14 | The other thing that I found within this interview that is somewhat puzzling, you know, you were asked, I believe, to also review some emails that were exchanged, and specifically in the paragraph on Page 7, second paragraph, it begins with, "Ms. Atler advised that she received that internal whistleblower complaint from the school, that Ms. Lipe was soliciting students to see her in her private practice." Do you recall having that conversation?<br>A. The conversation?<br>Q. Yes.<br>A. Yes.<br>Q. Okay. Did you ever find any information to support that allegation that she was soliciting?<br>A. No, we did not. | No objection |
| 25 | 21:15–24 | Q. Okay. You also indicated that Ms. Turner was cautious about her emails. That's what you indicated to the investigator, that Ms. Turner was cautious about her emails because she knew Ms. Lipe had filed a complaint against her, correct?<br>A. Correct.<br>Q. And you advised that the emails from my client had a defensive tone to them and it was ve- -- and it was very difficult in the meetings?<br>A. That's correct. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 26 | 22:1–25 | tone" first?<br>A. That's the one when met with her in, as we indicated, early in the fall regarding her leave. There was a defensive tone, so -- and I believe in one of the meetings she said, "I'm done," and hung up, and the meeting was concluded.<br>Q. And it was a phone conversation?<br>A. She was on, on Zoom, yes, or Google Meets.<br>Q. You described my client as being aggressive.<br>A. I felt she was aggressive during that meeting, yes.<br>Q. You also indicated that she was difficult to follow during the interview?<br>A. That's correct.<br>Q. What was difficult about following her during the interview?<br>A. Her, her comments jumped around. So they weren't linear in matters, and they were -- they did jump around.<br>Q. So you made a statement, as well, that you felt that if you were a parent of a student seeing Ms. Lipe that you would have major serious concerns?<br>A. I did, I did say that. And that was in relation | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| | | to her consistency with seeing students. As a parent with student of an IEP, if my student wasn't receiving their services I would have a concern. | |
| 27 | 23:1–22 | Q. So let's talk about that. "Consistency with seeing students." Because this is a very, very serious statement to make, that someone who is taking care of children and their needs that you would comment on their stability, their ability, their aggressive nature. I mean, we're talking about something that doesn't align with what you would you expect from someone working in that capacity.<br>A. I think we're talking about two different things. First we were just talking about the meeting.<br>Q. Sure.<br>A. What I just mentioned was in alignment with her, her serving students, which is the IEPs are federal law. As we mentioned earlier, in my capacity, I need to look at compliance for students and the state, the law does not care what happens, we're required to fulfill those services. So if we have social work services for students that are not being fulfilled, that is a concern and we have to --<br>Q. So tell me what specifically you relied upon to make those comments. I'd like for you to tell me what documents you reviewed, what emails you reviewed, just speaking to ABC, that's not, that's not okay. I'm speaking specifically about evidence that you relied upon. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 28 | 24:3–19 | Q. What document did you rely upon when you made these very serious statements about my client?<br>A. As I said those are two different --<br>Q. Then break them up into two.<br>A. There is the first one and I think I've already answered that one. It was my own sitting in on the meeting and being able to interact and listen to those interactions. That's the first part. The second part was looking about providing services and supports with looking at the students' IEPs, parent concerns regarding IEP minutes not being met. Those are the documents that were looked at and discussed.<br>Q. Okay. And those documents, have you provided those to counsel?<br>A. I don't have access to those documents.<br>Q. Who has access to those documents?<br>A. APS would have access to those documents. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 29 | 25:12–25 | Q. (BY MS. FOGHI) When a social worker inputs their minutes, and we're specifically talking about these IEP minutes, how would they do that, what platform would they use to do that?<br>A. IEP minutes are, social workers are part of team to decide how many minutes they need, what it looks like.<br>Q. Okay.<br>A. So that is annually during their IEP and social workers are required to do progress toward goals which are reported every grading period.<br>Q. So you would have reviewed both of those things? | No personal Knowledge (Fed. R. Evid. 602) Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of |

| | | | |
|---|---|---|---|
| | | A. Those are on the same documents.<br>Q. Oh, on the same documents?<br>A. Yes. | time (Fed R. Evid. 403) |
| 30 | 26:1–7 | Q. What documents specifically, if you recall, did you feel that, within these IEP minutes that you reviewed, lead you to the conclusion that she was not meeting the requirements?<br>A. That would have been done by Ms. Turner, Ms. Lucero-Turner, and the social worker liaison when they are staffed to do that work. | No personal Knowledge (Fed. R. Evid. 602)<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 31 | 26:8–24 | Q. Okay. The comment about my client's stability that you indicated that you felt that in this paragraph on Page 7, Paragraph 2, you added that, as I have mentioned before, that if she was a parent of a student that you'd have major concerns. And you had concerns with her stability and ability to address student concerns. Let's talk about my client's stability; what did you rely upon to make that statement?<br>A. Her ability to be --<br>Q. Stability.<br>A. The stability was also her ability to be at work, the stability to maintain her work schedule to meet the students' needs.<br>Q. So it is really not her stability in terms of her emotional mental state, is not what you meant?<br>A. It is not -- I don't, I don't know her. I don't interact with her. | No objection |
| 32 | 27:7–23 | Q. Okay. Were you aware that while -- well, were you aware that Ms. Lipe had been on FMLA in the past?<br>A. I was not aware.<br>Q. Okay. Were you aware that she was expected to respond to emails during her most recent FMLA leave?<br>A. I was not aware.<br>Q. Okay. In this interview on Page 7, Paragraph 3, it states, "Ms. Atler was advised that Ms. Lipe complained that she was sent emails and expected to respond while on intermittent FMLA." You were made aware of this?<br>A. Emails are sent out as a whole group. So when Ms. Lipe is out, she's still part of the social work email group. I couldn't quote how many social workers there are but I think we have close to at least 100. She's, she's in that group. She's not expected to respond to emails.<br>Q. Okay. So she's not expected to respond?<br>A. No. No. | No personal Knowledge (Fed. R. Evid. 602)<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 33 | 27:24–25; 28:1 | Q. Is she expected to attend meetings while she's on FMLA?<br>A. No. | No objection |

