IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TATIA LIPE,

     Plaintiff,

v.                                                                    Civ. No. 23-899 GBW/JMR

ALBUQUERQUE PUBLIC
SCHOOLS,

     Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM

THIS MATTER comes before the Court on Defendants' [*sic*] Motion for Partial Summary Judgment as to Plaintiff's Claims Under Breach of Contract (Count IV). *Doc. 268.* Plaintiff filed a response in opposition. *Doc. 273.* Defendant filed a reply. *Doc. 282.* Plaintiff was granted leave to file a surreply (*doc. 288-1*). *Doc. 323.* For the reasons explained below, the motion will be GRANTED.

### I.     BACKGROUND

This action was filed on October 13, 2023. *Doc. 1.* All claims arise out of Plaintiff's experiences as an employee of Albuquerque Public Schools ("APS"). As relevant to this motion, Plaintiff alleges that Defendant breached her employment contract by "interfering with her leave," "requiring her to come to work by attending

1

on-line meetings," and "threatening disciplinary action if she failed to attend while she was suffering from her serious medical condition." *Id.* at 7.

Defendant filed the present motion on April 17, 2026. *Doc. 268*. In it, APS argues that the Court should grant summary judgment on Plaintiff's breach of contract claim because (1) Plaintiff could not establish a prima facie case for breach of contract, and (2) Plaintiff failed to exhaust her contractual remedies under the collective bargaining agreement before filing suit. *Id*. Plaintiff filed a response on April 27, 2026, arguing, as is relevant here, that (1) Plaintiff can establish a prima facie case for breach of contract, (2) the contract provides Plaintiff with more rights and protections than APS describes, (3) APS' alleged Family Medical Leave Act ("FMLA") overage is a disputed genuine issue of material fact that precludes summary judgment, and (4) APS' exhaustion and Labor Management Relations Act ("LMRA") theories are unsupported. *Doc. 273* at 14-23. Defendant filed a reply on May 11, 2026, which added a governmental immunity argument. *Doc. 282* at 7. Plaintiff filed a surreply on May 14, 2026. *Doc. 288-1*.

## II.    UNDISPUTED FACTS

Based on the parties' briefing and the record as a whole, the Court finds the following material facts are undisputed for the purposes of summary judgment:[1]

---

[1] "UMF" refers to Defendant's Undisputed Material Facts. *Doc. 268* at 3-4. "PUMF" refers to Plaintiff's Additional Undisputed Material Facts. *Doc. 273* at 11-12. Where the Court cites one of the parties' material facts, it does so pursuant to Rule 56(e)(2) because the fact in question was not specifically disputed. *See* Fed. R. Civ. P. 56(e)(2). Where the Court cites to evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record." Fed. R. Civ. P. 56(c)(3).

1. On July 25, 2022, Plaintiff executed a Certified (Licensed) School Employee Contract for the school year 2022/2023 with APS based on 6.50 hours per day.  UMF 1.

2. Plaintiff received employee benefits to include accrued sick leave under the Negotiated Agreement Between the Albuquerque Municipal School District Number 12 and the Albuquerque Teacher's Federation (the "Union Agreement").  UMF 2.

3. The Union Agreement provided additional benefits such as automatic reemployment absent timely notice, extended leave without pay for eligible educators, preservation of continuous service during extended leave, return / reassignment rights, and insurance continuation during leave.  PUMF 1.

4. As a result of Plaintiff's request for accommodations under the Americans with Disabilities Act (ADA), APS offered Plaintiff an Employee Temporary Accommodation Plan on September 21, 2022.  UMF 3.

5. On October 5, 2022, APS provided written authorization for Plaintiff to take intermittent FMLA leave for the period of August 15, 2022, through August 13, 2023.  UMF 4.

6. Plaintiff's 2022-2023 FMLA Plan required recertification no later than July 15, 2023.  UMF 5.

7. APS requires employees to substitute or use paid leave (including sick, personal, and annual leave) during their FMLA leave.  UMF 6.

8. Plaintiff did not file a formal grievance in accordance with the Grievance Procedure included in the Union Agreement.  UMF 12; *doc. 273* at 11.

9. Plaintiff submitted return paperwork but ultimately resigned from her position with APS on April 8, 2024.  PUMF 2; UMF 11.

## III.  LEGAL STANDARDS

### a.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The non-moving party is then required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential

to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citations omitted).

In applying this standard, the Court must draw all "reasonable inferences" in favor of the non-moving party. *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998). Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### b. Breach of Contract Under New Mexico Law

To state a claim for breach of contract under New Mexico law, a plaintiff must show (1) the existence of a contract, (2) breach of the contract, (3) causation, and (4) damages. *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1057 (D.N.M. 2016). Accordingly, a complaint for a breach of contract must generally allege "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and h[er] performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of the defendant's breach." *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978) (quoting Wright and Miller, Federal Practice and Procedure: Civil § 1235 (1969)).

### IV.    ANALYSIS

In her complaint, Plaintiff states that she was "unambiguously entitled to paid leave for her serious medical condition" and that Defendant breached her contract by

5

"interfering with her leave and requiring her to come to work by attending on-line meetings and threatening disciplinary action if she failed to attend." *Doc. 1 at 7.* Plaintiff further alleges that her contractual employment relationship included "duties, assignment, leave rights, benefits, return rights, nondiscrimination protections, and the ability to perform the essential work of her position," which APS interfered with when it allegedly "removed Plaintiff's students, treated her role as open, placed another social worker into the same school site, failed to notify Plaintiff that her caseload had effectively been displaced, and failed to provide meaningful guidance about what Plaintiff was supposed to do after her caseload was stripped." *Doc. 273 at 15.* The possible contracts that could contain these rights are Plaintiff's Certified (Licensed) School Employee Contract (*doc. 265-1*) and the Union Agreement (*docs. 272-5, 265-7, 265-8, 265-9*).

