# EXHIBIT 1

**Proposed Second Amended Complaint**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TATIA LIPE,

Plaintiff,

v. No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS,
BERNADETTE LUCERO-TURNER,
JUSTIN GRIEGO,
ANTOINETTE ROMERO, and
MELISSA SEDILLO,

Defendants.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

1. Plaintiff Tatia Lipe, through counsel, files this Second Amended Complaint against Defendant Albuquerque Public Schools ("APS") and Defendants Bernadette Lucero-Turner, Justin Griego, Antoinette Romero, and Melissa Sedillo in their individual capacities, and states as follows:

## I. PRELIMINARY STATEMENT AND LIMITATION OF CLAIMS

2. This proposed pleading is filed only if leave is granted. It conforms the pleadings to the record developed in discovery and to the Court's order dismissing the defamation count with prejudice as to APS only.

3. Plaintiff does not seek to revive any defamation claim against APS, does not assert individual-capacity ADA or NMWPA claims, and does not assert a standalone FMLA claim.

4. Plaintiff asserts her ADA and NMWPA claims against APS only. The individual defendants are named in their individual capacities for defamation and related individual-publication allegations as specifically pleaded below.

5. The facts concerning individual actors also support Plaintiff's ADA and NMWPA claims against APS by showing motive, pretext, causation, retaliatory animus, failure to engage in a good-faith interactive process, adverse action, constructive-discharge facts, and damages.

6. Annittra Atler and Socorro Rodriguez are not named as individual defendants in this proposed complaint. They are identified because their testimony and roles are material to the decision-chain, pretext, comparator, and attribution issues.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because they arise from the same case or controversy.

9. Venue is proper in this District because the events occurred in New Mexico and APS is located in this District.

## III. PARTIES

10. Plaintiff Tatia Lipe is a resident of New Mexico and was employed by APS as a school social worker at Volcano Vista High School.

11. Defendant Albuquerque Public Schools is a New Mexico public school district and was Plaintiff's employer.

12. Defendant Bernadette Lucero-Turner is sued in her individual capacity. At relevant times, she served in APS Related Services leadership and participated in, supplied information for, authorized, directed, repeated, or relied on actions and statements concerning Plaintiff's accommodation request, work status, caseload, and professional performance.

13. Defendant Justin Griego is sued in his individual capacity. At relevant times, he served as Plaintiff's site supervisor and participated in, supplied information for, authorized, directed, repeated, or relied on actions and statements concerning Plaintiff's accommodation request, work status, caseload, student services, and professional performance.

14. Defendant Antoinette Romero is sued in her individual capacity. At relevant times, she was an APS employee and Plaintiff's coworker and made, repeated, or republished statements concerning Plaintiff's work, student services, professional competence, ethics, and reputation.

15. Defendant Melissa Sedillo is sued in her individual capacity. At relevant times, she was the principal of Volcano Vista High School and participated in, adopted, repeated, or relied on statements and narratives concerning Plaintiff's remote-work request, parent concerns, student-service coverage, work performance, and professional reputation.

16. At all relevant times, APS acted through its supervisors, administrators, employees, agents, and representatives, including the individuals identified in this Complaint.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment, Protected Activity, and Accommodation Request

17. Plaintiff worked for APS as a school social worker and performed school-social-work functions including student services, documentation, meetings, communications with staff and families, IEP-related responsibilities, and related service obligations.

18. In or around February 2022, Plaintiff engaged in protected activity by raising special-education compliance concerns and filing or participating in a PED complaint concerning systemic student-service and special-education issues.

19. The PED complaint and related student-service concerns involved matters of public concern and student welfare, including special-education compliance, services, accommodations, documentation, and related duties.

20. After Plaintiff engaged in protected activity, APS personnel subjected her to heightened scrutiny, isolation, criticism, accusations concerning her work, and adverse treatment.

21. Plaintiff has disabilities within the meaning of the ADA. Plaintiff requested reasonable accommodation, including intermittent or episodic remote work during medical flare-ups, flexibility, and related accommodations that would permit her to perform the essential functions of her position.

22. Plaintiff did not request a permanent exemption from all job duties. She requested a reasonable, intermittent accommodation tied to medical flare-ups and supported by medical documentation.

23. Remote and hybrid work had been used within APS, meetings continued to be conducted remotely, and other related-services providers received remote-work accommodations during the relevant period.

**B. The Interactive Process, Remote-Work Comparators, and the Unowned Decision**

24. APS did not conduct a good-faith individualized assessment of Plaintiff's requested accommodation. Instead, the denial was predetermined through supervisors and administrators before the process was complete.

