# EXHIBIT 4

## Excerpts of Socorro Rodriguez Deposition

services provide- -- a related-services provider. Were there any other related-services providers during that time period?

A. These are looked at case-by-case. So off the top of my head, I could not tell you.

Q. But were there any, as far as you remember?

A. As far as related services?

Q. Yes.

A. I would say that there is some, yes.

Q. During the time period when Ms. Lipe requested that accommodation, were there any other related-services providers who were given the opportunity to work remotely?

A. I would say there were some. They are looked at case-by-case.

Q. In this situation were you the person who looked at Tasha Lipe's case to determine if she was someone that you would grant an accommodation to?

A. Again, that is not my decision. I would go off of the supervisors -- well, these are reviewed with supervisors that are directly supervising the individual to see if -- and, again, case-by-case given their medical disabilities. There are many factors, disabilities, ADA

accommodations as far as we review medical documentation provided to us, and these are reviewed directly with supervisors, taking into consideration the job description as well.

Q. In this particular case with respect to Ms. Lipe, who made the decision to deny her request?

A. Supervisors.

Q. Who in particular? Who was the supervisor?

A. I believe I had a site supervisor and a district supervisor that indicated that this was not in -- something that they could work with.

Q. Can you name the individuals that you are referring to?

A. I don't recall last names. I do remember site supervisor was Justin and district supervisor was Bernadette.

Q. Okay. So they would have been the one that would have made the decision not to allow this accommodation?

A. They had indicated that this was not something that they could accommodate.

Q. Okay. Do you recall having a conversation with my client over the phone with respect to her specific situation and request?

during periods of her flare-ups as opposed to full time?
A. I don't recall.
Q. Okay. So you do not remember ever having seen that letter and passing that on to the supervisors?
A. I don't remember exactly right now what the letter entailed.
Q. Okay. But regardless of all of that, that information would have been decided by the higher-ups, not by you?
A. Again, the recommendation is highly considered, yes.
Q. Highly considered.
My question is a simple one. I am not asking for whose opinion is highly considered. I am asking for who was the individual that ultimately made the decision not to allow her to work remotely during periods of her flare-ups?
A. Supervisors.
Q. Not one but several and you mentioned Griego and you mentioned Bernadette Lucero-Turner, am I correct?
A. Correct.
Q. Is there anybody else?

A. No.
Q. Is FMLA -- is FMLA considered under the ADA Act an accommodation?
A. Yes.
Q. Okay. Would you agree with me that FMLA, Family and Medical Leave Act, it is not exactly an accommodation. In fact, would you agree with me that it is a separate federal law providing unpaid job protected leave?
A. Can you repeat the question?
Q. FMLA, Family and Medical Leave Act. Would you agree with me -- well, you stated that in your opinion it is an accommodation.
Would you agree with me that FMLA is a separate federal law that provides unpaid leave, job protected unpaid leave?
A. My understanding of FMLA is that it could be paid leave as well, that is why I considered it an option. If they have accruals, they could utilize that as FMLA. That is why I believe this is an option.
Q. Okay. And FMLA is 12 weeks, correct?
A. To my understanding, yes.
Q. So to your understanding, but if your role is -- if your particular job description and role is

received.
A. Again, as far as FMLA, that is not my role.
Q. Okay. Do you have any training in FMLA?
A. I would say no.
Q. Okay. Tell me the extent of the training that you have received an ADA accommodations.
A. It is strictly in ADA.
Q. Okay. But you are clearly aware, I think you testified to this, that you do know of related-services providers who had received accommodation to work remotely?
A. Again, these are reviewed case-by-case so --
Q. That was not my question. That was not my question.
My question for you was not whether they were reviewed case-by-case. I think we can all agree that it has to be reviewed case-by-case.
My question to you is, are you aware of other related-services providers who received the accommodation to work remotely during the time period that my client was with APS?
A. Yes.
Q. Thank you.

Report?

MS. KILGORE: Yeah. Her answer was that she does not.

MS. FOGHI: That she does not remember.

MS. KILGORE: She doesn't -- she didn't deny being interviewed by him, she just couldn't remember if it was in this case.

Q. (By Ms. Foghi) Okay. What else do you recall or can tell me specific to this case involving Ms. Lipe?

A. That is what I remember.

Q. So the only thing you remember is her one request that she made to allow for remote work post-COVID as a result of her flare-ups, correct?

A. Correct.

Q. And that that decision was passed on to Justin Griego and Bernadette Lucero-Turner, correct?

A. Correct.

Q. And that decision to deny her was made by those two people, correct?

A. Correct.

Q. And you had nothing to do with that decision?

A. I gave insight as far as, you know, if there were no remote work, what other options could