**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TATIA LIPE,

Plaintiff,

v. No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS**

Plaintiff submits this response to Defendant Albuquerque Public Schools' objections to Plaintiff's deposition designations. Doc. 355. APS's objections should be overruled.

APS is not asking the Court to exclude inadmissible evidence. APS is asking the Court to keep the jury from hearing sworn testimony from APS's own personnel because that testimony damages APS's defense. The Federal Rules do not permit that.

APS invokes Rules 401, 403, 801, 804, and 106, but those rules do not do what APS needs them to do. Rule 403 does not exclude evidence because it hurts APS. Rule 401 does not permit APS to label central proof 'irrelevant.' Rule 804 is not the only path for deposition use. Rule 32 expressly permits deposition use in multiple circumstances. Rule 801(d)(2) permits opposing-party statements. Rule 106 and Rule 32(a)(6) permit completeness counter-designations, not wholesale exclusion of Plaintiff's proof.

Plaintiff does not contend that every deposition excerpt is admissible for every purpose under every rule. Plaintiff's position is sharper and more precise: APS's categorical objections are wrong. Depending on the witness, excerpt, and trial use, the testimony is admissible under Rule

32(a)(2), Rule 32(a)(3), Rule 801(d)(2), impeachment principles, or live examination/cross-examination. Plaintiff will lay any required foundation. APS's objection fails because it asks the Court to suppress entire categories of sworn testimony without doing the required witness-specific, purpose-specific, and foundation-specific analysis.

**I. APS'S HEARSAY OBJECTION MISSTATES THE GOVERNING RULES.**

APS begins with a legally incomplete premise: that Plaintiff's deposition designations are inadmissible hearsay unless the deponents are unavailable under Rule 804. Doc. 355 at 1. That is wrong.

Rule 804 is not the only path for using deposition testimony. Federal Rule of Civil Procedure 32 permits deposition testimony to be used to contradict or impeach a deponent and permits additional uses authorized by the Federal Rules of Evidence. Fed. R. Civ. P. 32(a)(2). Rule 32 also permits an adverse party to use, for any purpose, the deposition of a party or a person who, when deposed, was the party's officer, director, managing agent, or Rule 30(b)(6) or Rule 31(a)(4) designee. Fed. R. Civ. P. 32(a)(3).

APS's objection also ignores Federal Rule of Evidence 801(d)(2). Statements by APS employees, administrators, officials, and agents concerning matters within the scope of their APS roles may qualify as opposing-party statements when offered against APS. Fed. R. Evid. 801(d)(2)(D). The Tenth Circuit recognizes that employee statements within the scope of employment may be admissible against the employer under Rule 801(d)(2)(D). Pastran v. K-Mart Corp., 210 F.3d 1201, 1203 n.1 (10th Cir. 2000).

The deposition testimony is not rumor from outsiders. It is sworn testimony from APS personnel about APS's own ADA process, accommodation practices, leave-related conduct, caseload decisions, student-service records, data systems, discovery production, investigations,

and asserted explanations for its actions. APS cannot label those admissions 'hearsay' without addressing Rule 32 and Rule 801(d)(2).

**II. PLAINTIFF HAS ESTABLISHED A WITNESS-SPECIFIC FOUNDATION FOR USING APS PERSONNEL TESTIMONY.**

APS's hearsay objection fails because the challenged testimony is not generic testimony from unrelated witnesses. It is sworn testimony from APS personnel who held roles directly tied to the processes, decisions, records, and explanations at issue in this case.

Socorro Rodriguez was and is APS's ADA Coordinator. Her testimony concerns APS's ADA accommodation process, APS's handling of accommodation requests, APS's institutional accommodation practices, and whether similar accommodations were available to other employees. Those subjects fall squarely within the scope of her APS role.

Annittra Atler was a senior APS administrator in the special-education chain of command. APS attempts to connect Plaintiff's accommodation denial and related decisionmaking to Atler, but Atler's testimony shows she was not in the ADA meetings, did not deny Plaintiff's accommodation, did not make the recommendations, and relied on information supplied by Justin Griego and Bernadette Lucero-Turner. That testimony concerns her APS role, APS's decision structure, and the integrity of APS's asserted ADA process.

