**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TATIA LIPE,

Plaintiff,

v. No. 1:23-cv-00899-GBW-JMR

ALBUQUERQUE PUBLIC SCHOOLS et al.,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO ALBUQUERQUE PUBLIC SCHOOLS' AMENDED MOTION TO STRIKE PLAINTIFF'S NOTICE OF WITHDRAWAL**

Plaintiff Tatia Lipe ("Plaintiff"), through undersigned counsel, responds in opposition to Defendant Albuquerque Public Schools' ("APS") Amended Motion to Strike Plaintiff's Notice of Withdrawal [Doc. 390] ("Amended Motion"). The Amended Motion should be denied.

APS attempts to transform Plaintiff's pending motion requesting dismissal of Count II into a self-executing Rule 41(a)(1)(A)(ii) stipulation, while ignoring both the actual form of the filing and the express limitations contained within it. APS then relies upon a selectively presented mediation record to argue that Plaintiff "changed her mind" about a supposedly completed settlement, notwithstanding contemporaneous written documents establishing that Plaintiff repeatedly and expressly rejected the broader personal-capacity employee release APS later demanded. The documentary record does not support APS's narrative. It defeats it.

Although styled as a motion to strike, Doc. 390 asks the Court to do far more: deem Count II already extinguished under Rule 41(a)(1)(A)(ii), despite the absence of a stipulation signed by all appearing parties and the absence of any order dismissing that claim.

No enforceable settlement agreement was ever formed because the parties never reached mutual assent on all material terms. Plaintiff never objectively assented to APS's later-demanded blanket personal-capacity release or IRS indemnification provision. No final settlement agreement was executed, no settlement consideration was paid, and no order dismissing Count II was entered. Agreement on certain preliminary or component terms does not establish mutual assent to additional material obligations that were never negotiated or expressly accepted.

Plaintiff's premature motion was an anticipatory implementation step toward a contemplated settlement the parties expected to finalize. When APS conditioned finalization on additional material obligations—including a blanket personal-capacity release and IRS indemnification—to which Plaintiff had never objectively assented, the basis for leaving the motion pending no longer existed.

Plaintiff's motion (Doc. 382) expressly limited the contemplated dismissal to Count II against APS and expressly stated that it did not release, dismiss, adjudicate, or waive claims against nonparties or individuals. APS reviewed that language before filing and responded that it did not oppose dismissal of Count II and took no position regarding the remainder of Plaintiff's statements. See Doc. 382 at 3–4. APS nevertheless now asks this Court to treat Doc. 382 as "compelling evidence" that Plaintiff agreed to the broader release the motion expressly disclaimed.

APS also elected to place the mediator's June 15, 2026 settlement summary on the public docket as Exhibit A to its Motion while omitting Plaintiff's direct written response to that same communication. In that response, Plaintiff expressly rejected the proposition that she had agreed to release every possible claim against every possible person or to release separate individual-

capacity claims that were never negotiated at mediation. APS cannot establish assent by presenting half of a written exchange.

APS's own Amended Motion confirms the absence of agreement on the disputed provisions. APS expressly states that the parties "have been unable to finalize a settlement agreement and release" concerning employee releases and IRS tax indemnification and further acknowledges that those matters "have not been agreed to." Doc. 390 at 2–3. APS cannot transform disputed substantive obligations into agreed settlement terms merely by labeling them "ancillary." The issue before the Court is whether Plaintiff objectively assented to those obligations. The contemporaneous written record demonstrates that she did not.

**I. DOC. 382 WAS A MOTION REQUESTING A COURT ORDER, NOT A JOINTLY SIGNED RULE 41(a)(1)(A)(ii) STIPULATION.**

APS's threshold procedural argument fails because it depends upon treating a document as something it was not.

Federal Rule of Civil Procedure 41(a)(1)(A)(ii) permits dismissal without a court order through "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). A document signed only by one party does not satisfy that requirement. *Morris v. City of Hobart*, 39 F.3d 1105, 1109 (10th Cir. 1994). A qualifying Rule 41(a)(1)(A)(ii) stipulation is self-executing. *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989); De Leon v. Marcos, 659 F.3d 1276, 1283–84 (10th Cir. 2011). No jointly signed stipulation was filed here.