| | | | |
|---|---|---|---|
| 34 | 28:2–6 | Q. Were you aware that she has never been on continuous FMLA? Were you made aware of that? Did you ever review her file to determine if she had taken FMLA in the past?<br>A. No. | No personal Knowledge (Fed. R. Evid. 602)<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 35 | 28:14–22 | Q. Are you, yourself, a licensed mental health professional?<br>A. No, I'm not.<br>Q. Did you review any medical or performance records besides what we've already talked about?<br>A. No.<br>Q. Have you ever personally observed Ms. Lipe working directly with students?<br>A. No. | No personal Knowledge (Fed. R. Evid. 602)<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 36 | 28:23–25; 29:1–4 | Q. Have you ever communicated with administrators, other administrators or HR about her caseload specifically?<br>A. Only when we needed to move.<br>Q. Only when you needed to move?<br>A. Uh-huh.<br>Q. What about job performance?<br>A. No. | No personal Knowledge (Fed. R. Evid. 602)<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 37 | 29:5–25 | Q. Okay. Did you participate in any meetings that addressed removing students and reassigning students?<br>A. It was an email.<br>Q. Okay. Did you, yourself, instruct anyone to remove students from her caseload?<br>A. Yes.<br>Q. Who did you instruct?<br>A. That would be Mr. Griego and Mr. Lucero -- Ms. Lucero-Turner.<br>Q. Do you know when you instructed them?<br>A. I believe it was -- I can't tell you exactly. I want to say it was January, February.<br>Q. Of 2022?<br>A. Of 2023.<br>Q. 2023. And again, the reasons for those instructions, if you can restate that for the record, is why | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | you felt that her caseload needed to be reassigned?<br>A. To support Ms. Lipe while she was out on leave. She mentioned in the fall that she was unable to get the progress toward goals in. So to best support her, and support students, that was done. | |
| 38 | 30:1–8 | Q. Did you, did this, did this get documented in any shape or form?<br>A. Documented the movement?<br>Q. Yes.<br>A. I couldn't speak to that. That wasn't, I didn't make the changes.<br>Q. But they would be in an email, any reassignments?<br>A. I don't know. I didn't make that. That wasn't -- | Relevance (Fed. Rule Evid. 401)<br>No personal Knowledge (Fed. R. Evid. 602) |
| 39 | 30:9–13 | Q. How many students on average are assigned to a social worker?<br>A. It depends on their service level.<br>Q. Specifically the service level that my client had.<br>A. I don't know what her service level was. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 40 | 30:14–25 | Q. Were you aware that APS had approved Ms. Lipe to work remotely in April of 2021?<br>A. No.<br>Q. Were you aware that APS approved Ms. Lipe to work remotely in April of 2022?<br>A. No.<br>Q. So if that approval was given, once again, based on your previous statement, that would be a violation of the policy?<br>A. I think, again, it depends on if it was through ADA or how that was, that was approved. If it is an ADA accommodation that's very different than regular FMLA. | Objection as it calls to speculation<br>Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 41 | 31:1–4 | Q. Okay. How much do you know, or can talk to me about remote work authorizations?<br>A. I don't know very much. We didn't do very much. Couldn't speak to it. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 42 | 31:20–25; 32:1–17 | Q. Are you aware of the systems that are being utilized for input of data such as Synergy and MaxCapture?<br>A. Yes.<br>Q. Can you tell me the difference between the two?<br>A. Synergy is our local database, for APS. MaxCapture is used to document student time, but it is not required. Also, MaxCapture, at the time, was not open for district administrators or supervisors to have access to.<br>Q. So, really, the document that we would utilize would be Synergy?<br>A. Yes, that would be the first -- | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | Q. And that would be mandatory?<br>A. Synergy carries the IEPs and that is where we house all of that information.<br>Q. Okay. So Synergy would be local, mandatory. MaxCapture, optional?<br>A. We need -- they use that to track and also for billing.<br>Q. Okay.<br>A. So it will say on there the MaxCapture audits within that newsletter. It -- social work, the liaison, and the executive directors do use MaxCapture to go through to do the billing. | No personal Knowledge (Fed. R. Evid. 602) |
| 43 | 32:18–23 | Q. Were you aware that the newsletter in front of you, Exhibit 5, which contains November and December 2023, that it gave instructions to social workers about providing remote services. Were you aware that that document would contain that?<br>A. I was not. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>No personal Knowledge (Fed. R. Evid. 602) |
| 44 | 33:13–20 | A. So "asynchronous" is referring to any school days where students are, were, where we're out of school. So that's where we refer to synchronous or asynchronous.<br>Q. And it states that as soon as it is safe to travel to your school site, please do so.<br>A. Yes. And that goes along with teachers as well, that the APS policy for snow days and remote work for all APS employees. | No objection |
| 45 | 34:13–24 | Q. (BY MS. FOGHI) Let me show you what I have now marked as Exhibit 6.<br>(Exhibit 6 marked.)<br>Q. (BY MS. FOGHI) Take, just take a look at this and tell me if you are able to identify, recognize, give me any commentaries on what you believe this document is.<br>A. If I recognize it -- what is the question?<br>Q. Can you tell me what this is?<br>A. It looks like it is Synergy caseload.<br>Q. Okay, so this would go, this would be something that would have to do with Synergy, correct?<br>A. That is correct. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 46 | 35:4–13 | Q. Okay. Let me show you what I have marked as Exhibit 7.<br>(Exhibit 7 marked.)<br>Q. (BY MS. FOGHI) Do you recognize Exhibit 7?<br>A. I do not.<br>Q. If you turn to Page 2 it appears that this would be the MaxCapture scheduling and provider time tracking user guide, correct? But you don't use these and you're not familiar with this?<br>A. I'm not familiar with MaxCapture in detail. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | | No personal Knowledge (Fed. R. Evid. 602) |
| 47 | 35:15–17 | Were you aware that my client participated in the CVS Administrative Leadership Development Program?<br>A. No. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>No personal Knowledge (Fed. R. Evid. 602) |
| 48 | 35:18–25; 36:1–23 | Q. Is one of your duties as superintendent to sign off on intern hours for candidates?<br>A. It can be one, but not necessarily, no.<br>Q. So it can be one?<br>A. It can be.<br>Q. When you say it can be one, that's very confusing because who would the person go to sign off on intern hours?<br>A. Generally, it is the person that they interned under. And so it will say, when they sign off, who can verify those hours.<br>Q. But ultimately, somebody supervises that person as well, correct?<br>A. Correct.<br>Q. Does the PED regulations require that associate superintendents sign off on the intern hours?<br>A. No.<br>Q. Okay. So if I showed you that document it would surprise you to see that?<br>A. Yes, because I didn't do it.<br>Q. Okay. Have you ever signed off on other intern hours in the past?<br>A. My intern hours, yes.<br>Q. Your own intern?<br>A. I had an intern, an intern that was directly under me the summer before, yes.<br>Q. Okay. Have you signed off on intern hours for other interns that were not working necessarily underneath you?<br>A. Yes, there were two within her cohort, and those were, I was able to verify with the people that they were interning with that those hours were completed and correct. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 49 | 36:24–25; 37:1–6 | Q. So what criteria would distinguish my client from the other interns whose hours were approved and signed off on?<br>A. I didn't have any verification that the intern hours were completed.<br>Q. Were you aware that she had attempted to seek internship and was denied that opportunity?<br>A. I was not aware. That was before me. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | | No personal Knowledge (Fed. R. Evid. 602) |
| 50 | 37:7–13 | Q. Okay. Did you attend the PTG meeting on January 11th, 2023?<br>A. For?<br>Q. The progress towards goals meeting in 2023.<br>A. For who?<br>Q. For Tatia.<br>A. I don't believe so. I can't remember, no. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 51 | 38:1–20 | Q. Okay. Did you attend the PTG meeting on January 11th, 2023?<br>A. For?<br>Q. The progress towards goals meeting in 2023.<br>A. For who?<br>Q. For Tatia.<br>A. I don't believe so. I can't remember, no. | Relevance (Fed. Rule Evid. 401) |
| 52 | 39:13–20 | Q. (BY MS. FOGHI) -- this was January 11, 2023. Were you aware that my client was on --<br>MS. FOGHI: You have to pause it when I'm talking.<br>Q. (BY MS. FOGHI) Do you, do you know that my client was on FMLA leave when this meeting occurred?<br>A. No.<br>Q. You were unaware of that?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 53 | 39:21–25; 40:1–4 | Q. But isn't that something you should have been made aware of as the superintendent of the schools that you're talking to a person who was on leave?<br>A. That is up to the, their supervisor. With that many employees I leave it up to, it would be Mr. Griego, who is at the school, then Ms. Lucero, who is above him. So with that, with the breadth of the job, I need to count on the people underneath to help us keep that, keep that in line. | Leads to speculate Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 54 | 40:9–19 | Q. Would you say -- and again, we can continue playing this, and we can continue playing portions of this that are relevant -- well, it is all relevant, but, you know, any other portions. But would you agree with me or disagree with me that, on this, when you hear my client speaking, does she sound aggressive to you?<br>A. In that, in that time, no, she did not.<br>Q. Does she sound defensive to you?<br>A. In that time, no.<br>Q. Does she sound unstable to you?<br>A. In that portion, she does not. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 55 | 40:20–25; 41:1 | Q. Okay. Do you have any portion that you can direct me to or do you have available to you where you can demonstrate to me that you have documentation supporting evidence of my client's instability and aggressive nature, because I have yet to see that. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion |

| | | | |
|---|---|---|---|
| | | A. Only my interaction with her in the fall meeting, | of issues; waste of time (Fed R. Evid. 403) |
| 56 | 41:2–15 | Q. Okay. How many times do you think in that meeting did she state that she was on FMLA leave?<br>A. I don't know.<br>Q. Okay. Would it surprise you if I told you that three times in that meeting she kept saying, "I'm on leave, I'm on leave"?<br>A. No. And I don't believe she had to -- if she was out, she didn't need to accept the meeting. I think we worked around anybody's schedule. I think that was also not a required meeting.<br>Q. Okay. Did you or any other administrator that you know of ever inform her that there would be consequences if she failed to appear?<br>A. Not that I'm aware of, no. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>No personal Knowledge (Fed. R. Evid. 602) |
| 57 | 42:2–19 | Were you aware that that meeting was recorded?<br>A. Yes.<br>Q. Okay. And you stated in that interview that we talked about previously that my client raised her voice. Did you say she was agitated, raised her voice, and eventually hung up?<br>A. I said that just earlier today. I don't believe it was in this. I could look through and see.<br>MS. KILGORE: Are we on a page? Here we go, Page 16 where your interview starts.<br>A. Uh-huh, looking through. My exact words were that "She was escalated to the point where she left the meeting."<br>Q. (BY MS. FOGHI) Okay. She left the meeting. So because this interview was done by phone, leaving the meeting means I hang up the phone?<br>A. If it's a Google Meet, yes. Well, it was a Google Meet so she clicked --<br>Q. Clicked off and left the meeting. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 58 | 42:20–25; 43:1–7 | Would you agree that compelling an employee to attend a meeting while on protected leave is prohibited under federal law?<br>MS. KILGORE: Objection; lack of foundation.<br>Q. (BY MS. FOGHI) Are you aware of the details and intricacies involved with FMLA leave?<br>A. Yes.<br>Q. Okay. So are you able to tell me if you have any knowledge of what that leave requires an employer to do with respect to an employee who is on leave?<br>A. If an employee is on leave, they are on leave. So we can't, we don't require them to attend meetings, to do work, any of that. | Objection to 42:20-23 for lack of foundation, call for speculation and Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 59 | 44:3–24 | Q. What were the circumstances of that meeting that we just heard the recording on?<br>A. The circumstances on this meeting, or that | Relevance (Fed. Rule Evid. 401) |