### a. The Employment Contract

Plaintiff's last *written* employment contract was the 2022-2023 Certified (Licensed) School Employee Contract (*doc. 265-1*). Although Plaintiff argues that she still had a 2023-2024 employment contract with APS because (1) the Union Agreement provides an automatic reemployment provision and (2) Plaintiff submitted return paperwork before she resigned, *doc. 273* at 2, 11, Plaintiff does not attach a *written* employment contract for the 2023-2024 school year and does not argue that one exists. *See generally id.*

Without deciding whether Plaintiff had an implied employment contract for the 2023-2024 school year, the absence of a written document is critical. APS, as a governmental entity, *see* N.M.S.A. § 22-1-2(R), has "immunity from actions based on contract, except actions based on a valid written contract."[2] N.M.S.A. § 37-1-23(A); *see also Willis v. Bd. of Regents of Univ. of New Mexico*, 357 P.3d 453, 458 (N.M. Ct. App. 2015) ("Even assuming that the parties' conduct gave rise to an implied employment contract, without a showing that the terms of the implied contract were written, Section 37-1-23(A) bars Plaintiff's claim."). Accordingly, even if an implied 2023-2024 employment contract existed, APS can only be liable for a breach of written terms in the 2022-2023 employment contract.

The 2022-2023 employment contract outlines a salary schedule, required working hours, and briefly references sick leave. *Doc. 265-1.* It does not contain enumerated duties, assignments, leave rights, benefits, or other contractual rights afforded to APS employees. To the extent that Plaintiff characterizes the employment contract as simply an "annual pay document" that does not set out the entirety of her contractual employment rights, it was her responsibility to provide the Court with evidence demonstrating that fact. *See Anderson*, 477 U.S. at 250 (once a movant has shown there is an absence of evidence to support the nonmoving party's case, the non-moving party is

---

[2] Defendant initially made the governmental immunity argument in its reply. *Doc. 282* at 7-9. Plaintiff did not address it in her surreply. *See doc. 288-1.*

required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party")

Plaintiff does not meaningfully argue that there was a breach of the written terms of the 2022-2023 employment contract. *See generally doc. 273*. The most she says is that APS cannot claim that it "fully paid all of Plaintiff's sick and paid leave," *see doc. 268* at 6, because the FMLA usage tracking sheet is disputed. *Doc. 273* at 19-20. However, Plaintiff does not inform the Court of which specific provision of her employment contract this alleged fact violates. Because APS has governmental immunity from contractual obligations outside of a valid written provision, *see Willis*, 357 P.3d at 458, Plaintiff fails to rebut Defendant's argument and show that there is a genuine issue of material fact on this matter.

### b.  The Union Agreement

Plaintiff also grounds her breach of contract claim in the Union Agreement. *Doc. 273* at 14 ("Plaintiff's leave and benefits rights arose under the Negotiated Agreement."). An individual may sue a governmental entity for breach of a collective bargaining agreement, such as the Union Agreement here, but in general the employee must first exhaust grievance procedures contained within the collective bargaining agreement. *Jones v. Int'l Union of Operating Eng'rs*, 383 P.2d 571, 574 (N.M. 1963) ("The general rule is, however, that an individual employee must show that he has exhausted

8

the grievance procedures provided by the agreement as a condition to his right to maintain an action in court.") (citations omitted).

Plaintiff argues that APS' exhaustion theory is "overdrawn and unsupported" because APS relies on § 301 of the LMRA, which would not apply to APS as a public school district. *Doc. 273* at 22-23. However, in its reply, APS agrees that the LMRA does not apply and cites state cases that still require exhaustion of grievance procedures. *Doc. 282* at 6-7.

Plaintiff also states that "APS [has not] shown that the Agreement's grievance procedure is an exclusive remedy that bars Plaintiff's contract claim in federal court." *Doc. 273* at 23. New Mexico courts have consistently found that absent specific circumstances, such as fraudulent or arbitrary union action, "grievance procedures provided by a collective bargaining agreement should be a bar to suits by individual employees against the employer for an alleged violation of the agreement." *Jones*, 383 P.2d at 577; *see also Lazo v. Bd. of Cty. Comm'rs*, 690 P.2d 1029, 1032 (N.M. 1984); *Howse v. Roswell Indep. Sch. Dist.*, 188 P.3d 1253, 1260 (N.M. Ct. App. 2008); *Lucero v. Bd. of Regents*, 278 P.3d 1043, 1045-46 (N.M. Ct. App. 2012) (applying the exhaustion requirement to grievance procedures outlined in employee handbooks); *Luginbuhl v. City of Gallup*, 302 P.3d 751, 760 (N.M. Ct. App. 2013). Plaintiff does not allege any extraordinary circumstances, assert she complied with the grievance procedures outlined in the Union Agreement (*doc. 265-8*), or cite any case law in her response or

surreply that counters the exhaustion requirement.  *See docs. 273, 288-1.*  Accordingly,

the Court finds that Defendant has shown there is no genuine issue of material fact to

be resolved by a factfinder.

## V.   CONCLUSION

The relevant evidence, viewed in the light most favorable to Plaintiff, shows that

there is no genuine issue of material fact regarding Plaintiff's breach of contract claim

and Defendant is entitled to judgment as a matter of law.  APS' Motion for Partial

Summary Judgment as to Plaintiff's Claims Under Breach of Contract (Count IV) (*doc. 268*) is therefore GRANTED.

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

10