25. Socorro Rodriguez, APS's ADA Coordinator, testified that Plaintiff requested remote work as an accommodation and that Plaintiff's site supervisor and district supervisor—Justin Griego and Bernadette Lucero-Turner—indicated the request could not be accommodated. Rodriguez Dep. 7:6-7:22; 9:20-10:1; 18:12-18:21.

26. Rodriguez further testified that she was aware of other related-services providers who received remote-work accommodations during the relevant timeframe. Rodriguez Dep. 6:10-6:16; 16:20-16:25.

27. Lucero-Turner was a district-level administrator and decision participant in the accommodation and caseload issues. Plaintiff alleges Lucero-Turner was a primary driver in opposing the requested intermittent remote-work accommodation and in participating in or directing the removal and reassignment of Plaintiff's caseload while Plaintiff was on protected leave or medically restricted status.

28. Griego, as Plaintiff's site supervisor, opposed Plaintiff's request for intermittent remote work during medical flare-ups and participated in the accommodation process, including the asserted conclusion that the requested accommodation could not be granted. Plaintiff alleges Griego also facilitated or participated in the caseload-removal and professional-deficiency narrative later used to justify adverse treatment.

29. Sedillo, as principal, discussed Plaintiff's remote-work request with Griego before the formal ADA meeting and adopted or relied on the narrative that intermittent remote work would not support students, indicating that the outcome of the interactive process was predetermined rather than individualized.

30. APS and its personnel later attempted to attribute the denial to Annittra Atler, a higher-level supervisor over special-education administrators.

31. Atler, however, adamantly denied the attribution. Atler testified that she did not sit in on ADA meetings, did not make the recommendations, was not part of denying Plaintiff's accommodation request, and did not know why the denial had been attributed to her.

32. The contradiction is material. The supervisors and administrators involved in the process attempted to place responsibility on a superior who denied involvement. That unowned decision supports Plaintiff's allegation that the interactive process was a sham, not a legitimate individualized assessment.

33. The shifting attribution also supports Plaintiff's allegation that the denial and related actions were driven by retaliatory motive, personal animus, and pretext rather than a neutral district-wide policy or legitimate business necessity.

**C. Caseload Removal, Coverage, and Professional-Deficiency Narrative**

34. After Plaintiff requested accommodation, used medical leave, and engaged in protected activity, APS removed or reassigned Plaintiff's caseload and work duties.

35. APS later characterized the removal and reassignment as necessary to ensure student services, but the explanation was tied to accusations that Plaintiff was not doing her work, not seeing students, not serving students, or was otherwise professionally deficient.

36. The asserted need for in-person crisis management and student coverage was inconsistently applied to Plaintiff as compared with other related-services providers and remote-work comparators.

37. Griego and Lucero-Turner used or relied on professional-deficiency narratives, including assertions that Plaintiff was not seeing students or that parents had complained about her performance, to justify the accommodation denial, caseload removal, and adverse treatment.

38. Plaintiff alleges those accusations were false or materially misleading. Plaintiff was willing and able to perform the essential functions of her position with reasonable accommodation and had not abandoned her duties or failed to serve students in the manner APS later suggested.

39. APS's shifting explanations regarding accommodation denial, caseload removal, coverage, and performance concerns were used to justify adverse treatment and to undermine Plaintiff's professional reputation.

40. The caseload-removal and coverage narrative is relevant to Plaintiff's ADA and NMWPA claims against APS because it shows adverse action, causation, pretext, and damages.

**D. Defamatory and Professionally Damaging Publications**

41. Individual defendants made, repeated, adopted, or republished false statements of fact concerning Plaintiff's professional competence, work performance, student services, ethics, and reputation.

42. The statements included, among other things, that Plaintiff was not doing her work, was not seeing students, was not serving students, was causing students to go without services, was professionally irresponsible, was unprofessional, was toxic, and/or was the subject of parent complaints because of alleged work deficiencies.

43. Those statements were factual or implied false factual assertions capable of being proven true or false, not mere protected opinion.

44. The statements were published to APS staff, administrators, investigators, coworkers, and other third parties beyond any legitimate need-to-know, or were made with malice, retaliatory motive, personal animus, reckless disregard for the truth, or for purposes outside any legitimate scope of duty.

45. The statements injured Plaintiff in her profession as a school social worker and clinician and constitute defamation per se or otherwise caused actual damages.