Lisa Oliphant was and is APS Related Services administrator. Her testimony concerns caseload management, Related Services operations, student-service coverage, work-status issues, and the institutional handling of Plaintiff's caseload. Those subjects are directly within the scope of her APS role.

Bonnie Anderson was the APS data witness who verified or explained records, data pulls, Synergy, MaxCapture, STARS/Nova, service-minute data, and the production of records in this litigation. APS cannot rely on records and data while preventing Plaintiff from testing the source,

method, completeness, and reliability of those same records through the APS personnel who handled them.

Yvonne Garcia, Linda Elliott, Stephanie Avila, Justin Griego, Bernadette Lucero-Turner, Rosita Moya-Herrera, Antoinette Romero, and Angelique Torres each testified about matters within their personal knowledge, APS roles, or conduct relevant to the issues APS placed in dispute. Plaintiff will lay the required foundation for the specific use of each excerpt. APS's categorical objection should be overruled.

## III. APS'S RULE 401 OBJECTIONS FAIL BECAUSE THE DESIGNATED TESTIMONY GOES TO THE CENTER OF THE CASE.

APS repeatedly objects that Plaintiff's designations are irrelevant. The objection fails.

Rule 401 sets a low threshold. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Relevance must be assessed in the context of the facts and arguments in the case, not through categorical exclusion. Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 387-88 (2008).

The testimony APS seeks to exclude concerns APS's accommodation practices, the ADA interactive process, remote-work feasibility, leave-related knowledge and conduct, caseload removal, Synergy and MaxCapture data, student-service records, decisionmaking authority, discovery production, witness credibility, and APS's asserted reasons for what it did. Those issues are not collateral. They are central to the trial.

APS intends to defend this case by arguing that it engaged in a proper ADA process, denied remote work for legitimate reasons, offered reasonable alternatives, handled Plaintiff's caseload for legitimate operational reasons, investigated and managed Plaintiff for lawful reasons, and acted for reasons unrelated to Plaintiff's protected activity. Plaintiff is entitled to test that story through APS's own witnesses. APS cannot make its processes, explanations, and

decisionmaking central to its defense and then object when Plaintiff designates testimony exposing contradictions in those same processes, explanations, and decisions.

**IV. APS'S RULE 403 OBJECTIONS FAIL BECAUSE APS CONFUSES DAMAGING EVIDENCE WITH UNFAIR PREJUDICE.**

APS's Rule 403 objections should be overruled. APS identifies testimony that hurts APS. It does not identify unfair prejudice.

Evidence does not become inadmissible because it proves Plaintiff's case. Evidence does not become unfairly prejudicial because it confirms Plaintiff's account, exposes inconsistencies in APS's explanations, or comes from APS's own witnesses. That is why the evidence is admissible.

Rule 403 protects against unfair prejudice, not against relevant testimony that damages APS. The Tenth Circuit has held that '[e]vidence is not unfairly prejudicial simply because it is damaging to an opponent's case.' *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008). Rule 403 exclusion is an extraordinary remedy that should be used sparingly. *United States v. Tan,* 254 F.3d 1204, 1211-12 (10th Cir. 2001).

APS identifies no improper basis on which the jury would decide the case. APS identifies no real confusion, no actual waste of time, and no prejudice that substantially outweighs the probative value of the testimony. APS simply objects because the testimony is bad for APS. That is not Rule 403. That is a request to sanitize the trial record.

**V. APS CANNOT USE LIVE-WITNESS AVAILABILITY TO CONTROL PLAINTIFF'S CASE-IN-CHIEF.**

APS argues that many witnesses *may* testify live in Defendant's case and that Plaintiff should therefore be required to call those witnesses live in Plaintiff's case-in-chief, using

deposition testimony only for impeachment. That is not an evidentiary objection. It is APS attempting to control Plaintiff's order of proof.