Doc. 381 was captioned "Plaintiff's Unopposed Motion to Dismiss Count II of Amended Complaint for Damages." It stated that Plaintiff "respectfully moves the Court for entry of an Order dismissing Count II."

Doc. 382 was captioned "Plaintiff's Amended Motion to Dismiss Count II of Amended

Complaint for Damages." It again expressly asked the Court to "enter an Order dismissing Count II."

- Neither filing was signed by APS.
- Neither filing was styled as a joint stipulation.
- Neither filing purported to accomplish dismissal automatically upon filing.
- Both expressly requested entry of a court order.

Doc. 382 did state that the parties had reached an agreement at mediation to dismiss Count II against APS. But the filing itself defined that agreement narrowly: it limited the contemplated dismissal to Count II against APS and expressly preserved claims against nonparties and individuals. Agreement on that discrete component does not establish assent to the broader personal-capacity release and IRS indemnification obligations APS later sought to impose.

APS's consent to or non-opposition to Plaintiff's motion did not supply APS's signature to a Rule 41(a)(1)(A)(ii) stipulation.

APS emphasizes language in the original filing stating that the parties "stipulate" to dismissal of Count II. But Rule 41(a)(1)(A)(ii) does not make any document containing the word "stipulate" self-executing. The Rule identifies the procedural instrument required: "a stipulation of dismissal signed by all parties who have appeared." That instrument was never filed.

Indeed, the distinction is confirmed by APS's own contemporaneous conduct. When Plaintiff requested APS's position on the amended motion, APS responded:

> "**APS does not oppose dismissal as to Count II and takes no position regarding the remainder of Plaintiff's arguments, claims, or allegations contained in the Motion**."

Doc. 382 incorporated APS's position accordingly.

That is a party stating its position concerning another party's motion. It is not a jointly executed stipulation of dismissal.

APS therefore misplaces its reliance on *Smith v. Phillips*. That decision addresses the effect of an actual Rule 41(a)(1)(A)(ii) stipulation after the Rule's procedural requirements have been satisfied. It does not authorize a court to retroactively transform a motion signed only by Plaintiff's counsel, expressly requesting judicial action, into a stipulation signed by all parties who appeared.

No order dismissing Count II had been entered when Plaintiff withdrew the pending motion. Plaintiff therefore properly invoked D.N.M.LR-Civ. 7.7 to withdraw the document from the Court's consideration. Because APS does not consent, Court approval is required. That does not render the Notice improper; it simply presents the withdrawal for the Court's determination under the Local Rule.

**II. APS'S AMENDED MOTION CANNOT CONVERT AN ANTICIPATORY, PRE-PAYMENT MOTION INTO AN IRREVOCABLE DISMISSAL OF COUNT II.**

APS's Amended Motion does more than ask the Court to strike Plaintiff's Notice of Withdrawal. It asks the Court to hold that Plaintiff's New Mexico Whistleblower Protection Act claim was already extinguished because Plaintiff's motion supposedly operated as an immediately effective Rule 41(a)(1)(A)(ii) dismissal. See Doc. 390 at 2–4. That theory is contradicted not only by the form and language of Doc. 382, but by the parties' contemporaneous settlement-drafting record. During the post-mediation negotiations, Plaintiff expressly addressed the sequence of execution, payment, and dismissal. On June 23, 2026, Plaintiff's counsel stated that the written agreement should not recite receipt of consideration before payment was actually made and proposed that

the $200,000 settlement payment be made "contemporaneously with execution and exchange of this Agreement." Plaintiff then separately addressed "Dismissal After Payment," explaining that, while APS characterized dismissal following payment as normal practice, Plaintiff wanted the parties' obligations stated expressly rather than left to assumption. Plaintiff therefore proposed:

> "**Plaintiff shall not be required to file dismissal papers until the settlement funds have been received and cleared**." *See* Exhibit C.

This contemporaneous written position is fundamentally inconsistent with APS's present assertion that Plaintiff intended Doc. 382 to operate as an immediately effective dismissal of Count II before execution of a settlement agreement or payment of consideration.