| | | | |
|---|---|---|---|
| | | meeting?<br>Q. Yes.<br>A. I think it was deciding on providing progress towards goals for students on the caseloads.<br>Q. Do you know that whether or not Ms. Lipe was required to attend a meeting on that day?<br>A. Not, I don't know how that was set up, no.<br>Q. Okay. So do you know whether Ms. Lipe requested the meeting?<br>A. I'm not aware if she requested it.<br>Q. You just, you just don't know what the circumstances were surrounding the setup of the meeting and the content of the meeting?<br>A. Correct. And with, the same with this one. I think the content that we're talking about this meeting, I don't know who set that up.<br>Q. Okay. And so you -- did you personally require Ms. Lipe to attend this meeting?<br>A. No. | Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>Personal Knowledge (Fed. R. Evid. 602) |
| 60 | 44:25; 45:1–2 | Q. Do you know if anyone else at APS required Ms. Lipe to attend this meeting?<br>A. No. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>Personal Knowledge (Fed. R. Evid. 602) |
| 61 | 45:7–10; 45:12–14; 45:16–20 | Q. Are you aware that another provider has already completed the progress toward goals in December that were due? So the question I would have is if the progress toward goals was completed why was the meeting even being held?<br>Q. (BY MS. FOGHI) Sure. So the meeting in January had to do with progress toward goals, the meeting we're speaking of?<br>Q. (BY MS. FOGHI) PTG, yes. Were you aware that had already been discussed, documents had already been shared, provided back in December of 2022?<br>A. No. I think the original meeting in the fall was how these were going to be completed, so. | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)<br>Personal Knowledge (Fed. R. Evid. 602) |
| 62 | 46:1–20 | Q. (BY MS. FOGHI) And is it your testimony today that you met in the fall of 2022?<br>A. With Ms. Lipe?<br>Q. Yes.<br>A. Correct.<br>Q. When did you meet with Ms. Lipe?<br>A. What was the date that we said earlier? I don't have the exact date. That was when we discussed meeting with her with HR and with her union rep.<br>MS. LIPE: January.<br>Q. (BY MS. FOGHI) Okay. That would have been the recording in January of 2023, not in the fall of 2022? | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | A. I think we're talking about two separate things.<br>Q. It is the only one I'm aware of.<br>A. Okay. We talked about earlier the fall meeting when we met with Ms. Lipe and, and the union rep when she hung up the phone.<br>Q. Is that what you're referring to?<br>A. That's what I'm referring to. This is another meeting that you're referring to. | |

**III. Stephanie Avila**

| No. | Page: Line Designation | Objections |
|---|---|---|
| 1 | 5:15-23 | No objection |
| 2 | 6:8-17 | Relevance (Fed. Rule Evid. 401) |
| 3 | 6:21-25; 7:1-6 | No Objection |
| 4 | 9:24-25; 10:1-14 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 5 | 11:1-8 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 6 | 12:7-19 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 7 | 13:21-25; 14:1-11 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 8 | 14:12-25; 15:1 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 9 | 16:20-25; 17:1-6 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 10 | 17:2-6 | No objection |
| 11 | 18:16-24; 19:1-6 | No objection |
| 12 | 20:18-25; 21:1-19 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 13 | 22:12-20 | No objection |
| 14 | 23:1-14 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 15 | 23:15-24 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 16 | 24:1-14 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |

| | | |
|---|---|---|
| 17 | 24:15-25; 25:1-5 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 18 | 25:6-22 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 19 | 26:1-7 | Relevance (Fed. Rule Evid. 401)<br>Misleading; undue prejudice; confusion of issues; waste of time |
| 20 | 27:20-25; 28:1-21 | No objection |
| 21 | 29:8-22 | No objections |
| 22 | 30:1-5 | No objections |
| 23 | 30:8-19 | No objections |
| 24 | 31:1-17 | No objections |
| 25 | 31:23-25; 32:1-12 | No objections |
| 26 | 32:14-25; 33:1-4 | No objections |
| 27 | 34:13-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 28 | 35:20-25; 36:1-8 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 29 | 36:13-23 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 30 | 37:18-21 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 31 | 37:22-25; 38:1-18 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 32 | 39:15-20 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 33 | 40:15-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 34 | 40:24-25; 41:1-2 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 35 | 41:21-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 36 | 42:6-18 | No objections |
| 37 | 42:19-25; 43:1-3 | No objections |

| | | |
|---|---|---|
| 38 | 43:4-16 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 39 | 43:17-23 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 40 | 43:24-25; 44:1-4 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 41 | 44:21-25; 45:1-6 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 42 | 45:15-25; 46:1-24 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 43 | 47:3-13 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 44 | 47:17-24; 48:1-20 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 45 | 48:21-25; 49:1 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 46 | 49:2-14 | No objection |
| 47 | 49:23-25; 50:1-4 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 48 | 50:15-21 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 49 | 51:5-11 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 50 | 51:12-25; 52:1-14 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 51 | 52:15-25; 53:1-4 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 52 | 53:6-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 53 | 54:1-9 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 54 | 54:11-21 | No objection |
| 55 | 55:2-8 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 56 | 55:9-11; 55:16-23 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | |
|---|---|---|
| 57 | 56:1-12 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 58 | 57:1-12 | No objection |
| 59 | 58:1-8 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 60 | 58:12-18 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 61 | 59:13-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), personal knowledge (Fed. R. Evid. 602), hearsay (fed. R. Evid. 801) |
| 62 | 60:15-18 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 63 | 61:3-6 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 64 | 66:17-25 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403)Personal knowledge (Fe. R. Evid. 602) |
| 65 | 67:20-25; 68:1-19 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 66 | 68:20-24 | No objections |
| 67 | 69:7-10 | No objections |
| 68 | 70:10-16 | No objection |
| 69 | 71:4-11; 71:15-24 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 70 | 72:3-17 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 71 | 72:18-25; 73:1-21 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

## IV. Linda Elliot

| No. | Page: Line Designation | Subject / Purpose |
|---|---|---|
| 1 | 5:15-23 | No objection |
| 2 | 6:3-8 | No objection |
| 3 | 6:15-21 | No objection |
| 4 | 7:2-6 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. |
| 5 | 7:15-25; 8:1-20 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 6 | 9:1-7 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 7 | 10:5-24 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 8 | 11:1-16 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 9 | 12:3-9 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 10 | 12:10-19 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) speculative |
| 11 | 13:13-24 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 12 | 13:25; 14:1-10 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 13 | 14:13-22 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 14 | 14:23-25; 15:1-2 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) personal knowledge (Fed. R. Evid. 602) |
| 15 | 15:24-25; 16:1-15 | No objection |
| 16 | 16:18-25; 17:1-7 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | |
|---|---|---|
| 17 | 17:8-14 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 18 | 18:5-15 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 19 | 18:16-23 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 20 | 19:10-13; 19:15-23 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 21 | 20:1-19 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 22 | 20:20-25; 21:1-8 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 23 | 21:10-19 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 24 | 22:1-8 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 25 | 22:12-18 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 26 | 24:25; 25:1-15 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 27 | 25:18-25 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 28 | 26:1-5 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 29 | 26:20-25; 27:1-20 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 30 | 27:22-25; 28:1-12 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 31 | 28:14-16 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; |
| 32 | 30:1-18 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 33 | 31:1-10 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 34 | 31:13-24 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 35 | 31:25; 32:1-10 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | |
|---|---|---|
| 36 | 32:11-13 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 37 | 32:14-25; 33:1-10 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 38 | 33:12-15 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 39 | 33:18-25; 34:1-9 | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