**E. Individual Defendant Conduct**

46. Lucero-Turner participated in the district-level accommodation process, supplied or relied on information opposing Plaintiff's requested accommodation, participated in or directed caseload removal and coverage decisions, and contributed to the narrative that Plaintiff's work or student services were deficient. Plaintiff alleges Lucero-Turner repeated, adopted, or republished the false narrative that Plaintiff was irresponsible, nonfeasant, not performing work, not serving students, or otherwise professionally deficient, including in connection with recorded meetings and contemporaneous communications to Plaintiff's professional colleagues and senior staff.

47. Griego participated in the site-level accommodation process, opposed Plaintiff's requested accommodation, participated in or facilitated caseload removal and coverage decisions, and supplied, repeated, or relied on false work-deficiency and parent-concern narratives. Plaintiff alleges Griego made, repeated, or republished statements that Plaintiff was not seeing students, not doing her work, not providing services, had neglected duties, or was the subject of parent complaints for those reasons.

48. Romero made and repeated damaging statements about Plaintiff's professional competence and reputation, including statements that Plaintiff was not doing her work, was not seeing students, was not serving students, was toxic, and/or was otherwise professionally deficient. Romero also spread or repeated negative information about Plaintiff to others in the workplace, contributing to Plaintiff's professional isolation and reputational injury.

49. Sedillo discussed Plaintiff's remote-work request with Griego before the ADA meeting, adopted or repeated the narrative that remote work would not support students, referred to alleged parent concerns, and failed to conduct an independent investigation before relying on or transmitting those concerns. Plaintiff alleges Sedillo ratified and republished the parent-concern

and professional-deficiency narrative as a justification for denying accommodation and removing Plaintiff's caseload.

50. The conduct of individual defendants was not limited to neutral reporting. It included personal animus, retaliation, reckless disregard, and publication or republication of professional-deficiency accusations used to damage Plaintiff's reputation and justify adverse action.

51. To the extent any individual defendant claims scope-of-duty protection or conditional privilege, Plaintiff alleges that the privilege was abused or lost because the statements were made with malice, retaliatory motive, personal animus, reckless disregard, excessive publication, or outside any legitimate need-to-know.

### F. Harm

52. As a result of APS's conduct and the individual defendants' publications, Plaintiff suffered lost wages, lost benefits, emotional distress, professional and reputational harm, loss of career opportunities, damage to standing as a school social worker and clinician, medical and out-of-pocket losses, and other damages to be proven at trial.

53. Plaintiff ultimately resigned in April 2024 under circumstances she contends constituted constructive discharge.

## V. CLAIMS FOR RELIEF

### COUNT I - ADA DISCRIMINATION, FAILURE TO ACCOMMODATE, FAILURE TO ENGAGE IN GOOD-FAITH INTERACTIVE PROCESS, RETALIATION, AND INTERFERENCE AGAINST APS

54. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55. This Count is asserted against APS only. Plaintiff does not assert an ADA claim against the individual defendants.

56. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

57. APS knew of Plaintiff's disabilities and need for accommodation.

58. Plaintiff requested reasonable accommodation, including intermittent remote work and flexibility during medical flare-ups and related medically supported accommodations.

59. APS failed to engage in a good-faith interactive process, failed to conduct an individualized assessment, denied reasonable accommodation, treated Plaintiff less favorably than others who received remote-work accommodation, and used disability-related and leave-related circumstances against her.

60. APS's ADA process was carried out through its supervisors, administrators, and ADA personnel, including Griego, Lucero-Turner, Sedillo, Rodriguez, and other APS agents whose actions, knowledge, statements, and decision-chain conduct are attributable to APS.

61. APS retaliated against and interfered with Plaintiff after she requested accommodation and asserted disability-related rights, including through heightened scrutiny, caseload removal, investigations, professional-deficiency accusations, isolation, lack of work direction, and other adverse treatment.

62. APS's stated reasons were false, shifting, selectively applied, and pretextual. The unowned decision concerning who denied Plaintiff's accommodation, the comparator evidence regarding other remote-work accommodations, and the false professional-deficiency narrative support pretext and causation.

63. APS's conduct violated the ADA, including 42 U.S.C. §§ 12112 and 12203.

64. Plaintiff suffered damages as a result.

**COUNT II - NEW MEXICO WHISTLEBLOWER PROTECTION ACT AGAINST APS**

65. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66. This Count is asserted against APS only. Plaintiff does not assert an NMWPA claim against the individual defendants.