Rule 32 does not say what APS says it says. Rule 32 permits deposition use for impeachment, for uses allowed by the Rules of Evidence, and for any purpose when the deponent qualifies under Rule 32(a)(3). Fed. R. Civ. P. 32(a)(2), (3). APS cannot rewrite Rule 32 by announcing that it prefers Plaintiff to present APS witnesses live, on APS's timeline, in APS's preferred sequence.

Plaintiff is not required to surrender sworn admissions from APS personnel merely because APS may later call those witnesses live. Rule 32, Rule 801(d)(2), and the impeachment rules permit Plaintiff to use qualifying testimony in her case-in-chief. APS's promise to present a cleaned-up live version later does not make the sworn testimony cumulative, irrelevant, or inadmissible.

To the extent APS relies on the Court's trial-management discretion or witness availability, that discretion does not support APS's categorical objection. *Coletti v. Cudd Pressure Control,* 165 F.3d 767 (10th Cir. 1999), does not give APS a blanket veto over Plaintiff's designations. At most, it confirms that courts retain discretion to manage cumulative or repetitious presentation in context. APS has not made that showing witness by witness or excerpt by excerpt.

## VI. RODRIGUEZ'S ADA COORDINATOR TESTIMONY IS NOT COLLATERAL COMPARATOR EVIDENCE.

APS objects to Rodriguez's designations in their entirety. That objection should be overruled.

Rodriguez was and is APS's ADA Coordinator. Her testimony goes directly to APS's accommodation practices, whether similar accommodations were granted to others, whether

Plaintiff's requested accommodation was feasible, whether APS conducted an individualized assessment, and whether APS's stated reasons were selective or pretextual.

APS will likely argue that Rodriguez's testimony about other accommodations is inadmissible because other employees were not identical comparators. That objection misses the point. Plaintiff does not offer Rodriguez's testimony merely to prove that any employee, in any position, is an automatic comparator. Plaintiff offers Rodriguez's testimony because APS's ADA process was an institutional process handled through its ADA function. Rodriguez was the ADA Coordinator. Her testimony bears directly on whether APS's stated reasons for denying Plaintiff's requested accommodation were real, consistently applied, and based on an individualized assessment.

If APS claims remote or intermittent remote work was unavailable, unreasonable, or operationally incompatible, then evidence that APS granted similar or materially related accommodations through the same ADA process is directly probative. It rebuts APS's categorical defense. It also supports Plaintiff's theory that APS treated Plaintiff differently, failed to conduct a genuine individualized analysis, and later offered selective explanations for the denial.

Any factual differences among employees may affect weight. They do not justify blanket exclusion. APS can cross-examine Rodriguez about job duties, circumstances, and limits. APS cannot keep the ADA Coordinator's testimony from the jury simply because it exposes inconsistency in APS's accommodation practices.

## VII. APS'S OBJECTIONS TO ATLER'S DESIGNATIONS SHOULD BE OVERRULED.

APS's objections to the Atler designations expose the problem with APS's filing.

APS attempts to connect Plaintiff's accommodation denial to Atler, but Atler's designated testimony directly contradicts that theory. Atler testified that she was support for her executive

director and the team, that she was not aware of all of Plaintiff's exact accommodations until the meeting, and that she was not aware of anything before. She then testified that she 'never even sat in on any of the ADA meetings' and that ADA decisionmaking 'was not my role.'

It is not irrelevant. It is the hole in APS's defense.

Atler's testimony goes further. She testified that she read the Gonterman report identifying her as the person who denied Plaintiff's accommodations, but she denied being part of the ADA meeting, denied being part of the recommendations, and denied being part of denying Plaintiff's request.

APS cannot attribute the denial to Atler and then ask the Court to exclude Atler's sworn testimony that she did not participate in the ADA meetings, did not make the recommendations, did not deny the request, and did not know the relevant accommodation facts at the relevant time.

That testimony is not unfairly prejudicial. It is proof. It shows that APS's asserted ADA process was shifting, unowned, and built on secondhand accounts. It also shows why Plaintiff is entitled to test who actually knew what, who participated, who had authority, who supplied information, and who later attempted to assign responsibility elsewhere. APS cannot hide behind the institution while each witness points to someone else. The contradiction is evidence. The jury is entitled to hear it.