Plaintiff does not dispute that dismissal of Count II was contemplated as part of the anticipated settlement. The contemporaneous record demonstrates that Plaintiff understood dismissal as a closing obligation associated with completion of the contemplated settlement—not as an advance forfeiture of the WPA claim while the parties were still negotiating material provisions of the release and before settlement consideration had been paid.

APS's present theory would invert that sequence. It would convert an anticipatory filing expressly requesting judicial action into a dismissal effective before execution, before payment, and while the parties admittedly remained unable to finalize the settlement agreement and release. Rule 41(a)(1)(A)(ii) does not permit that result where the instrument required by the Rule—a stipulation of dismissal signed by all parties who appeared—was never filed.

At minimum, the contemporaneous payment-and-dismissal communications demonstrate that APS cannot treat the intended sequence of performance as undisputed. If APS asks the Court to determine that Doc. 382 nevertheless extinguished Count II pursuant to an already-binding

settlement, the Court should consider the complete contemporaneous record before determining that Plaintiff's WPA claim was already dismissed.

**III. APS'S PRESENT CHARACTERIZATION OF DOC. 382 IS CONTRADICTED BY DOC. 382 ITSELF.**

APS's reliance upon Doc. 382 as evidence that Plaintiff assented to APS's present settlement position is particularly untenable because the document says precisely the opposite.

Doc. 382 states:

> "**This dismissal is limited to Count II, New Mexico Whistleblower Protection Act, as asserted against Defendant Albuquerque Public Schools in this action only.**"

It then states:

> "**Nor does this Motion release, dismiss, adjudicate, or waive any claim Plaintiff may have against any nonparty or individual not before the Court on this Motion**." Doc. 382 at 1.

Those were express limitations on the proposed dismissal, and APS was aware of them. Before Doc. 382 was filed, Plaintiff's counsel transmitted the proposed amended motion to APS and requested APS's position. APS responded that it did not oppose dismissal of Count II and took no position concerning the remainder of Plaintiff's arguments, claims, or allegations.

1. APS did not state that Plaintiff's reservation concerning nonparties violated an already-completed settlement.
2. APS did not state that Plaintiff had already agreed to release all current and former employees in their personal capacities.
3. APS did not contend that Plaintiff's limitation contradicted anything agreed upon at mediation.

APS cannot now isolate the fact that Plaintiff sought dismissal of Count II, strip away the

express limitations accompanying that request, and present the filing as proof of Plaintiff's assent to a broader release. The very document APS cites as evidence of broader assent expressly disclaims it. That contradiction goes directly to APS's theory.

## IV. APS HAS PRESENTED THE COURT WITH AN INCOMPLETE AND MATERIALLY MISLEADING VERSION OF THE CONTEMPORANEOUS WRITTEN RECORD.

APS elected to place the mediator's June 15, 2026 settlement-summary email on the public docket as Exhibit A and relies upon that communication as evidence that a binding settlement was formed. Having affirmatively placed that communication before the Court, APS omits what followed. The mediator's June 15 communication expressly invited the parties to review the summarized terms and advise whether anything had been "missed or mischaracterized." Plaintiff did exactly that. On June 23, 2026, Plaintiff responded directly to the mediator in writing and clarified:

> "**My understanding was not that I agreed to release every possible claim against every possible person, including claims or issues that were not part of the mediation discussion**."

Plaintiff further stated:

> "**I did not understand the agreement to include a broader release of separate individual-capacity defamation claims or other claims that were not discussed, negotiated, or resolved at mediation**."

Plaintiff explained that the claims negotiated at mediation were the claims against APS under the New Mexico Whistleblower Protection Act and the Americans with Disabilities Act; that no individual actor had been treated as a party whose personal liability was being negotiated; and that no separate consideration or release term concerning individual-capacity liability had been negotiated. Plaintiff's June 23, 2026 communication is submitted as Exhibit A to this Response.

Because APS relies on the June 15 communication as evidence of assent, the Court should consider Plaintiff's direct contemporaneous response expressly rejecting the broader construction APS now advances. The Court should evaluate the complete contemporaneous written exchange, not one side of it.