**V. Garcia**

| No. | Page/Line Designation | Text | Objection or counter designation |
|---|---|---|---|
| 1 | 4:13-20 | Garcia identifies her current APS clinical social-worker role and 23 years of service. | No objection. |
| 2 | 4:21-25; 5:1 | Garcia confirms she collaborated with Plaintiff and served as Instructional Council Chair for Social Workers and as a union | No objection. |
| 3 | 5:6-17 | Garcia confirms she was a social worker and union representative, is familiar with Synergy and MaxCapture, and social workers provide | No objection. |
| 4 | 5:18-25; 6:1 | Garcia confirms student minutes are kept and student-meeting schedules are arranged at the provider's discretion to ensure IEP compliance. | No objection. |
| 5 | 6:2-16 | Garcia explains make-up minutes depend on whether the student was absent, whether it was a holiday, or whether another circumstance | No objection. |
| 6 | 6:18-25; 7:1 | Garcia confirms some minutes are not made up, provider illness can be made up, and student illness is not required to be made up because | No objection. |
| 7 | 7:2-11 | Garcia confirms she participated as a witness in Plaintiff's grievance involving Bernadette Lucero-Turner and spoke to process. | No objection. |
| 8 | 7:12-15 | Garcia confirms she was assigned to Valley High | No objection. |

| | | | |
|---|---|---|---|
| 9 | 7:17-25; 8:1 | Garcia explains her grievance-related statement concerned the social-worker transfer process as she understood it as Instructional Council Chair for Social Workers. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 10 | 9:5-8 | Garcia characterizes her relationship with Plaintiff as professional, positive, and friendly. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 11 | 9:16-20 | Garcia confirms she knows Justin Griego and knew him as a teacher when she was at Valley High School. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 12 | 9:25; 10:1-11 | Garcia explains she served as a union representative on and off for approximately 15 years and understood the Negotiated Agreement | No objection. |
| 13 | 10:13-18 | Garcia states Plaintiff probably came to her with concerns as a union representative and connects that to the grievance. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |

| | | | |
|---|---|---|---|
| 14 | 10:19-25; 11:1-9 | Garcia confirms she did not review grievance documents and that her involvement was limited to speaking about the transfer process. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403). |
| 15 | 11:10-25; 12:1-2 | Garcia confirms familiarity with Synergy and MaxCapture, explains creating service schedules in MaxCapture, states schedules change often, and explains MaxCapture captures services for Medicaid billing. | No objection. |
| 16 | 12:3-13 | Garcia explains what social workers can access in Synergy, including schedules, grades, IEPs, historical documents, team information, absences, and discipline. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), incomplete see and add Anderson Depo. 21:16-17 |
| 17 | 12:14-17 | Garcia confirms social workers can look back at historical documents in Synergy. | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), incomplete see and add Anderson Depo. |
| 18 | 12:18-25; 13:1-3 | Garcia confirms social workers can access districtwide student records for transfers and IEP review, including students outside the site they are servicing. | Confusion of issues; waste of time (Fed R. Evid. 403). |
| 19 | 13:5-9 | Garcia identifies MaxCapture as a scheduling and service-delivery tracking program. | Confusion of issues; waste of time (Fed R. Evid. 403). |

| | | | |
|---|---|---|---|
| 20 | 13:10-18 | Garcia confirms social workers can see another social worker's caseload through Synergy. | Confusion of issues; waste of time (Fed R. Evid. 403). |

### VI. Justin Griego

| No. | Page: Line Designation | Objection/ Counter designations |
|---|---|---|
| 1 | 6:1–16 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 2 | 6:19–24; 7:1–5 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 3 | 8:1–14 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 4 | 10:18–25; 11:1–14 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 5 | 11:15–25; 12:1–7 | No objections |
| 6 | 13:20–25; 14:1–9 | No objections |
| 7 | 14:10–22 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 8 | 15:1–25 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 9 | 16:1–25; 17:1–20 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 10 | 17:21–25; 18:1–16 | Relevance (Fed. R. Evid. 401), Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 11 | 18:17–25; 19:1–4 | Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), speculative |
| 12 | 19:11–21 | No objections |
| 13 | 19:22–25; 20:1–15 | No objections |
| 14 | 20:16–25; 21:1–4 | No objection |
| 15 | 21:15–25; 22:1–4 | No objections |
| 16 | 22:5–25; 23:1–4 | No objections |
| 17 | 23:5–17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 18 | 23:18–25; 24:1–15 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), speculation, Personal knowledge (Fed. R. Evid. 602) |
| 19 | 24:16–25; 25:1–18 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 20 | 26:1–13 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

| | | |
|---|---|---|
| 21 | 26:14–24; 27:3–12 | No objections |
| 22 | 28:7–18 | No objections |
| 23 | 28:19–25; 29:1–5 | No objections |
| 24 | 29:10–18 | Incomplete. Add 29:19-25 and 30:1-12 |
| 25 | 29:16–25; 30:1–12 | No objections |
| 26 | 30:13–23 | No objections |
| 27 | 31:10–16 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Personal knowledge (Fed. R. Evid. 602) |
| 28 | 31:17–25; 32:1–17 | No objection |
| 29 | 33:1–18 | No objection |
| 30 | 33:19–25; 34:1–3 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 31 | 34:4–25; 35:1–11 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 32 | 35:12–24; 36:1–7 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Personal Knowledge (Fed. R. Evid. 602). |
| 33 | 36:8–25; 37:1–21 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 34 | 37:22–25; 38:1–25; | No objection |
| 35 | 39:1–9 | No objection |
| 36 | 39:13–25; 40:1–14 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 37 | 40:15–25; 41:1–19 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 38 | 41:20–25; 42:1–7 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Character Evidence (Fed. R. Evid. 401) |
| 39 | 42:8–17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 40 | 42:18–25; 43:1–8 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 41 | 43:16–25; 44:1–4 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 42 | 44:11–17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 43 | 44:22–25; 45:1–7 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Personal knowledge (Fed. R. Evid. 602) |

| | | |
|---|---|---|
| 44 | 45:8–14 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Personal knowledge (Fed. R. Evid. 602), hearsay (Fed. R. Evid. 801) |
| 45 | 46:6–15 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 46 | 46:16–25; 47:1–5 | No objection |
| 47 | 47:6–18 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 48 | 47:19–25 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 49 | 51:3–21 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Incomplete add 33:19–25; 34:1–3. |
| 50 | 51:22–25; 52:1–17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 51 | 52:18–25 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 52 | 53:1–16 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 53 | 53:17–25; 54:1–9 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 54 | 54:10–17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 55 | 54:18–25; 55:1 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 56 | 55:7–24 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 57 | 55:25; 56:1–23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 58 | 57:13–24; 58:1–10 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 59 | 58:11–24 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 60 | 58:25; 59:1–15 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 61 | 60:17–24; 61:10–24 63:3–6 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), personal knowledge (Fed. R. Evid. 602) |

## VII. Bernadette Lucero-Turner

| No | Page: Line Designation | Subject / Purpose |
|---|---|---|
| 1 | 6:11-21 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

| | | |
|---|---|---|
| 2 | 6:22-25; 7:1-18 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 3 | 7:19-25; 8:1-9 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 4 | 8:11-23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 5 | 9:1-6 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 6 | 10:9-24 | No objection |
| 7 | 10:25; 11:1-13 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 8 | 11:14-23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 9 | 12:1-25; 13:1-19 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 10 | 13:20-25; 14:1-6 | No objections |
| 11 | 14:12-19 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. |
| 12 | 14:20-25; 15:1-4 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. |
| 13 | 15:5-18 | No objections |
| 14 | 15:19-25; 16:1-8 | No objections |
| 15 | 16:9-23 | No objections |
| 16 | 16:25; 17:1-4 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 17 | 17:23-25; 18:1-11 | No objections |
| 18 | 18:12-25; 19:1-13 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), speculation, personal knowledge (Fed. R. Evid. 602) |
| 19 | 19:14-25; 20:1-5 | No objections |
| 20 | 20:6-25; 21:1-10 | No objections |
| 21 | 21:11-21 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

| | | |
|---|---|---|
| 22 | 24:6-17 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 23 | 24:18-25; 25:1-12 | No objections |
| 24 | 25:13-25 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 25 | 26:1-8 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 26 | 26:9-25; 27:1-3 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

### VIII. Rosita Moya-Herrera

| No. | Page: Line Designation | Objections |
|---|---|---|
| 1 | 7:8-25; 8:1 | No objections |
| 2 | 8:5-24; 9:1-7 | No objections |
| 3 | 10:5-25; 11:1-25 | Hearsay (fed. R. Evid 801) Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), character evidence (Fed. R. Evid. 404) |
| 4 | 12:5-25; 13:1-10 | Hearsay (fed. R. Evid 801) Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), character evidence (Fed. R. Evid. 404) |
| 5 | 14:15-25; 15:1-13 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 6 | 15:13-24; 16:1-8 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. |
| 7 | 16:17-25; 17:1-9 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 8 | 17:10-25; 18:1-25; 19:1-7 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 9 | 19:8-25; 20:1-15 | No objections |
| 10 | 20:16-25; 21:1-21 | No objections |
| 11 | 22:1-23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

| | | |
|---|---|---|
| 12 | 27:14-25; 28:1-7 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 13 | 28:14-25; 29:1-25; 30:1-5 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 14 | 30:6-24 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 15 | 32:16-25; 33:1-18 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 16 | 35:3-25; 36:1-23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), Hearsay (Fed. R. Evid. 801) |
| 17 | 37:4-25; 38:1-24 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 18 | 38:25; 39:1-4 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. |
| 19 | 41:7-25; 42:1-23 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 20 | 42:24-25; 43:1-8 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. |
| 21 | 43:9-22 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 22 | 43:23-25; 44:1-25; 45:1-5 | No objection |
| 23 | 45:6-24 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), personal knowledge (Fed. R. Evid. 602) |
| 24 | 46:10-24; 47:1-22 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |
| 25 | 47:23-25; 48:1-25 | Relevance (Fed. R. Evid. 401); Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403), |