67. Plaintiff engaged in protected activity under the New Mexico Whistleblower Protection Act by reporting and objecting to special-education compliance failures, student-service failures, and related conduct that Plaintiff reasonably believed violated law, regulation, policy, or public duty.

68. APS knew of Plaintiff's protected activity, including the PED complaint and related student-service reporting.

69. APS took materially adverse actions against Plaintiff after her protected activity, including retaliation, heightened scrutiny, isolation, caseload removal, investigations, professional-deficiency accusations, career interference, constructive-discharge facts, and other adverse treatment.

70. Plaintiff's protected activity was a motivating factor in APS's adverse actions, and APS's stated reasons were pretextual.

71. APS's conduct violated the New Mexico Whistleblower Protection Act, NMSA 1978, §§ 10-16C-1 et seq.

72. Plaintiff suffered damages as a result.

**COUNT III - DEFAMATION AGAINST INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES**

73. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

74. This Count is asserted against Defendants Lucero-Turner, Griego, Romero, and Sedillo in their individual capacities. Plaintiff does not assert this Count against APS.

75. The individual defendants made, repeated, adopted, or republished false statements of fact concerning Plaintiff's profession, competence, work performance, student services, ethics, and reputation.

76. The defamatory statements included allegations that Plaintiff was not doing her work, was not seeing students, was not serving students, had neglected duties, was professionally irresponsible, was unprofessional, was toxic, and/or caused students or parents to suffer because of alleged professional deficiencies.

77. Lucero-Turner repeated, adopted, or republished the false narrative that Plaintiff was professionally irresponsible, nonfeasant, not performing duties, or not serving students, including in recorded meetings and communications to Plaintiff's professional colleagues or senior staff.

78. Griego made, repeated, or republished false statements to district personnel, administrators, or investigators alleging that Plaintiff was not seeing students, had neglected duties, or was the subject of parent complaints regarding alleged professional deficiencies.

79. Romero made, repeated, or republished false statements to school staff, coworkers, administrators, or internal investigators that Plaintiff was not doing her work, was not seeing students, was not serving students, was toxic, or was otherwise professionally deficient.

80. Sedillo adopted, repeated, or republished the parent-concern and professional-deficiency narrative, including statements or implications that Plaintiff could not support students through intermittent remote work and needed to be removed from cases because of alleged professional deficiencies.

81. The statements were false. Plaintiff was not failing to perform her work or abandoning student services as alleged or implied. Plaintiff was capable of performing the essential functions of her position with reasonable accommodation.

82. The statements were published to third parties, including APS personnel, administrators, investigators, coworkers, and others in the workplace or investigation chain.

83. The statements were made negligently, recklessly, maliciously, with personal animus, with retaliatory motive, or with knowledge or reckless disregard of falsity.

84. To the extent any defendant asserts a conditional privilege or scope-of-duty defense, that privilege was abused or lost because the statements were made or republished with malice, improper purpose, retaliatory motive, reckless disregard, excessive publication, or outside any legitimate need-to-know.

85. The statements injured Plaintiff in her profession and are defamatory per se, or alternatively caused actual reputational, professional, emotional, and economic damages.

86. Plaintiff is entitled to compensatory damages, presumed damages where permitted, special damages where proven, and any other relief permitted by law.

## VI. DAMAGES

87. Plaintiff seeks all legally recoverable damages, including lost wages, lost benefits, front pay or equitable relief where available, emotional distress damages, reputational and professional harm damages, medical and out-of-pocket losses, compensatory damages, consequential damages, statutory damages where available, attorney fees, costs, interest, and all other relief permitted by law.

88. Plaintiff also seeks declaratory and equitable relief as appropriate against APS for the surviving statutory claims.

## VII. PRAYER FOR RELIEF

89. Enter judgment in Plaintiff's favor and against APS on the ADA and NMWPA claims;

90. Enter judgment in Plaintiff's favor and against the individual defendants on the defamation claim;

91. Award Plaintiff compensatory damages in an amount to be determined by the jury;

92. Award statutory, equitable, declaratory, injunctive, and other relief available under the ADA and NMWPA;

93. Award attorney fees and costs where permitted by law;

94. Award pre-judgment and post-judgment interest where permitted by law;

95. Preserve Plaintiff's appellate rights as to claims or rulings previously dismissed or resolved by Court order; and

96. Grant all other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

FOGHI LAW FIRM, LLC

/s/ Boglarka A. Foghi
Boglarka A. Foghi
P.O. Box 944
Corrales, NM 87048
(505) 220-6591
foghilaw@yahoo.com
*Counsel for Plaintiff*