## VIII. APS'S OBJECTIONS TO OLIPHANT'S DESIGNATIONS SHOULD BE OVERRULED.

APS also objects to Oliphant's designations in their entirety. That objection is overbroad and improper.

Oliphant was an APS Related Services administrator. Her testimony concerns caseload management, work status, service coverage, Related Services operations, and APS's explanations for what happened to Plaintiff's caseload and role. Those are not side issues. They go directly to

adverse action, pretext, causation, damages, and the credibility of APS's operational justifications.

APS cannot make Related Services, caseload reassignment, student-service coverage, Plaintiff's work status, and alleged performance concerns part of its defense, then exclude testimony from a Related Services administrator because the testimony undercuts that defense.

If APS intends to argue that Plaintiff's caseload was removed for legitimate operational or student-service reasons, Plaintiff is entitled to present testimony testing who made that decision, what information was relied on, whether the decision was documented, what role Related Services played, and whether APS's stated reasons hold up.

**IX. ANDERSON'S DATA-SYSTEM TESTIMONY GOES TO RELIABILITY, TRUSTWORTHINESS, AND PRETEXT.**

APS's objections to Anderson's testimony should be overruled. APS tries to frame the testimony as a technical detour into Synergy, MaxCapture, STARS/Nova, and data mechanics. It is not a detour. It goes directly to the reliability of APS's records and the truthfulness of APS's trial narrative.

If APS claims it relied on service-minute records, caseload data, historical reports, or student-service documentation to justify actions taken against Plaintiff, then Plaintiff is entitled to test whether those records could actually be generated, how they were generated, who generated them, who verified them, what limits existed, and whether APS's production was complete and reliable.

This testimony is especially relevant where APS asserts operational or record-based reasons for caseload removal, alleged nonperformance, student-service issues, or documentation concerns. If APS's own data witness admits the system could not generate the kind of historical

report APS now relies on, or that the records were generated through special queries rather than ordinary reports, that evidence bears directly on pretext and credibility.

APS cannot use its records as a sword and then use Rule 403 as a shield to prevent Plaintiff from testing those records. Anderson's testimony is probative because it addresses the source, method, completeness, and trustworthiness of APS's evidence. That is not waste of time. That is trial evidence.

**X. APS'S OBJECTIONS TO GARCIA'S DESIGNATIONS SHOULD BE OVERRULED.**

Garcia's testimony concerns actual APS social-work practice, service minutes, make-up minutes, MaxCapture, Synergy access, caseload visibility, historical documents, Plaintiff's grievance context, and the documentation of services provided while covering Plaintiff's caseload. Garcia is not merely offering general background testimony. She specifically supervised and signed off on the work of the social workers who covered Plaintiff's caseload, including documentation showing progress toward student goals and completion of service minutes.

APS cannot rely on generalized job descriptions and institutional explanations while excluding testimony from a supervisor who can explain how those duties, systems, service minutes, goal-progress documentation, and coverage practices actually operated.

This testimony is relevant because APS's defense depends heavily on assertions about school-social-work duties, service documentation, caseload responsibilities, and student-service coverage. Garcia's testimony helps the jury determine whether APS's narrative matches actual practice and whether covered services were documented as completed. APS's selective objections to adjacent testimony do not make the testimony inadmissible.

**XI. APS'S OBJECTIONS TO ELLIOTT'S DESIGNATIONS SHOULD BE OVERRULED.**

APS's objections to Elliott's designations fail because Elliott's testimony bears on Plaintiff's protected student-advocacy and special-education compliance concerns before and around the PED complaint process. That testimony is relevant to Plaintiff's NMWPA theory, APS's knowledge, protected activity, causation, motive, and the public-benefit nature of Plaintiff's reporting.

Plaintiff offers Elliott's testimony for matters within Elliott's personal knowledge: what Plaintiff reported, what Elliott received or observed, what APS was placed on notice of, and the student-service context of Plaintiff's reporting. Plaintiff does not offer Elliott to speculate about undisclosed institutional motive.