## V. APS'S OWN EXHIBIT DOES NOT CONTAIN THE TWO SUBSTANTIVE OBLIGATIONS APS NOW CALLS "ANCILLARY."

APS's characterization of the remaining disputes as mere "ancillary details" is unsupported by APS's Exhibit A to its Amended Motion. The June 15 summary identifies:

1. a $200,000 payment by APS in full settlement of all claims that have or could have been brought in this matter;
2. APS's agreement not to oppose Plaintiff's motion concerning Count II;
3. The contemplated tax treatment of the settlement payment after dismissal of Count II;
4. APS's payment of the mediator's fee;
5. Each side bearing its own fees and costs;
6. Plaintiff's counsel providing a W-9; and
7. Cooperation in preparing formal settlement documents and dismissal papers.

Items 2 and 7 are distinct. APS's agreement not to oppose Plaintiff's motion concerning Count II was one term; the parties' separate agreement to cooperate in preparing formal settlement documents and dismissal papers was another. The latter contemplated additional documentation and future dismissal papers—it did not transform Plaintiff's earlier motion into an immediately effective dismissal.

What does the June 15 summary not say?

1. It does not say Plaintiff will release every current and former APS employee in his or her personal capacity.
2. It does not identify a single individual employee as a releasee.
3. It does not describe the scope of any proposed individual release.
4. It does not say Plaintiff will release liability arising from conduct outside the course and scope of APS employment.
5. It does not say Plaintiff will indemnify APS against future IRS liability, assessments, penalties, interest, or tax consequences.

APS cannot turn absent substantive obligations into agreed terms through post-mediation drafting. Nor does a generic statement that the parties will cooperate in preparing "formal settlement agreements" authorize either party to add new substantive obligations and then insist that the other party was already bound to accept them. Formal documentation may memorialize agreed terms; it cannot supply assent to material obligations the parties never agreed upon.

## VI. THE SCOPE OF A RELEASE IS A MATERIAL SETTLEMENT TERM, NOT A DRAFTING DETAIL APS MAY SUPPLY AFTER THE FACT.

APS's effort to characterize the disputed release as "ancillary" is particularly difficult to reconcile with recent authority from this District. Plaintiff does not argue that the absence of a final formal release alone defeats settlement; Plaintiff argues that the parties never assented to the disputed material release and indemnity terms. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004).

New Mexico applies an objective theory of contract formation and looks to the parties' manifestations of assent. *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶¶ 11–13, 125 N.M. 376, 961

P.2d 1283. New Mexico likewise recognizes that where the parties attach materially different meanings to an essential term, there is no meeting of the minds and no enforceable contract. *Trujillo v. Glen Falls Insurance Co.*, 88 N.M. 279, 280–81, 540 P.2d 209, 210–11 (1975).

That is precisely what occurred here: the parties did not merely leave implementation details for later drafting; they affirmatively disagreed over material terms governing the substantive scope of the release, the identity and capacity of its beneficiaries, indemnification obligations, and the sequence of execution, payment, and dismissal. Doc. 382 is itself contemporaneous objective evidence of the scope to which Plaintiff assented: it expressly limited the proposed dismissal to Count II against APS and expressly preserved claims against nonparties and individuals. APS cannot rely on the filing as evidence of assent to dismissal while disregarding the express limitations that simultaneously defined the scope of that assent.

Agreement on dismissal of Count II did not establish assent to separate material obligations concerning a blanket personal-capacity release or IRS indemnification. Those additional obligations required their own objective manifestation of assent, and the contemporaneous record shows none.

APS's argument repeatedly collapses three distinct questions into one: (1) whether Plaintiff anticipated that Count II ultimately would be dismissed as a component of the contemplated resolution; (2) whether Doc. 382 itself accomplished a self-executing dismissal under Rule 41(a)(1)(A)(ii); and (3) whether Plaintiff objectively assented to the additional blanket personal-capacity release and IRS indemnification obligations APS later demanded. The answer to the first question does not establish the second or third.

Doc. 382 therefore cannot serve as proof of assent to material settlement obligations beyond the

limited dismissal it expressly addressed. APS will likely rely on the mediator's reference to "all claims that have or could have been brought in this matter." But that language addresses the claims being resolved; it does not identify the persons receiving release protection. The settlement summary names APS as the payor and refers to dismissal of Count II against APS. It does not identify any employee, define any class of employee releasees, or state that Plaintiff agreed to extinguish personal-capacity claims against nonparties. Under New Mexico law, generalized release language does not itself establish that unnamed third parties are intended beneficiaries.