## IX. Antoinette Romero

| No. | Page: Line Designation | Text | Objections |
|---|---|---|---|
| 1 | 7:16-21 | Q. Okay. Can you describe your professional interactions with my client?<br>A. Ms. Lipe made me uncomfortable because I was quite aware previous to her coming to Volcano Vista that she | Character Evidence (Fed. R. Evid. 404) |

| | | | |
|---|---|---|---|
| | | was the type that records people just to get them in trouble or<br>to sue. | |
| 2 | 8:3-20 | A. The thing is, is most people were already aware. I had been warned two years previous to Volcano Vista that she was just someone that you wouldn't trust, that you would be uncomfortable around because she always had to be right, or she was always interacting negatively with other people.<br>Q. Okay. So she made you feel uncomfortable because 9 she would often record people and then you followed that up<br>by saying, "And sue people."<br>A. Yes.<br>Q. Who has she sued based on your knowledge? Hold on, I have to finish my question.<br>A. Uh-huh, you're right.<br>Q. Besides this case, tell me what other lawsuits you 16 are aware of that she had initiated?<br>A. I actually was not aware of what lawsuits, these are just things that people would say.<br>Q. So you're basing your comment on other people's hearsay. You're basically making a comment, an extremely | Hearsay evidence (Fed. R. Evid. 404) Character Evidence (Fed. R. Evid. 404) |
| 3 | 9:1-7 | Q. (BY MS. FOGHI) Were you ever my client's supervisor?<br>A. No.<br>Q. Okay. Were you ever my client's subordinate?<br>A. No. I don't think so, no.<br>Q. Were you all on the same level?<br>A. What does that mean? | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 4 | 9:20-25; 10:1-4 | Q. Just like Tatia was a social worker?<br>A. I was also a clinical supervisor.<br>Q. Okay. But you were not her supervisor?<br>A. No.<br>Q. Okay. Did you ever participate in any meetings or discussions regarding my client's ADA and FMLA requests?<br>A. No.<br>Q. Were you ever asked to provide information regarding my client's performance or conduct?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 5 | 10:5-12 | Q. Okay. When my client first started working with Volcano Vista you made negative statements about her to others at the school, correct?<br>A. Yes.<br>Q. And the statements that you would have made to others included what you just told me?<br>A. It was about that she would personally record without people's knowledge. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | | Character evidence (Fed. R. Evid. 404) |
| 6 | 10:13-17 | Q. Okay. Do you know the law in the state of New Mexico as it pertains to recording?<br>A. Yes.<br>Q. She has every right to do that if she chooses to.<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 7 | 10:18-24; 11:1-5 | Q. Did you ever make comments about my client's professionalism, I would say, because character you've already commented on. Professionalism?<br>A. No.<br>Q. Okay. Do you think that Tatia did a good job her job as a social worker?<br>A. No.<br>A. She did not see students. She was never there at the school. She spent most of her time by herself in her office using APS equipment to come up with a lawsuit. And the only reason I know that is because she was the one talking about how she was going to bring APS down. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) Hearsay (Fed. R. Evid. 801) |
| 8 | 11:16-25; 12:1-20 | Identify the people that made these comments to you about Tatia being the type to file lawsuits and to record people.<br>A. So I have held multiple jobs at APS and I cannot name anyone specific. I know that I worked at summer school and people were talking about her. I didn't even know who<br>she was until I asked somebody specifically, but that was like five -- five years ago.<br>Q. Okay. So nobody can be identified?<br>A. It was one person I interned that absolutely did not want her interning her.<br>Q. Sorry, say that again.<br>A. There was one person that I interned that did not want anything to do with Tatia.<br>Q. Who is this person?<br>A. Her name was Brandi Aceves.<br>Q. Spell her last name.<br>A. A-C-E-V-E-S.<br>Q. Why did Brandi, in your knowledge, not want anything to do with my client?<br>A. Well, it was not necessarily a conversation, she said she was uncomfortable, that she was aware she recorded<br>without personal knowledge and that she was very unprofessional, and did not do her job at the school she was<br>at.<br>Q. But again, your personal knowledge. I don't care about Brandi. Your personal knowledge. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | A. My personal knowledge, I don't know. I did not know anything about Tatia at that point. I only know what have heard. | |
| 9 | 12:21-25; 13: 1-15 | Q. Did you ever have a meeting with Dr. Bannerman?<br>A. Yes, at one time.<br>Q. And did any of those meetings have to do with the report that Tatia made against you based on your conduct?<br>A. At the time, I really wasn't aware of, it's about my conduct. We were being -- all three of us were disciplined for gossip or talking or being unprofessional.<br>Q. Who were the three people disciplined?<br>A. Myself, Tatia, and Rosita Moya.<br>Q. What was the nature of the discipline?<br>A. I don't know if it was necessarily discipline versus a talking-to and plan how to maintain professionalism.<br>Q. Who spoke with you?<br>A. Dr. Bannerman. And it was not necessarily individually, it was with the three of us.<br>Q. Did Dr. Bannerman ever direct you to stop discussing Ms. Lipe with others?<br>A. Not necessarily, because I wasn't discussing Ms. Lipe with others. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 10 | 13:16-23 | Q. If -- well, you indicated to me, and this is the first time I'm meeting you, that you had all these people telling you about her nature, about her filing lawsuits, about her recording people. Did you tell others at the school that very same information?<br>A. I told one person.<br>Q. Who did you tell?<br>A. I told Rosita. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 11 | 14: 2-12 | Q. Okay, following the meeting that you had with Dr. Bannerman that had to do with this behavior and professionalism, did you ever apologize to my client?<br>A. Maybe for saying that I shouldn't have told Rosita that she recorded.<br>Q. Okay. In that meeting did you acknowledge your statements about my client were inaccurate?<br>A. No.<br>Q. Did you ever acknowledge in your meeting that your statements were inappropriate?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 12 | 14:20-25; 15: 1-0 | Q. Did you -- and we'll take a brief minute here, but -- so you said you did not regularly have lunch with her?<br>A. No.<br>Q. Did you communicate with her regularly?<br>A. Yes.<br>Q. How did you communicate with her?<br>A. It depends what year you're talking about. There | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | was a year when Rosita was next door to me, and when Rosita<br>was moved, Tatia was then moved next door to me. So we spoke after -- we spoke more after Rosita left<br>Volcano Vista.<br>Q. The nature of your communication, how did you speak, in person?<br>A. At school. We talked when we were at school. | |
| 13 | 15:10-21 | Q. What I'm going to do now is I'm going to play an audio recording and I'm going to mark as Exhibit -- is it 12<br>or 13?<br>MS. KILGORE: That doesn't mean we have 12 exhibits, right?<br>MS. FOGHI: I'm going in order of ones that we have not yet labeled. So, we're going to go now to Exhibit 13.<br>(Exhibit 13 marked.)<br>Q. (BY MS. FOGHI) And I'm going to play an audio recording, which is the, Bannerman, Dr. Bannerman meeting.<br>And turn up the audio please. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 14 | 16:1-11; 16:20-23 | Dr. Bannerman, first I think we should establish when the date of that interview is. Do you recall when the date of that interview with Dr. Bannerman was?<br>A. I really don't. I realize it was probably soon after Tatia started after Volcano Vista.<br>Q. I will try to get that date, but you heard some of the interview. Do you recognize the voice on that interview?<br>A. Yes.<br>Q. Would that be the voice of Dr. Bannerman?<br>A. Yes.<br>Q. (BY MS. FOGHI) So the exhibit I'm -- audio recorded No. 13 is November 13, 2019. We're meeting with --<br>promptly scheduled to address these issues, so go ahead, please. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 15 | 18:18-25; 19:1-9 | Q. (BY MS. FOGHI) Did you recognize your voice on that recording?<br>A. I didn't, actually, but I can hear the conversation.<br>MS. LIPE: Actually --<br>Q. (BY MS. FOGHI) We can go back.<br>A. I know I'm in that meeting, I don't know which is my voice. I can hear hers.<br>Q. Well, she asked you do you agree --<br>A. Yes.<br>Q. -- that you had made a comment. I'm assuming she's talking about three people, those three people could have been you, Tatia, and Rosita?<br>A. Uh-huh.<br>Q. All right. Did you continue to spread rumors | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | despite being instructed to cease and desist?<br>A. No. | |
| 16 | 19:10-24 | Q. Did -- were you interviewed as part of an internal investigation concerning my client?<br>A. Yes.<br>Q. Do you recall when you were interviewed?<br>A. I think in '22, maybe early '23.<br>Q. Do you recall what you said to the interviewer at that time about my client?<br>A. Probably not word-for-word.<br>Q. Give me a summary of what you believe you might have said about Tatia. What do you believe you may have said about Tatia?<br>A. I don't know. I just answered his questions.<br>Q. I'm going to redirect you to Plaintiff's Exhibit No. 2, and that is the February 7, 2023 investigation that was done by Investigator Barreras. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 17 | 20:18-24; 21:1-14 | Q. (BY MS. FOGHI) That would be your voice on the recording?<br>A. Uh-huh.<br>Q. Okay.<br>MS. KILGORE: You have to say yes or no.<br>A. Yes.<br>Q. (BY MS. FOGHI) So getting back to this report you've had an opportunity to review your recorded interview?<br>A. Uh-huh, yes.<br>Q. In that interview, once again, you -- this is now fast forward we're in 2023, and at this point, you've known<br>my client for about 4-to-5 years, correct?<br>A. Yes.<br>Q. And you indicated to the interviewer that the other social workers, I assume you're speaking about Ms. Lipe and Rosita, that they were quote toxic. This is on<br>Page 15 and under your recorded interview, Paragraph No. 4?<br>A. Yes.<br>Q. And this comment about them being toxic, what did you base that comment on?<br>A. My own experience. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) Character evidence (Fed. R. Evid. 404) |
| 18 | 21: 15-25; 22:1-13 | Q. Well, tell me about your experience. I'd like to know what made your experience toxic.<br>A. First of all, having and knowing at all times that someone is recording you is very stressful. You can't go into a meeting comfortably and really talk about students or<br>have real meetings because my -- just interacting with Ms. Lipe, it is all about how she can catch someone doing something wrong. If she does not like something, if she's not in control, she loses her mind. On the first day that she walks into Volcano Vista and we are splitting our | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) Character evidence (Fed. R. Evid. 404) |