APS cannot reduce Plaintiff's protected reporting to a personal workplace grievance while excluding testimony showing that Plaintiff raised student-safety, special-education, and program-failure concerns to APS personnel. APS's repeated Rule 401 and Rule 403 labels do not justify wholesale exclusion of Elliott testimony that goes directly to Plaintiff's NMWPA theory and APS's knowledge.

## XII. DISMISSED-CLAIM EVIDENCE REMAINS ADMISSIBLE WHEN OFFERED FOR SURVIVING CLAIMS.

APS will likely attempt to use the dismissal of Count III as a way to remove all reputation, accusation, and professional-harm evidence. That is improper.

Plaintiff does not offer this evidence to relitigate a dismissed defamation claim against APS. Plaintiff offers it because the underlying accusations, statements, investigations, and professional attacks are independently relevant to surviving theories, including ADA retaliation, ADA interference, NMWPA retaliation, pretext, causation, credibility, constructive-discharge facts, and damages.

APS cannot convert dismissal of a standalone defamation claim into a blanket exclusion order for all evidence of damaging accusations. The question is not whether the evidence supports a dismissed tort claim. The question is whether the same facts are relevant to claims still being tried. They are.

**XIII. APS'S COMPLETENESS ARGUMENT DOES NOT SUPPORT EXCLUSION.**

APS invokes completeness. That does not justify exclusion.

If APS believes additional testimony is necessary for completeness, the remedy is a properly tailored counter-designation under Rule 32(a)(6), Rule 106, or the Court's trial-management process. Completeness is not a basis to erase Plaintiff's excerpts. It is a fairness rule, not a suppression tool.

Plaintiff does not oppose genuinely necessary completeness counter-designations. Plaintiff opposes APS's attempt to convert completeness into exclusion. Where fairness requires additional context, the proper remedy is to read the necessary additional portion with the designation, not to bar Plaintiff's excerpt.

APS may request that additional portions be considered with Plaintiff's designations where fairness requires it. APS may not use completeness as a weapon to keep Plaintiff's designations from the jury.

**XIV. APS'S OBJECTIONS SHOULD BE DENIED.**

APS's objections should be denied because they are designed to prevent the jury from hearing central sworn testimony from APS personnel. The testimony goes to the factual disputes the jury must decide: whether APS conducted a real ADA process, whether Plaintiff's requested accommodation was feasible, whether APS treated Plaintiff differently from others, whether APS used leave-related and disability-related circumstances against her, whether APS's caseload

and performance explanations are credible, whether APS's records and data are reliable, and whether APS's witnesses can identify who actually made the decisions APS now defends.

APS has had the deposition testimony. APS has had the designations. APS knows exactly what testimony Plaintiff intends to use. There is no surprise, no unfair prejudice, and no legitimate Rule 403 basis to exclude sworn testimony from APS's own personnel. APS's objection is not prejudice. It is fear of the proof.

APS's repeated references to 'relevance,' 'misleading,' 'undue prejudice,' 'confusion,' and 'waste of time' do not carry its burden. The testimony is relevant. The testimony is probative. The testimony is sworn. Much of it comes from APS's own personnel. APS does not get to keep it from the jury merely because it proves Plaintiff's case.

WHEREFORE, Plaintiff respectfully requests that the Court overrule Defendant's objections to Plaintiff's deposition designations and permit Plaintiff to use the designated testimony at trial, subject only to proper completeness counter-designations and the Court's trial-management rulings.

Respectfully submitted,

FOGHI LAW FIRM
By: /s/ Boglarka Foghi
Boglarka Foghi
P.O. Box 944
Corrales, NM 87048
(505) 220-6591
foghilaw@yahoo.com
*Counsel for Plaintiff Tatia Lipe*

**CERTIFICATE OF SERVICE**

I certify that on June 8, 2026, I filed the foregoing using the CM/ECF system, which caused notice to be served on all counsel of record.

*/s/ Boglarka Foghi*
Boglarka Foghi