Plaintiff's position did not leave APS exposed to the entity liability being resolved through settlement. Plaintiff was willing to extend the release to current and former APS employees to the extent necessary to extinguish APS's entity or vicarious liability arising from conduct undertaken within the course and scope of their APS employment and forming the basis of the claims pleaded against APS. What Plaintiff did not agree to was a separate personal-capacity release extinguishing liabilities of nonparties beyond APS's own entity or derivative liability. That is not a distinction in wording; it is a distinction in the substantive rights being surrendered. APS has never identified the individual employees whose separate personal liability was supposedly negotiated and released at mediation. Nor has APS identified any contemporaneous communication in which Plaintiff objectively assented to releasing those individuals in their personal capacities. New Mexico likewise presumes that general release language benefits only persons specifically designated unless the party seeking third-party release protection proves that the contracting parties intended otherwise. *Hansen v. Ford Motor Co.*, 120 N.M. 203, 206–12, 900 P.2d 952, 955–61 (1995).

If a blanket personal-capacity release had actually been agreed upon, APS should be able to identify the objective manifestation of Plaintiff's assent to that term. It has not.

In *Myers v. Papa Texas, LLC*, the parties agreed on monetary terms but subsequently disagreed concerning, among other matters, the scope of the proposed release. The District of New Mexico concluded that the parties lacked a meeting of the minds concerning material terms and refused to enforce the disputed settlement. 749 F. Supp. 3d 1165, 1174–76 (D.N.M. 2024).

More recently, *Leavy v. BNSF Railway Co.* denied enforcement where the defendant's response to a monetary settlement offer added the material requirement that the plaintiff execute a release, and the plaintiff never agreed to the material terms of that release. No. 1:23-cv-00991-KK-DLM, ECF No. 68, at 5–10 (D.N.M. May 22, 2025). The court emphasized that mutual assent must be objectively manifested and that a party seeking enforcement bears the burden of establishing the opposing party's assent.

APS's reliance on *Towers v. Wyandotte County Sheriff's Office*, No. 17-2615-JAR-TJJ, 2018 WL 6324867, at *2–3, *7 (D. Kan. Dec. 4, 2018), does not alter that conclusion. *Towers* applied Kansas contract law and treated release terms as nonessential under the Kansas law applied there. More importantly, the settlement offer there expressly required the plaintiff to release claims against the governmental defendant and its employees, and the plaintiff unequivocally accepted those terms. Nothing comparable occurred here. APS has identified no contemporaneous offer expressly requiring the blanket personal-capacity employee release it now seeks to impose and no objective manifestation of Plaintiff's assent to such a term. New Mexico law governs this case, and *Myers* recognizes that the breadth and scope of a release may constitute a material and essential settlement term when the parties have not reached a meeting

of the minds. That distinction is substantive: a release determines both who receives the benefit of extinguished liability and what rights the releasor permanently surrenders.

APS's proposed blanket personal-capacity release would expand the beneficiaries of the settlement beyond APS itself to persons who were not individual defendants in this action. That is not boilerplate; it is a substantive allocation of legal rights.

The same is true of indemnification. An agreement requiring Plaintiff to reimburse or protect APS against future tax liability creates an affirmative contractual obligation. APS cannot establish mutual assent to either obligation by attaching the label "ancillary."

## VII. PLAINTIFF DID NOT "CHANGE HER MIND." THE CONTEMPORANEOUS RECORD DOCUMENTS HER OBJECTION.

APS repeatedly attempts to frame Plaintiff's position as buyer's remorse—an effort to escape a settlement after reconsidering its consequences. The record forecloses that characterization. *Borsody v. Federal Express Corporation*, No. 2:24-CV-02073-HLT-ADM, 2025 WL 465913, at *3 (D. Kan. Jan. 28, 2025), does not support APS's characterization. There, the parties executed a written term sheet reflecting the material terms reached at mediation, and the court enforced the agreement reflected in that term sheet. Here, the disputed blanket personal-capacity release and IRS indemnification do not appear in the mediator's June 15 summary, and Plaintiff's contemporaneous written response expressly rejected APS's broader construction. This is a dispute over whether assent ever existed as to additional material terms—not an attempt to abandon terms Plaintiff knowingly and unequivocally accepted.