| | | | |
|---|---|---|---|
| | | caseload -- there was no need to split a caseload – she walked in and she went ahead and split the caseload with the<br>three of us. Nevermind I was there the year previously. The right, therapeutic thing to do is to actually cease to keep my caseload because I have already created a rapport.<br>I noticed instantly she was extremely upset that she was not<br>able to do our caseload. After that year, every year after, Ms. Lipe insisted on splitting our caseload. It wasn't until the last two years I said this should be a collaborative team and it is not up to her. That was for the last year because I was tired of the conflict pushback and her having to run things that I just asked administration to do it. I didn't care what students there were, we should have been able to work as a team. | |
| 19 | 23:21-25; 24:1-2 | Q. (BY MS. FOGHI) You clearly have an issue with my client.<br>MS. KILGORE: Objection.<br>Q. (BY MS. FOGHI) Do you have an issue with my client?<br>A. As long as I don't have to work with her, I have no issue. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 20 | 24:7-15 | So let's talk about my client's request specifically. Were you involved in any conversations with respect to her<br>request to take leave?<br>A. No.<br>Q. Okay. Did you know that she was going to take leave?<br>A. No.<br>Q. Do you know she had medical conditions?<br>A. Only because she told me. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) Personal knowledge (Fed. R. Evid. 602) |
| 21 | 24:16-25; 25:1-3 | Q. Okay. As far as the way that you-all handled your basically arriving at the work site, at the school, did you have a sign-in/sign-out sheet?<br>A. We always had sign-in and sign-out sheets.<br>Q. Is it mandatory to sign in and sign out when you come?<br>A. Absolutely.<br>Q. Okay. And that's something that you have to do daily, correct?<br>A. Yes.<br>Q. Are you aware if is this something that Ms. Lipe had to do, as well?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 22 | 25:4-15 | Q. Have you ever communicated with administrators or HR about my client's caseload?<br>A. Repeat that question.<br>Q. Have you ever communicated with administration | Relevance (Fed. Rule Evid. 401) Misleading; undue |

| | | | |
|---|---|---|---|
| | | about my client's caseload?<br>A. No.<br>Q. Okay. How about her job performance?<br>A. No.<br>Q. Did you ever witness or participate in any discussions about removing and reassigning students to another social worker?<br>A. No. | prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 23 | 25:16-21 | Q. Okay. Did you exchange text messages with my client during this time period between -- let's go to 2021 to 2023 when she was at Volcano Vista?<br>A. Yes.<br>Q. Let me show you what I have marked as Plaintiff's Exhibit No. 9. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 24 | 27:2-17 | let me direct you to the very first message, October 12th, 2021. "Good morning, I have a dental appointment this morning and I didn't write an administrator. If someone is looking for me, can you please let them know I have an appointment or come in and put the time in later."<br>That would be Ms. Lipe writing to you -- oh, that's her. Okay, so reverse -- reverse that order. "Good morning. I have a dental appointment" -- that actually is a message that was sent by Ms. Romero. And my client responds<br>to that, "Good morning, okay."<br>Do you recognize this text message, Ms. Romero?<br>A. I don't.<br>Q. Do you remember exchanging text messages with my client and specifically you having a dental appointment and<br>asking her to cover for you?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 25 | 28:11-23 | Q. (BY MS. FOGHI) So the first message that I'd like to, you know, without going through every single message,<br>your counsel will have, you're asking my client to cover for<br>you; is that correct?<br>A. Sounds like it.<br>Q. Okay. And this is a person that you regard as being toxic, being -- I don't know what the word is. I'm not going to use words that you did not say, but toxic a word that you used. You also said that you're not comfortable dealing with her, working with her, et cetera, et cetera. But yet, you are messaging her with beautiful shining stars and suns and asking her to cover for you while<br>you're in a dental appointment? | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 26 | 29:2-24; 30:1-6 | Q. (BY MS. FOGHI) This is someone that you did not care for, correct?<br>A. Yes.<br>Q. This is someone you did not really want to work | Relevance (Fed. Rule Evid. 401) Misleading; undue |

| | | | |
|---|---|---|---|
| | | with, correct?<br>A. Yes.<br>Q. Because she was bossy?<br>A. Uh-huh.<br>Q. Because she was annoying, because she was toxic; am I correct?<br>A. It has nothing to do with those descriptions.<br>Q. Well, I'm asking you a question based on those messages. Let's continue.<br>A. Okay.<br>Q. You continue to then say, "I brought a plastic fork with me. LOL. I don't have an extra one. I'm sure we can find someone somewhere." To which my client responds,<br>"I have a bunch at home, I will bring it and leave it in my car." Were the two of you having lunch together on a regular basis?<br>A. From my recollection after Rosita left and after our time during COVID, because we were at home for a year<br>and-a-half, so there was a year-and-a-half I did not work during COVID. When Rosita was transferred, yes, Tatia and became a little bit friendlier. I do believe it is important, like we had discussed in the meeting with Dr. Bannerman, and like I told her in the previous conversation that I believe in working as a team as social workers for the good of the students. | prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 27 | 30:7-20 | Q. Let me go ahead and direct you to Page No. 3 of Exhibit 9, October 18, 2021, 7:41 a.m. Did you send a message to my client stating, "Good morning, am I in trouble<br>is someone looking for me? It is kind of funny, but not, because I haven't left my house."<br>Were you running late for work?<br>A. I probably was because if I sent that to her.<br>Q. How often were you running late for work?<br>A. I don't know. It would depend, because there are times I also had to go to meetings and did not go directly to the school.<br>Q. So your attendance record would also be part of the sign-in and sign-out sheets, correct?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 28 | 30:21-25; 31:1-2 | Q. Did you ever ask my client for help with your daughter. Do you have a daughter?<br>A. I have two.<br>Q. Okay. Did you ever ask my client to help you in any way with your children or child?<br>A. Not that I recall.<br>Q. Okay. I will get back to that one. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 29 | 31:15-25 | In your interview with Investigator Barreras, you indicated to him -- that was Exhibit 2 -- that social work could not be done remotely, correct?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue |

| | | | |
|---|---|---|---|
| | | Q. And you base that comment on the social work not being able to be done remotely on what? What did you base<br>that comment on?<br>A. On policies and procedures.<br>Q. Okay. Policies and procedures. Do you have a copy of that policy and procedure?<br>A. No.<br>Q. Okay. But you were aware --<br>A. It is a job description. | prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 30 | 32: 8-25; 33:1-5 | Q. (BY MS. FOGHI) Do you see that sign-in/sign-out sheet?<br>A. I do.<br>Q. Do you see your name on the very first line?<br>A. I do.<br>Q. What does it indicate on the line?<br>A. That I had worked from home.<br>Q. You stated five seconds ago that it was policy that you could not work from home?<br>A. That's right.<br>Q. You violated the policy?<br>A. No.<br>Q. The policy doesn't apply to you?<br>A. I didn't say that, but I could explain as to why would have done that. During the year '21 and '22, it was during COVID. We were supposed to and expected to stay<br>home. When we were released back into the school, I am assuming we could either provide at home and at work, but after COVID we were not allowed to work from home.<br>Q. When did COVID end? It wasn't in 2022.<br>A. I don't remember.<br>Q. But you were working from home in 2022?<br>A. Okay. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 31. | 33:6-24; 34:1-3 | Q. Are you aware of APS newsletters that exist, did you receive those?<br>A. Yes.<br>Q. And are you aware that there are instructions for social workers in that newsletter providing remote services?<br>A. No.<br>Q. Are you aware of any APS policy -- well, you just indicated that you are aware of the policy that there's no working remotely?<br>A. Correct.<br>Q. Did you personally participate in remote meetings subsequent to COVID?<br>A. Before?<br>Q. Before COVID and after COVID.<br>A. Never before.<br>Q. Never before? How about after COVID?<br>A. After COVID, yes.<br>Q. Did you participate remotely in IEPs after COVID?<br>A. It depends. During the time the State was | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | back. When the kids were allowed to come back, but were not<br>forced to come back, they had a choice. I chose to go in to the school and provide the services, not to do it online. | |
| 32 | 34: 16-25;<br>35: 1-17 | Q. And there was an attachment which says, "Religious beliefs short PDF." Can you elaborate on what that document<br>was that my client provided you with?<br>A. She provided me some type of template or letter to give to my daughter to help her with her job.<br>Q. Let me put you on Page 2. I was looking for the letter, August 31, 2021, same day. Do you recognize that letter?<br>A. Yes, I do.<br>Q. Is your daughter Noella?<br>A. Yes.<br>Q. Was this letter something that my client assisted you with on behalf of your daughter?<br>A. Yes.<br>Q. As a result of this letter, was your daughter allowed to not receive the vaccine?<br>A. No.<br>Q. Okay. What was the letter for?<br>A. The letter was for her to try to attempt to not have to take the vaccine.<br>Q. My client helped you with that?<br>A. Yes.<br>Q. And again, despite the fact that she was toxic and you did not want to be around her, she helped you with something I would say is pretty significant. Would you agree?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 33 | 35:18-25;<br>36: 1-23 | Q. Did Ms. Lipe confide in you when she made the decision to contact the Public Education Department?<br>A. Ms. Lipe talked a lot.<br>Q. That wasn't my question.<br>A. And she brought up the PED. I did not understand exactly what she was talking about. I just knew that she was angry with administration and that she spoke about going<br>to the PED.<br>Q. Do you know why she was angry with the administration?<br>A. I stopped listening her. Even though I would hear her, I really stopped listening to her. Her complaints were just constant, she never had anything good to say.<br>Q. But you continued to have lunch with her?<br>A. Not necessarily.<br>Q. No? Did you see the text messages that I provided you with in Plaintiff's Exhibit No. 9?<br>A. That could have been one lunch that. Doesn't mean lunch every day.<br>Q. You can spend the time after today reviewing the text messages and maybe think about that answer in a little | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | bit more detail? So if she confided in you about PED and the concerns that she had being angry at administration, did<br>you relay that information to the dean?<br>A. No.<br>Q. So you did not go to the dean and tell the dean that my client was complaining?<br>A. Nope.<br>Q. Did you run to anybody with any information that my client may have shared with you in confidence?<br>A. No. | |
| 34 | 37:17-25; 38:1-3 | Q. (BY MS. FOGHI) You've heard a good chunk of this conversation?<br>A. Uh-huh.<br>Q. Would you agree with me that that is your conversation with my client?<br>A. Yes.<br>Q. Okay. And the statements that you made to her are statements that you -- will you verify them as being accurate?<br>A. Yes.<br>Q. Did do you stand by your statements?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 35 | 38: 4-16 | Q. Okay. Did you ever have any discussions with Andrew -- I don't know if I'm pronouncing his last name right, but Urquidez, U-R-Q-U-I-D-E-Z? It was the dean.<br>A. Okay.<br>Q. Did you ever conversations with the dean?<br>A. About what?<br>Q. About Tatia and the PED complaint?<br>A. No.<br>Q. Okay. So we will provide you with the audio, but your response to that question is you did not?<br>A. No.<br>Q. You do understand you're under oath?<br>A. I do. | She denied having conversations with the dean and Attorney Foghi threatens to provide audio proof to the contrary but never did. Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 36 | 39: 1-10 | happened, did you praise Justin Griego as being a good administrator?<br>A. According to here, it looks like I did say he was always respectful.<br>Q. Okay. But then you heard comments that you made about administration on this phone call?<br>A. The administration that she is trying to say was the current administration we worked for. The times that I am talking about in my past career actually had to do with the previous administrator, who refused to stay compliant. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| 37 | 39:11-25; 40:1-10 | Q. So you took your previous experience and when you told my client to back off and don't do anything because they will, quote, shove you out if they don't want you, you based that comment on your previous experience with another<br>administration?<br>A. I do. Because I was trying to explain to Tatia,<br>if you cannot work as a team and you cannot do what is right<br>by the students, eventually, yes, administration usually doesn't like pushback. That's not necessarily this particular administration.<br>Q. Well, we are talking about this case and we're talking about Tatia's complaints and things that she felt were not being handled. We're not talking about your job, we're talking about this case.<br>A. That's right.<br>Q. And in this case, you argue with her on that recording and you tell her stop, stop doing what you're doing, stop complaining, stop making reports, stop doing the<br>things you're doing because you will get nowhere. Is that what the summary of your comments are on this recording?<br>MS. KILGORE: Object to form.<br>You can answer, if you can.<br>A. When I said those things it is in reference to how she presents herself, how she talks to them, and how she approaches people. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 38 | 41:21-25; 42:1-4 | Q. (BY MS. FOGHI) In that recording did you say, "I have been here" -- I can replay the recording again.<br>A. I understood.<br>Q. Did you say in that recording, "I have been here for 23 years and I'm not doing any of this, because I know what happens"?<br>A. I may have said that. I wanted to hang up with her, she would not let me hang up.<br>Q. That is not my question, and you need to answer my | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 39 | 42:9-24 | Q. (BY MS. FOGHI) When did you first become aware that my client had filed a complaint against APS? And initially, it was APS and PED, now the subject of the litigation is against APS.<br>A. Maybe a couple weeks after that last phone call.<br>Q. Okay. Did you have any conversations with Tatia once you learned that she had filed the complaint?<br>A. I didn't have, that I recall, any conversations after that phone call that you just played. I had decided I had, I was going to separate myself from her and I didn't really want to speak to her at that point.<br>Q. So after that phone call in February that was the last time you had spoken to Tatia?<br>A. I can't say that as guarantee, but that was definitely in my head that I really wanted to refrain from having anything to do with her. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| 40 | 43:4-24; 44:1-16 | Q. (BY MS. FOGHI) Any text messages, exchanges between you and her after that phone call that you are aware<br>of?<br>A. Not that I remember.<br>Q. Have you maintained the same phone number that you had back in 2021?<br>A. Yes.<br>Q. Okay. Did you preserve text messages?<br>A. Yes.<br>Q. Okay. How about emails?<br>A. I don't know.<br>Q. Did you have to -- were you ever asked to provide copies of text messages from your personal phone to your counsel in this matter?<br>A. No.<br>Q. Okay. Did APS ever ask you to provide any responsive documents in this case?<br>A. No.<br>Q. Have you deleted any messages that may be on your phone in terms of exchanges with Tatia since 2021?<br>A. I do not know.<br>device, or any anything that you may have in your possession<br>that would be exchanges of messages between you and my<br>client?<br>A. No.<br>Q. Okay. Have you produced -- have you been asked to produce text messages?<br>A. No.<br>Q. Have you been asked to produce emails?<br>A. No.<br>Q. Okay. Are there any additional communications, written or audio, social media, that you might have available to us that may be between you and my client?<br>A. No, that I'm aware of.<br>Q. Is there any document you wish to produce that you haven't yet produced?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 41 | 44:18-24 | Would you agree with me that based on the recording we just heard, that Tatia was, clearly she was upset because she felt like the students were not being treated appropriately. Was that the -- would you agree with me that<br>that was her expression in that audio?<br>MS. KILGORE: Object to form.<br>A. Sounded like it. | objected to form at the time of deposition |
| 42 | 45:1-16 | Page advocate for her students?<br>A. No.<br>Q. Tell me why.<br>A. Because she enables.<br>Q. Elaborate on that.<br>A. She does not work with the teachers the case managers, she does not work in the best interest of the | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of |