Plaintiff's June 23 written response and Doc. 382 both contemporaneously documented the limits of what Plaintiff understood had been resolved.

Plaintiff did not remain silent for months and then invent an objection after settlement documentation was completed.

1. She objected in writing.
2. She objected before execution of a final settlement agreement.
3. She objected to the expansion of the settlement to encompass separate personal-capacity releases that she maintains were never negotiated.

Doc. 382 publicly documented the same limitation: dismissal of Count II against APS did not release nonparties or individuals.

APS never paid the $200,000 settlement consideration. When Plaintiff sought withdrawal of the Doc. 382, there was no executed final agreement, no payment, and no order dismissing Count II. APS may disagree with Plaintiff's interpretation. What APS cannot legitimately do is erase those contemporaneous writings and replace them with the assertion that Plaintiff simply "changed her mind." The withdrawal was not a change of mind; it was the procedural response to the parties' failure to reach mutual assent on the material terms necessary to form an enforceable settlement agreement.

**VIII. THE CONTINUED MEDIATION CONFIRMS THE EXISTENCE OF AN UNRESOLVED DISPUTE; IT DOES NOT PROVE THAT APS'S VERSION OF THE SETTLEMENT WAS ALREADY BINDING.**

APS also attempts to derive "strong evidence" of a completed settlement from the Court's decision to return the parties to mediation. That inference does not follow.

The parties returned to mediation because material issues remained unresolved. Had the disputed release and indemnification provisions already been finally and objectively agreed upon, there would have been nothing left to mediate concerning those terms. The referral was an effort to

resolve the remaining disagreement, not a judicial determination that APS's preferred terms were already contractual obligations.

The mediator's own August 4, 2026 response confirms that the dispute remained unresolved. Plaintiff's counsel expressly asked the mediator either to clarify that the mediation did not include a separately negotiated blanket personal-capacity release for all current and former APS employees or, if the mediator understood otherwise, to identify the specific communication or exchange reflecting Plaintiff's objective assent to such a term. The mediator identified no such communication. Instead, she responded that it would be "easiest (and best) to work through these issues at the mediation on the 31st" and expressed hope that the parties could "reach a resolution at that time without the need for court intervention." *See* **Exhibit B**.

That contemporaneous response is inconsistent with APS's assertion that all material terms had already been resolved and only ancillary drafting details remained. APS cannot transform a referral intended to resolve an existing dispute into proof that the disputed terms were already binding.

## IX. APS IS ATTEMPTING TO OBTAIN SETTLEMENT ENFORCEMENT THROUGH A MOTION TO STRIKE WITHOUT ESTABLISHING THE CONTRACT IT SEEKS TO ENFORCE.

APS's requested relief exposes another fundamental problem with its Amended Motion. APS nominally asks the Court to "strike" Plaintiff's Notice of Withdrawal. But APS's substantive argument requires the Court to decide much more. APS asks the Court to determine that:

1. a binding settlement was formed;
2. Plaintiff irrevocably agreed to dismissal of Count II;
3. the disputed employee-release provisions are merely ancillary;

4. the disputed IRS-indemnification provision is merely ancillary; and

5. Plaintiff is bound notwithstanding her contemporaneous written objections concerning settlement scope.

Those are settlement-formation and settlement-enforcement questions. Calling the filing a Motion to Strike does not relieve APS of its burden to establish the contract and objective assent on which its requested relief depends.

A federal court has authority to summarily enforce a settlement agreement entered into by litigants while the litigation is pending. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). But where material facts bearing on settlement formation are genuinely disputed, the Court must have an adequate factual record. In *Hardage*, the Tenth Circuit vacated an enforcement order and remanded for an evidentiary hearing because the district court lacked sufficient factual development to resolve whether an offer to settle had been withdrawn before acceptance. *Id.* at 1496–97.

If APS seeks enforcement of a purported settlement containing a blanket personal-capacity employee release or IRS indemnification obligation, APS must establish Plaintiff's objective assent to those terms on an appropriate factual record.

APS has not done so. Instead, it asks the Court to infer assent from documents that either omit the disputed terms or expressly contradict APS's interpretation. That record is insufficient to establish the contract APS seeks to enforce.