| | | | |
|---|---|---|---|
| | | students. It is more that she enables their behavior. She would allow them to hide out in her office, ditching for hours at a time. They were a distraction and a disruption to the school, yet, she just sat there arguing with administration all the time instead of letting administration -- but that was just my observation on the outside.<br>Q. So that's your personal opinion; am I correct?<br>A. Yes. | time (Fed R. Evid. 403) |
| 43 | 46:7-13 | A. I generally felt sorry for Tatia. She is her own enemy with the way she talks and interacts with people, and<br>there was no getting -- getting her to listen. She makes it about that they were being totally noncompliant. I don't know, they are not my cases. And I do know that I do advocate, and like I have told her over and over again, choose your battles. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 44 | 46: 17-23 | Q. Did you have a chance during that phone call to -- do you have free will? Do you have free will?<br>A. I do.<br>Q. Could you have hung up the phone?<br>A. I could have.<br>Q. But you did not?<br>A. I did eventually. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 45 | 47:13-19; 47:25; 48:1-6 | Q. (BY MS. FOGHI) With respect to the way that you kept records as part of your job for the cases, so the children that you worked with, what system did you use?<br>A. MaxCapture.<br>Q. Okay. Was that an optional platform or a mandatory platform?<br>A. It is mandatory.<br>Q. (BY MS. FOGHI) In your mind it's a mandatory platform?<br>A. We're required to document.<br>Q. Okay. What do you document in MaxCapture?<br>A. Our sessions, our interactions, our collaborations, our meetings, anything that has to do with the students. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 46 | 48:12-21 | Q. Okay. Who did you, who was your direct supervisor?<br>A. When?<br>Q. At Volcano Vista, during this time period, 2021 2023?<br>A. Michelle Trimble Allen was our special ed principal in '21, and Mr. Griego, I think, came between 'and '22.<br>Q. So you reported to him at that point?<br>A. After Michelle left, Ms. Trimble. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 47 | 48:22-25; 49: 1-16 | Q. Okay. Are you familiar with Synergy?<br>A. Yes.<br>Q. Tell me about Synergy.<br>A. Synergy is where the student profiles are. As a school social worker you have access to the special ed side, | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion |

| | | | |
|---|---|---|---|
| | | as well as to the student schedules, attendance. It is basically the student profile and everything, their history.<br>Q. Is that something you had access to as a social worker?<br>A. Yes.<br>Q. Do you utilize Synergy in any way?<br>A. Yes.<br>Q. In what way do you utilize it?<br>A. I use it to get the class schedules, I use it to monitor the discipline reports, I use it to monitor the grades for the students.<br>Q. Okay. Go ahead.<br>A. As well as documenting inside the Synergy, we're supposed to double document; if you talk to a parent, you're<br>supposed to be documenting in Synergy. | of issues; waste of time (Fed R. Evid. 403) |
| 48 | 50: 3-12 | Q. Okay. What was your caseload like during 2021 and 2023? How many cases did you have? How many children were<br>you responsible for, I guess is the question.<br>A. I wouldn't remember.<br>Q. Approximate?<br>A. Probably mid-30s.<br>Q. Was this a normal caseload number to have or was that high?<br>A. I think it depends on the student, the student minutes, and the intensity of the case. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 49. | 53:4-8 | A. I'm basing it on APS experiences that I had at other schools, it was not specifically to this administration.<br>Q. Was it specific to Volcano Vista High School?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 50 | 53: 9-17 | Q. Did -- were you -- are you aware or were you referring to two questions; were you aware of any adverse action that Justin Griego had taken against any social worker at Volcano Vista High School?<br>A. No.<br>Q. Were you aware of any adverse action that the principal at Volcano Vista High School had taken against any<br>social workers?<br>A. No. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 51 | 54:11-22 | Q. Do you know if Ms. Lipe was recording conversations with administration?<br>A. I would have no idea. I have always made the assumption she records.<br>Q. And do you know about any adverse action that Volcano Vista administration took against Ms. Lipe?<br>A. No.<br>Q. How -- and are you aware of the circumstances around Ms. Lipe's leaving? | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | A. No. Actually, I'm not exactly sure why.<br>Q. And did you ever talk to Ms. Lipe about that?<br>A. No. | |
| 52 | 55:3-23 | Q. I have a very brief follow-up. So the student you mentioned earlier, the sexual identity student that had issues with sexual identity, that student was a freshman, correct?<br>A. Yes.<br>Q. So how old would that student be?<br>A. She's a senior this year.<br>Q. At that time, how old would she be as a freshman approximately? Obviously, I don't expect you to know her birthday, would she have been a freshman?<br>A. She would have been 12 or 13.<br>Q. Correct. So was that student self-harming?<br>A. Yes.<br>Q. Wasn't that the very reason why Ms. Lipe met with the parents of this student because it was a minor student who was self-harming and she felt that it was important to speak to the parents about that? Were you aware of that?<br>MS. KILGORE: Object to form.<br>Q. (BY MS. FOGHI) Were you aware the student was self-harming?<br>A. Yes. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 53 | 56:2-20 | Q. Well, what I'm referring to is a follow-up to a remark you just made; which was, you did not appreciate the<br>way that she handled that situation with that student?<br>A. Yes. And I had --<br>Q. What did she do that you did not appreciate?<br>A. One of the teachers wrote her a chat message asking for help, asking and being concerned about the behavior of that student. That particular teacher wrote in the form of "he" and "him" and called the student a different name. At that point, it is my understanding, and this comes specifically from the student, because I have never discussed this otherwise except with the student, that she screen shot the chat and she sent it to her parents in<br>which those parents were extremely angry at what she had done.<br>Q. Do you have evidence of that screen shot?<br>A. I actually do.<br>Q. Would you provide it to counsel, please?<br>A. I will have to look for it. | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |
| 54 | 57: 3-17 | Q. (BY MS. FOGHI) When a student is one that has significant concerns such as self-harm, gender identity issues, what is the protocol in place that you have to follow?<br>MS. KILGORE: Same objection.<br>Q. (BY MS. FOGHI) Well, what is the protocol? If I'm a student that's threatening to kill myself, what do you have to do as a social worker? That's the question.<br>A. If you're talking about a suicide versus the fact | Relevance (Fed. Rule Evid. 401) Misleading; undue prejudice; confusion of issues; waste of time (Fed R. Evid. 403) |

| | | | |
|---|---|---|---|
| | | that the child was being outed and using a "he/him" form and<br>a different name, absolutely, you need to discuss it with the child, and you should contact the parents.<br>Q. You, in fact, have an obligation to report, correct?<br>A. Yes. | |
| 55 | 58:12-24 | Q. What are regulations according to your license? What are your obligations, do you know them?<br>A. Specifically --<br>Q. Specifically about reporting requirements.<br>A. My obligations would be if I'm concerned the child is going to hurt themselves, I would have the discussion with the child. I would then, if I felt like there was some type of urgency, I would contact the parents, I would offer them a same-day suicide protocol through Southwest Family Guidance, and they choose whether to, to take their child in<br>or not, and then I have them sign a form to protect APS to make sure that the parents have written down what their choice was. | Incomplete and Defendant adds 57:21-25 and 58:1-8 for completeness |
| 56 | 59:1-4 | about was sent to a hospital three times due to suicidal ideations or attempts?<br>A. I do not. I do not know that.<br>Q. All right. | Fed. R. Evid. 602 witness did not know the information provided in BF's question (that the student being referenced was sent to the hospital three times due to suicidal ideations or attempts) so the question is being offered as evidence without any knowledge on deponent's part. |

**X. Angelique Torres**

APS has no objections or counter-designations in response to Plaintiff's deposition designation for Angelique Torres.

Respectfully submitted,

CUDDY & McCARTHY, LLP

By: */s/M. Karen Kilgore*
M. KAREN KILGORE
Attorneys for Albuquerque Public Schools
Post Office Box 4160
Santa Fe, New Mexico 87502-4160
(505) 988-4476
kkilgore@cmc.law

WIGGINS, WILLIAMS & WESENBERG
A Professional Corporation
Carol M. Cochran
Natasha A. Martinez-Wesenberg
Patricia g. Williams
Attorneys for Albuquerque Public Schools
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
ccochran@wwwlaw.us
nwesenberg@wwwlaw.us
pwilliams@wwwlaw.us

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2026, the foregoing was filed electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ M. Karen Kilgore*
M. Karen Kilgore