**X. APS'S SELECTIVE DISCLOSURE OF THE JUNE 15 COMMUNICATION REQUIRES CONSIDERATION OF PLAINTIFF'S DIRECT RESPONSE**.

APS publicly filed and affirmatively relied upon the mediator's June 15 summary as evidence

that Plaintiff agreed to APS's characterization of the settlement. Plaintiff therefore submits her direct June 23 response so that the Court has the complete contemporaneous written exchange. Plaintiff submits that June 23 communication as **Exhibit A**. Plaintiff also submits as **Exhibit B** the August 4, 2026 correspondence in which Plaintiff's counsel expressly requested identification of any communication reflecting assent to the disputed blanket personal-capacity release and the mediator instead directed the parties to work through the unresolved issues at the August 31 mediation.

Plaintiff also submits as **Exhibit C** a narrowly redacted June 23, 2026 settlement-drafting communication solely to show the contemporaneous sequencing of execution, payment, and dismissal. The redactions remove unrelated settlement terms; the complete unredacted communication is preserved and may be submitted under seal or for in camera review if the Court determines that additional context is necessary.

Plaintiff's submission of Exhibits A, B, and C does not concede any broader waiver of mediation confidentiality. Those communications are submitted because APS itself placed the mediator's June 15 summary and the existence and scope of the alleged settlement directly before the Court.

Plaintiff is not publicly filing the remaining July 28 and July 29 mediation communications at this time. Plaintiff expressly reserves those materials and, if the Court determines that additional mediation communications are necessary to adjudicate settlement formation or scope, respectfully requests leave to submit them under seal or for in camera review, subject to such protections as the Court directs.

**XI. APS'S PARAGRAPH 13 ASSUMES THE VERY CONTRACT FORMATION AND MUTUAL ASSENT THAT APS HAS NOT PROVED.**

APS's paragraph 13 argues that Plaintiff cannot undo the asserted settlement without showing bad faith, fraud, duress, or mutual mistake. Doc. 390 at 4. That argument is circular. Fraud, duress, and mistake are doctrines that may bear on avoidance or reformation of an agreement after formation; they do not relieve APS of the antecedent burden to establish that the parties formed the contract APS seeks to enforce and objectively assented to the material terms APS now attributes to it.

Plaintiff is not conceding a complete settlement contract and then seeking rescission because she later regretted it. Plaintiff disputes formation and scope. The contemporaneous record shows materially different understandings concerning who would receive release protection, whether personal-capacity claims against nonparties would be extinguished, whether Plaintiff would indemnify APS for IRS consequences, and when dismissal of Count II would occur. Under New Mexico law, parties mutually assent only when their objective manifestations reflect the same understanding of the material terms; where they attach materially different meanings to an essential term, there is no meeting of the minds. See *Trujillo v. Glen Falls Insurance Co.*, 88 N.M. 279, 280–81, 540 P.2d 209, 210–11 (1975); *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶¶ 11–13, 125 N.M. 376, 961 P.2d 1283.

Doc. 382 does not cure that defect. APS itself treated the filing as a motion by giving a position of non-opposition rather than signing a Rule 41(a)(1)(A)(ii) stipulation. The parties then continued negotiating material settlement terms, and Plaintiff expressly proposed that dismissal papers would not be required until settlement funds had been received and cleared. *See* **Exhibit**

**C**. That contemporaneous conduct reinforces, rather than eliminates, the dispute over the scope of any agreement and the intended sequence of performance.

Accordingly, APS cannot use the absence of a showing of bad faith, fraud, duress, or mutual mistake as a substitute for proving contract formation and mutual assent. The record instead demonstrates a material dispute over what had been agreed and what remained unresolved. Paragraph 13 therefore provides no basis to deem Count II dismissed or to strike Plaintiff's Notice of Withdrawal.

## XII. WITHDRAWAL OF A MOTION TO DISMISS A CLAIM IS NOT "WITHDRAWAL OF THE WPA CLAIM."

APS further mischaracterizes the procedural record when it describes Plaintiff as attempting to "withdraw the WPA claim through the Notice of Withdrawal."

APS's reliance on *Garnica, David L. v. Department of Veterans Affairs*, No. SF-0714-18-0329-B-1, 2024 WL 2818733 (M.S.P.B. May 2, 2024), is misplaced. As APS itself describes that administrative decision, it concerned withdrawal of a WPA appeal pursuant to a settlement agreement. See Doc. 390 at 4. It does not address withdrawal of a pending federal-court motion that never resulted in dismissal of the underlying claim.

Plaintiff did not withdraw the WPA claim. She withdrew from the Court's consideration the pending motion that requested dismissal of that claim. Those are opposite procedural acts.

The distinction matters because APS's characterization obscures what the Notice actually accomplished. No order had dismissed Count II. Plaintiff sought withdrawal of the pending motion that asked the Court to dismiss Count II. That is precisely why Plaintiff invoked D.N.M.LR-Civ. 7.7.

**XIII. APS'S AMENDED MOTION SHOULD BE DENIED.**

The Court need not adopt Plaintiff's characterization of every mediation communication to deny APS's Amended Motion. The existing written record is sufficient to establish that APS's self-executing-dismissal theory is incorrect and that APS's characterization of unquestioned settlement assent is, at minimum, genuinely disputed.

- No Rule 41(a)(1)(A)(ii) stipulation signed by all appearing parties was filed.
- No order dismissing Count II was entered.
- Doc. 382 expressly requested entry of an order.
- Doc. 382 expressly preserved claims against nonparties and individuals.
- APS reviewed that limitation and did not oppose dismissal of Count II.
- APS's Exhibit A to its Amended Motion does not contain a blanket personal-capacity employee release.
- APS's Exhibit A to its Amended Motion does not contain an IRS indemnification provision.
- Plaintiff responded directly to that Exhibit A and expressly rejected APS's broader construction.
- Plaintiff's contemporaneous settlement-drafting communication expressly proposed that dismissal papers would not be required until settlement funds had been received and cleared. *See* **Exhibit C**.

APS cannot avoid its threshold burden to prove contract formation and mutual assent by pointing to the absence of fraud, duress, or mutual mistake.

- No final settlement agreement was executed. No settlement consideration was paid.

- The parties returned to mediation because material issues remained unresolved.
- When Plaintiff's counsel expressly asked the mediator to identify any communication demonstrating assent to the disputed blanket release, no such communication was identified; the parties were instead directed to address those unresolved issues at the continued mediation. *See* **Exhibit B**.

Taken together, that record does not establish an undisputed completed settlement or an immediate dismissal of Count II. It demonstrates unresolved material terms, contemporaneous objections, and the absence of the Rule 41 instrument APS's theory requires.

## CONCLUSION

APS's Amended Motion depends on treating a pending motion as a self-executing stipulation and disputed material terms as though they had already been accepted. The record supports neither premise. Plaintiff's motion was filed in anticipation of a contemplated settlement, but no enforceable settlement agreement was ever formed because the parties never reached a meeting of the minds or objectively assented to all material terms. Plaintiff never objectively assented to the blanket personal-capacity release or IRS indemnification APS later demanded; no final settlement agreement was executed, no settlement consideration was paid, and no order dismissed Count II.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. DENY Albuquerque Public Schools' Amended Motion to Strike Plaintiff's Notice of Withdrawal [Doc. 390];
2. APPROVE, pursuant to D.N.M.LR-Civ. 7.7, Plaintiff's withdrawal of Plaintiff's Amended Motion to Dismiss Count II [Doc. 382];

3. Decline APS's invitation to adjudicate or enforce disputed settlement terms through a motion to strike;
4. To the extent the Court determines that settlement formation or scope must be adjudicated, require an appropriate factual record consistent with *United States v. Hardage*, including consideration of the complete contemporaneous written record rather than APS's selected excerpts; and
5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Boglarka A. Foghi, Esq.

Boglarka A. Foghi, Esq.
FOGHI LAW FIRM, LLC
4263 Montgomery Blvd NE, Suite 110
Albuquerque, NM 87109
Telephone: (505) 220-5691
Email: foghilaw@yahoo.com
*Counsel for Plaintiff Tatia Lipe*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of August 2026, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Boglarka A. Foghi, Esq.*
Boglarka A. Foghi, Esq.